UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No. |
| v. | JURY TRIAL DEMANDED |
| FRANCISCO ILLARRAMENDI, and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, | |
| Defendants, | |
| and | |
| MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP, | |
| Relief Defendants. | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following against Defendants Francisco Illarramendi ("Illarramendi") and Michael Kenwood Capital Management, LLC ("MK Capital Management") and Relief Defendants Michael Kenwood Asset Management, LLC ("MK Asset Management"), MK Energy and Infrastructure, LLC ("MK Energy") and MKEI Solar, LP ("MKEI Solar"):

## SUMMARY

1.   This case involves the misappropriation of investor assets by an unregistered investment adviser located in Stamford, Connecticut. Illarramendi is the majority owner and

control person of a group of affiliated entities (the "MK Entities") organized under the name The Michael Kenwood Group, LLC (the "MK Group"), a Stamford, Connecticut-based holding company. Through one of the MK Entities, namely MK Capital Management, Illarramendi advises hedge funds, which include the Short Term Liquidity Fund, I, Ltd. (the "Short Term Liquidity Fund") and MK Venezuela, Ltd. (the "MK Venezuela Fund") (collectively, the "Funds"). The current approximate value of the Short Term Liquidity Fund, according to counsel for the MK Group, is $540 million. The investors in the Funds are off-shore individuals and entities, including a pension fund for a foreign corporation (the "Pension Fund"). Indeed, the Pension Fund is the source of approximately 90% of the monies invested in the Funds.

2. Since at least 2009, Illarramendi has improperly and illegally invested at least $53 million from the Funds by first transferring monies from the Funds' accounts into bank accounts that he personally controlled, and then making unauthorized investments of the monies in long-term private equity investments.

3. Moreover, Illarramendi misappropriated the Funds' assets by causing fund adviser MK Capital Management to use the Funds' assets to purchase interests in private companies for the benefit of Illarramendi and other entities that he controls. This self-dealing created an undisclosed conflict of interest and was in breach of Illarramendi's fiduciary duty to the Funds.

4. The Defendants' conduct has created the risk of imminent harm to the Funds – and absent the relief sought by the Plaintiff, as much as $5 million in additional investor funds could be placed at risk. During this investigation, the Commission staff learned that one of the private equity investments (the "Nuclear Energy Company") requires a cash infusion of $5 million in January to pay operating expenses. The Nuclear Energy Company, a West Coast-

2

based company that is in the developmental stage and will not have a saleable product until at least 2014, has already received approximately $23 million in investor monies from Illarramendi.

5. By engaging in the conduct alleged herein, Defendants violated Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder.

6. Based on these violations, the Commission seeks: (1) entry of a permanent injunction prohibiting Defendants from further violations of the relevant provisions of the federal securities laws; (2) disgorgement of Defendants' ill-gotten gains, plus pre-judgment interest; (3) disgorgement by the Relief Defendants of all unjust enrichment and/or ill-gotten gain received from Defendants, plus prejudgment interest; and (4) the imposition of a civil monetary penalty due to the egregious nature of Defendants' violations. In addition, because of the risk that Defendants will continue violating the federal securities laws and the danger that any remaining investor funds will be dissipated or concealed before entry of a final judgment, the Commission seeks preliminary equitable relief, to wit, a temporary restraining order and upon notice a preliminary injunction, to: (1) prohibit Defendants from continuing to violate the relevant provisions of the federal securities laws; (2) freeze Defendants' and Relief Defendants' assets and otherwise maintain the status quo; (3) require Defendants and Relief Defendants to submit an accounting of investor funds and other assets in their possession; (4) require Defendants and Relief Defendants to repatriate assets that were transferred outside of the United States and were obtained from investors; (5) prohibit Defendants from soliciting or accepting additional investments; (6) prohibit Defendants from destroying relevant documents; (7) authorize the Commission to undertake expedited discovery; and, (8) appoint a receiver pursuant to Federal

Rule of Civil Procedure 66 to safeguard client assets in the custody and control of the Defendants and/or the Relief Defendants.

