UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------------X
                                    :

SECURITIES AND EXCHANGE COMMISSION,    :
                                      : Civil Action No.: 11-cv-78 (JBA)

      Plaintiff,                           :
                                      :

vs.                                        :
                                      : May 12, 2011

FRANCISCO ILLARRANENDI, et al.,        :
                                      :

      Defendants.                       :
                                      :
----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY BALANCHINE CORPORATION, BRENTWOOD SERVICES INCORPORATED AND EDENWOOD HOLDING, S.A.

      Balanchine Corporation, Brentwood Services Incorporated and Edenwood Holding, S.A.

("Movants"), by and through their undersigned attorneys, hereby submit their Memorandum in

Support of their Motion to Intervene in this action.

## PRELIMINARY STATEMENT

      The Movants seek to intervene to protect their interests as shareholders and creditors of

Highview Point Offshore, Ltd., a Cayman Islands exempted company ("HPOL").[1] Those

interests would be severely adversely affected were the Court to grant the far-reaching relief

sought on an emergency basis by the Plaintiff Securities and Exchange Commission ("SEC") in

its Motion for a Temporary Restraining Order, Order Freezing Assets and Order for Other

---

[1]     HPOL serves as a "feeder fund" to Highview Point Master Fund, Ltd., another
Cayman Islands exempted company ("HPMF"). Historically, over 99% of its assets consisted
of moneys invested in HPMF.

Equitable Relief ("SEC TRO Motion").[2] The Movants' intervention is necessary to permit them to contest a number of issues raised in the SEC TRO motion and the simultaneously filed Motion for Leave to Amend ("SEC 15(a) Motion").

The SEC claims that there is an emergency that requires that the Court act as if there were. The SEC even estimates that the Court will need no more than an hour hearing on the SEC TRO Motion. SEC's TRO Motion, at 2. But the papers submitted by the SEC fail to show any such emergency. Absent an emergency, there is no need for abnormally rapid decisions on motions raising fundamental and highly complex factual and legal issues. The only argument that the SEC makes is that a voluntary freeze of HPMF's assets previously agreed to by HPCP, the fund's investment manager, is about to end. Memorandum in Support of SEC TRO Motion, DE 169-3, at 3. There is no showing that HPCP would not have agreed to another freeze had it been asked, or that the investors in these funds would not have agreed to an arrangement with the SEC to permit them time to seek emergency relief if it felt it necessary to do so.[3] Moreover, as will be brought out to the Court, the situation is no longer as has been described to the Court by the SEC in its moving papers. For one thing, the Movants, and perhaps other investors, are amenable to a

---

[2]     The Movants invested $117,500,000 in HPOL, which, on information and belief, represents over 70% of the investments in that entity and the vast majority of the investments in HPMF. (The latter entity also had a much smaller investment by an on-shore fund, Highview Point, Ltd.) The Movants, viz-a-viz HPOL, are creditors of that fund, rather than mere equity holders. This is because in March 2011, after previously agreeing to redeem all investors' shares, HPOL, through its investment manager, prospective defendant Highview Point Capital Partners, LLC ("HPCP"), refused, at the behest of the SEC, to honor investors' contractual rights to redeem their shares.

[3]     For example, the SEC does not inform the Court that its Staff (the very lawyers now arguing that there is an emergency) turned down, without explanation, the Movants' independent offer to hold an amount equal to their invested capital in HPOL (not including their share of the accrued profits) in a U.S.-based account with suitable controls to prevent them from removing them from the United States for at least long enough to give the SEC an opportunity to obtain a judicial freeze.

temporary freeze, without prejudice to various parties' rights to contest whether the Court has personal jurisdiction over the two Highview Point funds, until the final determination of that issue. There have also been changes in the governance of the Highview Point funds.

The lack of need for emergency treatment of the SEC's motions aside, there are a number of initial major issues affecting the Movants' interests that are raised by the SEC Motions, and, as shown below, the Movants' interest in these issues may not be adequately protected by present or prospective parties. These issues include, not necessarily in their order of importance:

1. Whether, given the strictures of Fed.R.Civ.P. 20(a)(2), governing the permissive joinder of defendants, the Court should grant the SEC's Motion to Amend the Complaint, or instead rule that the SEC must file a separate action. While the SEC conclusorily states in its Memorandum in Support of its 15(a) Motion, DE 169-1, at 5-6, that there is commonality between the new allegations and the old, other considerations, including fairness, the risk of jury confusion, and the like, are properly considered under Rule 20(a)(2). There are fundamental differences between the two cases that should be carefully briefed and considered before the Court rules on the Rule 15(a) motion.

