UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------X
                                                                  :
SECURITIES AND EXCHANGE COMMISSION,                               :
                                                                  : Civil Action No.: 11-cv-78 (JBA)
    Plaintiff,                                                 :
                                                                  :
vs.                                                               :
                                                                  : May 16, 2011
FRANCISCO ILLARRAMENDI, et al.,                                   :
                                                                  :
    Defendants.                                                :
                                                                  :
------------------------------------------------------------------X

## APPENDIX

1.     SEC v. Hollinger Int'l,
   2004 WL 422729, at *3 (N.D.Ill. March 2, 2004)…………………..    P8

2.     SEC v. Heartland Grp., Inc.,
   2003 WL 1089366 (N.D.Ill. March 11, 2003)……………………..    P8

3.     SEC v. Homa,
   2000 WL 1468726 (N.D.Ill. Sept. 29, 2000)………………………..    P8

BALANCHINE CORPORATION,
BRENTWOOD SERVICES INC.,
EDENWOOD HOLDING, S.A.

    /s/ Simon I. Allentuch
Simon I. Allentuch (ct21094)
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT  06510
Phone: (203) 821-2000
Fax: (203) 821-2009

1

OF COUNSEL:

Richard E. Brodsky
THE BRODSKY LAW FIRM
66 West Flagler Street, Ninth Floor
Miami, Florida 33130
Tel.:    786-220-3328
Fax:    866-564-8231
rbrodsky@thebrodskylawfirm.com


Laurence E. Curran III
CURRAN & ASSOCIATES
701 Brickell Avenue, Suite 1550
Miami, Florida 33131
Tel.: (305) 777-0374
Fax:  (305) 675-0548
lecurran@lecurran.com

## **CERTIFICATION**

I hereby certify that on May 16, 2011 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

_____/s/ Simon I. Allentuch_____
Simon I. Allentuch
NEUBERT, PEPE & MONTEITH, P.C.

Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697
**(Cite as: 2004 WL 422729 (N.D.Ill.))**

United States District Court,
N.D. Illinois, Eastern Division.
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
HOLLINGER INTERNATIONAL, INC. Defendant.

No. 04 C 0336.
March 2, 2004.

Timothy Lee Warren, Kathryn A. Pyszka, Peter Ka Ming Chan, Konstantina K. Diamantopoulos, Carol L. Tate, Rebecca Ruth Goldman, Securities & Exchange Commission, Chicago, IL, for plaintiff.

Nathan P. Eimer, Andrew George Klevorn, Adam B. Deutsch, Vanessa G. Jacobsen, Eimer, Stahl, Klevorn & Solberg, LLP, Chicago, IL, for intervenor plaintiff.

Jonathan Rosenberg, Andrew J. Geist, O'Melveny & Myers, New York, NY, Mark V. Chester, Steven Lawson, Joan M. Meyers, Johnson & Colmar, Chicago, IL, Charles P. Diamond, Robert M. Schwartz, O'Melveny & Myers, LLP, Los Angeles, CA, for defendant.

*MEMORANDUM AND ORDER*
MANNING, J.

*1 Plaintiff Securities and Exchange Commission ("the SEC") brought the instant enforcement action for injunctive and other equitable relief against Hollinger International, Inc. ("International"), alleging violations of federal securities laws. On the same day it filed this action, the SEC brought an emergency motion seeking entry of a partial final judgment, which was entered that day. Hollinger, Inc. ("Inc."), the majority shareholder of International, now moves to intervene and to vacate the partial judgment. For the reasons set forth below, these motions are GRANTED.

BACKGROUND [FN1]

FN1. The facts in the Background section are derived from the SEC's complaint and the parties' submissions and attachments thereto.

This action arose from a corporate dispute between a parent (Inc.) and its subsidiary (International). International, a publicly traded corporation incorporated in Delaware, is one of the larger newspaper publishers in the world, whose publications include the *Chicago Sun–Times,* the *Jerusalem Post,* and the *London Daily Telegraph.* Although a publicly traded company, International is controlled by Inc. which owns 30% of its equity and 72% of its voting rights. The SEC alleges that from 1999 until at least 2001, International made unauthorized transfers of at least $32 million to corporate insiders and related entities, including Inc. In an attempt to hide these transactions, International allegedly made false statements and failed to disclose material information in violation of the Securities Exchange Act of 1934 and SEC rules.

In response to complaints by shareholders, International's board of directors established a special committee of independent directors ("the Special Committee") to investigate and recover these unauthorized transfers. The Special Committee's investigation appeared to be successful in that International admitted $32.15 million in unauthorized payments to Inc., Conrad Black, the former CEO of International and owner of a controlling interest in Inc., and David Radler, International's former president and COO and current COO of Inc. In a November 2003 agreement, Inc. and Black agreed to a repayment plan. Before the first repayment, which was due on January 18, 2004, however, the SEC alleges that Black began to make public statements indicating that he had done nothing wrong and might not be obligated to repay the alleged unauthorized transfers.

On January 16, 2004, two days before the first repayment was scheduled, the SEC brought the instant action against International, alleging violations of the securities laws and seeking injunctive and other equitable relief. On the same day that it filed this action, the SEC brought an Emergency Motion for Entry of Settled Partial Judgment and Order ("Emergency Motion"), before Judge Gettleman, the emergency judge presiding at that time. The Emergency Motion stated that "there have been growing

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697
**(Cite as: 2004 WL 422729 (N.D.Ill.))**

indications that some of the very same [International] corporate insiders and related entities who improperly received corporate assets are attempting to thwart and obstruct the efforts of the Special Committee." Attached to the emergency motion was a document styled "Consent of Defendant Hollinger International, Inc.," in which International consented to the entry of a partial final judgment and waived its right to appeal.

**\*2** Relying solely on the SEC's written submissions and presumably without being advised of the potential effect on Inc.'s interests, Judge Gettleman, entered the Partial Final Judgment and Order of Permanent Injunction and Other Equitable Relief ("the Judgment"), which was attached to the Emergency Motion. [FN2] Ten days after the entry of the Judgment, Inc. brought the instant motions to intervene and to vacate the Judgment, which are currently before the Court.

> FN2. The portion of the Judgment at issue is the section which states that if Inc. votes to remove any of International's current directors or fails to reelect any director, a "Special Monitor" would automatically be appointed to oversee International's activities, at a cost of at least $750,000, with a mandate to "protect the interests of the non-controlling shareholders." (Judgment, section IV.)

ANALYSIS
I. Motion to Intervene

The SEC and International contend that Inc. should not be permitted to intervene because: (A) section 21(g) of the Securities Exchange Act of 1934 (15 U.S.C. § 78u(g)) bars intervention in enforcement actions brought by the SEC; and (B) it has failed to meet the requirements of Federal Rule of Civil Procedure 24. The Court will address each of these contentions in turn.

