UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                    )
SECURITIES AND EXCHANGE          )
COMMISSION,                                )
                                                    )
              Plaintiff,                )         Civil Action No. 11-cv-78 (JBA)
                                                    )
      v.                                     )
                                                    )
FRANCISCO ILLARRAMENDI,          )
HIGHVIEW POINT PARTNERS, LLC and  )
MICHAEL KENWOOD CAPITAL          )
    MANAGEMENT, LLC,                  )
                                                   )
             Defendants,              )
                                                   )
        and                                  )
                                                   )
HIGHVIEW POINT MASTER FUND, LTD.,  )
HIGHVIEW POINT OFFSHORE, LTD.,      )
HIGHVIEW POINT LP,                     )
MICHAEL KENWOOD ASSET            )
    MANAGEMENT, LLC,                  )
MK ENERGY AND INFRASTRUCTURE,    )
    LLC, and                               )
MKEI SOLAR, LP,                         )
                                                   )
            Relief Defendants.        )
_____)

**COMMISSION'S REPLY TO RELIEF DEFENDANTS
HIGHVIEW POINT MASTER FUND, LTD. AND HIGHVIEW POINT
OFFSHORE, LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER, ORDER FREEZING
ASSETS, AND ORDER FOR OTHER EQUITABLE RELIEF**

      The Commission respectfully submits this reply brief to address the arguments raised by the Relief Defendants Highview Point Master Fund, Ltd. (the "Master Fund") and Highview Point Offshore, Ltd. (the "Offshore Fund,") (collectively the "Funds"), in their Memorandum of Law in Opposition to the Securities and Exchange Commission's ("Commission") Motion for a

1

Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief (hereinafter referred to as "Funds' Opp.") including those relating to the effect of the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, __U.S.__, 130 S. Ct. 2869 (2010) on the Commission's application.

The Funds' argument that the Commission is not substantially likely to succeed in this action because of the effects of *Morrison* is without merit because (1) the assertion that, because of *Morrison,* Section 21(d)(5) of the Exchange Act cannot apply to the Funds, misinterprets and overextends *Morrison,* which addresses what <u>conduct</u> is barred by federal statutes; (2) the only <u>conduct</u> at issue is that of the defendant Highview Point Partners, LLC ("Highview Point Partners") not the Funds and (2) even if *Morrison* were to apply to relief sought under Section 21(d), the Funds have had very substantial contacts with, and have themselves conducted substantial activity within, the United States, indeed, <u>all their investment activity</u> (the only substantive activity in which the Funds engage) was conducted in the United States.

A.    *Morrison* Does Not Apply to the Commission's  
       Equitable Claims Against the Funds

The Funds attempt to extend the reach of *Morrison* far beyond its plain language, converting it from an opinion addressing the type of conduct prohibited by the federal securities laws into an outright prohibition against the Commission seeking relief against foreign parties. As the Funds correctly note, *Morrison* considered the question of the extraterritorial applicability of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). It expressly characterized this issue, however, as a "merits question" (<u>i.e.</u> what specific conduct is prohibited by §10(b)), *130 S.Ct. at 2876-2877, n. 2,* concluding that Section 10(b) applies only to transactions in securities listed on domestic exchanges and domestic transactions in other securities. *Id.* at 2884.

The Commission, however, brings its claim for relief against the Funds pursuant to Section 21(d)(5) of the Exchange Act.  Section 21(d)(5) does not prohibit <u>any</u> conduct.  Rather, it authorizes the Commission to seek equitable relief in actions brought under any provisions of the securities laws.  Specifically, Section 21(d)(5) provides, "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."  As the Funds correctly and repeatedly note, the Commission does not allege that the Funds themselves violated any federal securities laws.  The Commission alleges that other parties – the Defendants in this action – violated various provisions of the federal securities laws.  As to the Funds, the Commission alleges, in paragraphs 82, 83 and 84 of the Second Amended Complaint as follows:

> 82.  The Relief Defendants have received investor funds under circumstances dictating that, in equity and good conscience, they should not be allowed to retain such funds.
>
> 83.  Further, specific property acquired by the Relief Defendants is traceable to *Defendants' wrongful acts* and there is no reason in equity why the Relief Defendants should be entitled to retain that property. *(emphasis added)*
>
> 84.  As a result, the Relief Defendants are liable for unjust enrichment and should be required to return their ill-gotten gains, in an amount to be determined by the Court.  The Court should also impose a constructive trust on property in the possession of Relief Defendants that is traceable to *Defendants' wrongful acts. (emphasis added)*

