# Schulte Roth & Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2471

Writer's E-mail Address
michael.swartz@srz.com

June 10, 2011

The Honorable Janet Bond Arterton
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

Re: SEC v. Illarramendi, et al., Civil Action No. 11-cv-78 (JBA)

Dear Judge Arterton:

We write on behalf of Highview Point Master Fund, Ltd. (the "Master Fund") and Highview Point Offshore Ltd. (collectively the "Funds") in response to the June 7, 2011 letter to the Court submitted by Jonathan B. New of Baker & Hostetler LLP, counsel for John J. Carney (the "Receiver"). Contrary to the Receiver's assertion, the points set forth in his letter do not demonstrate an "urgent need" for repatriation of the assets held in the Funds' bank accounts (which, for the most part, were never in the U.S. in the first place). Moreover, the Receiver's description of the pre-bankruptcy transfer of funds, about which the Court was informed by counsel for Highview Point Partners, LLC ("HPP") at the hearing on Friday, May 27, 2011, is irrelevant to the repatriation issue.

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, we respectfully submit a letter prepared by the Funds' Cayman Islands counsel, Ogier, in response to the letter from the Receiver's Cayman Islands counsel, Higgs & Johnson. As set forth in the Ogier letter, among other things, under Cayman law: (1) the Securities and Exchange Commission ("SEC"), most likely, and the Receiver, most certainly, will be permitted to take an active role in any hypothetical Cayman winding up proceeding; (2) creditors, like the Receiver, and contributories will have access to all documents contained in the Court file for any winding up proceeding; (3) the Cayman Court would appoint an official liquidator who is required to submit detailed reports to creditors and contributories; (4) any court appointed liquidator would be an officer of the Court, responsible for marshalling the assets of the Funds, and poses no risk of dissipation of the Funds' assets; and (5) a judgment entered by the Court in this proceeding would be fully enforceable in a Cayman Court.

We note that no Cayman winding up proceeding has been initiated notwithstanding that the Funds' investors have been regularly updated about these proceedings since May 12, 2011, one month ago. If a Cayman creditor or contributory had wished to initiate such a proceeding in the Cayman Islands in order to obtain a decision before this Court rules on the issues before it, presumably such a proceeding would have been commenced by now. Moreover, the temporary freeze order requires, and the Funds have consented to on a going-forward basis, providing the SEC with five business days notice before initiating any ancillary proceeding. The Funds likewise represent that they will promptly advise the SEC in the event that another party initiates a winding up proceeding in the Cayman Islands. We note that any Cayman wind up proceeding would take a substantial amount of time to resolve and most likely would not be resolved prior to the Court making its determination in this proceeding. Thus, there is no urgency to repatriate the funds, contrary to the Receiver's assertion.

Neither the Receiver, nor the SEC, which is the movant for the requested relief, has shown that repatriation is required to avoid "extreme or very serious damage," which is the applicable standard for a mandatory injunction requiring repatriation.[1] The risk of extreme harm that the Receiver points to is that the bank account at issue might become subject to a Cayman court proceeding rather than a U.S. court proceeding if the account is not repatriated. But, putting aside whether, in fact, the account might become subject to a Cayman proceeding, the Receiver points to no authority, because there is none, that supports the proposition that application of a foreign sovereign's law, rather than U.S. law, presents an extreme risk of serious damage or otherwise requires repatriation to the U.S. Indeed, as the Receiver's Cayman counsel's letter makes clear, even if the SEC has no formal standing to be heard in a Cayman winding up proceeding, the SEC may seek to intervene and appear in the proceeding, and interested parties, including the Receiver, will receive due process in the Cayman courts, which, as previously explained, are guided by principles of English law.

