UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Securities and Exchange Commission,<br>  *Plaintiff*, | Civil No. 3:11cv78 (JBA) |
|   *v.* | |
| Francisco Illarramendi, *et al.*,<br>  *Defendants*. | |
|   and | |
| Michael Kenwood Asset Management, LLC, *et al.*,<br>  *Relief Defendants*. | June 16, 2011 |

RULING ON MOTION TO INTERVENE

Balanchine Corporation, Brentwood Services Incorporated, and Edenwood Holding, S.A. (collectively "Movants") move [Doc. # 195] pursuant to Fed. R. Civ. P. 24 to intervene in this case. They seek to intervene as of right and permissively as shareholders and creditors of Defendant Highview Point Offshore, Ltd. ("HPOL") to protect their interests in preserving the value of their investment and their right to immediate redemption of that investment, which they claim would be adversely affected if the Court were to grant Plaintiff Security and Exchange Commission's ("Commission") Motion [Doc. # 182] for Temporary Restraining Order, Order Freezing Assets, and Order for Other Equitable Relief. For the reasons discussed below, the Motion to Intervene will be denied.

I.      Allegations Relevant to Intervention[1]

Movants allege that they are shareholders and creditors who have invested $117,500,000 in HPOL. (Mem. Supp. [Doc. # 196] at 1–2 & n.2.) HPOL is a "feeder fund" to Highview Point Master Fund, Ltd. ("HPMF"), investing more than 99% of its assets in HPMF. (*Id.* at 1 n.1.) Movants believe that their $117,500,000 investment in HPOL "represents over 70% of the investments in that entity and the vast majority of the investments in HPMF." (*Id.* at 2 n.2.) The Commission, in its Memorandum in Support of Application for Emergency Relief [Doc. # 182–1] names both HPOL and HPMF among the "Highview Funds" from which it seeks to recover "proceeds of the fraud received" from Highview Point Partners and whose assets it seeks to freeze. (TRO Mem. at 1–3.) The Commission alleges that the Highview Funds have assets of "approximately $230 million and that because of the commingling of investor funds by Highview Point Partners and MK Capital Management, it would "work a substantial injustice on the MK Funds investors, and effectively continue the Ponzi scheme" if the assets held by the Highview Funds were redistributed only to its investors.

II.     Movants' Failure to Attach a Separate Pleading

As an initial matter, the Commission argues that Movants should not be allowed to intervene because they have failed to comply with Federal Rule of Civil Procedure 24(c) by including with their motion "a pleading that sets out the claim or defense for which intervention is sought." "Where, however, the position of the movant is apparent from other

---

[1] For an overview of the factual background relevant to the alleged misappropriation of assets by Highview Point Partners ("HPP") and the Commission's motion for injunctive relief, see the Court's Ruling on Motion for Temporary Restraining Order, Order Freezing Assets, and Order for Other Equitable Relief simultaneously issued on this date.

filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002) (accepting the Government's single submission as constituting both the motion to intervene and its pleading setting out a claim or defense where its position "has been meticulously set forth"). Movants' position, i.e. their opposition to the Commission's motion for injunctive relief, is clear from their Motion to Intervene, and has been fully set out in their Reply Memorandum [Doc. # 208], their Memorandum of Law in Opposition to the Commission's motion for injunctive relief attached thereto [Doc. # 208–1], and was further articulated during the hearing on the Motion to Intervene on May 27, 2011.  The Court therefore accepts Movants' submissions and will not dismiss Movants' Motion on the basis of Rule 24(c).

