UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, <br><br> Defendants, <br><br> and <br><br> HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP, <br><br> Relief Defendants. | 11-CV-00078 (JBA) |

## AMENDED ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon motion of the Securities and

Exchange Commission ("SEC" or the "Commission") to appoint a Receiver over additional

defendants, dated May 10, 2011;

**WHEREAS** the Court finds that, based on the record in these proceedings, the

modification of the original order appointing the Receiver, is necessary and appropriate; and

**WHEREAS** this Court has subject matter jurisdiction over this action and personal

jurisdiction over the Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**THAT:**

1. This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated of Highview Point Partners, LLC ("Highview Point Partners").

2. The Court hereby continues to maintain exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the entities and assets subject to the Court's Temporary Order Freezing Assets and Modified Temporary Order Freezing Assets, entered January 28, 2011 and February 2, 2011, respectively (Doc. #36; Doc. # 59) (collectively, the "Original Freeze Orders").

3. The Orders appointing a Receiver entered on February 3, 2011 and amended on March 1, 2011 (respectively, Doc. #66; Doc. #118) (the "MK Receiver Orders") continue in full force and effect and nothing in this Order shall be construed to limit the powers or duties granted the Receiver under the MK Receiver Orders.

4. The Court amends its definition of the "Receivership Estate" as set forth in the Original Freeze Orders to include all assets under the direct or indirect control of the entity known as Highview Point Partners, as well as continuing to include following entities, identified in Exhibit A to the Freeze Orders and in the MK Receiver Orders: The Michael Kenwood Group, LLC, Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology, LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKG-Atlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL, LLC; MKCM Merger Sub, LLC; MK Special Opportunity Fund; MK Venezuela, Ltd.; Short Term Liquidity Fund, I, Ltd.

5.     The Receivership Entities continue to include Michael Kenwood Group, LLC,
Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK
Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology,
LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKG-
Atlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL,
LLC; MKCM Merger Sub, LLC; MK Special Opportunity Fund; MK Venezuela, Ltd.; Short
Term Liquidity Fund, I, Ltd. and hereby include Highview Point Partners LLC (collectively, the
"Receivership Entities").

6.     Until further Order of this Court, John J. Carney, Esq. of Baker & Hostetler LLP
is hereby appointed to serve without bond as receiver (the "Receiver") for the Receivership
Estate.

7.     Nothing in this Order is intended to, or does, abrogate any individual's federal
Constitutional rights or privileges.

## I. __Asset Freeze__

8.     On May 12, 2011, the Court entered a Temporary Restraining Order, Order
Freezing Assets and Order for Temporary Relief as to Highview Point Partners (Doc. #200) (the
"Highview Point Partners TRO").

9.     Nothing in this Order should be construed to modify the Court's Stipulation and
Temporary Restraining Order, Order Freezing Assets and Order for Temporary Relief as to
Highview Point Master Fund, Ltd., Highview Point Offshore, Ltd. and Highview Point LP,
entered May 12, 2011 (Doc # 201) (the "Fund Restraining Order"). The Fund Restraining Order
continues in full force and effect and nothing in this Order should be construed to alter, replace
or amend the Fund Restraining Order.

10.     All assets of the Receivership Estate remain frozen under the Highview Point Partners TRO and the Original Freeze Orders (collectively the "Prior Orders"). However, the Prior Orders shall not apply to the Receiver, nor prevent the Receiver in any way from directing the transfer or disposition of assets that would otherwise be in accordance with this Order.

