UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,

v.

FRANCISCO ILLARRAMENDI
HIGHVIEW POINT PARTNERS, LLC and
MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC,
Defendants,

and

HIGHVIEW POINT MASTER FUND, LTD.,
HIGHVIEW POINT OFFSHORE, LTD.,
HIGHVIEW POINT LP,
MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP,
Relief Defendants.

11-CV-00078 (JBA)

**FIRST INTERIM APPLICATION FOR FEES AND EXPENSES BY VICTOR E. MANDEL, COURT APPOINTED BUSINESS ADVISOR**

TO: THE HONORABLE JANET B. ARTERTON
UNITED STATES DISTRICT JUDGE

Victor E. Mandel hereby submits this application (the "Application") for allowance of compensation and reimbursement of expenses incurred by him as the Court Appointed Business Advisor ("Mandel"), during the period from January 20, 2011 through February 3, 2011 (the "Application Period").

## I. SUMMARY OF PROFESSIONAL FEES AND REIMBURSEMENT OF EXPENSES REQUESTED

1. All of the services detailed in this fee application are for services provided by Victor Mandel, Criterion Advisors, LLC, in conjunction with the other Business Advisor appointed by the Court, Deborah Midanek of Solon Group, Inc. Mandel usually charges $600 per hour for comparable services to the services rendered in this case. Mandel ultimately lowered his hourly rate for his services in this case to $500 for the Application Period, prior to the entry of an order by the court regarding fees.

2. Mandel expended a total of 174.6 hours working on this matter during the Application Period. At the time of the Receiver's appointment, Mandel agreed to an hourly billing rate of $495 for the Court Appointed Business Advisor after the Application Period.

3. Mandel seeks allowance of compensation of services rendered during the Application Period with respect to the Receivership Estate in the amount of $85,050 (which reflects Mandel's hourly rate of $500 and 50% of his hourly rate for 9 hours of travel time), and reimbursement of actual and necessary expenses in the amount of $2,187, for a total reimbursement of $87,237.

4. Pursuant to an Order dated January 25, 2011 ("Business Advisor Order") Victor Mandel and Deborah Midanek were appointed "Business Advisors" to the Court, effective

immediately. The Court directed the Business Advisors to submit bills for their work to the Court. The appointments were made after the Court was presented with information regarding the Business Advisors' backgrounds and after the Court had the opportunity to speak with Ms. Midanek and Mr. Mandel on the record. As Court records reflect, the Business Advisors regularly reported to the Court verbally and in writing on a variety of issues in this case during the Application Period.

5. The following exhibits are attached:

    a. a Certification regarding compliance by Mandel with the SEC Guidelines (attached as Exhibit A); and

    b. a Fee Schedule setting forth Mandel's services in this case during the Application Period, the hourly billing rate charged by Mandel, the aggregate number of hours expended in this matter, and the fees billed (attached as Exhibit B). All Mandel time records billed during the Application Period pertained to Asset Analysis and Recovery, as a result the invoice reflects only those billing codes.

6. This is Mandel's first application for fees and expenses. Mandel has not received any previous payments with respect to the fees and expenses sought in this Application. The fees and expenses for which payment is sought were incurred in pursuant to the Court's direction before the Receiver's appointment.

## II. SUMMARY OF STEPS TAKEN DURING THE APPLICATION PERIOD

7. During the Application Period, the Court asked the Business Advisors to conduct research and provide guidance regarding hearings surrounding the appointment of a receiver in connection with the allegations in this case.

8.     On January 21, 2011, the Court asked the Business Advisors to consider the merits of certain investments and to:

(a)  recommend a course of action with respect to a potential investment in Proterra, Inc. by a non-MK Series A holder of an additional $3 million and the corresponding subordination consent request; and

(b)  recommend an approach to resolving the issues set forth in the consent letters sent to investors in STLF with respect to a possible $13 million infusion into NuScale ($10 million) and ProTerra ($3 million). The Court further asked that if the Business Advisors were unable to make a recommendation, that the Business Advisors outline the issues that need to be addressed in order to make such a recommendation.

9.     On January 24, 2011 the Court further requested from the Business Advisor that:

(a)  given the uncertainty with respect to STLF I's financial status in general, the Business Advisors are to analyze the assets of STLF I with particular focus on the Venezuelan Bolivar denominated assets and the Cheyne Funds investments made in kind by entities related to the majority investor;

(b)  with respect to the negotiations between the majority investor, the known minority investors in STLF I, and STLF I portfolio companies ProTerra and NuScale, the Business Advisors are to ensure that private negotiations are proceeding apace and that no investor has declined to participate for lack of communication. Although not required to be directly involved in negotiations, the Business Advisors are to be apprised of progress, possible barriers, and decisions; and

(c)    the Court observed that Mr. Illarramendi has been said to have unique skills that are required to manage these assets and asked for our views on the nature of those skills.

