UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 3:11-CV-00078-JBA |
| Plaintiff, | |
| v. | |
| FRANCISCO ILLARRAMENDI, and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, | |
| Defendants. | |
| MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP, | |
| Relief Defendant. | |

## DECLARATION OF PAUL LORENZINI

I, Paul Lorenzini, certify and declare as follows:

1.   I am a co-founder and the Chief Executive Officer of NuScale Power, Inc. ("NuScale"). I make this statement on my own personal knowledge.

2.   NuScale is an Oregon corporation that is commercializing a modular, scaleable 45 Megawatt electric light water reactor nuclear power plant based on technology that is the subject of a Patent License Agreement between NuScale and Oregon State University. The current focus of the company is on the commercial design of the reactor and power plant and preparation of the application to the U.S. Nuclear Regulatory Commission for certification of the design. NuScale expects to file its application for design certification in late 2013 and expects that the

Page 1

Commission's review process will take approximately three years. NuScale's current plan, assuming design approval on a timely basis, is to have its first power plant operational by 2020.

3.  The amount of money necessary to complete the design and the application and to construct an operational power plant is expected to require several hundred million dollars. From the initial founding of NuScale, securing a stable, long-term source of funding has been a primary focus of the company and has taken a significant amount of my time. In addition to all other considerations, having long term financial stability will be a requirement imposed both by regulators and customers before making long term commitments to license and/or acquire NuScale nuclear plants.

4.  In June 2011 NuScale began negotiating with Fluor Enterprises, Inc. ("Fluor") for immediate bridge loan financing, which resulted in Fluor loaning NuScale $3.8 million over the course of summer 2011. Without Fluor's loans, NuScale would not have survived the summer. Fluor is now on the verge of closing a transaction to purchase the Receiver's controlling interest in NuScale. With this investment, I believe that we now have that stable source of funding and the ability to raise the additional money that will be necessary to meet the company's needs going forward. On completion of the transaction with the Receiver, Fluor has agreed to commit not less than $30 million, including conversion of its existing loans to equity. Fluor is an affiliate of Fluor Corporation, a major multinational engineering, design and construction company traded on the New York Stock Exchange under the symbol "FLR," and a Fortune 125 company. Fluor Corporation's market capitalization is in excess of $10 billion. In addition to funds, Fluor provides NuScale with the credibility it needs to compete in the marketplace with other vendors of small modular nuclear reactors. Neither Ramon Illarramendi nor Craig Berkman brings those capabilities. Nor, in my opinion, would any significant strategic investor be willing

to invest in NuScale if they understood that either Mr. Illarramendi or Mr. Berkman were the majority owner with a controlling interest in the company. If Fluor is displaced by either of these investors, the company's prospects for success will be severely damaged.

5. I know Ramon Illarramendi. Until the events that gave rise to the present action by the Securities and Exchange Commission, Mr. Illarramendi sat on NuScale's board as the designee of Michael Kenwood Asset Management. Mr. Illarramendi is the father of defendant Francesco Illarramendi.

6. It would not be in NuScale's interests for Mr. Illarramendi to again have a role at NuScale. I understand, for example, that should Mr. Illarramendi again become involved in NuScale, Oregon State University would not agree to settle its claim that the Patent License Agreement terminated in January 2011. Similarly, I understand that NuScale's largest minority shareholder, CMEA Capital, would not grant its consent to a transaction that involved Mr. Illarramendi. In addition, Mr. Illarramendi does not bring market credibility to NuScale, credibility that is brought by Fluor, and that is necessary to the company's success. In the event Mr. Illarramendi was to have any future role at NuScale, it would be my intent to resign as CEO and to cease all further involvement with the company. I believe that other key managers and engineers would also resign in that event.

