UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 3:11-CV-00078-JBA |
| Plaintiff, | |
| v. | |
| FRANCISCO ILLARRAMENDI, and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, | |
| Defendants. | |
| MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP, | |
| Relief Defendant. | |

BEFORE ME, the undersigned authority, on this day personally appeared John L. Hopkins, who upon his oath stated as follows:

1. My name is John L. Hopkins. I am over the age of twenty-one years, of sound mind, have never been convicted of a felony, and suffer from no legal disabilities. I am fully competent to testify to the matters stated herein, which are true and correct and are based upon my personal knowledge.

2. I am the Group President for Business Development for Fluor Corporation where, among other things, I am responsible for investments in new and strategic ventures.

3. Fluor Enterprises, Inc. ("Fluor") is a subsidiary of Fluor Corporation and Fluor Corporation's primary operating subsidiary. Fluor Corporation is a major multinational

engineering, design and construction company traded on the New York Stock Exchange under the symbol "FLR," and a Fortune 125 company with market capitalization in excess of $10 billion.

4. NuScale Power, Inc. ("NuScale") was incorporated in 2007 and is in the early stages of commercializing a modular, scalable 45 megawatt electric light water reactor nuclear power plant (an "SMR"). NuScale estimates that it will cost in excess of $200 million to obtain certification for its SMR design from the Nuclear Regulatory Commission.

5. NuScale negotiated exclusive rights to Oregon State University's ("OSU") nuclear power plant design and use of OSU's test facility through a Patent License Agreement ("PLA") and a Memorandum of Understanding ("MOU"). The technology that OSU licensed to NuScale (along with its financing) is the lifeblood of NuScale's operations, and NuScale is unable to continue developing its modular nuclear reactor without OSU's licenses

6. On January 20, 2011, OSU asserted that its agreements with NuScale were terminated on the grounds that NuScale had ceased to pursue commercialization of the technology following the failure of the MK Entities to provide funds to NuScale for continued operations.. On or about March 1, 2011, the Court granted the Receiver the right to, without further order from the Court, sell property belonging to the MK Entities provided that the Receiver consult "Business Advisors" in connection with the sale of assets valued over $1 million.

7. Fluor first became interested in NuScale as a potential customer for its engineering, procurement and construction services. After learning that there was a potential for an equity investment in NuScale, Fluor entered into a confidentiality agreement with NuScale in April 2011 and commenced preliminary due diligence. Fluor quickly concluded that it would be

necessary to acquire the NuScale interests held by MK Entities, to recapitalize NuScale and to reach an agreement with OSU for NuScale's continued use of OSU's technology, in order to facilitate any significant investment in NuScale by Fluor.

8. By June 2011, Fluor had learned that NuScale had approximately $20,000 in its bank accounts. Fluor understood that NuScale needed a cash infusion to continue operating long enough for Fluor to conduct due diligence and close on a deal, then expected to be in August 2011. As a result, Fluor and NuScale entered into a Secured Promissory Note Purchase Agreement ("June Purchase Agreement") on June 17, 2011. By the terms of the June Purchase Agreement, Fluor committed to provide $2.6 million in cash to NuScale, enough funds to keep NuScale operable until the then expected closing date in August. In consideration for the bridge loan, Fluor demanded, and the Receiver agreed, that Fluor have the exclusive right to negotiate with the Receiver for the sale of the MK Entities interest.

9. By August, NuScale had depleted the funds granted by the June Purchase Agreement. Once again, Fluor and NuScale entered into a Secured Promissory Note Purchase Agreement by which Fluor provided $1.2 million, the amount needed for NuScale to survive until September 30, 2011, the then latest expected closing date. Fluor insisted that the previous exclusivity agreement be revived and extended until the end of September to which the Receiver assented.

10. Fluor expected to acquire the MK Entities's interest in NuScale before the end of September. That timing was critical because the parties understood that NuScale would need another infusion of cash at around that time to stay viable. Without the exclusivity agreement and assurances from the Receiver that he had the authority to effect the sale of the MK Entities' interest in NuScale, Fluor would have never loaned an aggregate of $3.8 million to NuScale.

11. Over the past three months, Fluor has expended substantial management time, resources and effort towards the purchase of the MK Entities' interest in NuScale, the recapitalization of NuScale, agreement with OSU regarding NuScale's use of its technology and additional investment by Fluor in NuScale (the "Recapitalization Transactions"). While Fluor has been working to save NuScale, others have done nothing. Currently, Fluor's out-of-pocket costs in connection with the Recapitalization Transactions are estimated at $1 million.

12. Assuming that the Recapitalization Transactions can be accomplished, Fluor intends to evaluate financing options and develop a financing plan to achieve NuScale's long term financing needs, and has committed resources with the expectation that such long term financing can be achieved.

13. Fluor has negotiated directly with the Receiver to acquire the MK Entities' interests in NuScale. As a result of such negotiations, Fluor and the Receiver have reached an understanding with respect to the terms on which Fluor will acquire such interests and the documentation needed to effect the acquisition is in substantially final form.

14. Fluor has negotiated directly with OSU to obtain the revocation of OSU's termination of the PLA and MOU. As a result of such negotiations, Fluor and OSU have reached an understanding with respect to the terms on which OSU will reinstate NuScale's licenses with OSU and the documentation needed to effect the understanding is in substantially final form.

15. The Receiver has indicated to Fluor that it has conducted a reasonable sales process and that the terms of Fluor's acquisition of the MK Entities' interests in NuScale is superior to any other available transaction. I understand that the Receiver's "Business Advisors"

have also concluded that the Fluor's offer is superior to any other offer and recommended that the Receiver effectuate the sale.

16. On September 7, 2011 Ramon A. Illarramendi, father of Defendant Francisco Illarramendi and previous member of NuScale's Board of Directors, filed a motion requesting that the Court order the Receiver to open a defined due diligence period that would allow Mr. Illarramendi to present an offer from NuScale. On September 12, 2011, Venture Trust Management LLC ("VTM"), intervened in this action requesting that the Court revoke the Receiver's Court-ordained authority to effectuate the sale.

17. As long as Mr. Illarramendi's and VTM's motions remain outstanding, none of the Recapitalization Transactions can occur. If the Recapitalization Transactions do not occur by September 30, 2011, NuScale will exhaust its available cash shortly thereafter and may be required to cease operations, causing substantial financial harm to Fluor and other NuScale investors, including the MK Entities.

FURTHER AFFIANT SAYETH NOT.

SWORN BEFORE ME and subscribed in my presence on this 19th day of September, 2011.

Notary Public in and for the State of South Carolina
My Commission expires January 17, 2017
Mary Caroline Hedden
Notary Public