UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>      Plaintiff,<br><br>v.<br><br>FRANCISCO ILLARRAMENDI and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC,<br>      Defendants,<br><br>MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP,<br>      Relief Defendants. | :<br>:<br>:<br>:<br>:<br>: Civil Action No. 3:11-cv-00078-JBA<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: September 26, 2011<br>:<br>: |

**RAMON ILLARRAMENDI'S REPLY
IN SUPPORT OF MOTION FOR ORDER REQUIRING
A DEFINED PERIOD OF DUE DILIGENCE
PRIOR TO SALE OF NUSCALE POWER, INC.**

Interested Party Ramon A. Illarramendi (RAI) hereby respectfully replies to the Receiver's Opposition Brief and NuScale Power, Inc.'s Opposition to affording a defined period of due diligence prior to the private sale of the controlling ownership interests[1] in NuScale. The Receiver has now publicly identified the proposed purchaser, Fluor Enterprises, Inc. (Fluor), but the Receiver still refuses to disclose publicly the amount that Fluor will pay to the Receiver for

---

[1] The Receiver confirms that the equity portion of the MK Group's Interests in NuScale account for approximately 55.3% of NuScale's issued and outstanding common stock, and approximately 54.8% of NuScale's issued and outstanding Series A Preferred stock, specifically:
    (a) an aggregate of 12.8 million shares of common stock
    (b) warrants to acquire 5.34 million of common stock
    (c) an aggregate of 2,965,705 shares of Series A preferred
    (d) a convertible note having an outstanding principal amount of $10 million.
[Receiver Memo., p. 6]

the controlling ownership interest in NuScale.  Interested parties should be provided with an opportunity to provide a greater return to the Estate.

NuScale's Opposition [p.2] also revealed that a private sale was imminent and confirmed that the purchasing party was Fluor.  The Receiver also confirmed that it had agreed to an "exclusivity period" whereby the Receiver would not negotiate with any other party while Fluor did the necessary due diligence analysis.  Once Fluor had out-maneuvered the Receiver into accepting an exclusivity period, Fluor had no competitors and it is free to offer pennies on the dollar of the value of NuScale.

Indeed, it appears that Fluor is negotiating with NuScale and crafting a transaction that benefits Fluor and NuScale, to the detriment of the Receivership Estate.  For example, NuScale and Fluor both highlight the fact that Fluor is committed to investing $30 million in the commercialization of the NuScale technology.  That piece of proprietary information is freely disclosed to the Court and the public.  However, the $30 million investment would be made AFTER Fluor purchases the NuScale stock from the Receiver.  Thus, the Receivership Estate and the investors whom the Receiver is obligated to protect gain nothing from that $30 million investment.

The focus of the Court's analysis of the proposed sale of NuScale should be on how best that sale maximizes value to the Receivership Estate.  Yet, neither NuScale nor the Receiver disclose the actual price that Fluor will pay to the Receiver for the ownership interest.  The secret price has been set – as the Receiver has represented that the terms for the sale have been determined, but neither Fluor, nor the Receiver are willing to publicly disclose the price.  RAI has pieced together bits of public information and rumors and believes that Fluor's offer will

contribute less than $3 million[2] to the Receivership Estate, less than one tenth the amount of the value that the two "rejected suitors" place on the assets.  The Receiver discusses how Fluor has provided interim financing – to NuScale – and how Fluor will contribute funds to the NuScale after the purchase, but the key issue – how much will Fluor contribute to the Receivership Estate – is not disclosed.  Yet, there is no valid business purpose to keep such a price hidden.

The Receiver has not followed a transparent process with respect to the disposition of the ownership interest in NuScale.  The imminent sale of the Estate's most valuable asset, the NuScale ownership rights, is not being pursued in a manner most beneficial to the Receivership Estate.  The Receiver failed to respond to requests for information about NuScale and failed to give notice to the nuclear industry about the nature and extent of the Estate's ownership interest in NuScale.

