UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Securities and Exchange Commission,<br>    *Plaintiff*, | Civil No. 3:11cv78 (JBA) |
| *v.* | |
| Francisco Illarramendi, *et al.*,<br>    *Defendants,* | |
| *and* | |
| Highview Point Master Fund, Ltd., *et al.*,<br>    *Relief Defendants.* | September 27, 2011 |

RULING ON MOTION FOR ORDER REQUIRING DEFINED PERIOD OF DUE
DILIGENCE PRIOR TO SALE OF RECEIVER ESTATE ASSETS

Non–party Ramon A. Illarramendi ("RAI"), father of Defendant Francisco Illarramendi, moves [Doc. # 328] for an order requiring a defined due diligence period prior to the Receiver's sale of the Michael Kenwood Group's ("MK Group") interest in NuScale Power, Inc. ("NuScale") to Fluor Enterprises, Inc. ("Fluor"), so that RAI can present an offer for the ownership interest in NuScale. For the reasons stated below, RAI's motion will be denied.

I.    Background

NuScale is an Oregon corporation that is commercializing a "modular, scaleable 45 Megawatt electric light water reactor nuclear power plant." (Lorenzini Decl. [Doc. # 346–1] in Supp. of NuScale's Opp'n ¶ 2.) This technology is the subject of patent license agreement ("License Agreement") between NuScale and Oregon State University ("OSU") (*id.*), which is NuScale's only substantive asset (Olson Decl. [Doc. # 353] in Supp. of Receiver's Opp'n ¶ 7). The MK Group has invested approximately $26,000,000 in NuScale through a mixture

of debt and equity investments; the equity portion of its interests in NuScale account for approximately 55.3% of NuScale's issue and outstanding common stock and 54.8% of NuScale's issue and outstanding Series A Preferred stock. (Olson Decl. ¶¶ 8–11.) Following the asset freeze in this case, NuScale has suffered "a significant decrease in value," has run out of funds, has laid off sixty employees, and has been notified by OSU of the termination of the License Agreement. (*Id.* ¶¶ 3–6.)

RAI, who has not been implicated in either the criminal or civil actions pending against his son, claims to have a 50% interest in Michael Kenwood Energy and Infrastructure ("MKEI"). (RAI Mot. ¶ 10.) He further claims that the MK Group's interests in NuScale are held by Michael Kenwood Nuclear Energy ("MKN"), which is a wholly owned subsidiary of MKEI. (*Id.* ¶ 11.) The MK Group's interests in NuScale are not, however, held by MKN, but are instead held by Michael Kenwood Master Investments, LP ("MKMI") and Michael Kenwood Asset Management, LLC ("MKAM"). (Olson Decl. ¶ 8–11.)

NuScale began negotiating with Fluor in June 2011 and received a bridge loan from Fluor, consented to by the Receiver, of $3.8 million. (*Id.* ¶¶ 25–27; Lorenzini Decl. ¶ 4.) Paul Lorenzini, NuScale's co–founder and CEO, avers that NuScale would not have survived without this bridge funding and that with the investment resulting from Fluor's purchase of the MK Group's controlling interest in NuScale, it will have a "stable source of funding and the ability to raise the additional money that will be necessary to meet the company's needs going forward." (Lorenzini Decl. ¶¶ 1,4.) Fluor has agreed to commit at least $30 million to NuScale after purchasing the controlling interest and has worked, alongside the Receiver, to negotiate a settlement with OSU to reinstate the License Agreement; this

settlement is contingent on the Receiver closing the purchase transaction with Fluor.  (*Id.* ¶ 4; Olson Decl. ¶ 28.)

RAI did not express his interest in purchasing the MK Group's ownership interest in NuScale until August 2011.  (RAI Mot. ¶ 23.)  The Receiver gave RAI twenty–four hours to make a bona fide offer to purchase the ownership interest, including supporting documentation to establish the availability of funds and that any proposed purchaser would be legally able to purchase nuclear technology under U.S. export control laws.  (*Id.* ¶ 29; Ex. 1 to Olson Decl.)  RAI was unable to assemble an offer within this time period and the Receiver set up a teleconference with RAI, the Receiver's counsel, and the Receiver's business advisor, Victor Mandel, during which RAI stated that he did not personally control funds that would enable the purchase of the NuScale ownership interest but that unnamed persons, whom RAI has not since identified, would be interested in purchasing the ownership interest.  (*Id.*)  RAI has not provided any documentation of his ability to fund a purchase of the MK Group's ownership interest in NuScale.

