UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

FRANCISCO A. ILLARRAMENDI, and
MICHAEL KENWOOD CAPITAL
MANAGEMENT, LLC,

        Defendants,

MICHAEL KENWOOD ASSET
   MANAGEMENT, LLC,
MK ENERGY AND
INFRASTRUCTURE, LLC,
   And MKEI SOLAR, LP,

        Relief Defendants.

Civil Action No. 3:11-CV-00078-JBA

---

AFFIDAVIT OF JUAN ORELLANA

STATE OF TEXAS       )
                             ) ss.:
COUNTY OF DENTON  )

Juan Orellana, being duly sworn, deposes and says:

1.    I am over the age of eighteen and understand the obligation of an oath.

2.    I am employed in the Collections Department for Mercedes-Benz Financial Services USA LLC f/k/a DCFS USA LLC successor-in-interest to DaimlerChrysler Financial Services Americas, LLC (herein, "MBFS"). As such, and based upon a review of the business records regularly maintained by MBFS, I am fully familiar with the facts surrounding this matter.

3.    I make this affidavit in support of MBFS's Application for relief from the Court's Order Appointing Receiver and Order Freezing Assets (collectively, the "Orders"), issued by the District Court in this matter.

4.    MBFS seeks relief from the Orders only to the extent they prohibit MBFS from taking steps to recover and dispose of certain chattel for which it has a security interest, and, upon information and belief, is presently held by Defendant Francisco A. Illarramendi, a/k/a Francisco Illarramendi, a/k/a Francisco A. Illarramendy (herein "Defendant Illarramendi").

5.    MBFS is in the business of financing the purchase and sale of new and used motor vehicles.

6.    On or about May 2, 2007, Defendant Illarramendi, entered into a Retail Installment Contract (herein, "Contract") with Mercedes-Benz of Greenwich, wherein Defendant agreed to purchase and accept delivery of one (1) 2007 Mercedes Benz ML350 (V.I.N. 4JGBB86E67A252677) (herein, "Collateral") from Mercedes-Benz of Greenwich. A true and accurate copy of the Contract is attached hereto as Exhibit "A".

7.    The Contract was assigned for value to MBFS, who presently holds a first-in-right purchase money security interest in the Collateral. MBFS's interest in the Collateral is reflected in the Certificate of Title for said Collateral, issued by the Connecticut Department of Motor Vehicles. A true and accurate copy of the Certificate of Title is attached hereto as Exhibit "B".

8.    MBFS is the creditor under the Contract and entitled to all rights thereunder.

9.    Pursuant to the terms of said Contract, Defendant Illarramendi agreed to pay MBFS the total sum of $60,117.12, which includes interest at an annual percentage rate of 3.90% and which Defendant agreed to pay in seventy-two (72) regular monthly installment payments of

$834.96, commencing June 16, 2007 and on the 16th day of each succeeding month until fully paid.

10. Pursuant to the Contract, MBFS has the right to repossess the Collateral upon the Defendant Illarramendi's default.

11. The terms of said Contract further provide that in the event it becomes necessary to place the loan with an attorney for collection, Defendant Illarramendi would be responsible for reasonable attorneys' fees, court costs, disbursements and other collection expenses incurred in enforcing Plaintiff's rights under the contract.

12. Defendant Illarramendi is currently in default under the Contract for failure to make the payments due from February, 2011 through the present.

13. The Contract has been accelerated and Defendant Illarramendi presently owes to MBFS the sum of $22,836.88. plus interest thereon from June 20, 2011 at a contractual default rate of 3.90% per annum or such rate as may be permitted by law.

14. MBFS has made demand upon Defendant Illarramendi for immediate turnover of the Collateral, and Defendant has neglected and refused, despite due demand therefore, to turnover the Collateral to MBFS.

15. As a result of Defendant Illarramendi's default, MBFS is entitled to immediate possession of the Collateral. Despite MBFS's entitlement to the Collateral, Defendant has wrongfully maintained control, possession and use of the Collateral.

16. The total reasonable value of the Collateral is $21,525.00, an amount less than the sum duly owed by Defendant Illarramendi under the Contract.

17. Upon information and belief, Defendant Illarramendi is presently in possession, custody or control of the Collateral.

