UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BOSTON REGIONAL OFFICE
33 Arch Street, Boston, MA  02110



**DIVISION OF**
**ENFORCEMENT**

**Telephone:  (617)-573-8941**
**Email: kellyru@sec.gov**

November 7, 2011

Via ECF

The Honorable Janet Bond Arterton
United States District Court
District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, CT  06510

Re:  SEC v. Illarramendi, et al., 11-cv-78 (JBA)

Dear Judge Arterton:

Following the conference with the court on October 18, 2011, the parties conferred in an attempt to reach consensus on a scheduling and discovery plan in this case.  The parties and the Receiver were unable to reach agreement on such a plan and accordingly, present alternative proposals for your Honor to consider.  The court has already set a schedule for the completion of briefing on the Relief Defendants' motion to dismiss, which will be complete in December 2011. In general, the parties also agree that, following the claims bar date on December 30, 2011, the Receiver will issue a report on the Receivership's assets and liabilities on January 30, 2012, and an initial report addressing the development of the shortfall in the reported assets of the various MK and Highview entities controlled by defendant Illarramendi and others by February 15, 2012.  The parties disagree, however, on whether document discovery concerning the Receiver's investigation should begin before the Receiver issues his February 15, 2012 report.

This is an unusual case where the parties acknowledge that the focus of discovery will be the division of remaining assets between investors rather than the allegations of substantive liability articulated in the Amended Complaint.  Given this focus, and the fact that most of the documents that will be subject to discovery are in the Receiver's possession as the result of his control over the Receivership Entities and the investigation that he has undertaken to date, the parties expect that a significant amount of the discovery requests will come in the form of discovery requests by the Relief Defendants to the Receiver.

The Receiver believes it would be more efficient for his report, and all of its supporting documents, to be issued, and then for additional document and deposition discovery to proceed, if necessary.  The Relief Defendants believe it would be more efficient to allow them to engage

1

in document discovery now so that their forensic analysis can proceed in tandem with the Receiver's.  The SEC takes the intermediate position that it would be inefficient to commence discovery until the court has ruled on the Relief Defendants' motion to dismiss.  Because there is a chance that the Court's ruling on that motion may change the parties' positions and interests in this case, it would be most efficient for the Court to issue its rulings before any party incurs the additional expenses associated with discovery.  *See, e.g., Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09-cv-5874, 2009 WL 27770776 (S.D.N.Y. Sept. 1, 2009).  The breadth of the discovery sought by the Relief Defendants also counsels against permitting discovery to go forward absent a ruling that they will remain in this case, while the limited time period of the discovery restriction weighs in its favor.

The Receiver and the Relief Defendants have provided the following additional arguments in support of their positions:

Receiver's Position

In accordance with the Court's direction at the last telephonic court hearing, the Receiver has advised the parties that he anticipates concluding a preliminary analysis of the misappropriation of funds at the various Michael Kenwood ("MK") and Highview Point entities and the commingling of funds among the entities.  He intends to issue a report to the Court and the parties on his findings by February 15, 2012.  The Receiver anticipates that the report filed may enable the parties to conduct more abbreviated discovery and that the report will greatly simplify any forensic efforts undertaken by the Relief Defendants or the SEC, saving all parties and potentially the Receivership Estate significant expenses.  In order to avoid any unnecessary or inefficient expenditure of assets and also the needless diversion of Receivership resources to respond to discovery requests during a critical time in which the Receiver is attempting to complete the preliminary analysis, the Receiver requests that discovery not commence until the later of one week after the filing of the Receiver's preliminary report or the filing of an answer by the Highview Point Master Fund and Offshore Fund (the "HVP Funds").

As the Court is aware from the testimony of Matthew Greenblatt, the assets of the various MK and Highview Point entities were extensively commingled.  Indeed, as this Court observed in its June 16, 2011 opinion, "[t]he Commission's examination of HPMF's and the MK entities' financial records, as presented through Ms. Hussain's and Mr. Greenblatt's testimony demonstrates that as part of Mr. Illarramendi's misappropriation and financial manipulation, HPMF likely received more than $191 million from MKV without having any demonstrable ownership interest in those assets."  *See Ruling on Motion for Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief* (Doc. # 276 at 6).  This $191 million figure does not include the $72 million transferred by STLF to Goldenbird in August 2010 for no equivalent value, of which $50 million was repayment of funds previously transferred to the Highview Point Offshore Fund.  *Greenblatt Testimony* at 165-67.  Notably, this $241 million ($191 million plus $50 million) related to these transactions not only represents significant commingling, but also far outstrips the remaining funds in the HVP Fund account and also the total amount of net principal purportedly invested by investors remaining in the HVP Master Fund as of March 31, 2011 ($164 million according to a schedule provided by Joseph Floyd, who was called as a summary witness by Highview Point Partners ("HPP")).

