# EXHIBIT C

Case 3:11-cv-00078-JBA   Document 405-3   Filed 11/14/11   Page 1 of 10

```
 1                    UNITED STATES DISTRICT COURT

 2                       DISTRICT OF CONNECTICUT

 3      * * * * * * * * * *          *
                                     *
 4      SECURITIES AND EXCHANGE      * Case No. 11cv78(JBA)
        COMMISSION,                  *
 5                   Plaintiff,      *
                                     *
 6                vs.                *
                                     *
 7      FRANCISCO ILLARRAMENDI, ET AL * MAY 23, 2011
                                     *
 8                   Defendant.      *
                                     *
 9      * * * * * * * * * * * *      *

10             TRANSCRIPT OF EVIDENTIARY HEARING
                          VOLUME I
11
        BEFORE:  THE HONORABLE JANET BOND ARTERTON, U.S.D.J.
12
        Appearances:
13      FOR THE PLAINTIFF:       RUA KELLY, ESQ
                                 KATHELEEN SHIELDS, ESQ
14                               CARLOS COSTA-RODRIGUES, ESQ
                                 LEEANN GAUNT, ESQ.
15                               United States Security and
                                 Exchange Commission
16                               33 Arch Street
                                 Boston, MA 02110
17
        FOR THE DEFENDANT        JOHN GLEASON, ESQ.
18      FRANCISCO ILLARAMENDI:   Gleason & Koatz
                                 122 East 42nd Street
19                               New York, NY 10168

20
        FOR THE DEFENDANT        CARL LOEWENSON, ESQ
21      HIGHVIEW POINT           Morrison & Foerster
        PARTNERS:                1290 Avenue of the Americas
22                               New York, NY 10104

23      FOR THE DEFENDANT        MICHAEL SWARTZ, ESQ
        HIGHVIEW POINT MASTER    Highview Point
24      FUND, HIGHVIEW POINT     Schulte Roth & Zabel
        OFFSHORE, LTD:           919 Third Avenue
25                               New York, NY 10022
```

Case 3:11-cv-00078-JBA   Document 405-3   Filed 11/14/11   Page 3 of 10
Case 3:11-cv-00078-JBA   Document 259   Filed 05/28/11   Page 26 of 218

26

```
 1   basis for, but your Honor has expressed concern
 2   about sorting through this issue, and we want to
 3   make everyone comfortable the assets are being
 4   protected.  But at some point there is a limit as to
 5   what we think is appropriate cooperation, and the
 6   funds don't feel that they should just completely
 7   subject themselves to whatever the SEC wants to do
 8   with things.  Cooperation and inclusion is one
 9   thing, but they do think, they being Cayman offshore
10   funds, they maintain their separateness in the way
11   the investors have the funds structured.
12               I don't know whether there is a
13   difference at the end of the day whether the account
14   is here or there, but as a matter of sort of Cayman
15   law -- and the Cayman directors feel they have a
16   duty to maintain the assets as they are and they
17   feel they're willing to go as far as they think is
18   appropriate to make the Court comfortable nothing
19   untoward is going to happen in terms of distribution
20   of assets to investors absent court approval, but
21   they see no reason why this Court is better situated
22   than a Cayman court to resolve certain issues,
23   because the MK receiver will have the ability to
24   make arguments to that court and the SEC will have
25   ability to make arguments to that court.
```

Case 3:11-cv-00078-JBA   Document 405-3   Filed 11/14/11   Page 4 of 10
Case 3:11-cv-00078-JBA   Document 259   Filed 05/28/11   Page 31 of 218

