UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------x
SECURITIES AND EXCHANGE                    :
COMMISSION,                                :
                Plaintiff,       :       Civ. Action No. 11-cv-78 (JBA)
                             :
            - v -                    :
                             :
FRANCISCO ILLARRAMENDI,                    :
HIGHVIEW POINT PARTNERS, LLC and           :
MICHAEL KENWOOD CAPITAL                     :
       MANAGEMENT, LLC,                      :
                             :
               Defendants,       :
      and                                   :
                             :
HIGHVIEW POINT MASTER FUND, LTD.,          :
HIGHVIEW POINT OFFSHORE, LTD.,             :
HIGHVIEW POINT LP,                         :
MICHAEL KENWOOD ASSET                       :
       MANAGEMENT, LLC,                      :
MK ENERGY AND INFRASTRUCTURE,              :
      LLC, and                              :
MKEI SOLAR, LP,                            :
                             :
            Relief Defendants    :
-------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF RELIEF DEFENDANTS HIGHVIEW POINT
MASTER FUND, LTD. AND HIGHVIEW POINT OFFSHORE, LTD.
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..................................................................................................................2

   I.    THE COURT CAN PROPERLY CONSIDER ALL OF THE DOCUMENTS
       ATTACHED TO THE SWARTZ AFFIRMATION ..................................................2

  II.   THE COMMISSION HAS NOT ESTABLISHED THAT SECTION 21(d)(5)
      OF THE EXCHANGE ACT REACHES THE HIGHVIEW OFFSHORE
      FUNDS ...................................................................................................................3

       A.    The Territorial Reach of Section 21(d)(5) Raises a Merits Issue, Not an Issue
            of Subject Matter Jurisdiction................................................................ 3

       B.    Personal Jurisdiction is Irrelevant in Deciding the Territorial Reach of a
            Federal Statute ....................................................................................... 4

       C.    The Commission Flunks the Transaction Test................................................. 5

 III.   THE COMMISSION HAS NOT ALLEGED THAT THE FUNDS LACK A
      LEGITIMATE CLAIM TO THE ASSETS IN THEIR POSSESSION ....................6

       A.    The Commission's SAC Satisfies Only Part One of the Relief Defendant Test,
            And Altogether Fails to Plead Any Facts to Satisfy Part Two of the Test ....... 6

       B.    Value Given to the Alleged Wrongdoer by an Innocent Relief Defendant Is
            Not a Part of the Relief Defendant Test........................................................... 7

       C.    Mix of Legitimate and Illegitimate Assets Lends Further Support that the
            Funds Gave Value in Exchange for the Assets in their Possession ................ 10

CONCLUSION.............................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                     **PAGE(S)**

*In re Banco Santander Securities-Optimal Litig.*,
   732 F. Supp. 2d 1305 (S.D. Fla. 2010) .....................................................................5

*Carnero v. Bos. Scientific Corp.*,
   433 F.3d 1 (1st Cir. 2006) .......................................................................................5

*CFTC v. Walsh*,
   658 F.3d 194 (2d Cir. 2011).............................................................................7, 8, 9

*Janvey v. Adams*,
   588 F.3d 831 (5th Cir. 2009)...........................................................................7, 8, 9

*Morrison v. Nat'l Austl. Bank, Ltd.*,
   __ U.S. __, 130 S. Ct. 2869 (2010) ................................................................3, 4, 5, 6

*New Jersey v. City of New York*,
   283 U.S. 473 (1931) .................................................................................................4

*Phelps v. McDonald*,
   99 U.S. 298 (1878) ..................................................................................................4

*Republic of the Philippines v. Marcos*,
   862 F.2d 1355 (9th Cir. 1988)..................................................................................4

*SEC v. Cavanagh*,
   155 F.3d 129 (2d Cir. 1998)....................................................................................9

*SEC v. Compania Internacional Financiera S.A.*,
   No. 11 Civ. 4904 (DLC), 2011 WL 3251813 (S.D.N.Y. July 29, 2011) ....................4

