## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 3:11-cv-0078 (JBA) |
| *v.* | ) | |
| | ) | |
| FRANCISCO ILLARRAMENDI, HIGHVIEW | ) | |
| POINT PARTNERS, LLC and MICHAEL | ) | |
| KENWOOD CAPITAL MANAGEMENT, LLC, | ) | |
| *Defendant*, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| HIGHVIEW POINT MASTER FUND, LTD., | ) | **January 17, 2012** |
| HIGHVIEW POINT OFFSHORE, LTD., | ) | |
| HIGHVIEW POINT LP, MICHAEL KENWOOD | ) | |
| ASSET MANAGEMENT, LLC, MK ENERGY | ) | |
| AND INFRASTRUCTURE, LLC, MKEI SOLAR, LP | ) | |
| *Relief Defendants*. | ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## ALVAREZ & MARSAL GLOBAL FORENSIC AND DISPUTE SERVICES, LLC'S
## MOTION TO ALLOW LATE FILING OF PROOF OF CLAIM

Alvarez & Marsal Global Forensic and Dispute Services, LLC f/k/a Alvarez & Marsal

Dispute Analysis & Forensic Services, LLC ("A&M"), respectfully submits this memorandum of

law in support of its motion seeking an Order allowing the late filing of its proof of claim for

accounting services provided to The Michael Kenwood Group, LLC ("MKG") prior to the

appointment of the Receiver. As set forth herein, approval of the late filing of A&M's proof of

claim is fair and equitable because: (i) A&M did not have notice of the need to file a claim until

after the Bar Date (as defined herein) had passed; (ii) A&M acted promptly and swiftly upon

receiving notice of the need to file a claim; and (iii) no prejudice will come from the filing of

A&M's proof of claim four business days following the Bar Date.

## FACTS

The Engagement and Amount Owed

Pursuant to an engagement letter dated August 2, 2010 (the "Engagement Letter"), A&M was engaged to provide forensic accounting, litigation consulting and related services to MKG. Affidavit of James W. Barratt ("Barratt Aff.") ¶ 3, Exhibit A.  A&M provided services to MKG pursuant to the Engagement Letter from September 15, 2010 through March 29, 2011. *Id.* ¶ 4. In conjunction with the services provided to MKG pursuant to the Engagement Letter, A&M issued four invoices to MKG for fees and expenses totaling $575,204.75. *Id.* ¶ 5, Ex. B. Prior to the appointment of the Receiver, A&M did not receive any payments on account of the invoices issued pursuant to the Engagement Letter. *Id.* ¶ 5.  At the time of the appointment of the Receiver, MKG owed A&M $575,204.75 on account of services provided by A&M to MKG.

Following his appointment, the Receiver terminated A&M's engagement to provide services to MKG. *Id.* ¶ 6.  However, on April 6, 2011, counsel to the Receiver sent a letter to the Court indicating a desire to purchase certain work product from A&M related to A&M's engagement by MKG.  In the letter, counsel for the Receiver observed:

> As we have discovered in the course of the Receiver's investigation, A&M constructed a database for analyzing transactions involving the MKV and STLF funds, and collected considerable documentation in support of those transactions.  We estimate that the cost for FTI to duplicate A&M's work on the database and analysis would be between 300 and 350 hours, which at a cost of $325/per hour represents a value to the Estate of approximately $100,000.
>
> In an effort to reduce costs to the Receivership Estate and minimize duplication of effort, we believe it is in the best interests of the Estate for the Receiver to pay A&M for its work product on the database, and deploy FTI's efforts elsewhere.  A&M has agreed that any payment for its work product would reduce its claim by the same amount.  In order to facilitate the transfer of the work product, we also plan to retain one A&M professional on a consulting basis for a few days.

*Id.* ¶ 7; Ex. C.

Subsequent to the submission of the April 6, 2011 letter to the Court, A&M transferred its database to the Receiver and provided the necessary consulting work to facilitate the transfer. *Id.* ¶ 8. The Receiver paid A&M $100,000 for the database. The Receiver also paid A&M certain fees charged by A&M for the consulting services provided by A&M to facilitate the transfer of the database. *Id.* Consistent with the April 6, 2011 letter, A&M credited the $100,000 payment against its claims, thereby reducing the amounts due and owing to A&M from MKG to $475,204.75. *Id.*

The Bar Date Notice

The Court set December 30, 2011 (the "Bar Date") as the bar date for filing claims against the receivership estates. *See* Dkt. No. 365. The Receiver served a Notice of Bar Date for Asserting Claims and Proof of Claim Form Instructions (the "Bar Date Notice") along with a claims package on or about October 6, 2011. *See* Dkt. No. 387. In an affidavit to the Court, the Receiver's financial advisors indicated that they sent the Bar Date Notice and claim package to A&M at the following address:  Alvarez & Marsal, c/o Opal Lynch, 2001 K Street NW, Suite 803, Washington, DC  20006 (the "K Street Address"). *Id.*; *see also* Barratt Aff. ¶ 13, Ex. E. At the time the Receiver's financial advisors sent the Bar Date Notice, however, A&M did not maintain an office at the K Street Address.

In January 2011, long before the Receiver served the Bar Date Notice and claims package, A&M relocated its offices from the K Street Address to an office at the following address: Alvarez & Marsal, Columbia Square, 555 Thirteenth Street, NW, Washington, DC 20004 (the "Thirteenth Street Address"). Barratt Aff. ¶ 14. The Thirteenth Street Address is

reflected in the A&M invoices dated January 14, 2011, February 9, April 29, and June 15, 2011 that were submitted to MKG. *Id.* ¶ 15, Ex. B.

