# EXHIBIT C

**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**HIGHVIEW POINT PARTNERS, LLC**

This Limited Liability Company Agreement (the "Agreement") dated as of May 26, 2005, of Highview Point Partners, LLC, is entered into by and among Frank H. Lopez ("Lopez"), Francisco A. Illarramendi ("Illarramendi") and Christopher Luth ("Luth") and all of the parties hereafter who sign this Agreement to become members. Lopez, Illarramendi and Luth and each such subsequent member will be referred to individually as a "Member" and collectively as the "Members".

The Members hereby form a limited liability company pursuant to and in accordance with the Limited Liability Company Act of the State of Delaware, as amended from time to time (the "LLCA"), and hereby agree as follows:

1. Name. The name of the limited liability company formed hereby is Highview Point Partners, LLC (the "Company").

2. Term. The term of the Company shall continue until December 31, 2035, provided, however, that if an entity for which the Company acts as an investment manager or general partner shall continue beyond such date, then the term of the Company shall likewise be extended.

3. Purpose. The Company is formed for the purpose of acting as the investment manager of Highview Point Offshore, Ltd. (the "Fund"), and engaging in any other lawful act or activity for which limited liability companies may be formed under the LLCA.

4. Members. The mailing addresses of all the members shall be c/o Highview Point Partners, LLC, 909 Third Avenue, 5th Floor - Suite 520, New York, NY 10022, unless otherwise provided by the Member.

5. Powers, Duties, etc. The business and affairs of the Company shall be managed by Lopez, Illarramendi and Luth (the "Managing Members"), with each such Managing Member entitled to one vote; provided, however, that a Managing Member will lose its right to vote if he is not actively involved in the Company's business for more than 90 consecutive days. In the event of the death, permanent disability or retirement of a Managing Member, the other Managing Members shall become

the remaining Managing Members. The Managing Members or their designees shall have the power to do any and all acts necessary or convenient to, or for the furtherance of, the purposes described herein, including all powers, statutory or otherwise, possessed under the LLCA, including, without limitation, the ability to (i) open and close bank, brokerage and custodian accounts, (ii) enter into, perform and carry out contracts and undertakings of any kind, (iii) employ or otherwise engage Members, contractors, consultants, advisors, attorneys and accountants and pay reasonable compensation for such services, and (iv) to act for the Company in all matters. In the event that the Managing Members disagree with respect to a particular issue, the decision of a majority of the Managing Members shall govern the issue, except that the unanimous approval of the Managing Members shall be required for each of the following actions: (1) any amendment to Section 6 to this Agreement; (2) the termination, dissolution or liquidation of the Company; (3) entering into an agreement to sell all or substantially all of the business or assets of the Company to unrelated parties; and (4) the admission of an additional member to the Company. Notwithstanding the foregoing, any Managing Member, without the prior consent of the other Managing Members, may make immaterial decisions or may incur any expense or liability which is less than $2,500 on behalf of the Company.

6. <u>Interests of a Member</u>. (a) Each Member may have the following interests in the Company (each as defined below): (i) a Capital Account, (ii) a Fee Interest, and (iii) a Goodwill Interest.

(b) A "Capital Account" shall be established on the books of the Company for each Member. The Capital Account of each Member shall be an amount equal to such Member's initial capital contribution, any additional capital contributions made to the Company by such Member and any net profits of the Company allocated to such Member, less any net losses of the Company allocated, and distributions, if any, made, to such Member.

(c) A "Fee Interest", if assigned to a Member by the Managing Members, in their sole discretion, shall mean the Member's allotted percentage interest in any management and/or incentive allocation or fee amounts for any fiscal year paid to the Company from the Fund and any other affiliated funds paying an management fee and/or incentive allocation or fee for which the Company provides services (collectively, the "Managed Funds"). Initially, Lopez, Illarramendi and Luth shall have a Fee Interest of 33.33% each.

(d) Unless the Managing Members decide otherwise, the Managing Members shall be allotted a 100% percentage interest in any distributions (in excess of the Members' remaining Capital Accounts) made upon the sale of all or substantially all of the Company's business or assets, which percentages shall initially be 33.33% each to Lopez, Illarramendi and Luth (the "Goodwill Interest").