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to the enforcement authority conferred upon it by Section 209(d) of the Advisers Act [15 U.S.C. §80b-9(d)]. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and Section 214 of the Advisers Act [15 U.S.C. §80b-14].

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and Section 214 of the Advisers Act [15 U.S.C. §§ 77v(a), 78aa, and 80b-14], because a substantial part of the acts constituting the alleged violations occurred in the District of Connecticut and because Illarramendi's primary residence is in the District of Connecticut and the principal place of business of all of the entities named as defendants is Connecticut.

9. In connection with the conduct alleged in this Complaint, Defendants directly or indirectly made use of the means or instruments of transportation or communication in interstate commerce, the facilities of a national securities exchange, or the mails.

10. Defendants' conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons.

11. Unless enjoined, Defendants will continue to engage in the securities law violations alleged herein, or in similar conduct that would violate the federal securities laws.

## DEFENDANTS

12. Illarramendi, age 41, is a resident of New Canaan, Connecticut. Illarramendi is not registered with the Commission in any capacity. Illarramendi is the majority owner of the MK Group, and was previously associated with a U.S.-based registered investment adviser.

13. MK Capital Management was incorporated in Delaware in 2006 and its principal place of business is in Stamford, Connecticut. It is wholly owned by the MK Group and is therefore controlled by Illarramendi. It is not registered with the Commission in any capacity.

## RELIEF DEFENDANTS

14. MK Asset Management was incorporated in Delaware in 2006 and its principal place of business is in Stamford, Connecticut. It is wholly-owned by the MK Group and controlled by Illarramendi. It is not registered with the Commission in any capacity. MK Asset Management is the record owner of shares of the Nuclear Energy Company, which were purchased using the Funds' assets.

15. MK Energy was incorporated in 2010 in Delaware and its principal place of business is Stamford, Connecticut. The precise ownership of MK Energy is currently unknown, but it is controlled by Illarramendi either as a direct owner or as the owner of MK Group. On information and belief, MK Energy may be partially owned by a relative of Illarramendi. MK Energy is the record owner of shares of at least two private companies -- which shares were purchased with investor assets, and thus rightfully constitute the property of the Funds.

16. MKEI Solar is the record owner of certain shares in a private company, which were purchased using the investor money from the Funds.

5

## FACTUAL ALLEGATIONS

### A. Illarramendi Uses $53 Million in Investor Funds to Make Private Equity Investments in the Names of Entities That He Personally Controlled

17. Beginning in or around late 2009, Illarramendi – an unregistered hedge fund adviser -- made numerous multi-million dollar investments in private equity deals using the investor monies from two of the Funds: namely, the MK Venezuela Fund and the Short Term Liquidity Fund. The current approximate value of the Short Term Liquidity Fund, according to counsel for the MK Group, is $540 million. The investors in the Funds are off-shore individuals and entities, including the Pension Fund.

18. The largest of Illarramendi's private equity investments was in a West Coast-based Nuclear Energy Company. From approximately April 22, 2010 to approximately November 23, 2010, Illarramendi invested almost $23 million from the Funds into the Nuclear Energy Company. Specifically, in or about April 2010, approximately $10.5 million in investor funds were transferred from an MK Venezuela Fund account to Relief Defendant MK Asset Management, and $7 million of which was wired from MK Asset Management to the Nuclear Energy Company the next day. From August 2010 through November 2010, approximately $13 million was wired from a Short Term Liquidity Fund account to MK Asset Management, which then made five transfers totaling approximately $16 million from its account to the Nuclear Energy Company shortly after the receipt of monies from the Short Term Liquidity Fund. Although Illarramendi used Fund assets to make the investment, he caused the shares in the Nuclear Energy Company to be registered in the name of Relief Defendant MK Asset Management, an entity he owns and controls.

19. Based on information and belief, the Nuclear Energy Company is in the early development stage of product design, and does not expect to have federal approval for the sale of

its product until at least 2014. Accordingly, the Nuclear Energy Company is not anticipated to generate investor returns, if any, until at least 2014 or upon the purchase of the shares by another investor, either privately or through an initial public offering.