2. Whether the two Highview Point Cayman Island-domiciled funds that the SEC seeks to name as relief defendants are subject to the personal jurisdiction of this Court. These are Cayman Island-domiciled funds. The issue of personal jurisdiction is a serious one. This Court, in an earlier hearing in this action, expressed doubts concerning its jurisdiction over off-shore Michael Kenwood funds. As the Court will recall, the prospective receiver and the SEC informed the Court that it need not decide that question, focusing the Court instead on its jurisdiction over the Connecticut-based investment manager for the MK funds. The issue

remains a vital one in the present context, although the SEC does not mention it in its moving papers.

        3.    <u>Whether the SEC has made the requisite showing needed to justify the severe remedy of freezing the two Highview Point funds' assets.</u>  On a proper showing,[4] the Court has the authority to enter an order to freeze a defendant's assets to preserve assets for a later order, such as an order of disgorgement. <u>SEC v. Unifund SAL</u>, <u>supra</u>, 910 F.2d at 1041. This situation here is different, however: the SEC asks the Court to freeze the assets of two "relief defendants" against whom the SEC alleges no wrongdoing. "Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." <u>SEC v. Cavanagh</u>, 155 F.3d 129, 136 (2d Cir. 1998). However, that authority does not extend to those portions of a relief defendant's assets that the SEC cannot show are the product of a securities fraud. <u>SEC v. Heden</u>, 51 F. Supp. 2d 296, 302 (S.D.N.Y. 1999). See <u>SEC v. McGinn, Smith & Co., Inc.</u>, 752 F. Supp. 2d 194 (N.D.N.Y. 2010), <u>vacated on reconsideration sub nom.</u> <u>SEC v. Wojeski</u>, 752 F. Supp. 2d 220 (vacating earlier order on discovery of new evidence establishing that funds were tainted). The record is inadequate at this stage to justify any freeze, not to mention a total freeze.   Even assuming, arguendo, however, that the Court concludes a freeze is appropriate, the freeze could extend only to assets that the SEC can show were tainted by

---

[4]    "[A] district court, exercising its equitable discretion, should bear in mind the nature of the preliminary relief the Commission is seeking, and should require a more substantial showing of likelihood of success, both as to violation and risk of recurrence, whenever the relief sought is more than preservation of the status quo. Like any litigant, the Commission should be obliged to make a more persuasive showing of its entitlement to a preliminary injunction the more onerous are the burdens of the injunction it seeks. <u>SEC v. Unifund SAL</u>, <u>supra</u>, 910 F.2d 1028, 1039 (2d Cir. 1990).

securities fraud. Investments by the Movants and others would obviously not fall into that category.

4.     <u>Whether the SEC has made the requisite showing needed to justify the appointment of a receiver over the two Highview Point funds.</u>  SEC requests for broad ancillary relief "require[] particularly careful consideration by the Court." <u>SEC v. Prater</u>, 289 F. Supp. 2d 39, 54 (D. Conn. 2003) (Kravitz, J.) (consideration of asset freeze). This includes a request for a receiver. Receiverships are an expensive remedy and should not be granted unless necessary to unravel complicated transactions or preserve the status quo. The SEC has not shown that there is a need to employ a receiver to reconstruct the books of these funds or of HPCP. Moreover, the Second Circuit has made it clear that the SEC has the responsibility to inform the Court that the Court of Appeals disfavors receiverships as a substitute for a bankruptcy trustee in circumstances where a trustee is more appropriate. <u>SEC v. Am. Bd. of Trade, Inc.</u>, 830 F.2d 431, 438 (2d Cir. 1987) (affirming appointment of "interim" receiver).  Before the Court decides whether to appoint a receiver here, it should carefully consider, and take evidence on, the need for this relief, particularly in view of the fact that the SEC does not appear to be proposing an "interim" or temporary receiver.

5.     <u>Whether, if the Court decides to appoint a receiver, it should follow the SEC's suggestion to appoint a receiver whose status as receiver over the MK **and** Highview Point funds.</u>  If the Court appoints Mr. Carney to be receiver over the Highview Point funds, he would be subject to a paralyzing conflict because the interests of investors in the two sets of funds are diametrically opposed. But a receiver is in a fiduciary relation to the estate over which he is placed in control. <u>Citibank, N.A. v. Nyland (CF8) Ltd.</u>, 839 F.2d 93 (2d Cir. 1988) (receiver is fiduciary); <u>Fleet Nat. Bank v. H&D Entm't, Inc.</u>, 96 F.3d 532 (1st Cir. 1996) (court-appointed

receiver is a "full-fledged fiduciary"); <u>Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.</u>, 929 F.