A. Section 21(g) and Intervention in an SEC Enforcement Action

Section 21(g) states that:

> [n]ot withstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the [SEC] pursuant to the securities laws shall be *consolidated or coordinated* with other actions not brought by the [SEC], even though such other actions may involve common questions of fact, unless such consolidation is consented to by the [SEC].

15 U.S.C. § 78u(g) (emphasis added). The SEC and International contend that the above language precludes Inc. from intervening. In response, Inc. asserts that because section 21(g) does not specifically mention intervention, it is not precluded. Both sides' positions are supported by case law. Before discussing these cases, however, the Court will analyze section 21(g) under the rules of statutory construction.

When construing a statute, courts should look first at its language, which if clear and unambiguous ends the analysis. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1998). Where a statute "is clear and without ambiguity, and where the legislative history so clearly indicates the intention of Congress, [courts are] not permitted to read into the act words which Congress has omitted." *United States v. Smoler Bros.*, 187 F.2d 29, 32 (7th Cir.1951). *See also Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 168–69 n. 16, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993) (court should not add terms or provisions to a statute where Congress has omitted them).

Here, because section 21(g) does not specifically prohibit "intervention," the Court will examine the legislative history to determine if Congress intended to do so. Congress enacted section 21(g) to limit private plaintiffs from filing their own actions, "the allegations of which closely follow those of the [SEC's] action." S.Rep. No. 94–74, at 74 (1975), 1975 U.S.C.C.A.N. 179, 252. The drafters were concerned that by "merely rid[ing] along on the Government's case," the private actions would delay the enforcement action by "greatly increasing the need for extensive pretrial discovery," particularly with regard to damages which are not generally required in an enforcement action for injunctive relief. *Id.* at 76. The Senate also noted that the private plaintiffs' objective in filing suit was to receive damages and to adjudicate private disputes "between citizens," which is "very different" than the objective of an SEC enforcement action—to fulfill the legislature's "mandated scheme of law enforcement in the securities

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697
**(Cite as: 2004 WL 422729 (N.D.Ill.))**

area." *Id.*

*3 Here, none of the concerns cited by Congress above apply to this case. Inc. is not attempting to intervene to assert its own private action against International. Instead, as explained below, Inc., as the majority shareholder of International, is simply attempting to protect its corporate voting rights, which could be affected by the entry of the Judgment. Indeed, at the February 26, 2004, hearing on this motion, counsel for Inc. stated that Inc.'s only objective in moving to intervene was to protects its rights as the majority shareholder. Likewise, the Motion to Vacate seeks only to vacate those sections of the Judgment that affect Inc.'s voting rights, not the sections which preclude International from violating securities law. Moreover, Inc. has not filed a separate suit, but instead has filed an answer to the SEC's complaint asserting affirmative defenses. Therefore, because intervention is not specifically precluded by section 21(g) and the concerns cited by Congress are not implicated, this Court finds that, for the purposes of this case, section 21(g) does not preclude Inc. from attempting to intervene under Rule 24. FN3

> FN3. The Court notes that although intervention will delay the final disposition of this case, "a prolonged claim resolution process does not justify the application of section 21(g), where, in the Court's view, the provision was not intended to apply." *SEC v. Prudential Sec. Inc.,* 171 F.R.D. 1, 5 (D.D.C.1997).

This decision is supported by a number of cases, including the only circuit court to have ruled on the issue. In *SEC v. Flight Transpotation Corp.,* 699 F.2d 943, 950 (8th Cir.1983), in reversing the lower court's denial of a motion to intervene, the court held that a creditor with an unliquidated claim in the company charged in an SEC enforcement action could intervene. In making this decision, the Eighth Circuit noted that section 21(g) "does not say that no one may intervene in action by the SEC .... [indeed] [i]t does not [even] mention [Rule] 24, nor does Rule 24 contain any clause giving special privileges to the SEC." *Id.* Instead, the court found that "the purpose of this subsection is simply to exempt the [SEC] from the compulsory consolidation and coordination provisions applicable to multidistrict litigation." *Id.*

A number of district courts, including at least one in this district, have followed the reasoning of the Eighth Circuit and found that section 21(g) does not automatically preclude a non-party from intervening in an enforcement action. *See SEC v. Heartland Group, Inc.,* 2003 WL 1089366, at *3 (N.D.Ill. Mar.11, 2003); *SEC v. Credit Bancorp, Ltd.,* 194 F.R.D. 457, 465–66 (S.D.N.Y.2000); *SEC v. Prudential Sec. Inc.,* 171 F.R.D. 1, 4–5 (D.D.C.1997). However, at least two courts in this district have held that section 21(g) operates as "an impenetrable wall" with regard to intervention. *SEC v. Wozniak,* 1993 WL 34702, at *1 (N.D.Ill. Feb.8, 1993); *SEC v. Homa,* 2000 WL 1468726, at *2 (N.D.Ill. Sept.29, 2000).

In *SEC v. Heartland Group, Inc.,* 2003 WL 1089366, at *3, in finding that section 21(g) did not automatically preclude intervention, the court distinguished *Wozniak* and *Homa.* The court found that in those cases, both "would-be intervenors attempted to recover from the very defendants the SEC was suing." *Id.* In *Heartland,* however, the intervenor did not seek to sue the defendant in the enforcement action, but, instead, sought to protect its interest in property which was subject to the enforcement action. *Id.*

*4 Here, as in *Heartland* and *Flight Transportation Corp.,* as discussed above, Inc. is not attempting to recover damages from International, but is only attempting to protect its interests, as majority shareholder—namely its corporate voting rights—which are affected by the Judgment. Therefore, this Court finds *Wozniak* and *Homa* distinguishable and holds that section 21(g) is not an absolute bar to intervention in this action by Inc.

B. Intervention Under Rule 24

Having determined that section 21(g) does not preclude Inc. from moving to intervene, the Court will next examine whether Inc. is entitled to intervene as of right, pursuant to Federal Rule of Civil Procedure 24(a). FN4

> FN4. Because this Court finds that intervention is proper under Rule 24(a), it will not address Inc.'s assertion that it may permissively intervene under Rule 24(b).

To intervene as a matter of right, the proposed litigant is required to show: (1) an interest relating to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697
(Cite as: 2004 WL 422729 (N.D.Ill.))

the subject of the action; (2) the disposition of the matter would likely impair or impede its ability to protect its interests; (3) the existing parties to the suit would not adequately represent its interests; and (4) the motion is timely.[FN5] *Sokaogan Chippewa Community v. Babbitt*, 214 F.3d 941, 945–6 (7th Cir.2000). Here, the SEC and International contend that Inc. has failed to show that it has a legitimate interest which would be impaired or that the existing parties would not adequately protect its interests.