Without saying it, the Funds' argument isn't an argument about the extraterritorial reach of certain prohibitions under the federal securities laws, it is an attack on the authority of federal

3

courts to fashion appropriate equitable relief when, as is the case here, an alleged violation of federal securities laws has taken place.[1]

*Morrison* should be applied to the "merits" question that the Supreme Court intended to address:  <u>whether the conduct which forms the basis for the action or proceeding</u> is a proper subject of the federal securities laws or whether it is extraterritorial and therefore not a violation of the federal securities laws.  If the offensive conduct is domestic (and is therefore prohibited by the securities laws), then it follows that the Commission should be able to seek relief against any party (within the Court's jurisdiction) that it can state a claim against as a result of the violations.[2]

Of particular note is what the Funds do <u>not</u> argue.  First, the Funds do not argue that the underlying substantive violations the Commission has alleged against the Defendants are barred by *Morrison.*[3]  Second, the Funds do not argue that they are not subject to the jurisdiction of this

---

[1] The Funds' silence is deafening with respect to the substantive allegations against the Defendants in this action.  Those violations, of course, are the substantive violations of the federal securities laws that form the basis for the equitable relief sought against the Funds, and which trigger the applicability of Section 21(d)(5).

[2] The cases cited by the Funds applying *Morrison* in other contexts (*e.g.* RICO) are entirely consistent with this concept in that they relate to whether the conduct prohibited by the statute took place in the United States.

[3] The Commission has alleged violations by Highview Point Partners of both Section 10(b) of the Exchange Act, which was the subject of *Morrison*, and Section 206 of the Advisers Act of 1940 ("Advisers Act"), which was not addressed in *Morrison.*  The Commission's Section 10(b) claim is not affected by *Morrison* because, at a minimum and as the Funds concede, U.S. based-Highview Point Partners, while in the U.S., sold shares in the U.S. based-Highview domestic fund to U.S. investors.  There can be no argument that these were anything other than <u>entirely</u> domestic transactions.  Section 206 of the Advisers Act prohibits fraudulent conduct by investments advisers.  There is no dispute that the adviser at issue here, Highview Point Partners, is a U.S. entity (indeed, one registered with the Commission) that engaged in investment advisory activities within the U.S. and no argument can be made that the Advisers Act does not reach fraudulent conduct committed within the U.S., using U.S. bank accounts, by a U.S. registered investment adviser which is owned and controlled by U.S. individuals.

Court.[4]  Taken to its logical conclusion, their position must be that, because of *Morrison*, the Commission may not seek equitable relief against them <u>even though</u> this Court has jurisdiction over them and <u>even though</u> they have been unjustly enriched as a result of conduct which is in violation of the federal securities laws.[5]

*Morrison* addresses a threshold "merits" question ("does this conduct violate the securities laws?"), and does not address the remedies question ("if there has been a violation, what is the remedy?")  The Funds flip *Morrison's* logical construct on its head and ask this Court to discern that the decision means much more than it actually says, and that it was meant to deny the Commission a remedy where the Exchange Act clearly intended there should be one--- simply because the proceeds of the federal securities violations sit in accounts outside the United States.[6]

---

[4] The Court, during the telephonic hearing held on May 10, 2011, requested that the Funds file any motion to dismiss on the basis of lack of personal jurisdiction by May 17, 2011.  The Funds have elected not to file such a motion.

[5] The fact that the money is held in an offshore account does not render it beyond this Court's reach. Based on orders issued by federal courts, the Commission has successfully been able to freeze funds held in offshore accounts in foreign jurisdictions.  For example, the Commission has used federal court orders as the basis to freeze funds in Switzerland through the Swiss-US Mutual Legal Assistance Treaty and in the United Kingdom through the filing of a motion for a freezing injunction. See, *SEC  v. Gianluca Di Nardo, et al.*, U.S. District Court for the Southern District of New York, Civil Action No. 08-cv-6609 (PAC) (S.D.N.Y. July 25, 2008)- SEC Litigation Release No. 21935 / April 18, 2011; *SEC v. Lydia Capital, LLC et al.*, Civil Action No. 07-10712-RGS (D.Mass. April 12, 2007)- Litigation Release No. 20872 / January 28, 2009 ; *SEC v. Glenn Manterfield*, Claim No. HQ08X00798 (High Court of Justice, Queen's Bench Division, Royal Courts of Justice, February 29, 2008).