Finally, as the Receiver notes, the directors of the Funds were unaware of, and did not specifically authorize, the fund transfers at issue, and are presently investigating them. Mr. New's letter describes May 5 and May 6, 2011 transfers of approximately $3 million from the Master Fund's bank account at Deutsche Bank, AG to HPP. Those transfers were initiated before the Funds' Board of Directors (the "Directors") took control of the Funds' banks account. As stated in the Declaration of Scott Dakers, submitted to the Court on May 18, 2011, the Funds previously delegated the day-to-day investment activities to HPP. On May 5, 2011, the Directors became aware that the SEC had submitted a Wells notice to HPP and that the Funds would be named as relief defendants in this action via a letter from HPP's counsel, which made no mention of the funds transfers. That <u>same day</u>, the Directors instructed the Funds' administrator,

---

[1] The SEC must make a "clear and substantial showing of success on the merits" to obtain a mandatory injunction, as the SEC conceded at the hearing on its application for temporary relief. *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) *citing Tom Doberty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (holding that "a mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'"). The SEC has not made a clear and substantial showing of success on the merits, as set forth in the Funds' prior papers and at the hearing, given the United States Supreme Court in *Morrison v. National Australia Bank, Ltd.*, __U.S.__, 130 S.Ct. 2869, 2877 (2010), and the fact that the Funds are not proper relief defendants under Section 21 of the Securities Exchange Act.

June 10, 2011
Page 3

GlobeOp. Financial Services (Cayman) Limited ("GlobeOp") to stop all payments on the Funds' bank account without the Directors' prior approval. Apparently, the fund transfers at issue were initiated before GlobeOp received the Directors' instructions. The Directors are presently investigating the facts and circumstances surrounding those transfers but, in any event, the Directors had no forewarning that the transfers at issue had been requested by HPP. Had they known, the Directors would not have permitted the payments to be made, without further investigation.

The fund transfers were, as the Receiver acknowledges, made by HPP management, which has been replaced by the Receiver. The fact that HPP's prior management might have made questionable fund transfers has no bearing on the repatriation issue since that management is no longer in a position to transfer funds, and the Directors are now firmly in control of the bank account in question. Further, Deutsche Bank's counsel in Amsterdam and New York have been actively monitoring the Funds' bank account with regard to payment requests to ensure that they have been made in accordance with the Court's temporary freeze order. Indeed, Deutsche Bank in-house counsel have had multiple conversations with the SEC, the Receiver's counsel and the Funds' counsel to make certain that any fund transfers are proper under the order. With respect, there is no risk that the funds will be improperly dissipated under the present circumstances, whether the account is maintained in Amsterdam or the U.S.

Accordingly, the SEC's request for repatriation of the funds, which is the only issue presently in dispute with regard to the Funds, should be denied.[2]

Respectfully,

Michael E. Swartz

---

[2] As the SEC has advised the Court, it no longer seeks the appointment of a receiver over the Funds and has no objection, even if the funds are repatriated, to the funds being maintained in a bank account controlled by the Directors. The Funds also have consented to an order that they not commence any Ancillary Proceedings, as defined in the temporary freeze order, without first providing the SEC with three business days' notice for a non-U.S. proceeding and five business days notice for a non-U.S. proceeding. The Funds have consented to extend the freeze order to a date certain at which time the Court could revisit the issue of whether continuation of the order would be necessary.



Direct Line: +1 (345) 815 1817
Direct Email: Shaun.Folpp@ogier.com
Reference: LIT/CRU/SHF/ 420182.00004

Friday, 10 June 2011

**BY EMAIL**

Hon. Janet Bond Arterton
United States District Judge
District of Connecticut
141 Church Street
New Haven, Connecticut
UNITED STATES OF AMERICA

Dear Judge Arterton,

**Highview Point Offshore, Ltd. and Highview Point Master Fund, Ltd. ("the Funds")**
**Civil Action No.11-CV-78 (JBA) ("the Proceedings")**

As Your Honour will recall, on 30 May 2011 we wrote to you, at the request of the Funds and Schulte Roth & Zabel, setting out a number of matters in relation to Cayman Islands law, the procedure by which Cayman Islands companies are placed into liquidation, and outlined a number of principles applicable to the conduct of liquidations. We have now seen and read a copy of Higgs Johnson's letter of 2 June 2011 ("the HJ Letter"), prepared at the Receiver's request, in response to our letter. Whilst much of the HJ Letter is un-contentious (albeit, as set out below, it is in part irrelevant to the issues currently before Your Honour), a number of matters do call for a response, given that they might give rise to a misleading impression of relevant Cayman Islands law and procedure. For convenience, references to paragraph numbers in this letter are references to paragraph numbers contained in the HJ Letter.