III.     Section 21(g) of the Exchange Act

The Commission also argues that Movants' Motion to Intervene should be denied because it does not consent to the intervention as required by Section 21(g) of the Exchange Act.  Section 21(g) provides:

> Notwithstanding . . . any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 77u(g).  This language does not expressly forbid intervention without the Commission's consent, and courts are split on the issue of whether or not Section 21(g) applies to motions to intervene.  *See SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 465–66 (S.D.N.Y. 2000) (citing cases).  *Compare SEC v. Flight Transp. Corp.*, 699 F.2d 943, 950–51

(8th Cir. 1983) (Section 21(g) does not bar intervention in an action brought by the Commission without its consent), *and SEC v. Kings Real Estate Inv. Trust*, 222 F.R.D. 660, 666–67 (D. Kan. 2004) ("The Court concludes that Section 21(g) does not represent an impenetrable wall to intervention."), *with SEC v. Cogley*, No. 98CV802, 2001 WL 1842476, *3 (S.D. Ohio Mar. 21, 2001) ("After reviewing the legislative history, and reviewing other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention."), *and SEC v. Homa*, No. 99 C 6895, 2000 WL 1468726, *2 (N.D. Ill. Sept. 29, 2000) ("[T]he plain language of 15 U.S.C. § 78u(g) clearly bars FC & D's joining the SEC's enforcement action as a party."). The most recent decision to examine this issue is *SEC v. Falor*, 270 F.R.D. 372, 374–75 (N.D. Ill. 2010), which analyzed the applicability of Section 21(g) with specific reference to whether the putative intervenors seek to recover from the defendants that the Commission is suing. This Court concludes that the statutory purpose of Section 21(g) is properly addressed not by barring every attempted intervention, but by barring those where an intervening party seeks damages from the same defendant as the Commission regardless of the legal or factual basis because intervention for such purposes is "in essence . . . trying to 'consolidate' a separate claim with the SEC action." *Id.*

Here, Movants do not seek to intervene in order to recover damages from the parties against whom the Commission seeks relief, but instead seek only "oppose the far–reaching relief sought by the SEC in its TRO Motion." (Movants' Opp'n to Mot. for TRO [Doc. # 208–1] at 1.) The Court therefore does not interpret Section 21(g) as a bar to Movant's Motion to Intervene, and will evaluate the Motion under the criteria in Rule 24.

4

IV.     Intervention as of Right

Federal Rule of Civil Procedure 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A movant must meet the following four criteria in order to successfully intervene:

> Intervention as of right under Rule 24(a)(2) is granted when an applicant: (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties.

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

A.      Timeliness

In considering whether or not Movants have filed a timely motion, the Court should take into account: "(a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987).  Movants argue that their Motion to Intervene is timely as it was filed within two business days of the filing of the Commission's TRO Motion and because the litigation is at an early stage and the Court has not ruled on the Commission's TRO Motion, the existing parties would not be prejudiced from any delay caused by intervention.  (Mem. Supp. at 8–9.)  The Commission concedes the timeliness of the Motion to Intervene.  (Opp'n [Doc. # 203] at 4.)

5

B.      Legally Protectable Interest

In order to intervene, a movant must assert an interest in the litigation that is "direct, substantial, and legally protectable." *Person v. New York State Bd. of Elections*, 467 F.3d 141, 144 (2d Cir. 2006). Movants argue that they have an interest in opposing the Commission's attempt to have the off–shore assets of the Highview Funds combined with the assets of the MK entities under the control of the Receiver because "[a]ll indications are that there are more assets in the Highview Point Funds than in the MK funds, meaning that any pooling of the two funds will automatically impair (by watering down) the value of the Movant's HPOL interests." (Mem. Supp. at 10.) Movants elaborate in their Reply Memorandum:

> The Movants will suffer both immediate and long term harm if the SEC obtains the requested relief. First, a freeze of the Master Fund's assets will deprive them of the use of their assets, and the appointment of a receiver, to be paid from the Master Fund's assets, will cost them money. Second, the SEC, together with the MK Receiver, is openly and notoriously seeking to impose harm on the Movants and other Master Fund investors by ultimately merging the MK and HP funds for the purposes of an ultimate distribution.

(Reply at 4 n.6). Movants further clarified at the May 27, 2011 hearing that they claim an interest in preserving the value of their investments and in preserving their right to the redemption of their investment at a time of their choosing. Because Highview Point Partners ("HPP") has agreed to the appointment of the Receiver and the Commission is not seeking the appointment of the Receiver over the Highview Funds at this time, the only remaining relevant interests are the Movants' interests in protecting the value of their investments and the potential effect of a freeze order on their ability to immediately redeem.