## II.  General Powers and Duties of Receiver

11.     The Receiver continues to have all powers, authorities, rights and privileges (including the attorney-client privilege and work product protection) heretofore possessed by the officers, directors, managers, members and general and limited partners of the Receivership Entities, under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed. R. Civ. P. 66, provided, however, that the Receiver shall not assume, and therefore shall have no power to waive, the attorney-client privilege (including any joint defense or common interest privileges) or attorney work product protection possessed by Highview Point Partners relating solely to legal services rendered up to and including the date of this Order by Morrison & Foerster LLP, Pepper Hamilton LLP, Wiggin and Dana LLP, Appleby, Brune & Richard LLP, or Seward & Kissel LLP (as well as services provided by Ernst & Young LLP, Kroll Ontrack and Floyd Advisory LLC to the extent they assisted one or more of the aforementioned law firms in providing legal services), insofar as such legal services by the aforementioned firms were provided to Highview Point Partners in connection with the Commission's examination of Highview Point Partners (SEC File # 801-66435), the Commission's enforcement investigation of Highview Point Partners (B-02507), the present action (No. 3:11-cv-00078 (JBA) (D. Conn.)), In re Highview Point Partners, LLC, No. 11-11432 (KJC) (Bankr. D. Del.), or any federal criminal investigation of this or related matters by the Office of the United States Attorney for

the District of Connecticut (the "Past Government Investigations Legal Work"). Notwithstanding the foregoing sentence regarding the Past Government Investigations Legal Work, the Receiver may assume and waive the attorney-client privilege pertaining to any Past Government Investigations Legal Work upon the express written consent of both Christopher Luth and Frank Lopez. Furthermore, to avoid any confusion, notwithstanding the foregoing sentences regarding Past Government Investigations Legal Work, with regard to any legal services provided by any attorney or law firm that do not constitute Past Government Investigations Legal Work, the Receiver assumes and has the power to waive the attorney-client privilege, the attorney work product protections, and all other privileges and protections possessed by Highview Point Partners. Absent further order of the Court, this paragraph shall be construed to apply to Paragraphs 15 to 19 pertaining to the production of documents by Highview Point Partners. Nothing in this paragraph shall be construed to restrict the Receiver from reviewing, analyzing, distributing, or otherwise using any documents and/or communications not protected by the attorney-client privilege or work product protection for any reason including, but not limited to: (i) a waiver of the privilege or protection other than by the Receiver, or (ii) because of any existing exception to the privilege or protection, including without limitation the crime or fraud exception.

12.     The trustees, directors, officers, managers, members, employees, investment advisors, accountants, attorneys and other agents of the Receivership Entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The powers of any general partners, directors, managers and/or members of the Receivership Entities are hereby suspended. The Receiver shall assume and control the operation of the Receivership Estate, shall have the

authority to dismiss any trustees, directors, officers, managers, members, employees, investment advisors, accountants, attorneys and other agents of the Receivership Entities, and shall pursue and preserve all claims of the Receivership Entities.

13.    No person holding or claiming any position of any sort with any entity in the Receivership Estate or Receivership Entities shall possess any authority to act by or on behalf of the Receivership Estate/Receivership Entities.

14.    Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

> A.    To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property");
>
> B.    To take custody, control and possession of all Receivership Property, including selling or exchanging assets as necessary to achieve that objective; to take custody, control and possession of records relevant thereto from the Receivership Entities; and to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;
>
> C.    To manage, control, operate and maintain the Receivership Estate and hold in his possession, custody and control all Receivership Property;
>
> D.    To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;
>
> E.    To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Entities;
>
> F.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives,

financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G.    To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.    The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.    To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.    To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

K.    To take such other action as may be approved by this Court.

### III.  Access to Information

15.    The past and/or present officers, directors, agents, managers, members, general and limited partners, trustees, attorneys, accountants and employees of the Receivership Entities, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property (except that counsel for Highview Point Partners shall preserve but need not produce duplicates of information or documents otherwise produced to the Receiver); such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers. Highview Point Partners shall turn over to the Receiver all information, regardless of any potential claim of privilege and/or work product protection, with the understanding that the Receiver shall retain counsel of his choice to perform a privilege review and ensure compliance with any non-waived attorney-client privilege and work product protection for the Past Government Investigations Legal Work, as set forth *supra*.

16.     Within fifteen (15) days of the entry of this Order, the past and/or present officers, directors, agents, managers, members, general and limited partners, trustees, attorneys, accountants, consultants and employees of the Receivership Entities, as well as those acting in their place, shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Entities; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Entities.