10. In both instances, the Court requested that the Business Advisors provide the Court with a written report on their findings and recommendations, which the Business Advisors did, as set forth below. The conclusions reached are included in reports provided to the Court and were discussed in court at various hearings.

11. With respect to Report 1, Mandel performed the following tasks in conjunction with Midanek:

(a)    accelerated document collection and review (list of documents available)—reviewed SEC provided documents provided by Arnold & Porter, fund related documents and MK materials provided by Michael Colohan (MK Controller) and Odo Habeck (MK CEO), financial reports for both STLF and SOP then still in process;

(b)    interviews of Odo Habeck and Michael Colohan at MK offices in Stamford as well as phone discussion with Jim Barratt;

(c)    status calls with attorneys and met each day by phone with all available attorneys to report progress and identify gaps;

(d)    outreach to all then-known current investors including PDVSA, Goldenbird, Aspenwood, and Ponter;

(e)    research into prior investors who may have redeemed; and

(f)    due diligence on ProTerra and Nuscale (the Proterra management teams provided detailed presentation and data, NuScale provided data and

presentation. Both teams presented to the PDVSA investment team and attorneys for SEC, MK and Funds, Illarramendi, PDVSA, and Goldenbird.).

12. With respect to Report 2, Mandel performed the following tasks in conjunction with Midanek:

(a) continued due diligence with respect to ProTerra and NuScale needs for emergency funding, and its impact on prospective recoveries for STLF I investors;

(b) commenced due diligence on the emergency funding needs of BCInet, an investment by derivative guarantor MK Technology, and its possible impact on STLF recoveries;

(c) reviewed Examination Process, Scope, Concerns, and suggested next procedures with SEC Examination team and identified some of their primary concerns;

(d) reviewed scope and status of work with Jim Barratt of Alvarez and Marsal;

(e) held multiple discussions with Odo Habeck and Michael Colohan in re various matters;

(f) communicated daily with the Shearman & Sterling legal team to help provide required information and coordinate discussions with minority investors;

(g) held several status calls with attorneys and minority investors;

(h) spoke and met with all known minority investors and provided them with copies of the BDO correspondence, draft asset schedule for STLF dated November 30, 2010, and materials regarding the Cheyne contributions in kind; investors included: Goldenbird & Edenwood through Attorney Curran;

        Aspenwood, Ponter; as of January 31, represented by Donald Zakarin of Pryor Cashman;

(i) provided the minority investors a chance to meet informally with each of the proposed Baker Hostetler, the Blank Rome legal teams; the majority investor's legal team arranged a meeting for them with the Richards Kibbe candidate; and

(j) inquired of counsel to the majority investor as to whether his client would be willing to shed any light as to the reasons the various Cheyne Funds were contributed to STLF I in kind, and the nature of the dispute as to valuation (Majority investors' counsel has offered to provide the information they have available).

13. The Court also asked the Business Advisors to review the components of the MK Group's request for emergency funding to pay operating expenses and to provide an opinion on the line item operating budget of the MK Group, which Mandel did.

## III. FEES AND EXPENSES REQUESTED

1. In connection with the Application Period, Mandel requests compensation for services in the amount of $85,050 and reimbursement of expenses in the amount of $2,187, for a total reimbursement of $87,237.

2. These amounts reflect the hours worked by Mandel and the hourly rate of $500 and 50% discount for 9 hours of travel time in effect at the time that the services were rendered.

3. Mandel has not filed any prior fee and expense application in this case. Mandel has not received a retainer in this case.

    4. Mandel recorded all services performed in time increments of one-tenth of an hour.

5. This Application does not seek payment for time spent preparing the Application or any documentation in support.

## IV. RELIEF REQUESTED

WHEREFORE, Mandel respectfully requests that this Application be granted and that he be awarded an allowance of $85,050 for business advisory services rendered during the Application Period, and $2,187 for the reimbursement of expenses, for a total reimbursement of $87,237; and that the Receivership Estate be allowed to pay such amounts and reimburse Mandel for approved expenses, together with such other and further relief as necessary and proper.

Dated: New York, New York
August 23, 2011

By: /s/ Victor Mandel
Victor Mandel, Court Appointed Business Advisor.