7. For the reasons stated above, I believe that regardless of any short term funds Mr. Illarramendi might claim to have access to, the long term prospects of NuScale will be put in jeopardy by Mr. Illarramendi's return. Even if, despite the positions taken by Oregon State University and CMEA Capital, as well as anticipated employee resignations, the company could continue as a going concern, the fact is that Mr. Illarramendi has been tainted by what I understand to be his son's admitted wrong-doing, including wrong-doing with respect to the

investments in NuScale. With that taint, I do not believe that the company will be in a position to raise the hundreds of millions of dollars necessary to commercialize the reactor design.

8.   NuScale also does not have the financial ability to survive during Mr. Illarramendi's proposed "defined period of due diligence." In April 2011 NuScale issued notes in the total amount of $540,000. The money was necessary to fund continued operations. In addition, as explained above, in June 2011, NuScale obtained additional loans from Fluor, without which NuScale would not have survived the summer. NuScale is again at a critical stage for funding. NuScale has current accounts payable due and owing of approximately $7 million, total debt of over $15 million, and insufficient funds on hand to meet those obligations. In addition, without additional immediate funds, the Company will not be able to maintain its payroll after October 15, 2011, and may be required to suspend operations and lay-off employees, the vast majority of whom are highly skilled engineers with specialized knowledge in nuclear energy applications. There is also significant risk that another setback in obtaining a stable source of funding will severely damage employee morale, and lead to critical employees leaving the company. Once the critical employees of NuScale leave or are laid off, resurrecting the company will be difficult if not impossible. The transaction contemplated between the Receiver and Fluor is the predicate to Fluor's additional investment in NuScale. Without that transaction, I expect that once again NuScale will find itself without funds for continuing operations.

9.   I know Craig Berkman, the principal of Venture Trust Management, LLC that has moved to intervene in this matter. Mr. Berkman was well known as an investor in the state of Oregon. A few years ago, a jury issued a multi-million dollar award against Mr. Berkman and one or more of his companies. Since then, Mr. Berkman has, as I understand it, relocated to Florida.

10. Earlier this year, Mr. Berkman approached me about a potential investment in NuScale. To be clear, Mr. Berkman did not approach me on behalf of himself or on behalf of Ventures Trust Management. Instead, he informed me that he represented potential third-party investors, and introduced me to representatives of Tangent Asset Management ("Tangent"). I explained to Mr. Berkman that given the prior events in Oregon, I would need to deal directly with the investors he represented, and that NuScale was not willing to accept any investments through Ventures Trust Management or from Mr. Berkman directly. A copy of my email exchange with Mr. Berkman on March 16 and March 17, 2011 is attached to this declaration as Exhibit 1.

11. I engaged in discussions with Tangent in March and April of this year. The essence of the Tangent proposal was any investment by Tangent would be conditioned on investments by both Kiewit Corporation ("Kiewit") and Huntington Ingalls Industries, Inc. ("HII"). I participated in meetings with three of representatives of Tangent and a representative of HII on April 6, 2011, in Newport News, Virginia and with those same representatives of Tangent and representatives of Kiewit on April 7, 2011 in Omaha, Nebraska. Mr. Berkman was not present at either meeting. Following those meetings, I was informed by HII that they were not interested in participating in the transaction with Tangent and, at that point, ended the discussions with Tangent.

12. I have had no further contact with Mr. Berkman or Ventures Trust Management. As is true with respect to Mr. Illarramendi, I understand that should Mr. Berkman or his company secure a controlling interest in NuScale, Oregon State University would not agree to settle its claim that the Patent License Agreement terminated in January 2011. Similarly, I understand that NuScale's largest minority shareholder, CMEA Capital, would not grant its consent to a transaction that involved Mr. Berkman. In addition, Mr. Berkman does not bring market

credibility to NuScale, credibility that is brought by Fluor, and that is necessary to the company's success. And, as is true with respect to Mr. Illarramendi, were Mr. Berkman to have future role at NuScale, it would be my intent to resign as CEO and to cease all further involvement with the company. I believe that other key managers and engineers would also resign in that event. Any delay of the proposed transaction between the Receiver and Fluor to afford Mr. Berkman or his company an opportunity to bid on the Receivership's interest in NuScale would, again as is the case with respect to Mr. Illarramendi's request for a period of due diligence, leave the company without funds to continue operations.