RAI raised the lack of transparency in his motion for a defined due diligence period.  RAI asserted that the Receiver's actions were leading to a situation where the valuable NuScale interests were being sold for a fraction of their true value.  Despite the secrecy of the Receiver's actions, RAI was able through industry contacts to raise facts on information and belief about the upcoming sale.  The NuScale opposition brief and the Receiver's opposition brief have now confirmed the facts presented by RAI in his motion.  A private sale is imminent and other parties have been shut out of the process because the Receiver improvidently agreed to an exclusivity period with the one bidder, Fluor.

In a telephone conference on August 28, 2011 among counsel for the Receiver, counsel for RAI, the Receiver, the Receiver's business advisor, and RAI, RAI disclosed the amount of money, $30 million, that he believed he would be able to put together if his investors were given

---

[2]   If RAI's interpretation of the amount to be received by the Receivership Estate is inaccurate, then the Receiver should specify the actual amount it will receive from Fluor.

a defined due diligence period and an opportunity to compete with any other offers. The $30 million would be several times that of the rumored offer currently being entertained. It is no surprise that Fluor and NuScale have now disclosed that Fluor will invest $30 million in the commercialization of NuScale technology because that number matches the amount stated in RAI's conference call. However, RAI's planned purchase of $30 million would be money going to the Receivership Estate, while Fluor's $30 million would be money going to NuScale. This is a comparison of apples and oranges and the Receivership Estate comes out the loser in that comparison. RAI's plans also recognize the need for funds in the commercialization of the NuScale technology, but RAI knows that $30 million is grossly inadequate for such commercialization. Even the Receiver recognized that such investment after the sale of the ownership interest will likely be in the hundreds of millions of dollars [Receiver Memo. p.5] – and that is the amount that RAI envisions investing in the development of NuScale technology.

None of the opposing briefs contested the fact that the NuScale ownership rights were obtained by Michael Kenwood Nuclear Energy (MKN) as a result of a prudent investment of over $25 million in NuScale. Neither the receiver nor NuScale deny that NuScale is widely recognized as perhaps the leading nuclear technology company in the development of Small Modular Reactors (SMR). The SMR technology allows for lower manufacturing and installation costs, higher safety level, reduced financial requirements, and simplicity of design and maintenance. NuScale's SMR is positioned to supply a substantial portion of the future energy market, thereby reducing reliance on coal and oil energy sources and reducing environmental concerns. Yet, the failure of the Receiver to disclose the amount the Estate will receive in the sale is an indication that the proposed sale price is grossly deficient and would be dwarfed by the real value that would be obtained through a more transparent process.

The sale of a significant Estate asset should be a more transparent process than is being followed by the Receiver in the instant case. Consequently, there is no assurance that the sale will bring appropriate value in exchange for the Estate asset. In his rush to unload the NuScale ownership interest, the Receiver has failed to provide information to interested persons and would not appear to be optimizing the value of the investments he is mandated to protect.

Indeed, following RAI's complaints about the imminent sale and the Receiver's improvident exclusivity bargain, another party, Ventures Trust Management, filed with the Court noting that it was willing to invest substantial funds in the NuScale technology.[3] Ventures has since withdrawn that pleading, but its principal has responded to press reports indicating that he plans to clear the path for a new and better offer.[4] A transparent sales process will doubtless bring other substantial offers to the table and will maximize value to the Receivership Estate.

The Receiver argues that if the sale is not completed immediately, Fluor will lose interest and NuScale will suffer. This is nothing more than aggressive "car salesman" talk – "If you don't buy this car today, this offer will expire." NuScale's value is in its technology rights[5] and those rights will not disappear overnight. Contrary to the unsupported warnings of the Receiver, the potential loss of the Oregon State University technology rights incorrectly assumes that Oregon State could frustrate the power of this Court to sell the stock to the highest bidder.