Mr. Mandel, the Receiver's business advisor, recommended on July 4, 2011 that the MK Group enter into negotiations with Fluor to consummate Fluor's offer to purchase the ownership interest in NuScale.  (Ex. 3 to Olson Decl.)  On September 17, 2011, he recommended that the Receiver pursue a successful closing of the transaction with Fluor, to the exclusion of expressions of interest by other parties.  (Ex. 4 to Olson Decl.)  Paul Lorenzini, co–founder and CEO of NuScale, believes that Fluor's extensive assets and capitalization would provide NuScale with the funds and credibility needed to compete in the small modular nuclear reactor marketplace.  (Lorenzini Decl. ¶ 4.)  He does not believe that RAI "brings those capabilities."  (*Id.*)  Mr. Lorenzini also believes that it would not be

in NuScale's interest for RAI to have a role at NuScale based on his understanding that if RAI were to again become involved at RAI, OSU would not agree to settle the License Agreement dispute. (*Id.* ¶ 6.) He also understands that NuScale's largest minority shareholder, CMEA Capital, would not consent to a transaction with RAI and believes that RAI would not bring market credibility to NuScale. (*Id.*) Mr. Lorenzini has stated an intent to resign as CEO and "cease all further involvement with the company" if RAI were to have a future role at NuScale and believes that other key managers and engineers would follow suit. (*Id.*)

II.   Discussion

With regard to managing Receivership Property, the June 22, 2011 Amended Order Appointing Receiver [Doc. # 279] states as follows:

> The Receiver may, without further Order of this Court, transfer, monetize, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate. With respect to any asset having a value in excess of $1 million, the Receiver shall consult with one of the Business Advisors and consider his or her opinion with respect to said transaction.

(Am. Order Appointing Receiver ¶ 42.) After consultation with the business advisor, Victor Mandel, the Receiver has determined that, considering the present state of the Receivership Estate, NuScale's needs, its precarious financial position, and the uncertainty and risks posed by any potential RAI purchase, that the sale of the MK Group's ownership interest in NuScale to Fluor is in the best interest of the Receivership Estate and NuScale. The Receiver based this conclusion on the advice of counsel and the business advisor's analysis and investment recommendations, and provided RAI with an opportunity to establish a concrete offer and provide documentation regarding his ability to enter into a purchase agreement

for the MK Group's ownership interest, which he has failed to fully take advantage of. The Receiver has complied with the dictates of the Amended Order Appointing Receiver, and RAI accordingly has no legal basis to obstruct Fluor's purchase of the MK Group's ownership interest in NuScale and is not entitled to an open period of due diligence.

In addition, any period of due diligence would ultimately prove futile because any offer by RAI following such a period could not be superior to Fluor's. First, RAI has never made a concrete offer to purchase the MK Group's ownership interest in NuScale and has not provided any documentation that he would be able to make an offer or that such an offer would exceed the value of Fluor's offer. Second, beyond the ability to make an offer to purchase the ownership interest, any potential purchaser would have to have the capability and financial clout to help extract NuScale from its precarious financial position. Fluor has already provided NuScale with bridge funding, which RAI has neither provided nor demonstrated the willingness to provide, has the assets and capitalization to provide NuScale with a stable source of funding moving forward, has committed to providing NuScale with $30 million, and has helped negotiate the settlement of the License Agreement dispute with OSU. RAI has not demonstrated, nor does he claim, that he can provide the same financial stability to NuScale moving forward.

Third, and perhaps most importantly, parties vital to this transaction and NuScale's future viability are opposed to RAI's purchase of the ownership interest and his potential future involvement with NuScale. OSU has stated that it will not agree to settle its claim concerning the License Agreement with NuScale if RAI again became involved with NuScale. CMEA Capital, NuScale's largest minority shareholder, will not consent to a purchase transaction involving RAI. NuScale itself is also opposed to RAI's efforts to purchase the

majority ownership interest held by the MK Group.  NuScale's CEO, along with other managers and engineers have expressed an intent to resign if RAI has any future role with the company.  Moreover, Fluor's bridge financing ends September 30, 2011 and no additional Fluor funding will be available absent a closing.  RAI has made no showing that the Receiver has failed to proceed on terms proven beneficial to the Receivership Estate, given NuScale's circumstances, and the Court therefore will not hold up the transaction to allow RAI to conduct his due diligence.

III.    Conclusion

For the reasons stated above, RAI's motion [Doc. # 328] for an order requiring a defined due diligence period is DENIED.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of September, 2011.

6