WHEREFORE, your affiant prays for an Order (a) granting MBFS relief from the Court's previous Orders by granting MBFS leave to repossess the Collateral by any lawful means, including repossession or legal action, from Defendant Illarramendi, or any other third parties in possession of the Collateral and to dispose of the Collateral in accordance with MBFS's security interest and applicable state law, and (b) granting such other relief as the Court deems just and proper.

AFFIANT,

*[Notary seal: Rita Barger, My Commission Expires 12/13/2011, State of Texas]*

_____
Juan Orellana

Subscribed and sworn to before me, on this _10_ day of October, 2011.

_____
Rita Barger
Notary Public
My Commission Expires:

4

# EXHIBIT "A"

**CONNECTICUT**
RETAIL INSTALLMENT CONTRACT - Simple Interest   63676

Mercedes Benz Financial
*First Class Financing*®

### Parties

Contract Date: 05/02/2007
Account Number: _____

Creditor/Seller
Name: MERCEDES-BENZ OF GREENWICH
Address: 261 WEST PUTNAM AVENUE
GREENWICH, CT
203-869-2850

Buyer (and Co-Buyer)
Name: FRANCISCO A ILLARRAMENDY
Name: _____
Billing Address: 8 LOCKWOOD AVE
NEW CANAAN   CT   06840
(Include County)

Unless otherwise specified, "you" and "your" refer to the Buyer (and Co-Buyer), and "we" and "us" refer to the Creditor/Seller, listed above in section labeled Parties. The vehicle described below, in the section labeled Vehicle and Trade-in Information, is referred to as "vehicle." After being quoted both a cash ("Cash Price", below) and credit price ("Total Sale Price", below) for the vehicle, you have chosen to buy the vehicle on credit. You agree to the terms and conditions on the front and back of this contract. You also acknowledge delivery and acceptance of the vehicle.

### Type of Retail Installment Contract

[X] Standard   [ ] Balloon Payment   [ ] Walk-Away

You understand that no matter which box is checked above, this contract is not a lease. If the Walk-Away box is checked and you decide to return the vehicle to us as provided in paragraph 14 on the back of this contract: (1) you will owe a disposition fee of $ __N/A__ ; (2) for any miles that the vehicle is driven in excess of __N/A__ miles per year, you will pay an excess mileage charge of $.20 per excess mile; up to 5000 excess miles and $.25 per excess mile for each mile over 5000 excess miles; and (3) you may be charged for excess wear and tear as provided in paragraph 14. The vehicle's current odometer reading is __6__.

### Federal Truth-in-Lending Disclosures

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE E* The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments E* The amount you will have paid after you have made all payments as scheduled. | Total Sale Price E* The total cost of your purchase on credit, including your down payment of: $ 0.00 |
|---|---|---|---|---|
| 3.90 % | $ 6679.70 | $ 53437.42 | $ 60117.12 | $ 60117.12 |

* E means Estimate

Payment Schedule - Your payment schedule will be:

| Number of Payments | Amount of Each Payment | When Payments Are Due [X] Monthly [ ]_____ (Beginning Date of Payment) |
|---|---|---|
| 71 | 834.96 | 06/16/2007 |
|  | N/A |  |
|  | N/A |  |
| +1 Final Payment | Amount of Final Payment | Due Date of Final Payment |
|  | 834.96 | 05/16/2013 |

**Late Charge.** You must pay a late charge on each payment made more than 10 days late. The charge is 5% of the unpaid amount or $10, whichever is less.

**Prepayment.** If you pay off early, you will not have to pay a penalty.

**Security Interest.** You are giving us a security interest in the vehicle being purchased.

**Additional Information.** See the other side of this contract for additional information about security interest, nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### Vehicle and Trade-in Information

**1. VEHICLE DESCRIPTION**

[X] New   [ ] Used   VIN  4JGBB86E67A252677
2007   MERCEDES   ML350
Year   Make   Model
UT
Body Style   No. Cyl.
[ ] CD Player   [ ] Telephone   [ ] Other _____

**2. PRIMARY INTENDED USE**

[ ] Personal   [ ] Commercial   [ ] Agricultural   [ ] _____
If no box is checked, or if Personal box is checked, you agree to use the vehicle for personal, family, or household purposes.