As this Court has already ruled, "[t]he evidence of fraudulent accounting practices and Mr. Illarramendi's admitted actions and fraudulent transfers support the Commission's claims that Illarramendi used HPMF and its underlying feeder funds to commingle and misappropriate investor funds in order to cover the substantial hole resulting from Mr. Illarramendi's prior trading mishaps."  (Doc #276 at 6.) Indeed, Mr. Illarramendi testified that he treated the various MK and HVP Funds, along with certain "third bucket" entities, as a single source of money.  As Mr. Illarramendi explained to the Court, the "hole" began at Highview Point, and his subsequent fraudulent actions were undertaken in an attempt to conceal the significant undisclosed losses. Thus, the entirety of actions at issue were part of one massive unified fraud. In order to accomplish this concealment, during the execution of the fraudulent scheme, Mr. Illarramendi engaged in a high number of exceedingly complex transactions among the Receivership Entities, the HVP Funds and with various third parties. Many of these transactions are poorly documented, if documented at all, and others are falsely documented in the books and records of the Funds.

Thus, the production of raw documents to the Relief Defendants at this time is unlikely to provide the Funds with the ability to conduct a complete and meaningful forensic analysis. Conducting such a forensic analysis before the Receiver issues his February report will needlessly duplicate the Receiver's efforts, use investor monies to do so, and will likely yield futile results.  In addition, discovery prior to the issuance of the February Report will inefficiently divert Receivership resources from the critical mission of completing the analysis necessary to complete the report.  The Receiver's report will rely not only upon forensic analysis of documents but also on months of witness interviews with Mr. Illarramendi and others.  There is no reason to reinvent the wheel when there is no real prejudice to the Relief Defendants from waiting a short period of time.

Finally, in balancing the equities and efficiencies, the participation, use and culpability of the HVP Funds in the perpetration of Illarramendi's fraudulent scheme cannot be ignored.  The Receiver's ongoing investigation has resulted in the discovery of significant additional evidence that confirms the Commission's allegations that Illarramendi used the HVP funds to execute the fraudulent scheme to which he pleaded guilty and that the fraud originated at and was perpetrated through the HVP Funds.  These funds were of course dominated and controlled by Mr. Illarramendi and the investment advisor HPP.  The involvement of the HVP Funds will be carefully analyzed in the Receiver's February report. As a result, the Relief Defendants' status in this case could change from innocent holder of funds to an active part of the fraud, which would likely change the nature and scope of discovery.  As it stands now, the mounting evidence points to the conclusion that the HVP Funds are fraudulent entities, were an integral part of the Illarramendi unlawful scheme, and should be brought into the Receivership.  This will permit actual investors – who significantly overlap with the investors in MK – to file claims directly with the Receivership, rather than be economically penalized with the cost of relying on an unnecessary secondary investigation and claims process instituted by the HVP funds.

Therefore, the Receiver believes that, while the parties brief the motion to dismiss, he should be allowed to conclude his preliminary analysis and issue a report prior to the commencement of discovery.

Relief Defendants' Position

The Receiver has asked the Relief Defendants to wait to receive documents until he files reports with the Court, now scheduled for no earlier than February 15, 2012.  The Relief Defendants wish to be cooperative, but have legitimate rights as parties and feel a compelling need to begin to prepare their defense.  The Relief Defendants urge the Court to level the playing field by ordering that they be provided with discovery at this time.  As is discussed below, there is no basis for extending the Receiver's monopoly over the evidence in this case.

Mr. Carney is the receiver over the MK Funds and HPP.  Although Mr. Carney is the receiver over HPP, which served as the investment manager of the Highview Funds, he does not represent the Highview Funds, or their interests.  In fact, HPP itself has no assets of substantial value.  Critically, the MK Funds (which are part of the receivership) and the Highview Funds (which are not) have different stakeholders, with divergent interests.  Among other things, the investors in the Highview Funds contributed over $164 million in cash in exchange for their membership interests, which as of March 31, 2011 had a net asset value of about $230 million, while the Relief Defendants understand that the investors in the MK Funds contributed a much smaller amount of cash and a substantial amount of illiquid securities for their membership interests.  Accordingly, a critical issue will arise in this case as to the valuation of the MK investors' in kind contributions.  Another critical issue will be the analysis of which entities (the Highview or MK fund families) paid value and received value in connection with particular transactions.

The Highview Funds need access to the Receiver's documents because the MK Funds' may be in possession of assets that belong to the Highview Funds – a fact that the Receiver would have no interest in demonstrating since he represents the MK Funds' interests but not those of the Highview Funds.  The Highview Funds strongly believe that, as a party to this action, they should be given immediate access to information that would enable them to analyze their potential claims, rather than wait months for, and be dependent upon, a report to be issued by a Receiver who does not represent their interests.  Immediate access to information is particularly important given the Receiver's expressed desire to recover assets through summary proceedings, an approach that the Funds will oppose.