31

1  comfortable moving that part of the order forward,
2  too, so the SEC can be comfortable their interest is
3  being protected.
4          MR. BRODSKY:  If your Honor please,
5  again Richard Brodsky for the potential interveners.
6  I do want to put back on the table the suggestion of
7  a recess.  I'm not asking --
8          THE COURT:  I understand.  Here is what
9  I would like to do, though.  I would like to get at
10 least some of our evidentiary work done and then
11 recess for exactly the purpose that you outline.
12         MR. BRODSKY:  Thank you, your Honor.
13         THE COURT:  Okay.  All right.
14         MS. KELLY:  I just wanted to address the
15 arguments on repatriation to just set forth for the
16 Court why the Commission continues to be generally
17 concerned that there seems to be some risk to having
18 the funds stay offshore.  At any time there is a
19 risk that the directors will lose control of the
20 money in Amsterdam.  Notwithstanding the
21 representations of the would-be interveners, there
22 are 40 investors, there is an unknown number of
23 creditors, any of whom could seek to initiate some
24 kind of proceeding, and as counsel for the
25 interveners has already indicated, they've retained

Case 3:11-cv-00078-JBA   Document 405-3   Filed 11/14/11   Page 5 of 10
Case 3:11-cv-00078-JBA   Document 259   Filed 05/28/11   Page 32 of 218

32

1  Cayman counsel, and we imagine other investors may
2  have done the same.  We don't know if it's for the
3  purpose of putting the funds into involuntary
4  bankruptcy proceedings, but it could be, and the
5  risk, from the Commission's perspective, is just too
6  grave.  Even if the percentage is small, the amount
7  of money that could be put at risk is large.
8           And your Honor, most significantly the
9  biggest difference is if the money is in a U.S. bank
10 account in New York, this Court's order is
11 enforceable in New York.  And I don't know what Mr.
12 Curran is talking about with regards to writs in
13 Amsterdam.  Certainly there are procedures that
14 government agencies can follow to try to work with
15 foreign governments, but it is -- it can be
16 inordinately difficult and is not always successful.
17          So we think for the reasons, these
18 reasons, it is crucial to have repatriation as part
19 of any order of this Court, and that's why we've I
20 think been at odds on this issue, your Honor.  And I
21 know the receiver's counsel may be able to address
22 more specifically, as we cannot, the issues that may
23 arise with regard to future claims if the funds are
24 located offshore.
25          THE COURT:  So let me ask you the same

Case 3:11-cv-00078-JBA   Document 405-3   Filed 11/14/11   Page 6 of 10
Case 3:11-cv-00078-JBA   Document 259   Filed 05/28/11   Page 33 of 218

33

```
 1   question I asked Mr. Swartz, and that is whatever is
 2   going to take place in Cayman courts by whatever
 3   entity may seek this involuntary bankruptcy, why
 4   does it matter whether the funds are in Deutsche
 5   Bank Amsterdam or Deutsche Bank New York?
 6              MS. KELLY:  I think specifically because
 7   this Court's order is enforceable in New York and
 8   the freeze order is enforceable in New York.  And I
 9   just can't say with certainty, and again receiver's
10   counsel may be able to address this, whether the
11   Court's order would be honored in the Cayman's or in
12   Amsterdam.
13              MR. SWARTZ:  And, your Honor, just to
14   put a final point on it, I mean, we're not talking
15   about a risk that the funds are dissipated or
16   stolen.  The SEC is essentially arguing the Cayman
17   judicial system shouldn't be respected in terms of
18   its own process and opportunities for parties to be
19   heard.  I think there is absolutely no showing that
20   isn't the case, that this Court shouldn't have
21   confidence that the Cayman court system will do the
22   right thing.
23              THE COURT:  The question is potentially
24   a bit knottier than that, and that is if the Cayman
25   courts functioning appropriately under Cayman law
```

Case 3:11-cv-00078-JBA   Document 405-3   Filed 11/14/11   Page 7 of 10
Case 3:11-cv-00078-JBA   Document 259   Filed 05/28/11   Page 34 of 218