*SEC v. George*,
   426 F.3d 786 (6th Cir. 2005)...................................................................................9

*SEC v. Goldman  Sachs & Co.*,
   790 F. Supp. 2d 147 (S.D.N.Y. 2011) .....................................................................5

*Sec. Investor Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 285 (Bankr. S.D.N.Y. 2011) .....................................................................7

*Steele v. Bulova Watch Co.*,
   344 U.S. 280 (1952)................................................................................................4

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) .......................................................................5

*Zahourek v. Arthur Young & Co.*,
    750 F.2d 827 (10th Cir. 1984) ..................................................................................5

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(1) ..........................................................................................2, 10

Fed. R. Civ. P. 12(b)(6) ..............................................................................................10

## <u>OTHER AUTHORITY</u>

Brief, Amicus Curiae in Support of Appellees, at *23,
    *Janvey v. Adams*,
    2009 WL 6448943 (5th Cir. Oct. 8, 2009) (Nos. 09-10761, 09-10765) ...................10

The Highview Offshore Funds[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss the Commission's Second Amended Complaint (the "SAC").

## PRELIMINARY STATEMENT

The Funds move to dismiss on two grounds:  (1) Section 21(d)(5) of the Exchange Act does not provide a basis for the Commission to obtain extraterritorial equitable relief against the Funds; and (2) the Court lacks subject matter jurisdiction because the Funds are not proper relief defendants.  The Commission's response to the Funds' motion distorts the applicable law so substantially that it fails to address the key issues that the Funds argue require dismissal of the claim against them.

With regard to extraterritorial relief, the Commission side steps the Funds' contention that Section 21(d)(5) has no extraterritorial reach.  The Commission seeks to re-frame the issue as whether the Court has the inherent power to order equitable relief over a party over which it has personal jurisdiction.  Of course it does.  But that argument begs the question of whether the Funds are proper parties, and whether Section 21(d)(5) provides a basis for relief in this action.  As discussed below, although the Commission has predicated its claim against the Funds' exclusively offshore transactions on Section 21(d)(5) of the Exchange Act, it has not—and cannot—demonstrate that Section 21(d)(5) applies extraterritorially.

With regard to the relief defendant issue, the Commission asserts that the Funds had no legitimate claim to the assets in their possession because those assets allegedly include proceeds of fraud.  But, all relief defendant cases, by definition, involve the receipt of proceeds of fraud.  The relief defendant issue typically turns on whether the relief defendant received the

---

[1]      Capitalized terms used and not defined herein have the meaning attributed to them in the Memorandum of Law in Support of Motion to Dismiss of Relief Defendants Highview Point Master Fund, Ltd. and Highview Point Offshore, Ltd., dated November 14, 2011 (hereinafter cited as "Funds' Mem.").

proceeds gratuitously, or whether the relief defendant gave some form of value as consideration in exchange for the proceeds.  In the cases relied on by the Commission that apply the law of this circuit, the relief defendant received ill-gotten funds as a gift (or otherwise gave no value in exchange for the ill-gotten funds), and they were therefore found to be proper relief defendants. That is not the case here.  Thus, the Commission's fifth claim for relief, which is the only claim asserted against the Highview Offshore Funds, must be dismissed.

## **ARGUMENT**

### I.   **THE COURT CAN PROPERLY CONSIDER ALL OF THE DOCUMENTS ATTACHED TO THE SWARTZ AFFIRMATION**

The Court should reject the Commission's request to exclude the Swartz Affirmation, and Exhibits A through D, attached thereto.  (*See* Opp'n Br. at 4.)[2]  The Court can consider those documents for the reasons set forth in the Funds' opening brief.  (Funds' Mem. at 6-7.)  The Commission does not explain the basis for its objection to Exhibits A, C, and D.[3] With respect to Exhibit B (the Dakers Declaration), the Commission objects for the first time[4] on grounds of hearsay and relevance.[5]  (Opp'n Br. at 4-5.)  However, the only hearsay statement from the declaration the Commission identifies ("The Board never authorized the Investment Manager to engage in any fraud"), ( *id.* at 5),  is based on the personal knowledge of Dakers,

---

[2]      Citations to "Opp'n Br." refer to the Commission's Opposition to Motion to Dismiss by Relief Defendants Highview Point Master Fund, Ltd. and Highview Point Offshore, Ltd., dated December 6, 2011.