According to the Receiver's financial advisors, the Bar Date Notice and claims package that was sent to A&M at the K Street Address on October 6, 2011 was returned undelivered on October 28, 2011. *Id.* ¶ 16, Ex. E.  Also according to the Receiver's financial advisors, on November 7, 2011, they sent the Bar Date Notice and claims packet to A&M, care of the affiant, James Barratt, at the Thirteenth Street Address. *Id.* ¶ 17, Ex. E.  However, Mr. Barratt never received the Bar Date Notice and claims package prior to the running of the Bar Date. Moreover, Mr. Barratt made inquiries internally at A&M and was unable to identify any A&M personnel who had received the Bar Date Notice and claims package prior to the running of the Bar Date.  In addition, no A&M employee involved in the engagement with MKG had knowledge of the Bar Date or the requirement to file a proof of claim prior to January 5, 2012. *Id.* ¶ 18.


A&M Receives the Bar Date Notice on January 5, 2012 and Files Its Claim

On January 5, 2012, Mr. Barratt exchanged e-mail correspondence with Philip Daddona at FTI regarding the status of the receivership.  In that exchange, Mr. Daddona made passing reference to the claims procedure established in the receivership case and to the fact that claims had been due on or before the Bar Date.  This was the first time that Mr. Barratt, or any member of the MKG engagement team at A&M, had any knowledge that A&M was required to file a proof of claim in the receivership case.  *Id.* ¶ 10, Ex. D.  Following Mr. Barratt's exchange of e-mail correspondence with Mr. Daddona, Mr. Barratt asked FTI to provide him with the documentation necessary to file a proof of claim.  In response to that request, Jonathan Zambello

at FTI forwarded copies of the Bar Date Notice and claims package to Mr. Barratt in the afternoon on January 5, 2012. *Id.* ¶ 11, Ex. E.

Immediately upon receipt of the Bar Date Notice and claims packet on January 5, 2012, A&M took steps to prepare and file a proof of claim. Mr. Barratt personally coordinated the efforts to prepare and file the proof of claim to ensure that the process was undertaken promptly and was completed swiftly. A&M submitted its proof of claim on January 6, 2012. *Id.* ¶ 12, Ex. F.

## ARGUMENT

A&M respectfully requests that this Court allow the late filing of its proof of claim. In a receivership action such as this, the Court has the power to do what is fair and equitable. *SEC v. Wang*, 944 F.2d 80, 84-85 (2d Cir. 1991); *see also SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001) ("'[i]n shaping equity decrees the trial court is vested with broad discretionary power . . . .'") (quoting *Quenzer v. United States*, 19 F.3d 163, 165 (5th Cir. 1993)); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ("The district court has broad powers and wide discretion to determine relief in an equity receivership."); *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("'[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'") (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).

While no SEC receivership cases were found that address the late filing of claims, it is appropriate to take guidance from the treatment of late claims in the context of bankruptcy proceedings because the claims processes are substantially similar. Additionally, Bankruptcy Courts have broad equitable powers similar to receivership courts. The United States Supreme Court set forth the test to determine whether a late filed proof of claim in a bankruptcy case

should be allowed. Similar to the analysis for an equity receivership action such as this one, the Court "concluded that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993) (citation omitted).

Allowance of the late submission of A&M's claim would be fair and equitable because: A&M did not have notice of the need to file a claim until after the Bar Date had passed; A&M submitted its claim, in good faith, within one day of learning of the Bar Date Notice and within four business days of the Bar Date; the minor delay will have no impact on the proceedings; and there is no prejudice to the other parties in the receivership action if the Court permits the late submission.

The reason for the late filed claim was beyond A&M's control because it did not receive notice in time to file a claim prior to the Bar Date. The Bar Date Notice sent on October 6, 2011 was mailed to the wrong address and was returned undelivered to FTI.  In addition, Mr. Barratt, to whom the supplemental notice was addressed, never received the Bar Date Notice sent on November 7, 2011. Moreover, Mr. Barratt was unable to identify any A&M personnel who had received the Bar Date Notice prior to the running of the Bar Date.  Consequently, A&M did not have notice of the Bar Date until January 5, 2012, when Mr. Barratt learned of it in an exchange of email correspondence with FTI wherein Mr. Barratt had inquired generally about the status of the receivership. Upon learning of the Bar Date, Mr. Barratt arranged with FTI to receive the Bar Date Notice and claims package and mobilized a team to prepare and submit the proof of claim.

As evidence of its good faith, A&M prepared its claim immediately after learning of the Bar Date and filed it the next day without delay. Taking into account the weekend and New Year's holiday, the claim was filed only four business days late. Such a small delay will not have an impact on the Receiver's ability to make a distribution to claimants.

Further, allowing the late submission of the claim would not result in prejudice to any of the other claimants because their share would not be unfairly reduced since A&M has a legitimate claim. Disallowing the claim, however, would prejudice A&M because A&M would lose its right to receive a distribution even though it did not have notice of the Bar Date until after the date had passed.

## CONCLUSION

For the foregoing reasons, A&M respectfully requests that this Court allow the late filing of its proof of claim.

Dated: January 17, 2012          ALVAREZ & MARSAL GLOBAL
                                 FORENSIC AND DISPUTE SERVICES,
                                 LLC


                                 By /s/ Joshua W. Cohen_____
                                     Joshua W. Cohen (ct14731)
                                     Day Pitney LLP
                                     One Audubon Street
                                     New Haven, CT  06511
                                     Tel:  (203) 752-5000
                                     Fax:  (203) 752-5001
                                     jwcohen@daypitney.com

                                     ITS COUNSEL