7. <u>Capital Contributions</u>. Each Member has made an initial cash capital contribution to the Company as follows:

| | |
|---|---|
| Lopez | $10,000 |
| Illarramendi | $10,000 |
| Luth | $10,000 |

8. <u>Additional Contributions</u>. Each Member may (i) be required to make additional capital contributions to the Company in such amounts and at such times as determined by the Managing Members and (ii) make voluntary capital contributions to the Company on a quarterly basis and at such other times as the Managing Members shall permit.

9. <u>Allocation of Net Profits and Net Losses</u>. Except for the Company's net profits allocated as a portion of the Fee Interest and a Goodwill Interest, the Company's net profits, if any, for each year shall be allocated among the Members in proportion to their respective Capital Account balances. The Company's net losses, if any, for each year shall be allocated among the Members in proportion to their respective Capital Accounts

10. <u>Distributions</u>. (a) Distributions, if any, shall be made to the Members at the times and in the aggregate amounts as determined by the Managing Members. Subject to Section 6 above and the discretion of the Managing Members, such distributions shall be allocated among the Members in the same proportion as their then Capital Account balances.

(b) With respect to each fiscal year in which the Company anticipates an allocation among the Members of items of taxable income and gain in excess of items of taxable deduction, loss and the loss equivalent of tax credits (determined by dividing the amount of the credits by the combined highest marginal Federal income tax rate and state income taxes for federal income tax purposes (the "<u>Combined Rate</u>") applicable to any individual or corporate taxpayer Member (or if the Member is a limited liability company, the members of such limited liability company) determined without

regard to alternative minimum taxes), the Tax Matters Member (which initially will be Lopez) shall, if a Member requests, cause to be distributed from time to time during such fiscal year to each Member out of available cash an amount of money equal to such Member's anticipated estimated tax amount.

11.   Assignments.  A Member may not assign in whole or in part any interest that he may have in the Company without the consent of the Managing Members.

12.   Withdrawal of a Managing Member.

(a)   (i) A Managing Member may voluntarily withdraw all or any portion of its Capital Account from the Company upon at least 60 days' advance written notice as of the end of each calendar quarter or at such other times as the Managing Members may in their sole discretion permit; provided, however, that a withdrawal may be refused, if the Managing Members determine that it may jeopardize the Company's financial condition.

(ii) The majority of the Managing Members may require a Managing Member to withdraw at any time for "cause" upon at least 30 days' prior written notice. For purposes of this Agreement, "cause" shall mean (A) a finding by a court or other governmental body or a plea or similar agreement admitting that an act or omission constitutes a felony under the laws of the United States or any state thereof (or an equivalent crime in another jurisdiction) or a violation of the securities laws of any governmental or self regulatory body, (B) a material breach of this Agreement or any Company policy, or (C) fraudulent behavior.

(iii) Upon the death of a Managing Member or the disability of a Managing Member (i.e., the 90th consecutive day that such Member cannot perform services for the Company), such Managing Member shall be deemed to have completely withdrawn from the Company as of the end of the quarter in which such death or disability took place.

(b) Upon any withdrawal discussed in Section 12(a) above, the withdrawing Managing Member will be paid (i) the withdrawn portion of his Capital Account balance at such times and only to the extent that the Company is able to withdraw such amounts from the Managed Funds and (ii) any other amounts specified in Section 12(c) below. Subject to Section 12(c) of this Agreement, if the withdrawal of a Managing Member is a complete withdrawal, then the withdrawn Managing Member, following such withdrawal date, shall no longer have any role in the management of the Company.

(c) In addition to the amounts set forth in Section 12(b) above, a completely withdrawing Managing Member shall be entitled to the following amounts (and no other amounts) under the following circumstances:

(i) Upon the death or disability of a Managing Member --- 100% of its Fee Interest and Goodwill Interest for the fiscal year in which such withdrawal is effective, 66 and 2/3% for the first full fiscal year thereafter, 33 and 1/3 % for the second full fiscal year thereafter, and no Fee Interest and Goodwill Interest for any year thereafter

(ii) Upon a Managing Member's voluntary withdrawal --- for the fiscal year in which such withdrawal is effective the lesser of 66 and 2/3% of the Managing Member's Fee Interest and Goodwill Interest earned through (A) the withdrawal date or (B) the end of the year, multiplied by a fraction whose numerator is the day of the year such withdrawal occurred and whose denominator is 365, 33 and 1/3 % for the first full fiscal year thereafter, and no Fee Interest and Goodwill Interest for any year thereafter

(iii) Upon a Managing Member's involuntary withdrawal for cause such Managing Member shall not be entitled to any amounts under this Section 12(c)).