20. In addition to the $23 million investment in the Nuclear Energy Company, in or about May 2010, Illarramendi authorized the transfer of approximately $20 million from the Short Term Liquidity Fund's account to pay for shares in a manufacturing company that is in the early development stage of creating zero-emissions mass transportation alternatives (the "Clean Transportation Manufacturer"). The shares in the Clean Transportation Manufacturer were registered not in the name of the Fund, but in the name of Relief Defendant MK Energy, an entity owned and controlled by Illarramendi.

21. In or about September 2010, Illarramendi authorized the transfer of $4 million in investor funds from the Short Term Liquidity Fund account to pay for shares in a development stage energy technology company (the "Technology Company"), which were then registered in the name of Relief Defendant MKEI Solar, an entity owned and controlled by Illarramendi.

22. In or about December 2009, Illarramendi authorized the transfer of more than $3.5 million from an account in the name of Highview Point Offshore Ltd. to a Spanish company that produces rolled steel (the "Spanish Steel Company"). These shares were registered to MK Energy. On information and belief, this Highview Point Offshore, Ltd. Account held money belonging to the MK Venezuela Fund. Illarramendi authorized the transfer of this MK Venezuela Fund money to the Spanish Steel Company directly. In or about March 2010, Illarramendi authorized another transfer of approximately $2 million from the Short Term Liquidity Fund to the Spanish Steel Company, and an additional $1.2 million in or about August 2010. In total, Illarramendi authorized a total of approximately $6.7 million in investor funds to

the Spanish Steel Company. Notwithstanding that the shares were purchased using money from the Funds, the shares were registered in the name of Relief Defendant MK Energy, an entity owned and controlled by Illarramendi.

23. In total, between December 2009 and November 2010, Illarramendi misappropriated $53 million in investor funds to make investments in private entities in the names of companies that he owned and controlled.

### B. Illarramendi Makes False and Misleading Statements to Investors Regarding Liquidity and Use of Investor Funds

24. All of the above transactions were wholly inconsistent with the representations made by Illarramendi, the MK Venezuela Fund and the Short Term Liquidity Fund to investors in the Funds at the time the investments in the Funds were made.

25. With regard to the Short Term Liquidity Fund (and as the fund's name necessarily implies), the Private Offering Memorandum contemplated that the investments in said fund would be short term in nature:

> While the Fund may, from time to time, invest in longer-term securities, its primary investment strategy seeks to take advantage of products offered in the global fixed income and derivatives markets to generate gains through short-term (under one year) investments[.] . . . [T]he Investment Manager may pursue any strategies, employ any investment techniques and purchase any type of security it considers appropriate to achieve the investment objective of the Fund, as long as they are constrained to fixed income securities and derivatives referencing fixed income securities.

26. Consistent with the goals of a self-described short term liquidity fund, the Private Offering Memorandum provided that investors may generally redeem their investments upon 30 days' notice.

27. The Private Offering Memorandum did not provide for loans to be made to the adviser or entities under common ownership or control of the adviser without notice to the investors.

8

### C. Illarramendi Belatedly Claims that His Private Equity Investments with Investor Funds Were "Loans"

28. During this investigation, Illarramendi, through counsel, has informed Commission staff that, in fact, the $53 million transferred from the Funds to private equity investments were loans from the Funds to entities controlled by Illarramendi.

29. However, investors were not specifically informed that the Funds were used to make "loans" to entities controlled by Illarramendi to invest in private equity ventures.

30. Moreover, the purported "loans" from the Funds to entities controlled by Illarramendi were unsecured and, with a single exception, never documented. Indeed, Commission staff have learned that loan documents only exist for the investment in the Clean Transportation Manufacturer, which was due to be repaid to the Short Term Liquidity Fund in November 2010 at LIBOR plus 9%, and that these terms were subsequently extended through January 2011.

31. The Commission staff has interviewed an executive at the Pension Fund (the "Pension Fund Executive"). The Pension Fund Executive indicated to the Commission staff that although he was aware that Illarramendi was investing certain of the pension funds in private equity transactions, he was unaware that any of the pension funds were used to make loans.