Supp. 369, 372 (D. Colo. 1995) (Receiver "is a fiduciary of this Court and of all claimants or

persons interested in the estate"); 65 Am. Jur. 2d Receivers § 90 ("A receiver is often referred to

as a fiduciary of the court, and of all claimants[3] or parties interested in the property or estate held

in receivership. A receiver may also be regarded as a quasi-trustee, holding legal title and

possession as an agent of the court for the beneficial owners.") (<u>citing</u> <u>Fleet Nat. Bank</u>).  As a

fiduciary, a receiver obviously may not owe fiduciary duties to beneficiaries who are in

fundamental conflict with one another.

     For the reasons set forth below, the Court should permit the Movants to intervene in this

action for the purpose of protecting their interests.

## <u>ARGUMENT</u>

## I.    MOVANTS ARE ENTITLED TO INTERVENE OF RIGHT

     Intervention is either of right or with the Court's permission. Fed.R.Civ.P. 24.

We deal first with intervention of right, for which the case is overwhelming.

     Intervention of right is provided for under Fed.R.Civ.P. 24(a)(2)[5]:

> (a) Intervention of Right. Upon timely application anyone shall be permitted
> to intervene in an action: ... (2) when the applicant claims an interest relating to
> the property or transaction which is the subject of the action and the applicant is
> so situated that the disposition of the action may as a practical matter impair or
> impede the applicant's ability to protect that interest, unless the applicant's interest
> is adequately represented by existing parties.

     As explained by the Second Circuit in <u>United States v. Pitney Bowes, Inc.</u>, 25

F.3d 66, 70 (2d Cir. 1994):

> Intervention as of right under Rule 24(a)(2) is granted when an applicant: (1) files
> a timely motion; (2) asserts an interest relating to the property or transaction that
> is the subject of the action; (3) is so situated that without intervention the

---

[5]    There is no mandatory statutory right to intervene, so the provisions of Rule
24(a)(1) do not come into play.

disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties.

While consideration of a motion to intervene is committed to the sound discretion of the district court, "[s]ince in situations in which intervention is of right the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive." FPP § 1916, 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed.).

## A.    The Intervention Motion is Timely.

Timeliness is the first issue. As the Court stated in Pitney Bowes, id.,

> [t]imeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

This Motion is being filed within two business days of the filing of the SEC's motion papers related to the Highview Point entities. The Court has yet to rule on the SEC's Motion to Amend. It has yet to rule on the SEC's request, in its TRO Motion, that it appoint a receiver over the Highview Point entities and that it freeze the Movants' funds as well as those of other HPOL shareholders whose money is invested in HPMF. There is no basis for concluding that this intervention is untimely.

Given the very early stage of this litigation (especially as to the proposed amended complaint and emergency relief), there can be no argument that the interests of the existing parties (or even those of the prospective defendants and relief defendants) will be prejudiced by granting intervention. The purpose of court's considering prejudice to existing parties in determining the timeliness of a proposed intervention is not to determine whether the

intervention itself would be prejudicial, but rather whether the timing of the intervention would prejudice the parties.  United States v. Yonkers Bd. of Educ., 801 F.2d 593, 596 (2d Cir. 1986) ("[T]here must come a time, once all affected parties' opportunities to protect their interests have passed, when the remedy, if otherwise lawful, must be allowed to proceed."); Culbreath v. Dukakis, 630 F.2d 15, 22 (1st Cir. 1980) (""[T]he purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court.").

In any event, intervention would not cause any conceivable prejudice to the SEC -- inconvenience, perhaps, but not prejudice. The SEC cannot claim to be harmed by the Movants' attempt, through their Motion, to attempt to influence the course of events where there interests are so obviously at stake.[6]  Yes, the SEC is charged with enforcement of the federal securities laws, but, once it invokes a court's jurisdiction, it is just a plaintiff, with the same responsibilities as any plaintiff to plead properly what it seeks to prove and to prove what it has properly pleaded, subject the vigorous efforts of opposing parties to hold it to its proof. See, e.g., SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 414 (S.D.N.Y. 2009) ("like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure"). Nor can the alleged