> FN5. When analyzing an intervention motion, courts should "construe Rule 24(a) liberally," *Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. 238, 241 (S.D.Ill.2001), and "must accept as true the non-conclusory allegations of the motion," *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir.1995), "resolving doubts in favor of intervention." *Walden*, 206 F.R.D. at 241.

Although "the "interest required by Rule 24(a)(2) has never been defined with particular precision," the would-be intervener's interest must be a "direct, significant, legally protectable one .... something more than a mere 'betting' interest, but less than a property right...." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380–81 (7th Cir.1995). In determining the alleged interest, the proposed intervenor need only claim an interest relating to the suit; the fact that its claim ultimately fails does not affect its status as an intervenor. *American Nat. Bank and Trust Co. v. Bailey*, 750 F.2d 577, 585 (7th Cir.1984). Moreover, because the interest to warrant intervention as of right is a "highly fact specific determination, making comparison to other cases [is] of limited value." *Security*, 69 F.3d at 1381.

In examining whether the proposed litigant's interest is impaired, the court need only determine whether the "purported interest *could be* decreased in value by a decision" in the action. *FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 606 (N.D.Ill.2001) (emphasis added). *See also Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir.1994) ("impairment exists when the decision of a legal question ... would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding").

Here, Inc., the majority shareholder of International with 72% of the voting shares and 30% of the equity, contends that the Judgment impairs its ability to exercise control over International in accordance with Delaware law and International's certificate of incorporation. Specifically, Inc. asserts that its right to remove and elect corporate directors is adversely affected by the Judgment. In response, the SEC and International contend that the Judgment does not prevent Inc. from exercising its right to vote. Before examining these contentions, the Court must first look to Delaware corporate law.[FN6]

> FN6. International is incorporated in Delaware, and therefore, Delaware corporate law governs Inc.'s rights as a shareholder.

*5 Under Delaware law, stockholders have a "fundamental right" to "vote on specific matters, in particular, [the] election of directors." *MM Co., Inc. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1126 (Del.2003). Anything which impedes the stockholders' right to elect directors violates the "fundamental principles of corporate governance"—the allocation of power between the corporate owners, the stockholders, and the directors, who control the corporation. *Id.* at 1126–27. Accordingly, the Delaware Supreme Court looks very unfavorably upon any device "designed to interfere with or impede the effective exercise of corporate democracy by shareholders, especially, in an election of directors." *Id.* at 1127. *See also Nycal Corp. v. Angelicchio*, 1993 WL 401874, at *3 (Del.Ch. Aug.31, 1993) (Delaware corporate statute "guarantees the right of a majority of shareholders to remove directors with or without cause").[FN7] Accordingly, under Delaware law and International's corporate by-laws, Inc., as the majority shareholder, has the unfettered right to remove and elect directors.

> FN7. In addition to Delaware law, section 2.3 of International's corporate by-laws expressly permits Inc. to vote for the election and removal of International's directors.

The issue before this Court thus is whether the Judgment could "impede" Inc.'s "fundamental right" to vote to elect or remove International's directors. Under the Judgment, if Inc. votes to remove or fails to reelect any current director, a "Special Monitor" would automatically be appointed to oversee International's activities, at a cost of at least $750,000, with a mandate to "protect the interests of the non-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697
(Cite as: 2004 WL 422729 (N.D.Ill.))

controlling shareholders." (Judgment, section IV.) The Special Monitor would then have the power to come into this Court to report and contest any actions which the Special Monitor believes are not in the best interests of the minority shareholders. According to Inc., the appointment of the Special Monitor would result in "chaos" in the management of Inc. For example, routine corporate actions such as declaring dividends and the purchase or sale of assets would not be able to be made without this Court first examining the surrounding circumstances.

After reviewing Delaware law and the current factual record, this Court agrees with the SEC and International that Inc. could still exercise its voting rights. This, however, is not the issue. The issue is whether the Judgment could "impede" Inc.'s "fundamental right" to vote to elect or remove International's directors. After careful consideration, this Court finds that although Inc. could still vote with the Judgment in place, its unfettered and fundamental right to do so, under Delaware law, could be impeded by the Judgment. Thus, this Court finds that Inc. has shown an interest which could be impaired by the Judgment.[FN8]

> FN8. The Court notes that although Inc. has shown its voting rights, as protected under Delaware law, could be impaired, the Court, at this time, does not make a finding that the Judgment is in contravention of Delaware Corporate law. It is entirely possible that the Judgment could be properly entered based on the conduct of Inc. and other related parties. At this time, however, the Court does not believe that the SEC or International have put forth sufficient evidence to warrant such a drastic measure.

As for adequacy of representation, the required showing is "minimal." *Med Resorts Int'l, Inc.*, 199 F.R.D. at 606. "[T]he movant need only show that the representation of his interests *may be* inadequate." *Id.* (emphasis added) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 1, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). See also *Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. 238, 243 (S.D.Ill.2001).

*6 Here, based on the parties' submissions, statements in court, and the on-going litigation in Delaware, the Court finds that Inc.'s interests may not be adequately represented by the SEC and International. For example, the SEC sought entry of the Judgment, which, as explained above, could affect Inc.'s voting rights, without giving Inc. any notice whatsoever. Moreover, the directors and management of International are currently involved in litigation in Delaware state court against the management of Inc. Thus, Inc. has shown that the SEC and International may not adequately represent Inc.'s interests in this action.

Accordingly, this Court finds that Inc. may intervene as of right under Rule 24(a) because it has shown that it has a legitimate interest which could be impaired and that the existing parties may not adequately protect this interest.[FN9]

> FN9. The SEC and International have not contested the timeliness of the Motion to Intervene, and based on the current record, this Court finds the motion is timely, as it was filed 10 days after entry of the Judgment.

II. Motion to Vacate

Next, because this Court finds that Inc. may properly intervene, the Court will examine the Motion to Vacate the Judgment. First, however, the Court will briefly review the standard of review for amending a judgment under Rule 59(e).[FN10]

> FN10. Inc. also moved to vacate the Judgment under Rule 60(b)(3) and (6). Because this Court finds that the motion has merit under Rule 59(e), it will not discuss Rule 60.

While Rule 59(e) permits a litigant to alter or amend a judgment, it does not permit a party to rehash previously raised arguments. *Lewis v. Herman*, 783 F.Supp. 1131, 1132 (N.D.Ill.1991). The grounds for amending a judgment under Rule 59(e) "are newly discovered evidence, an intervening change in the controlling law, and manifest error of law or fact." *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir.1998). A number of courts have also held that a judgment may be altered to prevent a "manifest injustice." See *C.H. Robinson Worldwide, Inc. v. Nat'l Prod. Corp.*, 2002 WL 99735, at *1 (N.D.Ill. Jan.25, 2002); *Bollig v. Christian Community Homes and Servs., Inc.*, 2003 WL 23211142, at *2–3 (W.D.Wis. Oct.27, 2003); *Firestone v. Firestone*, 76 F.3d 1205,

Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697
**(Cite as: 2004 WL 422729 (N.D.Ill.))**

1208 (D.C.Cir.1996). Whether to grant a Rule 59 motion "is entrusted to the sound judgment of the district court." *Matter of Prince,* 85 F.3d 314, 324 (7th Cir.1996).