[6] Moreover, the question of whether *Morrison* has any effect on claims for equitable relief under Section 21(d)(3) of the Exchange Act is entirely novel and, given the imminent risk to investor funds, the Commission respectfully submits that it should not form a basis for finding, at this early stage, that the Commission does not have a likelihood of success on the merits.  Indeed, the Funds do not cite, and the Commission has not located any case which extends *Morrison* to any other section of the federal securities laws, including other sections of the Exchange Act.

B.  **The Funds Have Had Extensive Contact with the U.S.**

Next, the Funds argue that they have had insufficient contacts with the United States to justify application of Section 21(d)(5) to them, and that they have committed no wrongful act which would justify applying that section to them. The Funds are correct that the Commission does not allege any wrongdoing by them, and it is also true that the Funds' conduct does not form the basis for the Commission's action. The Commission alleges that the Funds are holding proceeds of a fraud which is the subject of the Commission's action. Except for the issue of whether this Court has personal jurisdiction over them, therefore, the Funds' own conduct and their own contacts with the United States are not at issue.

Despite this, it is important for the Court to have an accurate picture of the Funds' contact with, and conduct within, the United States. Those contacts are more numerous, meaningful and extended than have been represented by the Funds in their memorandum. First, the Funds argue that they "maintain no contacts with or presence in Connecticut or elsewhere in the United States." Funds' Opp. at 1-2. In fact, until very recently (within the last month) and as the Funds themselves explain, the Funds investment activity and operations were conducted <u>exclusively</u> in the United States by their investment adviser, Highview Point Partners. Highview Point Partners is a domestic entity, located and operating in Connecticut, and registered with the Commission as an investment adviser. Indeed, the Funds acknowledge that Highview Point Partners was responsible for managing the day-to-day decisions regarding the Funds' investments. Funds' Opp. at 5. Thus, far from having "no contacts" with the United States, the Funds actually selected an agent in the United States who, for nearly the entirety of the Funds' existence, conducted all of the Funds' investment activity from the United States. Since the Funds exist for no other purpose than as a vehicle for investment activity, it can fairly be said that, until very

6

recently, the Funds conducted <u>all of their activity</u> through their agent in the United States, from the United States.

The Funds also state that they are managed and controlled by a board which is comprised of three directors, none of whom are in the U.S. or are U.S. citizens or residents. The Funds further state that none of their directors are affiliated with the Defendants in this action. Funds' Opp. at 4. That representation is, at best, misleading, in that the Funds fail to disclose to the Court that, until very recently, their board of directors included Frank Lopez, who is a U.S. resident and who is also a <u>current owner and control person of Defendant Highview Point Partners</u>.[7] The Commission also believes that another U.S. resident, Luis Bethart, was a director of the Funds during at least some part of the time period described in the Second Amended Complaint. Thus, during the relevant period, corporate management and control of the Funds did <u>not</u> reside exclusively offshore, as the Funds would suggest in their papers.

The Funds concede, as they must, that they have U.S. investors, but assert that these are institutional investors and tax-exempt entities, as though those qualities entitle the investors to less than full consideration. Funds' Opp. at 10. In fact, the Commission is aware of at least two <u>individual</u> investors who reside in the United States. The Funds also assert that they hold "no real or personal property in the United States." Funds' Opp. at 2. Again, the Funds ignore the fact that during the time period described in the complaint, the Funds held both bank and brokerage accounts, in their own names, at institutions in the United States, which at various times held assets of the Funds. Indeed, the very conduct that the Commission alleges as the basis for its claims against Highview Point Partners occurred within the Funds' domestic accounts.

---

[7] Lopez is also one of the individuals who recently asserted his privilege against self incrimination under the 5th Amendment in response to questions from the Receiver about Highview Point Partners and the Funds.

7

That the Funds' assets are <u>currently</u> held offshore does not negate those very real, very substantial contacts, particularly those that existed during the period of the alleged substantive violations of the federal securities laws by the Defendants and the receipt of tainted monies by the Funds.