We should also note that our letter of 30 May 2011 is not (nor is this letter) an "advice", as the HJ Letter incorrectly asserts, nor was it intended to be. Our letter was, and this letter is, in the nature of a non-partisan exposition in relation to matters of Cayman Islands law and procedure, for the assistance of the Court.

Ogier

www.ogier.com

89 Nexus Way
Camana Bay
Grand Cayman KY1-9007
CAYMAN ISLANDS

A list of Partners may be
inspected on our website

Tel  +1 345 949 9876
Fax +1 345 949 9877

Bahrain • British Virgin Islands • Cayman Islands • Guernsey • Hong Kong • Ireland • Jersey • London • Tokyo



Turning to the HJ Letter, we note as follows:-

1.      Significantly, as the HJ Letter notes, a Cayman judge in a Cayman petition proceeding would have discretion to allow the SEC to appear as an intervener and/or to allow the SEC to appear in any such proceeding. Indeed, we would be most surprised if the SEC was not permitted to give submissions at the hearing of any Cayman petition proceedings in which it asserted it has an interest. Furthermore, we are instructed that the Funds would make no objections to the SEC appearing and making submissions to the Court The Court would, in our view, be very interested to hear the views of the SEC, as it would any other foreign regulator. As regards the Receiver's ability to make submissions, as the HJ Letter correctly asserts, it would be for the Receiver to demonstrate that he was a creditor of the Funds; if he was unable to do so then patently he would have no interest in the liquidation and thus his submissions would be irrelevant. In this regard, we would be surprised if this principle was of concern to the Receiver, properly advised; if he has proper claims to the Funds' property, or claims against the Funds, he would be a creditor and as such entitled to make submissions to the Court. If those claims do not exist, he would have no relevant submissions to make, and no standing. Given the existence of the Proceedings and the claims put by him, we assume that the Receiver is confident that claims do exist, although, as we understand matters, those claims are yet to be quantified.

2.      Whilst the HJ Letter accurately sets out in paragraph 7 the general principles applicable to the inspection of Court documents by members of the public in relation to general commercial disputes, those general principles do not apply to liquidation proceedings. There are three Registers maintained by the Court: a Register of Originating Process (which would contain any petition presented against the Funds) which is open to public inspection, the Court File (which contains copies of all pleadings, affidavits, orders, and other Court documents in relation to proceedings), and a Register of Final Orders and Judgments, which is open to public inspection. In ordinary proceedings, the Court File is open to inspection only by the parties, and their attorneys. In liquidation proceedings, the Court File is open to inspection by not only the petitioner and the company, but also by the creditors and contributories (and other specified individuals), and their attorneys, and they may take copies of documents. Thus if the Funds (or either of them) were the subject of petition proceedings by which orders were sought winding them up, the Receiver, in his capacity as a creditor, would have access to the Court File, as and from the date on which the petition was presented (or perhaps shortly thereafter to allow time for Court administration tasks to take place), and would continue to have access throughout the petition proceedings. Similarly, if an Order was made winding up the Funds, the Receiver would continue to have the right to access the Court File, and thus would have access to all Court documents filed by the liquidator, together with any other documents filed in relation to the liquidation.