Creditors that have invested in entities subject to a freeze order or receivership have a protectable interest in their ability to recover their investment during liquidation of assets.

*See Flight Transp.*, 699 F.2d at 947 (putative intervenor Greyhound, who had leased two airplanes to Defendants but had not been paid rent by the Receiver that took possession of the planes along with the $22 million in Defendants' assets as part of the Commission's actions, had a protectable interest because virtually all of Defendants' interests were in the hands of the Receiver and thus Greyhound's ability to recover could be foreclosed by any order of disgorgement); *Credit Bancorp*, 194 F.R.D. at 467 ("The movants are certainly correct in observing that their interests are at stake in the instant action. . . . [T]he manner in which the instant action proceeds will have profound implications for Credit Bancorp customers desirous of the return of their assets. Because its holdings may not be sufficient to satisfy the claims of all, as a practical matter the instant action will affect the rights of non-party customers."); *SEC v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal. 1995) (putative intervenor Wozniak, an investor in Defendant BLM, faced "losing most of [her] investment without intervening" where the SEC's plan for termination of the receivership of BLM's assets would limit her recovery). Movants argue that they have $117 million dollars invested in HPOL and in the face of a freeze order and eventual pro–rata distribution, they have a right of redemption with respect to that investment. This pecuniary interest in preserving an investment subject to court–ordered injunctive and equitable remedies is a legally protectable interest. *See Flight Transp.*, 699 F.2d at 947; *Credit Bancorp*, 194 F.R.D. at 467; *Navin*, 166 F.R.D. at 440. Movants have accordingly satisfied the "interest" prong of Rule 24(a)(2).

Movants argue with respect to this fourth factor under Rule 24(a)(2) that neither the Commission, which is seeking to enforce security laws and freeze the assets in which Movants have an interest, nor any of the Defendant funds themselves, which do not have a

7

personal stake in whether Movants' assets are frozen and will be defending themselves against allegations of wrongdoing, cannot protect the Movants' interests.  The Commission argues that in acting under statutory authority to remedy alleged securities fraud, it is presumed to represent the interests of the public for purposes of Rule 24(a).  *See SEC v. Bear, Stearns & Co.*, No. 03 Civ. 2937, 2003 WL 22000340, *3 (S.D.N.Y. Aug. 25, 2003) ("[T]he SEC, in its role as *parens patriae*, is presumed to represent the interests of the investing public aggressively and adequately.")  However, even where the Commission is acting in the interests of the public, that "broader mission may well mean that it will take positions hostile to those of individual investors."  *Credit Bancorp*, 194 F.R.D. at 467; *see also Flight Transp.*, 699 F.2d at 948 ("The SEC's primary goal is to protect the public by preventing further securities violations. The receiver is concerned with marshaling and protecting FTC's assets for the benefit of all concerned parties. While Greyhound's interests may not be adverse to those of the SEC or the receiver, they are sufficiently "disparate" to warrant intervention.")  Movants' interest is therefore not adequately represented by other parties.

      C.      Ability to Protect the Interest

A putative intervenor must demonstrate that it "is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest."  *Pitney Bowes*, 25 F.3d at 70.  Movants argue that if the Court grants the Commission's TRO Motions, "the practical effect could be to cost the Movants substantial money."  (Mem. Supp. at 10.)  Movants continue that if the MK funds and Highview Funds are combined and distributed *pro rata*, their interest in HPOL will be diminished in value and that a freeze of HPMF assets will "deprive the Movants of their contractual right to redeem the shares in HPOL."  (*Id.* at 10.)