17.     The Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, members, employees, accountants, consultants, debtors, creditors, members and general and limited partners, and other appropriate persons or entities shall answer to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities.  In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make his discovery requests in accordance with the Federal Rules of Civil Procedure.

18.     The Receiver shall have authority to issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed. R. Civ. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

19.     The Receivership Entities' past and/or present officers, directors, agents, managers, shareholders, members, employees, accountants, consultants, debtors, creditors, and

general and limited partners, and any persons acting for or on behalf of the Receivership Entities, and Defendant Illarramendi are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

## IV. Access to Books, Records and Accounts

20.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Entities. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver at the Receiver's request.

21.     The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents and/or employees.

22.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Entities that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

      A.      Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entity except upon instructions from the Receiver;

      B.      Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

      C.      Within five (5) business days of receipt of that notice, file with the Court

and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.     Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. <u>Access to Real and Personal Property</u>

23.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment. Highview Point Partners shall turn over any unencumbered funds and/or retainer held by its counsel within five days of the date of this Order. For purposes of this Order, "encumbered" shall mean those funds deposited by Highview Point Partners with its counsel to be applied against legal fees and related disbursements and professional fees incurred as of the date of this Order.

24.     The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

25.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

26.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

27.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## VI. <u>Notice to Third Parties</u>

28.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Entities, and to such other persons as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

29.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to the Receivership Entities shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Entities had received such payment.

30.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

31.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, any Receivership Entity.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  Any mail not to a Receivership Entity appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver.  The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Entities.  The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

32.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Entity shall maintain

such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII.  Injunction Against Interference with Receiver

33.     The Receivership Entities and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.      Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or the Receivership Entities, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Entities or which otherwise affects any Receivership Property; or,

D.      Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

34.     The Receivership Entities' past and/or present officers, directors, agents, managers, shareholders, members, employees, accountants, consultants, debtors, creditors, and general and limited partners, and any persons acting for or on behalf of the Receivership Entities, shall cooperate with and assist the Receiver in the performance of his duties.

35.     The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VIII.  Stay of Litigation

36.     As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission and actions commenced by the Receiver related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature: (a) against the Receiver, in his capacity as Receiver; (b) involving any Receivership Property, wherever located; (c) the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

37.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

38.     Further, as to a cause of action accrued or accruing in favor of the Receivership Entity against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

### IX.  Managing Assets

39.     The Receiver may establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds") for the Receivership Estate.

40.     The Receiver may also establish, if necessary and appropriate, one or more custodial depository accounts with a foreign bank or branch of a foreign bank whose foreign currency deposit obligations carry an express rating, or in the absence of an express rating having been assigned to its deposits, an implied rating based on the express ratings assigned to the long-term senior unsecured debt of the foreign bank or its holding company, of not less than "A" from both Moody's Corporation and Standard & Poor's Corporation.

41.     The Receiver's deposit accounts shall be entitled, as appropriate, "Receiver's Account, Estate of Michael Kenwood Entities," "Receiver's Account, Estate of Highview Point Partners," or other name designating the special nature of the accounts, together with the name of the action.

42.     The Receiver may, without further Order of this Court, transfer, monetize, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate.  With respect to any asset having a value in excess of $1 million, the Receiver shall consult with one of the Business Advisors and consider his or her opinion with respect to said transaction.

43.     Subject to Paragraph 44, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate.

44.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be

authorized to sell, and transfer clear title to, all real property and ownership interests of any Receivership Entity in the Receivership Estate.

45. The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate/Entities, including making legally required payments to creditors, employees, and agents of the Receivership Entities and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

46. The Receiver may take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

## X. Investigate and Prosecute Claims

47. The Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind, including the instant proceeding, as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

48. Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to

enforce this Order.  Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

49.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by the Receivership Entities, with the exception of the privileges and protections that apply to Past Government Investigations Legal Work  as set forth *supra*.