I declare under penalty of perjury that the foregoing is true and correct.

Dated September 17, 2011

_____
Paul Lorenzini

**From:** Paul Lorenzini
**Sent:** Thursday, March 17, 2011 12:35 PM
**To:** 'Craig Berkman'
**Subject:** RE: Trust for funding

Craig:

While I am anxious to do anything I reasonably can to be of help, I also need to be frank with you on this subject as there are issues raised by your past difficulties that need to be acknowledged. I don't pretend to have any inside information on what happened and am not in a position to say whether it was fair or unfair. But I think we both need to be honest that you carry, as you put it to Maurice, scar tissue, especially in Oregon. It is a particular problem for us given the experience we just had with MK and the scrutiny our investments will receive from strategic investors, other financial investors, customers, the US Department of Energy, OSU, and the local media.

Obviously we are very excited by your interest in NuScale and we fully understand the precarious position we are in   I don't take lightly raising this issue. I had understood from most of our conversations that you were offering to match us with investors so we could receive investments directly from them. I had assumed you would receive some form of compensation through them for arranging the investment. If that is not the case, we would be happy to explore ways to share value with you for investors you arrange for us. But given this history, I think it would create difficulties for both of us if we don't handle this in a way that is prudent while still creating the value for all parties that we seek. The cleanest way to do that would be to allow NuScale to work directly with investors while seeking a means that would allow you to receive fair compensation for your efforts to help us get the financing we so desperately need.

Paul

**From:** Craig Berkman [mailto:c_berkman@yahoo.com]
**Sent:** Wednesday, March 16, 2011 8:24 PM
**To:** Paul Lorenzini
**Subject:** Fw: Trust for funding

Paul,

Per our earlier conversation, please
read the attached

My draft language is as follows

Please edit as you wish, and send
to Mr Timpano (email address below)
with a copy to my colleague Jim Stanley.
email below   Thanks

Craig

Dear Mr Timpano,

It is my understanding that you are interested
in receiving my assessment of Craig Berkman,
including his relationship with me and his involvement
with NuScale Power

I have known Craig for a number of years. I am
an investor in one of his venture funds and
worked with him on the Citizens Crime Commission

My NuScale associates and I are aware of the 2008 litigation
involving Craig and other parties. He dealings
with me and my associates have consistently been transparent
and helpful to the Company. As far as I know, the
litigation is one event, in an otherwise successful
professional and personal career. It should not
disqualify him from continuing his investment and
company building activities, especially since there
were no regulatory issues with state or federal agencies.
I also understand that Craig has also reached a settlement agreement with
the parties.

I trust that this assessment is responsive to
your inquiry.

Very truly yours.


Paul Lorenzini
CEO NuScale Power

----- Forwarded Message ----
**From:** Jim Stanley <jim.stanley@Viiinc.com>
**To:** Craig Berkman <c_berkman@yahoo.com>
**Sent:** Wed, March 16, 2011 4:10:14 PM
**Subject:** FW: Trust for funding

Craig,

Sam's group is very interested in NuScale. There is one issue which he thinks can be satisfied fairly easily. Obviously the investors checked out Ventures Trust and all that B.S. about you showed up. They said if you could get a letter from Paul saying he was completely aware of your history and had no qualms about continuing a personal as well as business relationship that would satisfy their due diligence requirements. It also solves the problem of why the funds have to go thru Ventures Trust. If Paul has that much confidence in you and they can't go around you the structure is earned.
Sam said he has the NDA and NCA signed. You may have it by now

Jim

James C. Stanley
Principal, VII Inc
1134 Winged Foot Circle West
Winter Spring, FL 32708
(407) 619-6473