---

[3]   The Receiver refers to RAI and Ventures as "two rejected suitors" for MK Group's interests in NuScale, but RAI and Ventures didn't even have an opportunity to engage in a due diligence analysis before the Receiver entered into an exclusivity agreement with Fluor.

[4] The Oregonian reports that Ventures lead investor stated "that he anticipates another prospective investor with experience in the nuclear industry will soon submit a rival bid to invest in NuScale. Berkman said he has no financial interest in that unnamed investor, but said he withdrew his objections to get out of the way. 'In order to remove any side issues we thought it was prudent to do that,' he said."
http://www.oregonlive.com/business/index.ssf/2011/09/craig_berkman_withdraws_opposi.html

[5]   The Receiver refers to these technology rights as "NuScale's only substantive asset." Receiver Memo. p. 3

Regardless of who owns the stock, Oregon State University would still be working with NuScale and NuScale would retain its rights to the technology.  There are no grounds for speeding a process that puts less than $3 million in the hands of the Receivership Estate when multiple interested parties willing to pay $30 million to the Estate are forced to sit on the sidelines.

As stated in RAI's prior motion, a minimal acceptable offer should at least include all the funding and expenses incurred in the NuScale venture by Michael Kenwood in pursuit of wealth creation for its investors – over $25 million.  The Receiver seems intent on accepting a proposal for less than one fifth of that amount. RAI's motion for the opening of a due diligence process prior to the sale of the NuScale ownership interest, will bring transparency to a process that has been cloaked in secrecy and will bring competition to a situation currently involving private negotiations with a single purchaser at fire sale prices dictated by Fluor with no competition.

Such disparity of treatment among potential offerors and the secret offer purportedly about to be accepted by the Receiver constitute persuasive reasons for opening up the asset sale process and allowing RAI and any interested party that may have been similarly deprived of the necessary information to present a viable offer, to participate in a transparent process with reasonable deadlines and leeway for proper due diligence, that gives a fair opportunity to participate with a level playing field.

To level the playing field for all suitors, this Court should revoke the exclusivity period. To the extent that Fluor has contributed bridge financing during the Receivership, Fluor's loans would be repaid from the purchase price.  Even with such repayment, the amount paid into the Receivership Estate would vastly exceed the amount that would be received from Fluor.  The suitors should be given an appropriate period of due diligence, where RAI and any other heretofore similarly excluded interested party would be able to obtain asset information

necessary to present a firm offer.  The process should be transparent and the investors and claimants are entitled to know before any transaction is completed, the amount that Fluor or any other suitor will pay to the Estate for the transfer of the ownership interest in NuScale.

**WHEREFORE**, Ramon A. Illarramendi respectfully requests that this Court issue an Order mandating the opening of a due diligence period that would allow Mr. Illarramendi to present an offer for the ownership interest in NuScale Power, Inc.

Dated at Hartford, Connecticut this 26th day of September, 2011.

                                            **Interested Party**
                                            **Ramon Illarramendi**

                                            By:     /s/ Frank F. Coulom
                                                  Frank F. Coulom, Jr. (CT 05230)
                                                  ROBINSON & COLE LLP
                                                  280 Trumbull Street
                                                  Hartford, CT 06103-3597
                                                  Tel. No.: (860) 275-8200
                                                  Fax No.: (860) 275-8299
                                                  E-mail:  fcoulom@rc.com

Of counsel:

David H. Dickieson
Schertler & Onorato, LLP
575 – 7th Street, N.W., Suite 300 South
Washington, DC  20004
Telephone: 202-628-4199
Fax: 202-628-4177
E-mail: ddickieson@schertlerlaw.com

-8-

CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Reply in Support of Motion For Order Requiring A Defined Period Of Due Diligence Prior To Sale Of NuScale Power, Inc. was served on all counsel of record, this 26th day of September, 2011, via the Court's ECF system.

                By:    /s/ Frank F. Coulom, Jr.
                        Frank F. Coulom, Jr.