**3. TRADE-IN DESCRIPTION**

N/A   N/A   N/A
Year   Make   Model

### Financing

**4. ITEMIZATION OF AMOUNT FINANCED**

a. Cash Price
  (i) Vehicle (including accessories, delivery, installation charges, if any) ...$ 49962.00
  (ii) Sales Tax ...........................$ 3015.42
  (iii) Service Contract (optional) ...$ N/A
  (iv) _____..........$ N/A
  (v) Cash Price ..............................$ 52977.42

b. Downpayment
  (i) Cash Downpayment ............$ N/A
  (ii) _____...$ N/A
  (iii) Gross Allowance on Trade-in
    $ N/A
  (iv) Pay-off on Trade-in
    $ N/A
  (v) Net Allowance on Trade-in ..............$ N/A
  (vi) Downpayment .......................$ 0.00
    If less than $0, disclose on Line c(i) and enter $0 for the Downpayment.

c. Unpaid Balance of Cash Price ..................$ 52977.42
  (i) Unpaid Trade-in Lien Amount to be Financed ........$ N/A
    Paid to:

d. Other Charges Including Amounts Paid to Others on Your Behalf*
  (i) Paid to Public Officials for:*

### Summary of Insurance and Other Coverages (cont'd.)

**Optional Insurance/Coverage**
Credit life and credit disability insurance end on the original due date of the last payment due under this contract.
[ ] Credit Life                 $ __N/A__
                                Premium
Insurer _____                 Insured(s) _____
Buyer's Signature _____       Co-Buyer's Signature _____

[ ] Credit Disability           $ __N/A__
                                Premium
Insurer _____                 Insured(s) _____
Buyer's Signature _____       Co-Buyer's Signature _____

[ ] Type _____
$ __N/A__
Premium/Cost                    Term
Insurer/Provider                Insured(s)/Beneficiary
Buyer's Signature               Co-Buyer's Signature

[ ] Type __N/A__
$ __N/A__
Premium/Cost                    Term
Insurer/Provider                Insured(s)/Beneficiary
Buyer's Signature               Co-Buyer's Signature

### Signatures

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT.

IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES AND PRIVACY POLICY ON THE BACK OF THIS CONTRACT.

NOTICE TO THE BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT. 3. UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS: (A) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE; (B) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT; (C) TO REQUIRE, UNDER CERTAIN CONDITIONS, A RESALE OF THE PROPERTY IF REPOSSESSED.

X _/s/ signature_                X _____
Buyer Signs                      Co-Buyer Signs

b. Downpayment
  (i) Agreed Downpayment ........$N/A
  (ii) _____ $N/A
  (iii) Gross Allowance on Trade-in
      $ N/A
  (iv) Pay-off on Trade-in
      $ N/A
  (v) Net Allowance on
      Trade-in ........................ $N/A
  (vi) Downpayment ................................................ $ 0.00
    If less than $0, disclose on Line c(i) and enter
    $0 for the Downpayment.

c. Unpaid Balance of Cash Price ................................$ 52977.42
  (i) Unpaid Trade-In Lien Amount to be Financed ........$ N/A
      Paid to:

d. Other Charges Including Amounts Paid to
   Others on Your Behalf*
  (i) Paid to Public Officials for:*
      (a) Other Taxes ..................$N/A
      (b) Filing Fees ....................$N/A
      (c) License Fees ..................$N/A
      (d) Certificate of Title Fees .. $N/A
      (e) Registration Fees ..........$ 165.00
  (ii) Paid to: *_____
      For:_____ $N/A
  (iii) Paid to: *_____
      For:_____ $N/A
  (iv) Paid to: *_____
      For:_____ $N/A
  (v) Paid to: *SELLER
      For: PROCESS FEE ......$ 295.00
  (vi) Paid to Insurance Companies for:*
      (a) Optional Credit Life .......$N/A
      (b) Optional Credit
          Accident & Health ..........$N/A
      (c) Optional N/A
          N/A ..................$N/A
      (d) Optional N/A
          _____ $N/A
  (vii) Subtotal ................................................$ 460.00

e. Amount Financed ...........................................$ 53437.42

*Seller may be retaining a portion of these amounts.

### Summary of Insurance and Other Coverages

**5. REQUIRED VEHICLE INSURANCE**

YOU ARE REQUIRED TO HAVE PHYSICAL DAMAGE INSURANCE. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT. YOU MAY OBTAIN VEHICLE INSURANCE FROM A PERSON OF YOUR CHOICE.

THE INSURANCE, IF ANY, INCLUDED IN THIS RETAIL INSTALLMENT SALE DOES NOT PROVIDE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**6. OPTIONAL CREDIT INSURANCE AND OTHER OPTIONAL INSURANCE OR COVERAGE.**

CREDIT LIFE, CREDIT DISABILITY, GUARANTEED AUTOMOTIVE PROTECTION COVERAGE AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM.