Even accepting the Receiver's contention that the allegedly fraudulent transactions are complicated, Mr. Carney has been the receiver over the MK entities for nearly ten months, and was appointed as the receiver over HPP over four months ago.  Thus, Mr. Carney has had a substantial amount of time to examine the books and records of HPP and the MK entities free from outside scrutiny.[1]  The Relief Defendants, by contrast, have relatively few documents because HPP managed their investment activities on their behalf.

---

[1]     The amount of work done by the Receiver, his counsel and forensic accountants is made evident by the facts that the Baker & Hostetler law firm (in which the Receiver is a partner) has already billed more than $1.6 million to the Receivership estate, while his forensic consultants at FTI have billed an additional $1.3 million, for a total of $3.9 million.

Accordingly, at this time, the Relief Defendants seek all documents in the Receiver's possession as the result of his control over the Receivership Entities and the investigation that he has undertaken to date.  Production of such information should not be burdensome to the Receiver as it will only involve copying information already gathered by him (most or all of which exists in easily transferable electronic form).  Such limited discovery requests are routinely granted at an initial stage of a proceeding, while motions to dismiss are pending, as will be the case here.[2] Review of the documents at this time is essential to the Highview Funds' obtaining an understanding of the transactions at issue, and representing their interests as Relief Defendants in this proceeding.  The Highview Funds are concerned that waiting to commence their initial review until after the Receiver issues his reports (as the Receiver proposes) or the filing of an answer by the Highview Funds will severely and unfairly inhibit the Funds' ability to represent their financial interests in this proceeding, and will unduly delay the distribution of proceeds to the innocent investors/creditors who are the Highview Funds' constituents.  The Funds further propose that within two weeks of the Receiver issuing his reports, the parties should be ordered to propose a second discovery plan to govern the completion of discovery, including, among other things, the taking of depositions.[3]

---

[2] *See In re Bank of Am. Corp. Sec., Derivative, & Employment Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058, 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) (permitting plaintiffs to obtain documents in the beginning stages of the proceeding and during pendency of motions to dismiss where defendants had "already collected, reviewed, and organized the documents for production in other proceedings, and the burden of making another copy for plaintiffs here will be slight"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp.2d 301, 306 (S.D.N.Y. 2002) (permitting plaintiffs to obtain documents during pendency of motions to dismiss in which a related non-party had already produced to other entities, and it was not unduly burdensome).  Although the Private Securities Litigation Reform Act provisions on automatic stays that were at issue in the aforementioned cases are not applicable to this SEC enforcement action, the same logic for permitting limited discovery at this time applies here.  The documents already have been compiled and, thus, it would impose no additional burden on the Receiver to produce them.

[3] In the interests of efficiency and conservation of resources, the Funds proposed a more limited initial discovery plan, which the parties to this litigation have not agreed to.  Under the Funds' proposal, full discovery would be postponed, including, among other things, depositions, until after the Receiver issues (i) his initial report on the Receivership's assets and liabilities on January 30, 2012, and (ii) his initial tracing report on February 15, 2012 (which the Funds note will be more than one year since his appointment as Receiver over the MK Funds).  Pursuant to a more limited plan, the Receiver would produce to the Relief Defendants, on or before December 1, 2011, the following:  (1) copies of all documents and communications relating to the operations of the Relief Defendants -- that is, documents created or held by HPP for or on behalf of the Relief Defendants; (2) documents identifying investors in the MK Funds, the amounts invested by each investor, and the valuation of any in-kind contribution for such investments; and (3) all documentation relating to all inflows and outflows of assets, both to and from the MK Funds, HPP and the Highview Funds.  No further discovery would take place prior to March 1, 2012, two weeks after the Receiver files his tracing report.  At that time, the parties would file another discovery plan with the Court.  Finally, Relief Defendants would limit spending on their forensic accountant, Kinetic Partners US LLP ("Kinetic"), to $500,000, from December 1, 2011 through March 1, 2012, to analyze the documents to be produced by the Receiver on December 1, 2011.  The Relief Defendants would reserve their right to seek consent to spend additional funds on the forensic review prior to March 1, 2012 in the event that it appears that more funds are necessary.  This proposal would not impose any limits on the Relief Defendants' expenditures or the ability of the Relief Defendants to seek discovery to be produced subsequent to March 1, 2012.

The parties believe that a further conference with the Court may be helpful to answer any questions the Court may have concerning the parties' positions.  Thank you for your consideration of this matter.

Sincerely,

Rua M. Kelly
Counsel for U.S. Securities & Exchange Commission

John Carney
Receiver

John Gleason
Counsel for Francisco Illarramendi

Michael Swartz
Counsel for Relief Defendants Highview Point
Master Fund Ltd. and Highview Point Offshore Ltd.

cc: Counsel for all parties via ECF