34

```
 1   are headed in a direction that is at odds with what
 2   a U.S. court has done or will do, and so it's not a
 3   matter of not respecting, it's one of those knotty
 4   issues of the international -- of the context that's
 5   international.
 6              MR. SWARTZ:  Yes.  Yes, your Honor.
 7   But, you know, in terms of the case law and the
 8   showing that the SEC has made, they've made no
 9   showing, actually, that there is reason to be
10   concerned that anything inappropriate is going to
11   happen.  I mean, the standards here for injunctive
12   relief, particularly preliminary injunctive relief,
13   are that there is an extraordinary risk to the
14   assets and that there is a risk they may be
15   dissipated, and I don't think that's been shown.  I
16   think they're saying they may not like the way
17   Cayman courts resolves things, and it may not be
18   different than your Honor, but I have no reason to
19   believe the Cayman courts may not take into account
20   whatever order your Honor issues.
21              THE COURT:  So you have a freeze order
22   in place.
23              MR. SWARTZ:  Yes.
24              THE COURT:  And there seems to be a
25   suggestion among counsel that there is a difference
```

```
 1  feeder fund in that all of the investment in the
 2  Highview Point Offshore Fund is within the Highview
 3  Point Master Fund.  So investors will choose to
 4  invest in Highview Point Offshore Fund, but all
 5  their money is invested in Highview Point Master
 6  Fund and further transactions and investments are
 7  made through Highview Point Master Fund.
 8       Q.   So, Highview Point Partners is the entity
 9  in Stamford, but the funds, are those separate legal
10  entities?
11       A.   They're separate legal entities, as we
12  discussed, that are registered in the Cayman
13  Islands.
14       Q.   Do you know from your involvement in this
15  case whether the examination team met on-site with
16  the principals of Highview Point Partners?
17       A.   They did.  They met with both principals
18  and employees.  I understand they were able to meet
19  with Mr. Illarramendi, with Mr. Frank Lopez and with
20  Mr. Christopher Luth as well, in addition to
21  employees at Highview Point Partners.
22       Q.   Did the employees, if you know, include
23  Victor Chong?
24       A.   It did.
25       Q.   Do you know what his role is at Highview
```

```
 1   Honor.
 2               No further questions.  Thank you, Ms.
 3   Hussain.
 4               THE WITNESS:  Thank you.
 5               THE COURT:  All right, Mr. Swartz.
 6               MR. SWARTZ:  Just a couple questions,
 7   your Honor.
 8   CROSS-EXAMINATION
 9   BY MR. SWARTZ:
10        Q.   Good morning, Mr. Hussain.
11        A.   Good morning.
12        Q.   I'm Michael Swartz.  I'm counsel for the
13   Highview Point Master Fund and Offshore Fund.  Ms.
14   Hussain, based on your investigation, you are aware
15   that most of the transactions involving -- on behalf
16   of the Master Fund and the Offshore Fund involved
17   non-U.S. securities and instruments?
18        A.   Yes, I'm aware.
19        Q.   And you are aware most of those non-U.S.
20   securities and instruments were maintained outside
21   the United States?
22        A.   Yes, I'm aware of that as well.
23               MR. SWARTZ:  Thank you.
24        Q.   In fact one more question.  The vast
25   majority of the transactions were in non-U.S.
```

```
 1   securities and instruments, right?
 2       A.   Yes.
 3       Q.   And the vast majority of the instruments
 4   were maintained overseas?
 5       A.   Yes.
 6           MR. SWARTZ:  Thank you.
 7           THE COURT:  Redirect.
 8           MS. KELLY:  Very briefly, your Honor.
 9   REDIRECT EXAMINATION
10   BY MS KELLY:
11       Q.   Ms. Hussain, to the best of your knowledge
12   did the investments of the Master Fund include U.S.
13   treasuries?
14       A.   I believe they did.
15       Q.   Do you have any sense of what the dollar
16   amount was involved?
17       A.   No, I don't remember.
18       Q.   Okay.
19           MS. KELLY:  May I have one moment, your
20   Honor?
21           THE COURT:  Yes.
22           MS. KELLY:  Nothing further, your Honor.
23           MR. BRODSKY:  Your Honor, may I be
24   permitted to cross, recognizing my position as a
25   movant?
```