[3]      The Court may take judicial notice of Exhibit A, which contains public corporate records that show the Funds are registered in the Cayman Islands and subject to regulation by CIMA (a Cayman Islands regulatory authority); those facts are not subject to reasonable dispute.  (*Id.* at 3 n.4.)  Further, the Court may also take judicial notice of transcripts containing party admissions.  (*Id.* at 6-7.)  Exhibits C and D are excerpts from the TRO hearings containing party admissions that the Funds were engaged in foreign (not domestic) transactions.  (*Id.* at 4 n.8, 5 n. 10.)  Thus, conversion of the Funds' motion to dismiss to one for summary judgment would be inappropriate.

[4]      The Commission did not raise any objection to the Dakers Declaration during the TRO proceedings.

[5]      The Funds expressly stated that the Dakers Declaration is offered only in connection with their Rule 12(b)(1) motion to dismiss.  (Funds' Mem. at 3 n. 7.)  There is no dispute that in deciding a Rule 12(b)(1) motion to dismiss, the Court may consider affidavits, such as the Dakers Declaration.

who is a member of the Funds' Boards of Directors, and thus, is not hearsay. (Ex. B., ¶ 4).[6] The

Dakers Declaration is relevant because it undermines the Commission's argument that the Funds

lack a legitimate claim to the assets by providing a basis for the Funds' ownership interests.

## II.   THE COMMISSION HAS NOT ESTABLISHED THAT SECTION 21(d)(5) OF THE EXCHANGE ACT REACHES THE HIGHVIEW OFFSHORE FUNDS

The Commission's assertion that "the Funds concede that *Morrison* is not

dispositive of the outcome of the case, and the Funds do not argue that they are not subject to the

jurisdiction of this Court," is wrong. (Opp'n Br. 14.) *Morrison* is indeed dispositive because if

Section 21(d)(5) has no extraterritorial application, then the Commission's fifth claim for relief

must be dismissed. *See Morrison v. Nat'l Austl. Bank, Ltd.*, __ U.S. __, 130 S. Ct. 2869 (2010).

Further, although the Funds have conceded that they are subject to personal jurisdiction, subject

matter jurisdiction is lacking because the Funds are not proper relief defendants.

### A.   The Territorial Reach of Section 21(d)(5) Raises a Merits Issue, Not an Issue of Subject Matter Jurisdiction

The Commission, improperly conflating the merits issue raised in *Morrison* and

subject matter jurisdiction, argues strenuously (and erroneously) that jurisdiction over the Funds

is derivative of the Court's jurisdiction over the defendants' alleged misconduct that "occurred in

the United States." (*See* Opp'n Br. at 5, 7, 12.) Yet, the Commission provides no case law to

support that argument. Contrary to the Commission's unsupported assertion, the *Morrison* Court

expressly stated that the territorial reach of a statute is not a matter of subject matter jurisdiction,

but a merits issue (*i.e.*, whether Section 21(d)(5) provides a basis for extraterritorial equitable

relief). *See Morrison*, 130 S. Ct. at 2873 (territorial reach of statutory provision is merits

question, while subject matter jurisdiction refers to a court's power to hear a case). Thus, the

---

[6]     Citations to "Ex." refer to Exhibits to the Affirmation of Michael E. Swartz, dated November 14, 2011.