(d) A Managing Member shall cease to be entitled to any payments pursuant to Section 12(c), if such Member violates Section 15 below.

13. <u>Withdrawal of a Member other than a Managing Member</u>.

(a) (i) A Member that is not a Managing Member may voluntarily withdraw all or any portion of its Capital Account from the Company upon at least 60 days' advance written notice as of the end of each calendar quarter or at such other times as the Managing Members may in their sole discretion permit; provided, however, that a withdrawal may be refused, if the Managing Members determine that it may jeopardize the Company's financial condition.

(ii) The Managing Members may require that any non-Managing Member withdraw from the Company, in whole or in part, at any time and for any or no reason.

(iii) Upon the death or the disability (as defined in Section 12) of a non-Managing Member, such Member shall be deemed to have completely withdrawn from the Company as of the end of the quarter in which such death or disability took place.

(b) Upon a withdrawal, the withdrawing non-Managing Member will be paid the withdrawn portion of his Capital Account balance as of the withdrawal date at such times and only to the extent that the Company is able to withdraw such amounts from the Managed Funds and such non-Managing Member shall not be entitled to any other amounts from the Company or its remaining Members unless agreed to otherwise by the Managing Members.

14. Admission of Additional Members.

(a) Additional Members of the Company may be admitted to the Company with the consent of the Managing Members.

(b) Upon the admission of additional Members to the Company, the Managing Members will determine, in their sole discretion, each new Member's Interest, and Lopez, Illarramendi and Luth's Interests in the Company will be pro rata diluted accordingly.

15. Restrictive Covenants. (a) Unless consented to by a majority of the Managing Members (which consent may be withheld for any reason in the Managing Members' sole discretion), during the term hereof and for the six (6) month period commencing with the sooner of (x) the termination or expiration thereof or (y) the Member's complete withdrawal from the Company, each Member agrees, individually and on behalf of any current or future affiliate, not to: (i) directly or indirectly, actively or inactively, either as principal, agent, independent contractor, consultant, director, officer, employee, employer, advisor (whether paid or unpaid), stockholder, partner, member or in any other individual or representative capacity whatsoever, either for his own benefit or the benefit of any other person or entity (A) solicit, hire, entice, induce, recruit or employ, or associate with or engage in any business relationship with, any person or entity who at any time during the term of this Agreement was employed or engaged as an attorney, accountant, producer, advisor, consultant, representative, independent contractor or agent of the Company or any of its affiliates, or (B) solicit, recruit, represent, consult or act for, or provide any service or advice to any person or entity who was a client of the Company or any of its affiliates during the term hereof or is about to become a client of the Company or any of its affiliates, or (ii) enter into the employment of, or become involved, affiliated or associated with, or act as a consultant, director or officer of, or invest or acquire at least a 5% interest in, or deal with, or render any service or advice to or in connection with any person or entity that competes with the Company or any of its affiliates is then

engaged (for purposes hereof, "compete" shall mean utilizing, undertaking or implementing an investment strategy substantially similar to the strategy employed by the Company for the Managed Funds).

(b) The Company and each Member acknowledge that the restriction provisions of this Section 15 are reasonable and necessary and that the Company will be irrevocably damaged if such covenants are not specifically enforced. Accordingly, each Member and the Company agree that, in addition to any other relief or remedies available to the Company, the Company shall each be entitled to seek and obtain an appropriate injunction or other equitable remedy from a court with proper jurisdiction for the purposes of restraining the other party from any actual or threatened breach of such covenants, and no bond or security will be required in connection therewith. If any of such provisions is deemed invalid or unenforceable, such provision shall be deemed modified and limited to the extent necessary to make it valid and enforceable.

16. <u>Liability of Members</u>. The Members shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the LLCA.

17. <u>Amendments to the Agreement</u>. This Agreement may be amended at any time with the unanimous consent of the Managing Members.

18. <u>Governing Law</u>. This Agreement shall be governed by, and construed under, the laws of the State of Delaware, all rights and remedies being governed by said laws.

19. <u>Counterparts</u>. This Agreement may be executed in more than one counterpart with the same effect as if the Members executing the several counterparts had all executed one document.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Agreement as of the date set forth above.

Managing Member:

_____
Name: Frank H. Lopez

Managing Member:

_____
Name: Francisco A. Illarramendi

Managing Member:

_____
Name: Christopher Luth

23108.0001 #572741

8