32. In addition, Commission staff has interviewed two other investors in the Short Term Liquidity Fund ("Investor A" and "Investor B"). Investor A advised Commission staff that he was unaware of his funds being used for private equity investments. He stated that his understanding was that his funds would be used solely for short term currency transactions involving Venezuelan bonds. Investor B advised Commission staff that he was unaware of his funds being used for private equity investments. He stated that his understanding was that his funds would be used solely to purchase dollar denominated government bonds.

## First Claim for Relief
### (Violation of Sections 206(1) of the Advisers Act)

33. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

34. At all times relevant to this Complaint, the Defendants acted as investment advisers to the Funds.

35. Defendants, while acting as investment advisers, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, employed devices, schemes or artifices to defraud their clients or prospective clients.

36. At all times relevant to this Complaint, the Defendants acted with scienter.

37. By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Section 206(1) of the Advisers Act [15 U.S.C. §80b-6(1)].

## Second Claim for Relief
### (Violation of Section 206(2) of the Advisers Act)

38. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

39. At all times relevant to this Complaint, the Defendants acted as investment advisers to the Funds.

40. Defendants, while acting as investment advisers, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon their clients or prospective clients.

41. By engaging in the conduct described above, Defendants have violated, and

unless enjoined will continue to violate, Section 206(2) of the Advisers Act [15 U.S.C. §80b-6(2)].

## Third Claim for Relief
### (Violation of Sections 206(4) of the Advisers Act and Rule 206(4)-8)

42.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

43.     At all times relevant to this Complaint, the Defendants acted as investment advisers to the Funds.

44.     Defendants, while acting as investment advisers, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts, practices or courses of business which were fraudulent, deceptive, or manipulative. The Defendants made untrue statements of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle, and otherwise engaged in acts, practices or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

45.     By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. §80b-6(4) and Rule 206(4)-8 [17 C.F.R. 275.206(4)-8] thereunder.

### Fourth Claim for Relief
### (Other Equitable Relief, Including Unjust Enrichment and Constructive Trust, Against Relief Defendants)

46. The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

47. Section 21(d)(5) of the Exchange Act [15 U.S.C. §78u(d)(5)] states: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."

48. The Relief Defendants have received investor funds under circumstances dictating that, in equity and good conscience, they should not be allowed to retain such funds.

49. Further, specific property acquired by the Relief Defendants is traceable to Defendants' wrongful acts and there is no reason in equity why the Relief Defendants should be entitled to retain that property.

50. As a result, the Relief Defendants are liable for unjust enrichment and should be required to return their ill-gotten gains, in an amount to be determined by the Court. The Court should also impose a constructive trust on property in the possession of Relief Defendant that is traceable to Defendants' wrongful acts.

### PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court:

A. Enter a temporary restraining order, order freezing assets, and order for other equitable relief in the form submitted with the Commission's motion for such relief, and, upon further motion, enter a comparable preliminary injunction, order freezing assets, and order for other equitable relief;

B.   Enter a permanent injunction restraining Defendants and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Sections 206(1), (2) and (4) of the Advisers Act [15 U.S.C. §§80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8].

C.   Require Defendants to disgorge their ill-gotten gains and losses avoided, plus pre-judgment interest, with said monies to be distributed in accordance with a plan of distribution to be ordered by the Court;

D.   Require the Relief Defendants to disgorge all unjust enrichment and/or ill-gotten gain received from Defendants, plus prejudgment interest, with said moneys to be distributed in accordance with a plan of distribution to be ordered by the Court;

E.   Require Defendants to pay appropriate civil monetary penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. §§77t(d), 78u(d)(3), 80b-9(e)];

F.   Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered;

G.   Appoint a receiver pursuant to Federal Rule of Civil Procedure 66; and

H.   Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

Rua M. Kelly (Mass. Bar No. 643351)
Michael D. Foster (Illinois Bar No. 6257063)
Carlos Costa-Rodrigues (NY Reg. No. 2473593)
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110
Telephone: (617) 573-8941 (Kelly direct)
Facsimile: (617) 573-4590
E-mail: kellyru@sec.gov

Local Counsel:

/s/
John B. Hughes (Fed. Bar No. CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, CT 06510
(203) 821-3700
(203) 773-5373

Dated: January 14, 2011