---

[6]    It is well established that intervention in an SEC enforcement action is permitted, in contradistinction with coordination or consolidation, which, under section 21(g) of the Securities Exchange Act, 15 U.S.C. § 78u(g) are expressly forbidden without the SEC's consent, E.g., SEC v. Flight Transp. Corp., 699 F.2d 943, 950-51 (8th Cir.1983); SEC v. Hollinger Int'l, Inc., No. 04 C 0336, 2004 WL 422729, at *3 (N.D.Ill. March 2, 2004); SEC v. Kings Real Estate Inv.Trust, 222 F.R.D. 660, 663-666 (D.Kan.2004); SEC v.Heartland Grp., Inc., No. 01 C 1984, 2003 WL 1089366 (N.D.Ill. March 11, 2003); SEC v. Credit Bancorp, Ltd.,194 F.R.D. 457 (S.D.N.Y. 2000). Contra, SEC v. Homa,  No. 99 C 6895, 2000 WL 1468726 (N.D. Ill. Sept. 29, 2000).

perpetrators of a fraud that allegedly victimized investors such as the Movants show prejudice by the Movants' intervention.

Finally, the third timeliness issue -- potential prejudice to the Movants were intervention denied -- is amply demonstrated by the basic facts entitling them to intervene.[7] We turn now to the substantive reasons intervention is merited.

**B.      The Movants Have a "Direct, Substantial and Legally**
         **Protectable Interest" in the Subject Matter of the Action.**

In order to intervene in a case, an intervenor must have a "direct, substantial, and legally protectable" interest in the litigation. Pers. v. New York State Bd of Elections, 467 F.3d 141, 144 (2d Cir. 2006). It would be difficult to imagine a more direct or substantial interest than the Movants's interest in opposing the SEC's attempt to convince this Court to place the off-shore assets of the Highview Point Funds under the control over the receiver over the Michael Kenwood entities. The long-run purpose of the SEC's Motion is to permit this proposed joint receiver to pay Highview Point Fund assets to investors in the MK entities. All indications are that there are more assets in the Highview Point funds than in the MK funds, meaning that any pooling of the two funds will automatically impair (by watering down) the value of the Movants' HPOL interests. There is ample precedent that intervention of right is permitted when the SEC is proposing a remedy that would be inimical to the interests of an investor or creditor of the entity involved.  E.g., SEC v. Flight Transp. Corp., supra, 699 F.2d at 948 (Creditor allowed to intervene to protect its interest against control of debtor's assets by receiver and possible disgorgement order); SEC v. Navin, 166 F.R.D. 435, 440 (N.D. Cal. 1995) ("The fact that Wozniak and others similarly situated invested in BLM and face losing most of their investment

---

[7]      At this stage, the Movants see no "unusual circumstances militating for or against a finding of timeliness," the fourth issue listed in Pitney Bowes governing the issue of timeliness.

without intervening at this point, gives them an interest relating to the property. The SEC claims it and the receiver have the *same* interest as the investors. However, the SEC believes that the investors' potential recovery will be maximized by a distribution of BLM's assets through the receivership estate. This argument by the SEC does not change the fact that Wozniak meets the interest prong of the test.").

**C.      The Movants' Interests Could, as a Practical Matter, Be Adversely Affected.**

Rule 24(a)(2) also requires that the "action may as a practical matter impair or impede the applicant's ability to protect that interest." This test is closely associated with the "interest" requirement, and some courts do not distinguish between the two. <u>FDIC v. Jennings</u>, 816 F.2d 1488, 1492 (10th Cir. 1987) (two tests "not separate").

"The [impairment] rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest."FPP § 1908.2, 7C Fed. Prac. & Proc. Civ. § 1908.2 (3d ed.). Plainly, if the Court grants the two SEC Motions, the practical effect could be to cost the Movants substantial money. If, as the SEC foretells, it is later determined that the MK funds and the Highview Point funds should be combined and distributed pro rata, the effect will be to diminish the value of the Movants' interests in HPOL.  Even before that point is reached, a freeze of the assets of HPMF will deprive the Movants of their contractual right to redeem their shares in HPOL and their use of the money pendent elite. Moreover, the appointment of a receiver (even a separate receiver) over HPMF and HPOL will cost the Movants, since the expenses of the receivership will be borne by the funds, which are owned, in substantial part, by the Movants. This more than satisfies the rule.  *SEC v. Flight Transp. Corp., supra* (Creditor's "ability to protect its interest … may be foreclosed by the action of the District Court, whatever may occur in bankruptcy.").

**D.     The Interests of the Movants May Not Be
        Adequately Protected by Existing Parties.**

Rule 24(a)(2) provides that if the other tests are satisfied, intervention will be granted

"unless the applicant's interest is adequately represented by existing parties." While three

Circuits have stated that, on this issue, "the burden of proof rests on those resisting intervention,"

SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1390 n.4 (D.C. Cir. 1980); Caterino v. Barry, 922

F.2d 37, 43 (1st Cir. 1990) Nuesse v. Camp, 385 F.2d 694 (D.C. Cir. 1967) (same); see Bolden v.