Here, after reviewing the law and the facts surrounding the entry of the Judgment, this Court finds that: (1) Inc. should have been given notice and an opportunity to object to the Judgment before it was entered by Judge Gettleman; and (2) it appears, based on the parties' representations to this Court and what took place before Judge Gettleman, that the SEC and International failed to present a complete factual picture to Judge Gettleman, which in turn, prevented him from properly assessing whether the Judgment was fair, reasonable, or if, and to what extent, it affected the rights of Inc.

When the parties to a dispute agree to the entry of a consent order, which may require continuing supervision or impose costs on non-parties, the court "must not rubberstamp the proposed consent order but must review it carefully to make sure that it does not create undue [ ] burdens." *Blankenship v. N.L.R.B.,* 54 F.3d 447, 449 (7th Cir.1995). *See also N.L.R.B. v. Brooke Indus., Inc.,* 867 F.2d 434, 435 (7th Cir.1989) (courts should reject consent judgments which affect the rights of third parties). Additionally, in determining whether to enter a proposed consent order, the court should determine whether it is lawful, fair, reasonable, and adequate. *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir.1985).[FN11] Moreover, anytime the government brings an action which may deprive a party of a property right, the party, whose interests are affected, must receive notice and be afforded an opportunity to protect its rights. *United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 48–49, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

> FN11. In *SEC v. Woldcom, Inc.,* 273 F.Supp.2d 431, (S.D.N.Y.2003), the court applied many of the above factors to a settlement agreement in a securities action brought by the SEC.

*7 Here, the SEC and International do not contest a non-party's right to notice, where that party has a right adversely affected by the entry of a consent order. Instead, they contend that Inc. did not have a right to notice or to object to the Judgment because it does not have a legally viable interest affected by the Judgment. As explained in detail above, however, this Court finds that the Judgment could impair Inc.'s unfettered right under Delaware law to remove and elect members of International's board of directors.

Despite knowing that Inc.'s voting rights could be impeded by the Judgment, the SEC failed to give any notice to Inc. of the Emergency Motion. Instead, on the same day that it filed this action, the SEC brought the Emergency Motion to the emergency judge—Judge Gettleman. Moreover, neither the Emergency Motion nor the Judgment even mentioned Inc., let alone gave any hint that the entry of the Judgment could have a negative impact on Inc.'s voting rights. Without knowing of the potential harm to Inc.'s interest, Judge Gettleman, relying solely on the SEC's written submissions and the fact that the named parties had consented, entered the Judgment.

Accordingly, because Inc. had a legitimate interest at stake, this Court finds that the SEC should have given Inc. notice and alerted Judge Gettleman to the possible adverse affect the Judgment could have on Inc. Because the SEC failed to take the above actions, Judge Gettleman did not have a complete and accurate view of the facts surrounding the entry of the Judgment, and therefore, this Court finds that the Judgment should be partially vacated.

The Court, however, will only vacate the portions of Section IV that affect the exercise of Inc.'s voting rights to elect or remove directors. To ensure the status quo (*e.g.,* preventing Inc. from changing the composition International's board of directors), however, the Court will stay the entry of this order until the parties have had an opportunity to fully brief and be heard on whether the facts warrant the impediments imposed on Inc.'s voting rights by the Judgment.[FN12]

> FN12. At the hearing on this motion, the SEC alleged that without the Judgment, Inc. would have altered the composition of the board of directors and disbanded the Special Committee. Although no evidence was presented to prove these allegations, the Court feels that these allegations appear possible based on what transpired in the Delaware action between Inc. and International.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697
**(Cite as: 2004 WL 422729 (N.D.Ill.))**

Although Inc. has shown its voting rights, as protected under Delaware law, could be impaired, the Court, at this time, does not make a finding that the Judgment is in contravention of Delaware Corporate law or that the Judgment not could be entered as currently worded. Instead, this Court simply finds that Inc. should have been given notice and an opportunity to be heard before entry of the Judgment. In moving for the Judgment, the SEC asserted that the "triggering events" to appoint the Special Monitor were needed because "there have been growing indications that some of the very same [International] corporate insiders and related entities who improperly received corporate assets are attempting to thwart and obstruct the efforts of the Special Committee." Based on the current record, the Court cannot, at this time, determine whether this statement is true, and if it is true, whether this Court could enter an order limiting Inc.'s right to vote under Delaware law. FN13

>   FN13. On February 26, 2004, after the hearing on this matter, the court in the Delaware action ( *Hollinger International, Inc. v. Black,* 2004 WL 360877 (Del.Ch.), issued an opinion. While the court did state that the Judgment was not at issue, *id.* at \*23 n .63, it did find that the terms of the Judgment did not prohibit Inc. from exercising its right to vote. *Id.* at \*55–56. Although the Court has ruled, the parties are free to address if, and to what extent, the recent Delaware decision has on this action.

CONCLUSION

\*8 For the reasons discussed, Hollinger Inc.'s Motion to Intervene [9–1] is GRANTED and Motion to Vacate [12–1] is GRANTED in part. It is so ordered.

N.D.Ill.,2004.
S.E.C. v. Hollinger Intern., Inc.
Not Reported in F.Supp.2d, 2004 WL 422729 (N.D.Ill.), Fed. Sec. L. Rep. P 92,697

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Not Reported in F.Supp.2d, 2003 WL 1089366 (N.D.Ill.)
(Cite as: 2003 WL 1089366 (N.D.Ill.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
HEARTLAND GROUP, INC., Defendant.

No. 01 C 1984.
March 11, 2003.

MEMORANDUM OPINION AND ORDER
LEFKOW, J.

*1 Non-party U.S. Trust Company ("U.S.Trust") moves under Rule 24, Fed.R.Civ.P., to intervene in this receivership action filed by the Securities and Exchange Commission ("SEC") against the Heartland Group, Inc. ("Heartland"). For the reasons stated below, the court allows U.S. Trust to intervene as of right for the limited purpose of contesting the Receiver's Motion against non-party Bank of New York ("BNY").

BACKGROUND

The SEC filed this action on March 21, 2001 seeking appointment of a receiver for the benefit of investors to marshal, conserve, protect, hold, sell or otherwise dispose of, all assets of Heartland's High-Yield Municipal Bond Fund, Short Duration High-Yield Municipal Fund and Taxable Municipal Fund (collectively the "Funds") and all assets in the Funds' custody, possession or control or in which the Funds have a legal or equitable interest (collectively "receivership property"). The court appointed Phillip L. Stern ("Receiver") as receiver over the receivership property.