### C.   The Funds are Proper Relief Defendants

The Funds assert that they are not proper relief defendants because they have a bona fide interest in the assets which the Commission seeks to be frozen. The Funds' argument that they obtained assets "for value" rather than obtaining the assets gratuitously or by a fraudulent transfer, however, necessarily implies an <u>exchange</u> of value for the assets. As the Commission has explained, <u>the Funds engaged in no such exchange</u>. Highview Point Partners' false characterization of the 2009 and 2010 transactions between the Funds and the Michael Kenwood Venezuela Fund as "loans" does not magically make them loans. The unfortunate facts are that the Funds had substantial assets misappropriated by Illarramendi and Highview Point Partners and then received money stolen from other investors as fraudulent investment returns. The Commission seeks only to stop the continuation of the scheme, identify the rightful owners of the money, and effect a fair and equitable distribution of asset among all defrauded investors.

### D.   A Preliminary Injunction Is Appropriate Because of the Risk of Dissipation

The Funds appear to concede that at least some of the money currently being held in the offshore account is tainted by the fraud alleged in the Commission's second amended complaint. Funds' Opp. at 24. The central dispute, <u>which no party can resolve definitely at this early stage</u>, is exactly how much the existing Highview investors are fairly entitled to. The alleged fraud was long-running, involved extensive comingling between the Funds and the MK Funds, and has compromised the integrity of the Funds' books and records as they have been maintained by

8

Highview Point Partners. As described in the Commission's Memorandum of Law in support of its Application for Emergency Relief, it is on this basis that the Commission seeks a freeze of all of the assets.

The Funds assert that because they have taken responsible corporate governance steps to deprive the alleged wrongdoer of continued access to the assets, and because they have been willing to agree to temporary relief, the Commission has not shown a need for an asset freeze, repatriation order and receiver. Funds' Opp. at 16-25. Despite this, the Funds do not represent that, if the Court does not order such relief, they will not simply distribute the assets to their own overseas investors, without regard to the legitimate claims of the receiver and other investors as to some or all of those assets.

Even giving the Funds and their current Offshore Directors the benefit of all doubt and assuming they will act in good faith to preserve assets until the Commission's claim can be adjudicated, the Commission's continuing concern is that, as long as the Funds' assets are overseas, they are not adequately protected. There remains the very substantial risk that a third party (an investor, creditor or other interested party not subject to this Court's jurisdiction) could initiate action in the Cayman Islands to seek involuntary dissolution or liquidation of the Funds, which could result in the Funds' Offshore Directors losing control of the Funds, and correspondingly, losing control of the Funds' assets. In light of this very real concern, the Commission believes that an asset freeze (which would be effective as to all people and entities within the Court's jurisdiction) and a repatriation order (which would insure that the Funds are held in a financial institution which is directly within the Court's jurisdiction) are necessary. In the alternative, appointing a receiver over the Funds would accomplish the same ends, in that the

receiver would be able to repatriate the Funds' assets, thereby preventing their dissolution before they can be fairly distributed.

## CONCLUSION

For the reasons detailed above, the Commission's application should be granted.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**
By its attorneys,


  /s/ LeeAnn G. Gaunt_____
Rua M. Kelly (Mass. Bar No. 643351)
LeeAnn G. Gaunt (Mass. Bar No. 630557)
Carlos Costa-Rodrigues (NY Reg. No. 2473593)
Kathleen Shields (Mass. Bar No. 637438)
33 Arch Street, 23rd Floor
Boston, Massachusetts  02110
Telephone:  (617) 573-8941 (Kelly direct)
Facsimile:   (617) 573-4590
E-mail:  kellyru@sec.gov

Local Counsel:

/s/_____
John B. Hughes (Fed. Bar No. CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, Connecticut 06510
(203) 821-3700
(203) 773-5373

Dated:  May 20, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2011, I electronically filed the Commission's Reply To Relief Defendants Highview Point Master Fund, Ltd. And Highview Point Offshore, Ltd.'S Memorandum Of Law In Opposition To Plaintiff's Motion For Atemporary Restraining Order, Order Freezing Assets, And Order For Other Equitable Relief, with the clerk of the court, parties of record, and the proposed intervenors, by using the CM/ECF System.

                                                                                           /s/ Rua M. Kelly
                                                                                           Rua M. Kelly (Mass. Bar No. 643351)