3.      Whilst it is true that a liquidator is not obliged to provide creditors or contributories with copies of any particular documents, as the HJ Letter correctly states in paragraph 8, as set out in our letter of 30 May 2011, a liquidator must report to creditors and contributories. Those reports are not merely summary in nature, and require an in depth analysis of the steps taken by the liquidators with respect to the conduct of the liquidation. The particular matters upon which a liquidator must report are set out in Rule 10 of the Companies Winding Up Rules, a copy of which is attached to this letter. The liquidator



must provide all creditors and contributories with copies of his reports, and they must be filed with the Court.

4. Even if the Cayman Islands adopted the UNICTRAL model law, matters relating to cross border judicial co-operation would still be determined on a case by case basis. The UNICTRAL model law does not impose, or implement, a uniform insolvency regime across all jurisdictions. To the contrary; the model law respects the differences amongst different national procedural laws and does not attempt to impose uniform insolvency laws at all. The inference which the HJ Letter invites to be drawn, that the model law seeks to do otherwise, is not correct. In any event, the procedure by which insolvency practitioners appointed by foreign Courts are recognized in the Cayman Islands is well established. The Court's powers are now found in Part XVI of the *Companies Law* and, as set out in our 30 May letter, are based largely on the former s304 of the US Bankruptcy Code. The Cayman Court's approach to the recognition of those appointed by foreign Courts is perhaps best summarized by Mr. Justice Jones QC in his decision by which Mr. Picard, in his capacity as trustee of Bernard L. Madoff Investment Securities LLC, was recognized in the Cayman Islands, an application upon which Higgs Johnson appeared on behalf of Mr. Picard (although a decision not referred to in the HJ Letter). The Judge noted:-

> "Part XVI of the Companies Law (2009 Revision) was enacted in 2008 and came into force with effect from 1 March 2009. Section 241(1)(a) did not change the pre-existing conflict of laws rules relating to this subject. Its purpose is to provide foreign representatives with a convenient and expeditious method of establishing their credentials and right to act on behalf of a debtor in a way which will have universal effect within the jurisdiction, without the need to establish his right separately as against every individual counterparty. The Cayman Islands conflict of laws rules application to this issue are well established. First, all matters concerning the constitution of a corporation are governed by the law of the place of its incorporation. It follows that the law of the place of incorporation determined who are the company's officials authorised to act on its behalf. Second, the authority of a bankruptcy trustee of liquidator appointed under the law of the place of a company's incorporation is recognised in the Cayman Islands. (Dicey and Morris, *The Conflict of Laws* 10th edition, Rule 139(2) and Rule 143)."

This statement is both clear and unequivocal, and represents the Court's long established approach to the recognition of foreign appointed representatives. There can be no question but that the Cayman Court is both capable of, and does, offer foreign appointed representatives such assistance which they may properly require in the discharge of their duties, and does so in the most *convenient and expeditious* manner possible, and has been doing so long before the UNICTRAL model law was developed. In any event, in accordance with established conflicts of laws principles, a foreign appointed representative does not in fact require his appointment to be recognized by the Cayman Islands Court before his appointment is recognized as a matter of Cayman Islands law; any Order made by the Court merely recognizing that which already exists. Thus, given that the Receiver is appointed over companies incorporated in accordance with the laws of the United States, and appointed by a United States Court, it appears to us that the Receiver would have no difficulty in having his appointment recognized in the Cayman Islands, if the Receiver seeks this. But recognition is not required for the purpose of enforcing in the Cayman Court or in the Cayman Islands a judgment obtained by the

Page - 4 - of 5

Highview Point Offshore, Ltd. and Highview Point Master Fund, Ltd. ("the Funds")
Civil Action No.11-CV-78 (JBA) ("the Proceedings")
Friday, 10 June 2011



Receiver against the Funds in the US Court - see paragraph 6 below. Nor would it be required if the Receiver merely claims in any liquidation as a creditor, with a US Court judgment. If there was any dispute over the claim, this would be resolved by the Cayman Court in the course of the liquidation.