However, even though Movants' characterization of their interest "paint[s] a stark picture of their potential plight were the Court to deny intervention as of right," disallowing intervention at this point in the Commission's enforcement action would not impede their ability to protect that interest. *Credit Bancorp.*, 194 F.R.D. at 467. Where the primary interest asserted by putative intervenors lies in safeguarding their assets frozen under court order, their participation in future summary proceedings in which the Court or the Receiver determine investors' entitlement to assets is "adequate to the task at hand." *Id.* at 467–68 (citing cases); *see also Kings Real Estate*, 222 F.R.D. at 668 ("If not permitted to intervene, Anderton's interests will still be adequately protected because his claim against the Receiver will not be resolved until after Anderton has had an opportunity to object to the asset distribution."). Although Movants argue that their interests could be harmed not only by a potential diminished return on *pro rata* distribution, but also by the very act of freezing their assets in that they will be unable to redeem their investment at will, their ultimate interest is in the preservation of the value of their investments. Where later summary proceedings will be available to putative intervenors with an interest in the frozen assets, those alternate procedures will sufficiently protect their interest, even if this alternative results in a longer period during which the putative intervenors do not have control over their frozen assets. *See CFTC v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386–87 (7th Cir. 1984) (rejecting putative intervenor's argument that claims procedures before the receiver and/or suing the receiver directly to recover frozen assets were inadequate to protect its claim of superior right to the funds because such claim could be presented in the claims procedure forum and in the district court review of any decision by the receiver before the funds were eventually distributed); *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584,

586–87 (10th Cir. 1984) (holding that claims procedures before the receiver were not inadequate to protect the putative intervenor's interest even where the putative intervenor argued that those procedures would result in undue delay because they would be subject to review by the special master and the district court). Even if Movants here may have a legally protectable right of redemption, the fact that their ability to redeem immediately would be affected by a freeze order does not mean that they do not have the ability to protect that interest ultimately. Instead, despite a potential delay in the timing of the redemption, subsequent proceedings are "adequate to the task at hand" notwithstanding Movants' desire to immediately redeem their investment well in advance of the conclusion of this litigation. *Credit Bancorp*, 194 F.R.D. at 467–68.

In summary, the imposition of a freeze order on the Highview Funds will not impair Movants' ability to protect their investment or claim of superior right because they will have an opportunity at the appropriate time to be heard in summary proceedings to advocate their view of proper distribution in the event of a liquidation or disgorgement, as will all Highview and MK Fund investors. *Kings Real Estate*, 222 F.R.D. at 668; *Credit Bancorp.*, 194 F.R.D. at 467. At present, Movants do not claim to be differently situated from other investors, except by their attempt to intervene. Because Movants have failed to demonstrate that without intervention their ability to protect their interest will be impeded, intervention as of right under Rule 24(a)(2) is denied.

V.     Permissive Intervention

Movants also seek "permissive intervention" under Federal Rule of Civil Procedure 24(b)(1)(B), which provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Rule

24(b)(3) adds: "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Although Movants argue that permissive intervention has been granted in SEC enforcement actions where "the movant claimed that he did not invest through the particular investment in question and that he is entitled to priority on his investment in another entity" and that their request to intervene is "well within the purview of Rule 24(b)(1)(B)" (Mem. Supp. at 14), they do not explain what their claims, aimed at preserving the value of their investment in the Highview Funds in the event of a merger of those funds with the MK funds and an eventual pro rata distribution of assets, have in common with the Commission's fraud claims against Illarramendi and other Defendants.

Movants rely on *Kings Real Estate*, 222 F.R.D. at 670, in which the District of Kansas found that putative intervenor Anderton's claim that defendant Swanzy had transferred his funds from an account with relief defendant Romerian Spendthrift Trust to defendant Kings Real Estate Investment Trust without authorization had questions of law and fact in common with the Commission's allegations of fraud against the defendants. In contrast here, Movants do not level allegations of wrongdoing against Defendants or Relief Defendants, but instead claim only that their investment in the Highview Funds could be subject to inequitable distribution by the Receiver if those funds were merged with the MK entities currently under receivership. Thus, their interest in protecting the value of their investment in the Highview Funds does not share any common question of law or fact with the Commission's enforcement action as in *Kings Real Estate*, 222 F.R.D. at 670. Their request for permissive intervention under Rule 24(b)(1)(B) is therefore denied.

VI.     Conclusion

For the reasons stated above, the Motion [Doc. # 195] to Intervene is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of June, 2011.

12