50.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XI.  Bankruptcy Filing

51.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Entities. If the Receivership Entities are placed in bankruptcy proceedings, the Receiver shall become, and shall be empowered to operate the Receivership Estate as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. In the event of any bankruptcy filing, Highview Point Partners shall maintain the privileges set forth in paragraph 11 of this Order, subject to any modifications thereof. Pursuant to Paragraph 4 above, the Receiver is vested with management authority for the Receivership Entities and may therefore file and manage a Chapter 11 petition and, thereafter, the Chapter 11 cases.

52.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Entities in bankruptcy proceedings.  If a bankruptcy proceeding is filed on behalf of any Receivership Entity by anyone other than the

Receiver, the bankruptcy reference shall be withdrawn and jurisdiction over the Receivership Property and Receivership Estate shall remain with this Court.

## XII.  Liability of Receiver

53.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

54.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

55.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

56.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

## XIII.  Recommendations and Reports

57.     The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

58.     On or before September 30, 2011, or on a later date if the Court extends the existing deadline, the Receiver shall file and serve a full report and accounting of the entities listed in the MK Receiver Orders (collectively, the "MK Receivership Estate") reflecting (to the best of the Receiver's knowledge as of the date of the report) the existence, value, and location of all assets of the MK Receivership Estate, and of the existence of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

59.     On or before December 15, 2011, or on a later date if the Court extends the existing deadline, the Receiver shall file and serve a full report and accounting of Highview Point Partners reflecting (to the best of the Receiver's knowledge as of the date of the report) the existence, value, and location of all assets of Highview Point Partners, and of the existence of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of Highview Point Partners.

60.     Each accounting shall contain the following:

A.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

B.     A schedule of all the Receiver's receipts and disbursements;

C.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

D.     A description of liquidated and unliquidated claims held by the MK Receivership Estate or Highview Point Partners, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments); and

E.     A list of all known creditors with their addresses and the amounts of their claims.

61.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

62.     Within sixty (60) days after the Receiver files each accounting, the Receiver shall make a written recommendation to the Court, upon consultation with the Commission's counsel, for authorization to continue or discontinue the receivership and/or to enter into liquidation proceedings.

## XIV.   Fees, Expenses and Accountings

63.     Subject to Paragraphs 64-71 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

64.     Subject to Paragraph 65 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

65.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court and shall be calculated pursuant to the following hourly billing rates:

|                          |            |
|--------------------------|------------|
| John J. Carney, Esq.:    | $495.00    |
| Patrick Hannon, Esq.:    | $495.00    |
| Business Advisor         | $495.00    |

All New York-based Baker & Hostetler personnel: 18% discount from standard rates.

Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

66.     Compensation and expense reimbursement to the Receiver and Retained Personnel shall be paid from the Receivership Estate and shall take priority over all other claims against the Receivership Estate.

67.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

68.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

69.     Each Quarterly Fee Application shall:

    A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

70.    At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

71.    As set forth in the Highview Point Partners TRO, all professional fees incurred for Past Government Investigations Legal Work may be deducted from any funds and/or retainer deposited by Highview Point Partners with its counsel, subject to a reasonableness review by the Receiver. Within fourteen (14) business days of this Order, Highview Point Partners' counsel shall submit to the Receiver itemized invoices and supporting documentation for unpaid legal fees for Past Government Investigations Legal Work and related disbursements and professional fees, except that details that reveal privileged communications or attorney work product may be redacted. Any encumbered portion of such funds and/or retainer held by Highview Point Partners' counsel shall be placed in an escrow account pending the Receiver's review for reasonableness, with such review to be accomplished reasonably promptly after receipt of any invoices. Any disputes regarding the reasonableness of fees and expenses relating to Past Government Investigations Legal Work shall be resolved by the Court, and the Court may receive unredacted invoices to assist in resolving any disputes.

72.     Any Defendant or Relief Defendant may seek reconsideration or further

modification of this Order by filing a written motion within 14 days of the date of this Order.


Dated: June 22, 2011.

_____/s/_____
THE HONORABLE JANET BOND ARTERTON
UNITED STATES DISTRICT JUDGE