### Signatures

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT.

IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES AND PRIVACY POLICY ON THE BACK OF THIS CONTRACT.

NOTICE TO THE BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT. 3. UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS: (A) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE; (B) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT; (C) TO REQUIRE, UNDER CERTAIN CONDITIONS, A RESALE OF THE PROPERTY IF REPOSSESSED.

X _____  X _____
   Buyer Signs                  Co-Buyer Signs

The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its rights to receive a part of the Finance Charge.

**GUARANTY**

The Guarantor(s) named below absolutely and unconditionally guarantee(s) the full and timely payment of all amounts owed on this contract. This means that if Buyer fails to pay any money that is owed, the Guarantor(s) will pay it. Guarantor(s) shall be liable, both together and separately. Guarantor(s) agree that this Guaranty shall not be affected by any changes to this contract. Guarantor(s) also agree to be liable for all fees and costs, including attorneys' fees, incurred by us in enforcing this contract or this Guaranty.

EACH GUARANTOR ACKNOWLEDGES THE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AND THIS GUARANTY AT THE TIME OF SIGNING.

X _____  X _____
   Guarantor Signs               Guarantor Signs

   Print name                    Print name

   Address                       Address

**SELLER**

By signing below, the Seller accepts this contract and assigns it to ___DC FIN SVCS AMER LLC___ ("Assignee") subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement between Seller and DaimlerChrysler Financial Services Americas LLC. Seller further warrants and represents that Buyer is purchasing the vehicle for Buyer's or Co-Buyer's use.

X MERCEDES-BENZ OF GREENWICH
   Seller Signs
                                CP
                                Title

**INSURANCE VERIFICATION**

Seller (or Dealer) has verified that the insurance coverage described in Section 11 is in force on the date of this contract.

Insurance Policy No.     Policy No.    Insurance coverage verified
                                       Employee of Seller/Dealer please initial

Insurance agent                        Phone number

Address

---

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. THIS NOTICE APPLIES ONLY IF THE GOODS AND SERVICES OBTAINED UNDER THIS CONTRACT WERE OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD USE.

---

**NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.**

**THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE ARE A PART OF THIS CONTRACT.**

**AUTO-PAY DEBIT AUTHORIZATION**

Upon acceptance by DaimlerChrysler Financial Services Americas LLC, its successors and assigns ("Mercedes-Benz Financial"), of this authorization and a properly voided check, preprinted with all the account holder name(s) and address, Mercedes-Benz Financial is authorized by the account holder ("you" or "your") to initiate electronic debit entries or effect a charge by any other commercially accepted means to my account held at the financial institution listed below for the amount of the monthly payment described in my contract with Mercedes-Benz Financial or DCFS Trust dated concurrently with this authorization ("Agreement"). The account number is listed on this form. You authorize and request the financial institution listed on this form to honor such debit entries. In addition, this authorization includes all other amounts due pursuant to the terms of the Agreement, which may vary from the amount of the regularly scheduled payment to an amount exceeding the regularly scheduled payment by $100. You understand that Mercedes-Benz Financial will notify you of any changes in the dollar amount to be debited from your account where the debited amount will exceed the regularly scheduled payment by more than $100. This authorization will remain in force until either Mercedes-Benz Financial or you have received reasonable and advance written notice of cancellation from the other party or until satisfaction in full of all your obligations under the Agreement. Your payment will be deducted on your scheduled due date and will continue up to but not including the last payment due on your account.

Financial Institution Name _____

Financial Institution Address _____

Lessee's Name(s) _____

84-001-5055 CT (1/06)     MBF – ORIGINAL     CUSTOMER – WHITE     DEALER – YELLOW     FILING – GREEN

Name(s) on the Checking/Draft Account _____

Checking/Draft Account Number _____

Account Holder's Signature(s) _____

Date _____

### Payments, Security Interest and Vehicle Treatment

7. **PAYMENT.** You agree to make all payments when they are due. Accepting a late payment or late charge does not change your payment due date. This is a simple interest contract. Your final payment may be larger, or smaller, depending on whether you make payments late or early. Your payments will be applied first to the earned and unpaid part of the Finance Charge, then to the unpaid Amount Financed and then to any other amounts due. The Finance Charge is earned by applying the Annual Percentage Rate divided by 365 to the unpaid Amount Financed for the number of days outstanding. You may prepay your debt without penalty. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, seized, or missing.