Court's subject matter jurisdiction over the substantive violations alleged in the SAC does not

insulate the Commission from the holding in *Morrison*.[7]

> ## B. Personal Jurisdiction is Irrelevant in Deciding the Territorial Reach of a Federal Statute

> The Commission incorrectly asserts that, because "the Funds are 'present' in the

U.S. for purposes of personal jurisdiction, any order of the Court directed at them is not an

'extraterritorial' exercise of the court's equitable authority under Section 21(d)(5)." (Opp'n Br.

at 10.) That is, quite obviously, not the law. A court cannot exercise its equitable authority over

each and every party over which it has personal jurisdiction. Rather, the court's exercise of its

equitable powers must be predicated on the claim made against a particular party. Significantly,

the cases cited by the Commission to show the far reach of the Court's inherent equitable powers

all involved defendants accused of wrongdoing (Opp'n Br. at 10-11), rather than relief

defendants accused of nothing.[8] Further, the Commission did not bring its fifth claim for relief

pursuant to the Court's inherent equitable powers. Rather, it brought its claim pursuant to a

provision of the Exchange Act—Section 21(d)(5). Having done so, the burden is on the

Commission to demonstrate that Section 21(d)(5) provides a basis for relief. As set forth below,

the Commission has failed to meet that burden.[9]

---

[7]      The Commission argues that the Funds are "asking this Court to apply the presumption against extraterritoriality *only* as to the equitable claims under Section 21(d)(5)—but *not* as to the substantive claims brought under Section 10(b) and/or Section 206." (Opp'n Br. at 12.) That is incorrect. As the Commission concedes, the Funds have no standing to challenge "the first four claims brought under the Exchange Act and the Advisers Act" because those claims are not asserted against the Funds. (*Id.*) Indeed, the Funds' motion to dismiss appropriately does not address those claims.

[8]      *See, e.g., Steele v. Bulova Watch Co.,* 344 U.S. 280 (1952) (defendant allegedly engaged in trade-mark infringement and unfair competition); *Republic of the Philippines v. E. Marcos, et al.*, 862 F.2d 1355 (9th Cir. 1988) (defendant allegedly violated RICO); *New Jersey v. City of New York*, 283 U.S. 473 (1931) (defendant actively dumping noxious materials into the ocean); *Phelps v. McDonald*, 99 U.S. 298 (1878) (defendant, who was declared bankrupt, allegedly assigned assets that he had no valid title to); *SEC v. Compania Internacional Financiera S.A.*, No. 11 Civ. 4904 (DLC), 2011 WL 3251813 (S.D.N.Y. July 29, 2011) (defendant allegedly engaged in insider trading).

[9]      Although the Commission argues that *Morrison* and the presumption against extraterritoriality apply only to statutes governing conduct, it provides absolutely no authority in support of that argument. The Funds offered

**C.      The Commission Flunks the Transaction Test**

The Supreme Court, in *Morrison*, articulated an explicit test to determine whether the Exchange Act applies extraterritorially—a transaction test.  *Morrison*, 130 S. Ct. at 2886. Under the transaction test, the Commission must expressly allege that its claims under the Exchange Act pertain to domestic (not foreign) transactions.[10]  *Id.*; *see also SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 159 (S.D.N.Y. 2011)[11] ("the SEC bears the burden of alleging . . . note purchases were domestic transactions.").  It has not done so.

In a misleading attempt to satisfy the transaction test, the Commission points to domestic transactions involving the domestic feeder fund (not the Highview Offshore Funds) to give the impression that it has alleged domestic transactions against the Funds.  (Opp'n Br. at 6.) According to the Commission, defendants Illarramendi and HPP "sold shares in the U.S. based-Highview domestic fund (HPLP) to U.S. investors," and those sales were "entirely domestic transactions."  (*Id.*)  Indeed, the Commission concedes that "HPLP is a domestic hedge fund and is not one of the Funds filing the instant motion."  (*Id.* at 1 n.1.)  That concession is fatal to the Commission's claim, as the Commission identifies no domestic transaction involving the Highview Offshore Funds.