Pennsylvania State Police, 578 F.2d 912, 927 (3d Cir. 1978) (concurring opinion), in this Circuit

the burden rests on the movant. U. S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978)

("An applicant for intervention as of right has the burden of showing that representation may be

inadequate, although the burden 'should be treated as minimal.'") (quoting Trbovich v. United

Mine Workers, 404 U.S. 528, 538 n. 10 (1972).

The burden, which is minimal, is to show that the interests of the movant may not be

adequately represented by existing parties. Doubts should be resolved in favor of the movant on

this issue, and the movant "should be treated as the best judge of whether the existing parties

adequately represent his or interest."  Miami Tribe v. Walden, 206 F.R.D. 238, 243 (S.D. Ill.

2001). As the court stated in United Bank v. Sun Mesa Corp., 119 F.R.D. 430, 433 (D. Ariz.

1988), the movant "should be afforded great deference. [It] is the one alleging injury. [It] is

entitled to [its] day in court."

Here, this issue is nowhere near a close question. The SEC is seeking to freeze the assets

of funds in which the Movants have a huge interest and put those funds into a receivership with

investment funds wholly antagonistic to the interests of the Movants. Thus, it is obvious that the

SEC can protect the Movants' interests. The same goes for the Receiver, who owes fiduciary

duties to the MK estates.[8] As for HPCP, the Connecticut-based investment manager for the

Highview Point funds, it has no personal stake in whether the Movants' assets are frozen. The

mere fact that HPCP will be defending itself against allegations of wrongdoing means that, at the

least, its attention is likely to be diverted from the only task that concerns the Movants --

protecting their property interest. Thus, there can be no doubt that the Movants' interests will not

be adequately protected without their intervention.

## II.      THE MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION

Permissive intervention is permitted where, as here, the movant "has a claim or defense

that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B).

Permissive intervention has been granted in SEC enforcement actions where, for example, the

movant claimed that he did not invest through the particular investment in question and that he is

entitled to priority on his investment in another entity. The court held there were common

questions of law and fact between the issue raised by the movant and the SEC's claims,

permitting intervention under Rule 24(b)(1)(B). <u>S.E.C. v. Kings Real Estate Inv. Trust</u>, 222

F.R.D. 660, 670 (D. Kan. 2004). The Movants' request, while presenting a far stronger case for

intervention by right than was presented in the <u>Kings</u> case (where intervention of right was

---

[8]      As the Eighth Circuit noted in <u>SEC v. Flight Transp.</u>, 699 F.2d at 948, "[t]he SEC's
primary goal is to protect the public by preventing further securities violations. The
receiver is concerned with marshaling and protecting FTC's assets for the benefit of all
concerned parties. While Greyhound's interests may not be adverse to those of the SEC or
the receiver, they are sufficiently 'disparate' to warrant intervention." Here, the interests of
the Movants are directly adverse to the interests of the SEC and of the MK Receiver if he is
appointed receiver over the Highview Point funds as well.

denied), is well within the purview of Rule 24(b)(1)(B). Therefore, whether or not the Court determines to grant intervention of right, it should grant permissive intervention.[9]

---

[9]    The other requirements for permissive intervention are satisfied, as is discussed in reference to intervention of right.

## CONCLUSION

For the reasons stated above, the Movants respectfully request that their motion to intervene be granted, either as of right or permissively.

**BALANCHINE CORPORATION,**
**BRENTWOOD SERVICES INC.**
**EDENWOOD HOLDING, S.A.**

_____/s/ Simon I. Allentuch_____
Simon I. Allentuch (ct21094)
Neubert, Pepe & Monteith, P.C.
195 Church Street
New Haven, CT  06510
Phone: (203) 821-2000
Fax: (203) 821-2009

OF COUNSEL:

Richard E. Brodsky
THE BRODSKY LAW FIRM
66 West Flagler Street, Ninth Floor
Miami, Florida 33130
Tel.:    786-220-3328
Fax:    866-564-8231
rbrodsky@thebrodskylawfirm.com

Laurence E. Curran III
CURRAN & ASSOCIATES
701 Brickell Avenue, Suite 1550
Miami, Florida 33131
Tel.: (305) 777-0374
Fax:   (305) 675-0548
lecurran@lecurran.com

## CERTIFICATION

I hereby certify that on May 12, 2011 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

_____/s/ Simon I. Allentuch_____
Simon I. Allentuch
NEUBERT, PEPE & MONTEITH, P.C.