On October 29, 2002, the Receiver filed its "Motion to Compel Trustee to Release Funds Held in the U.S. Trust Reserve." ("Receiver's Motion"). In this motion, the Receiver requested that this court compel BNY, as successor trustee under the Master Trust Agreement dated August 1, 1998 between Desert Hot Springs Public Financing Authority, Heritage Rancho Healthcare, Inc. and U.S. Trust, to release all funds it is maintaining or intends to maintain in a reserve created to pay the expenses, including attorney's fees and costs, of U.S. Trust, the former master trustee under the Desert Hot Springs Indenture.

On December 9, 2002, U.S. Trust filed its "Motion for Leave to Respond to Receiver's Motion to Compel Trustee to Release Funds Held in the 'U.S. Trust Reserve.'" This court denied U.S. Trust's motion,[FN1] but granted U.S. Trust leave to file this motion for intervention under Federal Rule of Civil Procedure 24. (January 22, 2003 Memorandum Decision, Docket # 103.)

FN1. U.S. Trust initially argued before this court that it should be allowed to petition the court without formally intervening because receivership actions are different from other forms of litigation and are more akin to bankruptcy court proceedings. See, e.g., SEC v. Forex Mgmt. LLC, 242 F.3d 325, 328-29 (5th Cir.2001); SEC v. Basic Energy & Affiliated Res., Inc., 273 F.3d 657, 665 (6th Cir.2001). This court rejected U.S. Trust's argument based on the Seventh Circuit's opinion in SEC v. Wozniak, 33 F.3d 13 (7th Cir.1994). The court read Wozniak as requiring parties such as U.S. Trust to intervene rather than merely petition the court to be heard. Id. at 14-15.

DISCUSSION

Th threshold issue for the court to determine is whether § 21(g) of the Securities and Exchange Act of 1934, which has been described as an "impenetrable wall," disallows intervention in this case. See, e.g., SEC v. Wozniak, No. 92 C 4691, 1993 WL 34702, at *1 (N.D.Ill. Feb. 8, 1993); SEC v. Homa, No. 99 C 6895, 2000 WL 1468726, at *1-*2 (N.D.Ill. Feb. 8, 1993); SEC v. Heartland Group, Inc., No. 01 C 1984, 2003 WL 103015, at *2 (N.D. Ill. Jan 10, 2003) (listing cases barring intervention, cross-claims, counterclaims, and third-party complaints under 21(g)). Section 21(g) provides,

Notwithstanding the provisions of section 1407(a) of title 28, United States Code, or any provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 1089366 (N.D.Ill.)
(Cite as: 2003 WL 1089366 (N.D.Ill.))

consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

*2 15 U.S.C. § 78u(g).

The SEC maintains that § 21(g)'s plain language bars intervention, and cites two cases of this district court for support. See Homa, 2000 WL 1468726, at *1-*2; Wozniak, 1993 WL 34702, at *1. U.S. Trust disagrees and cites to other cases where intervention has been allowed under § 21(g). E.g., SEC v. Flight Trans. Corp., 699 F.2d 943, 950 (8th Cir.1983); SEC v. Credit Bancorp, Ltd., 194 F.R.D. 457, 465-66 (S.D.N.Y.2000); SEC v. Prudential Sec. Inc., 171 F.R.D. 1, 3-5 (D.D.C.1997). This issue twice before has been brought to this court's attention, but never decided. See January 22, 2003 Memorandum Decision, Docket # 103; Heartland Group, Inc., 2003 WL 103015.

The cases denying intervention under § 21(g), specifically Homa and Wozniak, focused much of their attention on the fact that other procedural devices such as cross-claims, counterclaims, and third-party complaints, even though not specifically mentioned, have consistently been barred under § 21(g). Homa, 2000 WL 1468726, at *1. Moreover, these courts have given effect to the Supreme Court's statement in passing concerning § 21(g) in Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979). In Parklane, the Court noted that the application of collateral estoppel in that case would not be rewarding a plaintiff who could have joined in a previous action "since the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired." Id. at 331-32. Citing § 21(g) and 15 U.S.C. § 78u(g), the Court emphasized that "consolidation of a private action with one brought by the SEC without its consent is prohibited by statute." Id. at 32 n. 17.

Courts that have allowed intervention under § 21(g) have taken a different view. In Flight Trans. Corp., the court concluded that intervention is not barred under § 21(g) because

the purpose of the subsection is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation. It does not say that no one may intervene in an action brought by the SEC without its consent. It does not mention Fed. R. Civ. 24 nor does Rule 24 contain any clause giving special privileges to the SEC.

669 F.2d at 950.

In Prudential Sec., the court relied on Flight Trans. Corp. and on the legislative history of § 21(g), which the court believed established that § 21(g) was passed because Congress was "concerned that coordination and consolidation of private actions, particularly multidistrict litigation, would hamper enforcement of the federal securities laws because consolidation or coordination of separate, albeit related, issues might 'increase the need for extensive pretrial discovery.'" Prudential Sec., 171 F.R.D. at 4, citing S.Rep. No. 94-75, at 76 (1975), reprinted in 1975 U.S.C.C .A.N. 179, 254. The court also found that Congress was concerned that coordination or consolidation would "make an 'already complicated securities [case] more confused and complex." Id., citing S.Rep. No. 75, at 76, quoting SEC v. Everest Mgmt. Corp., 475 F.2d 1236, 1240 (2d Cir.1972). The court, however, did base much of its holding on the fact that judgment had already been entered in the case and no persuasive reason existed to bar intervention under § 21(g) in post-judgment proceedings. Id. at 5.

*3 In Credit Bancorp, the court relied on the fact that § 21(g) on its face does not specifically prohibit intervention in SEC enforcement actions. 194 F.R.D. at 465-66. The court also noted that "the vast majority of cases addressing intervention in the context of SEC enforcement actions neglect to discuss Section 21(g) at all." Id. at 466. Finally, the court agreed with the reasoning of cases, such as Flight Trans. Corp, in which intervention was allowed despite the existence of § 21(g). Id.

After reviewing the aforementioned cases, and paying particular attention to the facts as set forth, the court concludes for three reasons that intervention is appropriate in this case under § 21(g). First, the court believes the factual scenario here is sufficiently different from Homa and Wozniak to warrant intervention. In Homa, a creditor of an entity partly owned by the defendant in a SEC enforcement action attempted to intervene in the suit. 2000 WL 1468726, at *2. The

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 1089366 (N.D.Ill.)
(Cite as: 2003 WL 1089366 (N.D.Ill.))

creditor attempted to recover from defendant payments owed on a contract. *Id.* In *Wozniak,* victims of a fraudulent scheme for which the SEC filed the enforcement complaint sought to intervene in an attempt to recoup their losses. In both situations the would-be intervenors attempted to recover from the very defendants the SEC was suing. As such, it was clear in both cases that the would-be intervenors were "coordinating" or "consolidating" their separate action against the defendants with the SEC's enforcement action. Here, U.S. Trust does not seek to intervene to coordinate or consolidate their "action" with the SEC's action against Heartland. Instead, it attempts to challenge the actions of the Receiver. Thus, U.S. Trust seeks not to bring a claim against the defendant, as in *Homa* and *Wozniak,* but instead wishes only to intervene to challenge the adjudications the Receiver is taking against it.