5.    The Confidential Relationships (Preservation) Law (the "CRPL") requires that, where a party intends to disclose confidential information in evidence or in connection with any proceedings, that he must first seek the consent of the "principal" of that information, failing which, he must apply to the Court for directions, and the Court may authorize disclosure. It matters not whether the intended disclosure is part of proceedings within the Cayman Islands, or outside the Cayman Islands. Thus if a party is required to disclose confidential information within the Proceedings, the same requirements as to consent, or application to the Court, would apply, as if the same disclosure was intended to be made to the Cayman Court. Be that as it may, information which is deemed to be confidential in accordance with the CRPL is limited, and we do not see how matters relating to the CRPL are in any way relevant to the matters which arise for consideration as part of the Proceedings. We are also unaware of the unparticularized "frequent conflict" which is referred to in the HJ Letter.

6.    The issue for determination in *Rubin v Eurofinance* is not whether a summary judgment in US bankruptcy proceedings is enforceable in the English Court; but rather, whether such a decision made in proceedings where the defendant has taken no part (and, as a matter of English common law principles for enforcement of foreign judgments, is deemed not to have been present within the jurisdiction in which the judgment was awarded), and has otherwise not submitted itself to the jurisdiction of that Court, is enforceable in the English Court. As we understand matters, the Proceedings are not bankruptcy proceedings. Furthermore, the Funds have expressly submitted to the jurisdiction of the US Court and all parties have been represented by counsel in any event; accordingly, the *Rubin v Eurofinance* decision is of no relevance, and the established common law principles applicable to the enforcement of foreign judgments would apply. Given that the Funds have submitted themselves to the jurisdiction of the US Court, by participating in the Proceedings, a judgment in favor of the Receiver against the Funds by which the US Court determines the Receiver is entitled to a portion of the Funds' monies held in the Deutsche Bank account or is otherwise entitled to a monetary judgment against the Funds, would be enforceable in the Cayman Court. Should the Funds be in liquidation, the Receiver would simply be required to lodge a proof of debt with the liquidator in order to have his claim recognized within the liquidation.

As set out in our 30 May 2011 letter, a liquidator of a Cayman Islands company, being an officer of the Court, is responsible for getting in the assets of the company, discharging its debts, and returning any surplus assets to those entitled to them (i.e. the company's contributories). If the Receiver has a valid claim against the Funds, a liquidator of the Funds would be required to discharge the debt which arises out of that claim before making any distribution of the Funds' assets to contributories. If there are insufficient assets to pay all creditors in full, creditors shall receive a pro-rata dividend. A liquidator will not make any payments, by way of dividend (either interim or final) until such time as he has properly examined the affairs of the company, determined who the company's creditors are, ruled on all proofs of debts and claims levied against the company, and undertaken his advertisement requirements.

Page - 5 - of 5

Highview Point Offshore, Ltd. and Highview Point Master Fund, Ltd. ("the Funds")
Civil Action No.11-CV-78 (JBA) ("the Proceedings")
Friday, 10 June 2011



The appointment of a liquidator by the Cayman Court over the Funds can not give rise to any risk of dissipation of the property over which the Receiver is appointed, let alone a significant risk. To suggest otherwise, as we understand the Receiver does, is to say that a liquidator, appointed by the Cayman Islands Court, being a officer of the Court and a qualified professional insolvency practitioner, would nonetheless consciously, and wilfully, ignore the claims put by the Receiver, a fellow officer of another Court. There is no question but that any liquidator appointed over the Funds would be well aware of the Proceedings, and the claims put by the Receiver. Similarly, there can be no question but that the liquidator would deal with those claims in the proper way, and in accordance with Cayman Islands law; the law of the jurisdiction in which the Funds were, and are, incorporated, and the jurisdiction in which the Funds' investors invested.

Yours faithfully

*Ogier*

**OGIER**

# ORDER 10

## OFFICIAL LIQUIDATOR'S REPORTS AND ACCOUNTS

### Official Liquidator's Reporting Obligations (O.10, r.1)

1. (1) The official liquidator shall prepare reports and accounts with respect to his conduct of the liquidation and the state of the company's affairs.