8. **LATE CHARGES.** You will pay a late charge on payments, or parts of payments, which are received by us more than 10 days after the scheduled due date. The late charge is shown on the front of this contract. Our acceptance of any late payment or late charge does not change your payment due date or mean that you may keep making payments after they are due.

9. **SECURITY INTEREST.** You give us a security interest in the vehicle and any accessories, equipment, and replacement parts put on the vehicle; all insurance policies and service contracts financed in this contract, and any rebate, refunds, or proceeds that relate to those policies or contracts; proceeds of any insurance policies on the vehicle; and all money or goods received for the vehicle. This security interest secures payment of all amounts you owe in this contract. You agree to ensure that our security interest (lien) on the vehicle is shown on the title.

10. **VEHICLE TREATMENT.** You agree: to maintain the vehicle in good condition; not to misuse the vehicle; to keep the vehicle free from the claims of others; and not to break any laws or otherwise expose the vehicle to confiscation. You agree that without our written consent you will not: transfer your equity in the vehicle; sublease or rent the vehicle; or take the vehicle outside the United States for more than 30 days. You agree to notify us of any change of address where the vehicle is kept.

### Insurance

11. **REQUIRED PHYSICAL DAMAGE INSURANCE.** You agree to maintain physical damage insurance, acceptable to us that insures you and us against loss or damage to the vehicle, during the term of this contract. You may obtain coverage from any insurance company you choose. We must approve the type and amount of the insurance. You agree to give us written proof of such insurance coverage. Whether or not the vehicle is insured, you must pay for the vehicle if it is lost, damaged, seized, or destroyed. We may receive and sign your name on any settlement, draft, or check representing payment made by an insurance company for a loss related to the vehicle.

### Default

12. **DEFAULT.** You will be in default and we may terminate this contract early if: (a) you have given false or misleading information on your credit application; (b) you do not make a payment when it is due; (c) a lien or other claim is made against this contract or the vehicle; (d) a bankruptcy petition is filed by or against you; (e) the vehicle is seized by any local, state or federal government or authority; (f) you alter or fail to repair or maintain the vehicle as required; (g) you do not maintain the required insurance coverage; (h) you do not comply with any of the contract terms; and/or (i) you breach any promise, representation or warranty you have made in this contract.

You agree to be liable, to the extent allowed by law, for reasonable attorney fees, not to exceed 15% of the unpaid balance of this contract, and costs incurred by us as a result of your default. Regardless of any language to the contrary, you are only liable for reasonable attorney fees if we hire an attorney that is not one of our salaried employees.

If you default, we may:

Require you to pay the unpaid Amount Financed, the earned and unpaid part of the Finance Charge, and all other amounts due; sue you to collect the amount you owe; without the use of force or other breach of the peace, enter or have anyone we choose enter the premises where the vehicle may be and, lawfully repossess (take back) the vehicle, including equipment and accessories; take goods found in the vehicle and hold them for you for 30 days, and if you do not claim the goods during that period, we can dispose of them and have no liability to you; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this contract and apply the refunded premium/cost to your outstanding balance.

If we repossess the vehicle, and we are not precluded by law, we will send you a notice stating that you may redeem the vehicle and the amount needed to redeem. To redeem the vehicle, you must pay us the net amount owed under the contract plus all collection and legal costs, including reasonable attorney fees as provided above and court costs, to the extent permitted by applicable law. You may redeem the vehicle until we sell it. If you do not redeem the vehicle, we may sell it or otherwise dispose of the vehicle. The net proceeds (the money from the sale, less allowed expenses) will be subtracted from the amount you owe us. The allowed expenses are those expenses, fees, and all legal costs that we are entitled to by law as a result of any lawful activity to obtain possession of, recondition, store and dispose of the vehicle after default. If the aggregate cash price of the motor vehicle was greater than $2,000 when you entered this contract, and the amount from the sale of the vehicle is not enough to cover the amount you owe us, you will pay us the lessor of: (i) the difference between what you owed us and the vehicle's Fair Market Value (FMV), plus interest; or (ii) the difference between what you owe us and the amount we received from the sale of the vehicle, plus interest. The FMV is determined in accordance with applicable law. If, after we apply the net proceeds to what you owe, there is money left, we will pay it to you.