---

two cases that are instructive to demonstrate that courts apply the presumption both in law and in equity. *See, e.g., Carnero v. Bos. Scientific Corp.*, 433 F.3d 1, 18 (1st Cir. 2006) (presumption applies to injunctive relief sought in connection with whistleblower claim); *Zahourek v. Arthur Young & Co.*, 750 F.2d 827, 829 (10th Cir. 1984) (equitable nature of claim does not bring it outside of the presumption against extraterritoriality).  The Commission criticizes those cases because their underlying statutes are not precisely like Section 21(d)(5) of the Exchange Act. While that might be true, those cases support the broad proposition that the presumption applies "in all cases." *Morrison*, 130 S. Ct. at 2881; (*see also* Funds' Mem. at 9-10.)  The Commission has offered nothing to the contrary.

[10]      A domestic transaction includes "transactions in securities listed on domestic exchanges, and domestic transactions in other securities."  *Morrison*, 130 S. Ct. at 2884.  The term "domestic transactions in other securities" means transactions in U.S.-based unlisted or unregistered securities.  *See id.* at n. 10; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 530-31 (S.D.N.Y. 2011).

[11]      As the Commission observed, although not germane to the issues, the Funds erred in characterizing *Goldman* as a Madoff-related action.  (Opp'n Br. at 7 n.3.)  The Madoff-related case that declined to extend the Exchange Act is *In re Banco Santander Securities-Optimal Litigation*, 732 F. Supp. 2d 1305 (S.D. Fla. 2010).  In *Banco*, the plaintiff argued that their claims satisfied the transaction test because their purchases were in a Bahamian investment fund that invested substantially in the Madoff investment fund.  *Id.* at 1316-17.

Even if the Commission had alleged that defendants sold shares in the Highview Offshore Funds in the U.S. to U.S. investors, that allegation would not satisfy *Morrison's* domestic transaction test. As Justice Stevens recognized in his hypothetical illustrating the stark impact of *Morrison*, even if U.S.-based "executives go knocking on doors in Manhattan and convince an unsophisticated retiree, on the basis of material misrepresentations, to invest her life savings in the [foreign] company's doomed securities," that scenario would flunk the transaction test because it constitutes an investment in the securities of a foreign entity. *Morrison*, 130 S. Ct. at 2895 (Stevens, J., concurring). Thus, *Morrison* makes clear that foreign transactions cannot be the basis of a claim under the Exchange Act, such as the claim against the Funds. Indeed, on these facts, if Section 10(b) claims were asserted against the Highview Offshore Funds, there would be no doubt that such claims could not lie in the aftermath of *Morrison*.[12]

## III.   THE COMMISSION HAS NOT ALLEGED THAT THE FUNDS LACK A LEGITIMATE CLAIM TO THE ASSETS IN THEIR POSSESSION

### A.   The Commission's SAC Satisfies Only Part One of the Relief Defendant Test, And Altogether Fails to Plead Any Facts to Satisfy Part Two of the Test

There is no dispute that the Commission has alleged part-one of the relief defendant test—that the Funds are in possession of ill-gotten funds. At issue here, and in most relief defendant cases, is part two of the relief defendant test: Whether the purported relief defendant has any legitimate ownership claim to the ill-gotten funds in their possession. The Commission does not point to a single allegation in the SAC that the Funds lack an ownership claim in the assets or that they did not contribute value in exchange for the allegedly fraudulent assets that were paid to them. Indeed, the Commission concedes that "the Complaint specifically

---

[12]    Ironically, applying the Commission's unsupported argument that *Morrison* applies to Section 10(b) of the Exchange Act, but not to Section 21(d)(5) of the Exchange Act, if the Highview Offshore Funds had actually engaged in any wrongdoing, the Commission could not assert a claim against them based on the foreign transactions alleged in the SAC. Thus, effectively, an innocent relief defendant would be subject to claims under the Exchange Act where, on the same facts, a defendant that engaged in misconduct would be beyond the reach of the Exchange Act. The Commission has offered no support for such an absurd result.

pleads that the Funds' assets were lost and stolen by the defendants," who concealed their theft "with false loans and investments on the books of the Funds, and then 'repaid' those false loans and investments with interest and with money from other sources."  (Opp'n Br. at 19.)  Based on that, the Commission wrongly asserts that the Funds are proper relief defendants because their good assets were replaced with bad ones.  What the Commission misses is that this is the very scenario in which the courts in *Walsh* and *Janvey* have rejected relief defendant status.