The SEC argues that regardless of who U.S. Trust's claim for relief is against, it is still a substantive claim and it still is challenging the Receiver's disposition of receivership assets. The court, however, is not convinced another meaningful and appropriate forum exists for U.S. Trust to assert such a claim, i.e., where or how could this claim be asserted if not here? The claims in *Homa* and *Wozniak* could easily have been brought in separate law suits against the defendants as those cases did not involve a receiver attempting to take property away from the would-be intervenors, which is alleged in this case. The SEC argues that U.S. Trust's claim may be brought in a separate law suit pursuant to 28 U.S.C. § 959(a), which allows for suit against a receiver without leave of the court that appointed him for the receiver's actions in "carrying on business" connected with property involved in the receivership action.[FN2] In a previous motion filed by another party challenging the Receiver's actions in this case, both sides asserted that suit could be brought separately against the Receiver under § 959(a), albeit the moving party viewed this as a disfavorable option. *See Heartland Group, Inc.,* 2003 WL 103015, at *3.

FN2. Section 959(a) provides,

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a).

*4 The court is not convinced that U.S. Trust's suit would fall under Section 959(a)'s ambit. Section 959(a) serves as a limited exception to the general rule that suits against a receiver may not proceed without leave of the court appointing them. *E.g., In re DeLorean Motor Co.,* 991 F.2d 1236, 1240-41 (6th Cir.1993). Notably, § 959(a) applies only to actions taken by the receiver for "carrying on business." *Id.* "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *Id.,* quoting *In re Campbell,* 13 B.R. 974, 976 (Bankr.D.Idaho 1981). Thus, as is apparent, U.S. Trust's claim that its property is not receivership property would not appear to fall under the "carrying on business" language under § 959(a) because it relates to taking steps to preserve and/or hold assets.[FN3] Moreover, even if suit could be brought under § 959(a), the controversy in this case would likely be moot under a separate suit, as the arguments U.S. Trust seeks to raise here will have long since been decided by the time a separate action is up to speed.

FN3. SEC's argument that parties should simply sue the Receiver is somewhat puzzling because, in the same brief, SEC complains that each time the Receiver appears in court or performs tasks in his capacity as Receiver, receiverships assets available to investors is diminished. Certainly this is a problem not resolved, and is more likely worsened, by suits against the Receiver outside of this court. *See In the Matter of Linton,* 136 F.3d 544, 545 (7th Cir.1998) ("If [a receiver or bankruptcy trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded."). At least if a party is allowed to intervene in this case the court is able to keep track of and/or control the action. This

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 1089366 (N.D.Ill.)
**(Cite as: 2003 WL 1089366 (N.D.Ill.))**

would likely not be possible if a separate suit were brought against the Receiver without leave of this court under § 959(a).

Finally, the court is also persuaded that intervention is allowed under § 21(g) because of the treatment of receivership actions generally in circuit courts. In SEC v. Wozniak, 33 F.3d 13 (7th Cir.1994), the appeal from the case relied on by the SEC, the Seventh Circuit ruled that the appellants could not appeal because they did not have standing. Id. at 14-15. The appellants in that case, as noted by the court, either failed to intervene in the district court or did not timely appeal from the decision of the district court denying intervention. Id. at 15. While the court did not address the issue of § 21(g), the plain implication was that the proper forum for the appellants to address their claims was by intervening in the district court.[FN4] See also, SEC v. Black, 163 F.3d 188, 195-96 (3d Cir.1998) (stating that situation was different from Wozniak because parties had actually intervened in the receivership action).

> FN4. The Homa case, the other major case relied on by the SEC, was also appealed. In an unpublished opinion the Seventh Circuit affirmed the judgment of the district court solely on grounds that intervention was not appropriate based on Rule 24 and did not reach the issue under § 21(g). SEC v. Homa, 2001 WL 939080 (7th Cir. Aug. 17, 2001).

Furthermore, other circuits, which disagree with the Seventh Circuit's ruling that intervention is required in receivership actions, allow parties to appeal decisions in receivership actions merely if their rights would be affected, drawing an analogy from the bankruptcy context.[FN5] E.g., SEC v. Forex Asset Mgmt. L.L.C., 242 F.3d 325, 328-29 (5th Cir.2001) (allowing non-party that did not seek to intervene to appeal); SEC v. Basic Energy & Affiliated Res., Inc., 273 F.3d 657, 665 (6th Cir.2001) ("We have held previously that a non-party litigant has standing to appeal from an order entered in a federal receivership action if that litigant satisfies the standard for standing to appeal an order of a bankruptcy court); Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd., 205 F.3d 1107, 1113-14 (9th Cir.1999) (appellant had standing to challenge district court order in a receivership action without intervening); Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc., 77 F.3d 880, 882 (6th Cir.1996) (rejecting "suggestion that principles of bankruptcy standing are foreign to the receivership context.").

> FN5. These cases also weaken the SEC's argument that allowing intervention would open the floodgates for huge numbers of parties protesting the actions of the Receiver. The Seventh Circuit at least requires any such party to meet the threshold intervention analysis, while other circuits do not even appear to make intervention a requirement. If formal intervention is required, there is little fear that any "floodgates" will open or cause any such material delay.

*5 Once again, these cases do not address the applicability of § 21(g). But all these circuit court decisions present a much different picture of receivership actions than the SEC paints here. Instead of these actions barring any involvement from parties no matter the level of their interest, as the SEC would read § 21(g), circuit courts have generally allowed parties with interests affected by such actions to find a way to be heard in the SEC's action itself. These decisions have allowed such affected parties to participate under even a lower threshold than the court applies here, as those parties were not even required to formally intervene.

For these reasons, the court does not believe that § 21(g) bars intervention under the facts and circumstances of this case. This being only the threshold issue, the court must now examine whether U.S. Trust may intervene under a traditional Rule 24 analysis. To intervene as of right under Rule 24(a), U.S. Trust is required to "(1) make a timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk that that interest will be impaired by the action's disposition and (4) demonstrate a lack of adequate representation by the existing parties." Vollmer v. Publishers Clearing House, 248 F.3d 698, 705 (7th Cir.2001); Nissei Sangyo America Ltd. v. United States, 31 F.3d 435, 438 (7th Cir.1994). Each of these elements must be proved; the failure to prove even one requires denial of an intervention motion. Vollmer, 248 F.3d at 704; Keith v. Daley, 764 F.2d 1265, 1268 (7th Cir.1985).