   (2) It is the duty of an official liquidator to report to –

      (a) the liquidation committee in compliance with the requirements of Order 9, rule 3;

      (b) the contributories, in the event that the official liquidator has determined (pursuant to Order 8, rule1) that the company should be regarded as solvent; or

      (c) the creditors, in the event that the official liquidator has determined (pursuant to Order 8, rule 1) that the company should be regarded as insolvent; or

      (d) the contributories and creditors, if and for so long as the official liquidator has determined that the company should be regarded as being of doubtful solvency; and

      (e) the Court.

   (2) Whenever the official liquidator convenes a meeting pursuant to Order 8, rule 2, the official liquidator shall send a report and accounts to every person entitled to receive notice of the meeting.

   (3) Whenever the official liquidator convenes a meeting in response to a requisition made pursuant to Order 8, rule 3, he may send a report and/or accounts to every person entitled to receive notice of the meeting.

   (4) The official liquidator of an insolvent company has no continuing duty to report to the contributories, but he shall provide copies of his reports and accounts to any contributory upon request.

### Form and Content of Liquidators' Reports and Accounts (O.10, r.2)

2. (1) Every official liquidator's report shall provide a description and analysis of -

(a) the steps taken and, in the case of an interim report, the further steps intended to be taken in the liquidation generally; or

(b) a discrete matter which, in the opinion of the official liquidator is or ought to be of particular concern to the company's creditors and/or contributories;

(c) a discrete matter upon which the official liquidator seeks a direction of the Court;

(d) a discrete matter which, by its nature, ought to be kept confidential.

(2) The official liquidator shall report upon –

(a) the steps taken in the liquidation since the date of the winding up order or the date of his previous report;

(b) the matters which are relevant to any resolutions intended to be put to the next meeting of contributories or creditors ;

(c) any matters upon which he is asked to report by the liquidation committee;

(d) any matters upon which he is directed to report by the Court;

(e) any matters upon which he seeks a direction of the Court; and

(f) any other matters which, in the opinion of the official liquidator, are or ought to be of concern to the contributories or creditors of the company.

(3) Except in the case of a report expressed to relate to a discrete matter, every official liquidator's report and accounts shall provide the company's creditors and/or contributories with the information necessary (when read with previous reports) to enable them to make an informed decision about the company's financial condition and their prospects of recovery, to the extent that it is reasonably possible to do so.

(4) The official liquidator's accounts shall be presented in the currency of the liquidation and shall include details of –

(a) the nature and estimated realisable value of the company's assets;

(b) any security over the company's assets;

(c) the nature and amount of the company's liabilities, including future and contingent liabilities;

(d) the nature and amount of the company's income;

(e)     the expenses of the liquidation;

(f)     the amount of liquidator's remuneration approved by the Court;

(g)     the work done by or on behalf the official liquidator and the amount of remuneration claimed by him;

(h)     the distributions made to creditors and contributories; and

(i)     such other information which is required in order to provide the contributories or creditors with a proper understanding of the company's affairs and financial position.

**Publication of Reports and Accounts (O.10, r.3)**

3.    (1)    Every official liquidator's report and accounts shall be filed in Court.

(2)    Except as provided in sub-rule (3), every official liquidator's report and accounts shall be sent to the company's creditors by pre-paid post or transmitted to them by facsimile or e-mail and shall be sent to contributories in whatever manner may be required or authorised by the company's articles of association.

(3)    In the case of a report expressed to relate to a discrete matter, the Court may direct that it should be kept confidential for a specific period or until the occurrence of a specified event.

(4)    In the case of a company which carried on a regulated business or was put into liquidation upon the petition of the Authority, the official liquidator shall send a copy of every report and accounts to the Authority.

(5)    In addition, the official liquidator may post his reports and accounts (or a summarised version) on a website established for this purpose.