### Balloon Payment and Walk Away

13. **BALLOON PAYMENT CONTRACT.** The information in this section 13 applies only if this contract is a balloon payment contract, as indicated on the front of this contract by a check in the box next to "Balloon Payment" in the Type of Retail Installment Contract section.

### Walk Away (cont'd.)

30 days written notice before the due date and to arrange a convenient time and place for us or our agent to inspect the vehicle. We will inspect the vehicle and determine if you owe us any amounts for excess mileage and for wear and tear.

Excess mileage is any mileage in excess of the total annual miles disclosed on the front of the contract. You agree to pay us an excess mileage charge in the amount stated on the front of this contract.

Excess wear and tear includes, but is not limited to, the following: broken glass, damage to the body, fenders, metal work, lights, trim or paint; missing equipment; torn, damaged or stained dash, floor covers, and seats; tires with less than 1/8 inch tread; unmatched tires; and any other significant damage or condition.

You agree to pay us the amount of wear and tear that we determine. If you disagree with our amount, you may get an estimate of the wear and tear from a factory-authorized dealer. If you get an estimate, the amount of the wear and tear that you agree to pay will be the lesser of our assessed amount or the amount of such estimate.

You agree to return the vehicle to us at Creditor's place of business shown on the front of the contract along with the Certificate of Title and any other papers or documents appropriate to transfer title no later than the due date of the final payment. You must also pay us the disposition charge, any excess mileage charges, any wear and tear charges, and any other amounts owed under this contract.

### Additional Information

15. **WARRANTIES.** If the vehicle is for personal use and we, or the vehicle's manufacturer, extend a written warranty or, within 90 days from the date of the contract, extend a service contract, you get the implied warranties of merchantability and fitness for a particular purpose covering the vehicle. Otherwise, you agree there are no such implied warranties.

16. **ASSIGNMENT.** You understand that this contract will be assigned to Assignee. Assignee will acquire all of our interest in this contract and in the vehicle including the right to receive all payments.

17. **GENERAL.** Unless otherwise provided in this contract: (i) any change to this contract must be in writing and signed by all parties; (ii) notice to you is sufficient if mailed to your last address known by us; and (iii) if any part of this contract is found to be unenforceable, that part will be severed from this contract and the remainder of this contract will be given full force and effect. If there is more than one Buyer, their obligation shall be joint and several. Any delay or omission by us in enforcing our rights shall not act as a waiver. Section headings in this contract are for convenience of reference only and are not part of the contract for any other purpose. We may assign our rights and obligations under this contract to anyone at anytime without first notifying you. To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.

18. **DEFERRED PAYMENTS.** Any change to this contract must be in writing and signed by all the parties, however, if permitted by law, extensions, deferrals and due date changes may be agreed to orally by you and us, and we will send you a written confirmation of our agreement. Interest will continue to accrue until the next payment is received. Any deferral would not extend any purchased insurance coverage you have.

19. **POWER OF ATTORNEY.** You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney-in-fact. Your grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations you owe under this contract are paid in full. As your attorney-in-fact, we can: sign on your behalf all Certificates of Ownership, Registration Cards, applications, affidavits or any other documents required to register and properly perfect our security interest in the vehicle; transfer your entire interest in the vehicle as part of a repossession and sale or after a Return of Vehicle (see paragraph 14.C.); act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this contract, and apply the refunded premium or cost to your outstanding balance if you are in default.

20. **GOVERNING LAW.** This contract shall be governed by the laws of the State of Connecticut except, if the vehicle is repossessed, then the law of the state where the vehicle is repossessed will govern the repossession. Repossession effected through legal process will be governed by the laws of the state in which such process is brought.

### Important Arbitration Disclosures

21. **ARBITRATION.** The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

   1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.

   2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial.

   3. You agree to give up any right you may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others.

   4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit.

   5. Other rights that you and/or we would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this contract, this section or the arbitrability of any issue), between you and us or any of our employees, agents, successors or assigns, which arises out of or relates to a credit application, this contract, or any resulting transaction or relationship arising out of this contract shall, at the election of either you or us, or our

to the extent permitted by applicable law. You may redeem the vehicle until we sell it. If you do not redeem the vehicle, we may sell it or otherwise dispose of the vehicle. The net proceeds (the money from the sale, less allowed expenses) will be subtracted from the amount you owe us. The allowed expenses are those expenses, fees, and all legal costs that we are entitled to by law as a result of any lawful activity to obtain possession of, recondition, store and dispose of the vehicle after default. If the aggregate cash price of the motor vehicle was greater than $2,000 when you entered this contract, and the amount from the sale of the vehicle is not enough to cover the amount you owe us, you will pay us the lesser of: (i) the difference between what you owed us and the vehicle's Fair Market Value (FMV), plus interest; or (ii) the difference between what you owe us and the amount we received from the sale of the vehicle, plus interest. The FMV is determined in accordance with applicable law. If, after we apply the net proceeds to what you owe, there is money left, we will pay it to you.