The Commission seeks to disguise the flaws in its case by attempting to collapse the two-part relief defendant test, to a one-part test that only turns on whether the Funds are in possession of ill-gotten funds.  The Commission then argues that the Funds are in possession of ill-gotten funds, and therefore, are proper relief defendants.  That is a grossly oversimplified and incorrect statement of the law.  The Commission must go beyond part one of the relief defendant test and explain why the Funds' nearly $170 million purported investment in the MK Funds[13] cited in the SAC, (SAC ¶¶ 28-33), and the "substantial compensation" that the Funds paid to HPP in purported management and performance fees (SAC ¶¶ 8, 63) do not constitute value. [14]

**B.    Value Given to the Alleged Wrongdoer by an Innocent Relief Defendant Is Not a Part of the Relief Defendant Test**

The Commission's argument that the Funds are proper relief defendants because they did not give value to the MK Funds misconstrues relief defendant law.  (Opp'n Br. at 18.) The Funds asserted that they are not proper relief defendants because they gave value to HPP in

---

[13]     Although in its TRO Order the Court credited ownership of the investment assets to individual investors in the Highview Offshore Funds, rather than to the Funds themselves, the Court did not previously have before it case law governing ownership interests in master/feeder fund structures.  Pursuant to the master/feeder structure, individual investors in the Funds cease to retain any ownership interest in the cash that they invest once those assets are transferred to the feeder fund.  (Funds' Br. at 3, 25 n. 13.)  Thus, all amounts invested by individual investors in the Funds become the "sole property" of the Funds.  *Sec. Investor Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 299 (Bankr. S.D.N.Y. 2011).  The Commission is silent on this point.

[14]     The Funds do not assert, as the Commission contends, that "[t]he defendants' actions in recording and then repaying loans and investments that never existed did not magically transform the loans and investments into actual and legitimate investment activity."  (Opp'n Br. at 19.)  The Funds only point is that their contractual arrangements that facilitated their investment activities were legitimate and, as such, they are not proper relief defendants.

exchange for the assets that HPP transferred to their account, and unbeknownst to the Funds, the assets they received were proceeds of fraud, rather than legitimate investment assets. (Funds' Mem. at 25-26.) The Funds' payments to HPP render the Funds improper relief defendants.

In the relief defendant cases cited by the Funds, the purported relief defendant did not give value to the party defrauded of assets. Rather, the relief defendant had given value to the alleged wrongdoer in exchange for receipt of the ill-gotten funds, regardless of whether anything of value was actually received by the victim of the fraud. For example, in *Walsh*, a case decided recently by the Second Circuit and not previously addressed in the TRO briefing, the purported relief defendant received ill-gotten funds and did not give value to the victims of the fraud in exchange for those funds. Rather, the relief defendant was the wife of the alleged wrongdoer who received the tainted assets during the marriage, which assets were subsequently conveyed to her by her husband pursuant to a separation agreement between them. *CFTC v. Walsh*, 658 F.3d 194, 198 (2d Cir. 2011). In *Walsh*, the Second Circuit held that if the purported relief defendant paid "fair consideration" to her husband for her rights to the ill-gotten funds, she would be immune from disgorgement. *Id.* at 197. The wife gave no consideration to the victims of the fraud. Thus, the Commission fails to distinguish *Walsh*.

Similarly, in *Janvey*, relying on Second Circuit authority, the Fifth Circuit held that innocent investors who had received fraudulent returns and redemption proceeds from certificates of deposit ("CDs") had a legitimate claim to those fraudulent payments, although those payments came from other investors who also were victims of the Ponzi scheme. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). Specifically, the bank used CD proceeds from new investors to make interest and redemption payments on pre-existing CD investments, much like Illarramendi allegedly transferred assets from the MK Funds to cover purported returns on

investments or repayments due back to the Funds.  *See Janvey*, 588 F.3d at 833.  The court found

that the *Janvey* investors gave value to the alleged wrongdoer by virtue of their CD agreements,

not to the other investors who were defrauded in the Ponzi scheme.