Starting with factor one, the court concludes that U.S. Trust's motion is timely. As expressed by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 1089366 (N.D.Ill.)
**(Cite as: 2003 WL 1089366 (N.D.Ill.))**

Seventh Circuit, the timeliness test is essentially a reasonableness test: "potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." Nissei Sangyo America Ltd., 31 F.3d at 438. The most important consideration for this factor is "whether [any] delay in moving for intervention will prejudice the existing parties to the case." Id., quoting 7C Charles Alan Wright, et al., Federal Practice and Procedure: Civil 2d § 1916 (1986). The Receiver filed its motion against BNY on October 29, 2002, and U.S. Trust first attempted to be heard in this action in a timely manner shortly thereafter on December 9, 2002. U.S. Trust formally moved to intervene on February 11, 2003 after this court clarified that such a motion was required to challenge receivership actions. Moreover, no such delay caused any prejudice to the existing parties to the case. As such, factor one is satisfied.

U.S. Trust also satisfies factor two of the intervention analysis because it has an interest relating to the subject matter of the action. If the Receiver's Motion were granted, U.S. Trust would lose indemnification funds that it would otherwise have an interest in.

*6 As to the third factor, whether U.S. Trust's interests will be at risk of being impaired in this action, the SEC argues that U.S. Trust may pursue its claims in a separate action, and, therefore, its interest will not be impaired if excluded from this action. See Southmark Corp. v. Cagan, 950 F.2d 416, 419 (7th Cir.1991) ("petitioner has subsequently filed her own lawsuit, along with the receiver, so that instead of being prejudiced by denial of intervention her position will be aired in that lawsuit...."). As stated above, however, the court is not convinced that U.S. Trust can file its own such law suit, and even if it could, its interest in this suit would be adjudicated to such a degree as to cause the separate suit to be meaningless. The SEC also attacks this third factor on grounds that any interest U.S. Trust has in the bond indenture is only potential and not fixed and, therefore, such claims do not constitute "interests" that could be "impaired" under an intervention analysis. See Southmark Corp., 950 F.2d at 418-19. The court disagrees, as U.S. Trust has established enough of a direct, contractual claim to the U.S. Trust Reserve for it to assert rights in protection thereof.

Finally, as to the fourth factor, neither party presents argument on the issue of whether U.S. Trust's interest is adequately represented by one of the existing parties, so the court will assume that it is not. Because the court concludes that U.S. Trust meets all four factors for intervention as of right in this action, the motion to intervene is granted. For clarity, however, and in response to the SEC's argument that U.S. Trust would be allowed to participate as it pleases in the rest of the action and delay its resolution if intervention is allowed, the court notes that U.S. Trust is allowed to intervene as of right for the limited purpose of contesting the Receiver's Motion.

CONCLUSION

For the reasons stated above, the court grants U.S. Trust's motion to intervene as of right [# 115]. U.S. Trust is allowed to intervene for the limited purpose of contesting the Receiver's "Motion to Compel Trustee to Release Funds Held in the U.S. Trust Reserve."

N.D.Ill.,2003.
S.E.C. v. Heartland Group, Inc.
Not Reported in F.Supp.2d, 2003 WL 1089366 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1468726 (N.D.Ill.), Fed. Sec. L. Rep. P 91,223
**(Cite as: 2000 WL 1468726 (N.D.Ill.))**

United States District Court, N.D. Illinois, Eastern Division.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
Charles Richard HOMA, et al., Defendants.

No. 99 C 6895.
Sept. 29, 2000.

*MEMORANDUM OPINION AND ORDER*
GUZMAN, J.

*1 Florida Construction & Development Corp. ("FC & D"), is a creditor of GMD Aviation LLC ("GMD"), in which defendant Homa owns a substantial membership interest. FC & D has moved to intervene as a defendant pursuant to Fed.R.Civ.P. ("Rule") 24. For the reasons provided in this Memorandum Opinion and Order, the Court denies the motion.

*FACTS*

Defendant Homa owns a substantial ownership interest in GMD. GMD operates a fixed based operation at the Gwinnett County Airport in Lawrenceville, Georgia and provides services and support to aircraft using the airport. FC & D alleges that on November 23, 1998, GMD entered into a contract with it to provide construction services for a variety of GMD's expansion activities. GMD made progress payments to FC & D but allegedly owes the contract balance of $2,388,991.41 to FC & D. In late 1999, Phillip S. Stenger was appointed as the Receiver over the assets of Homa and Gause. FC & D now moves to intervene and the SEC opposes the motion.

*DISCUSSION*

First, the SEC argues that FC & D is statutorily barred from intervening in this matter by Section 21(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(g). This statute provides:

> Notwithstanding the provisions of section 1407(a) of Title 28, United States Code, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g).

FC & D argues that courts have held that Section 21(g) does not automatically bar intervention in SEC enforcement actions because that provision does not specifically mention intervention. See *SEC v. Flight Transp. Corp.,* 699 F.2d 943, 949-50 (8th Cir.1983), *SEC v. Credit BanCorp, Ltd.,* 194 F.R.D. 457, 465-66 (S.D.N.Y.2000), *SEC v. Prudential Sec., Inc.,* 171 F.R.D. 1, 2-5 (D.D.C.1997). According to these courts, Congress' omission of the word "intervention" shows that it was primarily concerned with the consolidation and coordination required for multidistrict litigation. See *Flight Transp. Corp.,* 699 F.2d at 950; *Credit BanCorp, Ltd.,* 194 F.R.D. at 466; *Prudential Sec., Inc.,* 171 F.R.D. at 4. However, despite Congress' failure to specifically mention Section 21(g)'s applicability to cross-claims, counter-claims, and third-party claims, numerous courts have concluded that Section 21(g) bars such claims. See *Prudential Sec., Inc.,* 171 F.R.D. at 3-4 (listing cases in which cross-claims, counter-claims, and third-party claims are barred by Section 21(g)). In such cases, the Court finds that the general terms of Section 21(g), *i.e.,* "consolidated" and "coordinated," appropriately received a general construction. Exceptions not made by the text of the statute should not be read into it by courts that are entrusted to apply the law as written.