### Balloon Payment and Walk Away

**13. BALLOON PAYMENT CONTRACT.** The information in this section 13 applies only if this contract is a balloon payment contract, as indicated on the front of this contract by a check in the box next to "Balloon Payment" in the Type of Retail Installment Contract section.

You may owe us more or less than the amount of the final payment if you did not make your payments as scheduled.

When the final payment is due (the amount and the due date are shown on the front) you may either (i) pay us the final payment and any additional amounts that you owe us, in cash, and keep the vehicle; or (ii) pay us any additional amount that you owe us in excess of the final payment and refinance the final payment with us, at the then prevailing rates, terms and conditions, as long as you are not in default or have not received a bankruptcy discharge of your legal obligation to pay. If you choose to refinance the final payment, you agree to give us 30 days written notice before the due date and provide proof of current acceptable vehicle insurance. You must apply the proceeds of the refinance to the final payment.

**14. WALK AWAY CONTRACT.** The information in this section 14 applies only if this contract is a walk away contract, as indicated on the front of this contract by a check in the box next to "Walk Away" in the Type of Retail Installment Contract section.

You may owe us more or less than the amount of the final payment if you did not make your payments as scheduled.

A. You have the following options to satisfy your final payment when it is due (the amount and the due date are shown on the front):

  1) Return the vehicle to us and pay us any additional amounts due (see C. below);

  2) Pay us the final payment and any additional amounts that you owe us, in cash, and keep the vehicle; or

  3) Pay us any additional amount that you owe us in excess of the final payment and refinance the final payment with us and keep the vehicle (see B. below).

B. **Refinance Final Payment.** You may pay us any additional amount that you owe us in excess of the final payment and refinance the final payment with us, at the then prevailing rates, terms and conditions, as long as you are not in default or have not received a bankruptcy discharge of your legal obligation to pay. You agree to give us 30 days written notice before the due date and provide proof of current acceptable vehicle insurance. You must apply the proceeds of the refinance to the final payment.

C. **Return of Vehicle.** You must (i) return the vehicle to us along with the title and any other required papers; (ii) pay us any additional amount that you owe us in excess of the final payment; (iii) pay us a disposition charge in the amount stated on the front of this contract; and (iv) pay us any other charges for excess wear and tear and excess mileage. You agree to give us

---

affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.

2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial.

3. You agree to give up any right you may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others.

4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit.

5. Other rights that you and/or we would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this contract, arbitration section or the arbitrability of any issue), between you and us or any of our employees, agents, successors or assigns, which arises out of or relates to a credit application, this contract, or any resulting transaction or relationship arising out of this contract shall, at the election of either you or us, or our successors or assigns, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of the American Arbitration Association, or its successor, which may be obtained by mail from the American Arbitration Association, Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or the Internet at http://www.adr.org/, or the applicable rules of the National Arbitration Forum, or its successor, which may be obtained by mail from The Forum, P.O. Box 50191, Minneapolis, Minnesota 55405-0191, or on the Internet at http://www.arbitration-forum.com.

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. Unless the rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent you from requesting that the applicable arbitration entity reduce or waive your fees, or that we voluntarily pay an additional share of said fees, based upon your financial circumstances or the nature of your claim.

This contract evidences a transaction involving interstate commerce. Any arbitration under this contract shall be governed by the Federal Arbitration Act (9 USC 1, et seq.). Judgment upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both you and Creditor and Creditor's successors and assigns retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

If any clause within this Arbitration section, other than clause 3 or any similar provision dealing with class action, class arbitration or consolidation, is found to be illegal or unenforceable, that clause will be severed from this Arbitration section, and the remainder of this Arbitration section will be given full force and effect. If any part of clause 3 or any similar provision dealing with class action, class arbitration or consolidation is found to be illegal or unenforceable, then this entire Arbitration section will be severed and the remaining provisions of this contract shall be given full force and effect as if the Arbitration section of this contract had not been included in this contract.