      Like the relief defendant in *Walsh* and *Janvey*, the Funds received the allegedly

tainted assets when they were transferred to the Funds' by an alleged wrongdoer, the Funds'

investment manager (HPP), pursuant to valid investment management agreements between the

Funds and HPP.  Not only did the Funds pay value to HPP by virtue of the millions of dollars

they invested, they also paid significant management and incentive fees to HPP.  Thus, HPP's

transfers of assets to the Funds were not gifts; rather, they were transfers of money that HPP

owed to the Funds in connection with their investment activities.  (*See* Ex. B., ¶ 5.)

      Because the Funds did not receive the assets as a gift and were not involved in

any wrongdoing, they are not like the relief defendants in the cases cited by the Commission.

(*See* Opp'n Br. at 17.)  In *Cavanagh*, the relief defendant was the wife of one of the named

defendants, who had transferred fraudulent stock proceeds into her account.  *SEC v. Cavanagh*,

155 F. 3d 129, 136-37 (2d Cir. 1998).  The wife did not give value for the assets or even know

that assets had been transferred to her bank account.  *Id.* at 137.  Thus, the wife in *Cavanagh* was

the prototypical relief defendant who gave no value for the funds received.  Moreover, unlike the

cases relied on by the Funds, the *George* case was decided pursuant to the law of another Circuit.

*See SEC v. George*, 426 F.3d 786 (6th Cir. 2005).[15]

---

[15]    *George* is a Sixth Circuit case that does not cite to any Second Circuit authority to reach its conclusion. Notwithstanding that, *George* is inapposite because the relief defendants either received proceeds of fraud as a gift or "were not wholly innocent" of wrongdoing, unlike the Highview Offshore Funds.  *See* Brief, Amicus Curiae in Support of Appellees, at *23, *Janvey v. Adams*, 2009 WL 6338943 (5th Cir. Oct. 8, 2009) (Nos. 09-10761, 09-10765) (noting that one relief defendant received assets as a gift, one received more than twice the amount of an initial investment, including amounts that a primary violator had funneled to him *after* the asset freeze was ordered; and two had previously received substantial Ponzi payments and refused to agree to a set-off, so claims against them were necessary to prevent a windfall).  *Id.* at 23-24.  Thus, the Funds are not like the relief defendants in *George*.

C.   **Mix of Legitimate and Illegitimate Assets Lends Further Support that the Funds Gave Value in Exchange for the Assets in their Possession**

In part C of their Relief Defendant section, the Commission suggests that the Funds assert that they are not proper relief defendants only insofar as the Commission has failed to show that the Funds lacked a legitimate claim to $37 of the $230 million in the Funds' possession.  (Opp'n Br. at 21.)  That is not the Funds' position.  As discussed, the key point the Funds make is that they gave value in connection with their investment activities managed by HPP.  The fact that the Commission has not shown any taint associated with the $37 million further supports the Funds' argument that they gave value for the assets in their possession. However, that assertion is supplemental to, and supportive of, the Funds' larger point that they gave value.  To be clear, even if all of the money currently in the Funds' bank account is tainted, the Funds are not proper relief defendants because they gave value in connection with the investments that relate to the alleged Ponzi scheme.

## <u>CONCLUSION</u>

For the foregoing reasons, and those stated in the Funds' opening brief and accompanying documents, the Commission's Fifth Claim for Relief against the Highview Offshore Funds should be dismissed, with prejudice, pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

Dated:  New York, New York
      December 20, 2011

SCHULTE ROTH & ZABEL LLP

By:  /s/ Michael E. Swartz
    Harry S. Davis (*admitted pro hac vice*)
    Michael E. Swartz (*admitted pro hac vice*)
    919 Third Avenue
    New York, New York  10022
    (212) 756-2000

*Attorneys for Relief Defendants Highview Point Master Fund, Ltd. and Highview Point Offshore, Ltd.*