*2 Furthermore, the language of Section 21(g) is plain and unambiguous, and therefore it must be given effect. *SEC v. Egan,* 821 F.Supp. 1274, 1275 (N.D.Ill.1993); *SEC v. Wozniak,* No. 92 C 4691, 1993 WL 34702, at *1 (N.D.Ill. Feb. 8, 1993). The statute plainly states that "no action for equitable relief instituted by the Commission ... shall be consolidated or coordinated with other actions not brought by the Commission ... unless such consolidation is consented to by the Commission." 15 U.S.C. § 78u(g). In addition, the Supreme Court noted in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331-32 n. 17 (1979), that the application of offensive collateral

Not Reported in F.Supp.2d, 2000 WL 1468726 (N.D.Ill.), Fed. Sec. L. Rep. P 91,223
**(Cite as: 2000 WL 1468726 (N.D.Ill.))**

estoppel in that case would not be rewarding a plaintiff who could have joined in the previous action, "since the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired." *Id.* Citing 15 U.S.C. § 78u(g), the Court emphasized that "consolidation of a private action with one brought by the SEC without its consent is prohibited by statute." *Id.* Because the plain language of 15 U.S.C. § 78u(g) clearly bars FC & D's joining the SEC's enforcement action as a party, the Court denies the motion to intervene.

Even if the Court were to hold that 15 U.S.C. § 78u(g) did not bar FC & D's intervention, the Court would still deny FC & D's motion because the Court finds that FC & D fails to meet the requirements under Rule 24(a) and 24(b). We address each in turn.

To intervene as a matter of right, FC & D must satisfy four requirements: (1) "its application must be timely;" (2) "it must have an interest relating to the subject matter of the main action;" (3) "as a practical matter, that interest must be at least potentially impaired by the disposition of that action in its absence;" and (4) "that interest may not be already adequately represented by one of the existing parties to the action." *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.,* 736 F.2d 384, 386 (7th Cir.1984). "Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right." *Id.*

The Court denies FC & D's motion to intervene as a matter of right because its interest in GMD's funds will not be impaired by the disposition of the SEC enforcement action without FC & D. The Court is bound to follow *Commodity Futures Trading Commission v. Heritage Capital Advisory Services, Ltd.,* a case in which the Seventh Circuit denied a company's motion to intervene as a matter of right in part because the company could assert its constructive trust claim before the receiver. *Id.* at 386-87. In this case, FC & D has asserted before the Receiver its claim of approximately $2,500,000 it alleges is due and owing on its contract with GMD, and the Receiver is currently reviewing the validity of that claim. (*See* Receiver's Mem. Opp. FC & D's Mot. Lift Stay Order, at 2-5.) Further, FC & D has obtained approval from the Receiver and the Court for its filing a mechanic's lien in Georgia on the improvements made to the airport facility. (*See id.,* Ex.

Tr. of 1/11/00, at 28-31.) In addition, the Receiver may not disburse the net proceeds from the sale of GMD's primary assets, the Lear and Challenger aircraft, or any of the frozen assets or funds of defendants without prior approval of this Court. (*See* 6/22/00 Order Approving Sale of Aircraft Owned By GMD (Challenger), at 10; 6/22/00 Order Approving Sale of Aircraft Owned By GMD (Lear), at 11; Order Appointing Receiver for Defendant Michael Gause and Protected Entities of 12/10/99, ¶ J; Order Appointing Receiver for Charles Richard Homa and Affiliates of 11/2/99, ¶ 5.) Thus, it is clear that, as a practical matter, FC & D may obtain and has obtained the district court's review of matters that affect FC & D's interest.

*3 Although as a practical matter FC & D and other creditors may assert their claims before the Receiver and challenge the Receiver's recommendations, the Court is concerned by the lack of specific procedures in which to do so. While the subject of these procedures was broached at a hearing on January 11, 2000, which attorneys representing the SEC, defendants, the Receiver, and FC & D attended, to date, the Court is unaware of any progress in the formation of such procedures. Therefore, the Court orders the Receiver to establish procedures by which creditors may: (1) file their claims with the Receiver; (2) receive a reasonably prompt determination of their claims from the Receiver; and (3) challenge the Receiver's recommendation for the disposition of funds and receive a final adjudication by the Court regarding the disbursement of such funds.

The Court finds that this instruction is in full accordance with the power and duty of the Receiver to "[u]se reasonable efforts to determine the nature, location and value of all assets and property owned by or in the possession of the defendants and the Receivership Property" and is not meant to modify the orders appointing the Receiver in any way. (*See* Order Appointing Receiver for Defendant Michael Gause and Protected Entities of 12/10/99, ¶ B; Order Appointing Receiver for Charles Richard Homa and Affiliates of 11/2/99, ¶ 1.B.) Further, a creditor's bringing its claims before the Receiver does not interfere with the Receiver's taking control, possession, or management of the receivership property and the assets owned, controlled or in possession of the entities in receivership. A creditor's claim before the Receiver recognizes that the Receiver controls, pos-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1468726 (N.D.Ill.), Fed. Sec. L. Rep. P 91,223
**(Cite as: 2000 WL 1468726 (N.D.Ill.))**

sesses and manages such property and assets and merely seeks a determination of the validity and priority of its claims upon the final disposition of the frozen funds and assets. Even the Receiver conceded in open court that he anticipates that "at that final day the creditors can make claims for disgorgement and the receiver in his determination will be involved in distributing whatever funds have been marshalled in the process of this action." (*See* Receiver's Mem. Opp. FC & D's Mot. Lift Stay Order, Ex. Tr. of 1/11/00, at 28.) Therefore, the Court holds that its current instruction to the Receiver does not require modification of the orders creating the receivership.

Next, FC & D argues that the Court should grant permissive intervention in this case. Rule 24(b) provides in pertinent part: "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common ." FED. R. CIV. P. 24(b). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* "Rule 24(b) necessarily vests broad discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims." SEC v. Everest Management Corp., 475 F.2d 1236, 1240 (2d Cir.1972).

*4 FC & D's breach of contract claim and the SEC's securities fraud claims do not have a question of law in common. In order to determine whether defendants violated the securities laws, the Court need not determine whether a contract was formed between FC & D and GMD, whether FC & D performed its obligations under the contract, or whether GMD breached the contract. In addition, the questions of fact relevant to the alleged securities law violations have nothing in common with the questions of fact in a breach of contract case. Lastly, as discussed above, the Court has determined that the fairest and most efficient method of handling this case, which involves a multitude of parties and claims, is to have FC & D bring its claim before the Receiver instead of allowing it to intervene.

### CONCLUSION

For the foregoing reasons, the Court denies Florida Construction and Development Corporation's motion to intervene [103-1]. As discussed in this Memorandum Opinion and Order, the Court orders the Receiver to establish procedures by which creditors may: (1) file their claims with the Receiver; (2) receive a reasonably prompt determination of their claims from the Receiver; and (3) challenge the Receiver's recommendation for the disposition of funds and receive a final adjudication by the Court regarding the disbursement of such funds. The Receiver shall submit such procedures to the Court by October 27, 2000 for the Court's approval.

SO ORDERED

N.D.Ill.,2000.
S.E.C. v. Homa
Not Reported in F.Supp.2d, 2000 WL 1468726 (N.D.Ill.), Fed. Sec. L. Rep. P 91,223

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.