---

**NOTICE: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

The preceding NOTICE applies if the vehicle is a used vehicle as shown on the front of this contract and if this contract is a contract of sale under the FTC Used Motor Vehicle Trade Regulation Rule.

---

### PRIVACY POLICY
### OF DAIMLERCHRYSLER FINANCIAL SERVICES AMERICAS LLC/MERCEDES-BENZ FINANCIAL/DCFS TRUST

**Categories of Information We Collect**
We collect nonpublic personal information about you from the following sources:
- Information we receive from you on applications and other forms
- Information about your transactions with us, our affiliates, or others; and
- Information we receive from consumer reporting agencies and other outside sources.

**Categories of Information We Disclose**
We may disclose all of the information that we collect, as described above.

**Categories of Affiliates and Third Parties to Whom We Disclose Information About Current and Former Customers**
We may disclose all of the information that we collect, which relates to our transactions or experiences with you, among our affiliated companies. Companies, which are affiliated with us, include any company that controls us, any company we control, or any company under common control with us. In other words, it is any company that is in our "family of companies."

We may disclose all of the information that we collect, as described above, to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

We may also disclose all of the information that we collect, as described above, with other nonaffiliated third parties as permitted by law.

**Opting Out of Disclosure**
Because we only disclose information to nonaffiliated third parties as permitted by law or through a joint marketing agreement, opt outs of such disclosures are not required.

**Policies and Practices to Protect the Confidentiality and Security of Nonpublic Personal Information**
We restrict access to nonpublic personal information about you to those employees, outside contractors, and businesses which jointly market our products and services, who need or may need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to protect your nonpublic personal information.

**Privacy Policy Changes and Future Disclosures**
We may from time to time change our Privacy Policy. Therefore, we reserve the right to disclose any and all information to our affiliates and other nonaffiliated third parties as permitted by law.

---

To contact Mercedes-Benz Financial about this account call: 1-800-654-6222.

**NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.**

84-001-5055 CT (1/06)

**EXHIBIT "B"**

# CERTIFICATE OF TITLE



## STATE OF CONNECTICUT
### DEPARTMENT OF MOTOR VEHICLES

| VEHICLE IDENTIFICATION NUMBER (VIN) | YEAR | MAKE | MODEL | BODY STYLE | CYL. | NEW/USED |
|---|---|---|---|---|---|---|
| 4JGBB86E67A252677 | 2007 | MERZ | ML350 | ST WAG | 06 | NEW |

| TITLE NUMBER | DATE OF ISSUE | PRIOR TITLE NUMBER | PRIOR TITLE STATE | PURCHASE DATE | ODOMETER READING |
|---|---|---|---|---|---|
| 030411194 | 05/31/2007 | | | 05/05/2007 | 000006 |

**OWNER(S):**
ILLARRAMENDY FRANCISCO A
8 LOCKWOOD AVE
NEW CANAAN    CT 06840

**FIRST LIENHOLDER:**
DC FIN SVCS AMER LLC
PO BOX 997530
SACRAMENTO    CA 95899--753

**DATE OF LIEN:** 05/05/2007

**SECOND LIENHOLDER:**

**DATE OF LIEN:**

### RELEASE OF LIENS

**FIRST LIEN INTEREST IN DESCRIBED VEHICLE IS HEREBY RELEASED**

NAME

AUTHORIZED SIGNATURE    DATE RELEASED
X

**SECOND LIEN INTEREST IN DESCRIBED VEHICLE IS HEREBY RELEASED**

NAME

AUTHORIZED SIGNATURE    DATE RELEASED
X

SB0604 REV. 04/07

DC FIN SVCS AMER LLC
PO BOX 997530
SACRAMENTO    CA 95899--753

The Commissioner of Motor Vehicles hereby certifies that an application for a certificate of title for the motor vehicle described herein has been duly filed, pursuant to the provisions of the laws of the State of Connecticut, and based on the statements of the applicant and the records on file with this agency. The applicant named is the owner of said vehicle. The Department of Motor Vehicles further certifies that the vehicle is subject to any security interests shown herein.

IN WITNESS WHEREOF, I have affixed my hand.

*Robert M. Ward*

COMMISSIONER OF MOTOR VEHICLES

VEHICLE IDENTIFICATION NUMBER (VIN)    TITLE NUMBER

VOID IF ALTERED