UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                            )
SECURITIES AND EXCHANGE                     )
COMMISSION,                                 )
                                            )
       Plaintiff,                           )   Civil Action No. 11-cv-78 (JBA)
                                            )
    v.                                       )
                                            )
FRANCISCO ILLARRAMENDI,                     )
HIGHVIEW POINT PARTNERS, LLC and            )
MICHAEL KENWOOD CAPITAL                     )
    MANAGEMENT, LLC,                        )
                                            )
       Defendants,                          )
                                            )
    and                                      )
                                            )
HIGHVIEW POINT MASTER FUND, LTD.,           )
HIGHVIEW POINT OFFSHORE, LTD.,              )
HIGHVIEW POINT LP,                          )
MICHAEL KENWOOD ASSET                       )
    MANAGEMENT, LLC,                        )
MK ENERGY AND INFRASTRUCTURE,               )
    LLC, and                                )
MKEI SOLAR, LP,                             )
                                            )
       Relief Defendants.                   )
_____)

**COMMISSION'S OPPOSITION TO EMERGENCY MOTION TO INTERVENE**

      The Commission hereby opposes the Emergency Motion to Intervene filed by Balanchine Corporation, Brentwood Services Incorporated and Edenwood Holding, S.A. (collectively "Balanchine"), who are investors in the Highview Point Offshore, Ltd. ("Highview Offshore") fund.

      As a preliminary matter, though Balanchine would like to style itself as the "Principal Owner[]" of Highview Offshore, such a conclusion is at best significantly premature and at worst twists the factual evidence developed to date. Balanchine asserts that it is an owner of 71% of

1

Highview Offshore by virtue of its claim to have invested $117.5 million in Highview Offshore. *See* Docket No. 239-1. It provides no detail, however, about what it believes the overall investments in the Fund were, and there has been no discovery taken on that subject. Moreover, regardless of the percentage it contributed to Highview Offshore, there has been no determination of the current *value* of Balanchine's – or any other investor's – interest in that fund. Balanchine wrongly assumes that its investments currently remain in Highview Offshore and – contrary to the evidence developed to date – that they were not misappropriated as part of the overarching fraud perpetrated by Illarramendi and his associates in which they treated Highview Offshore, among other investment vehicles they managed, as "one pot" to facilitate and avoid detection of a massive Ponzi scheme. *See* Docket No. 276 at 5 (Court's Order Ruling on TRO). While it may be, at the end of the claims process, that the Receiver recommends and the court approves the return of some of the funds Balanchine invested, there is absolutely no evidentiary basis to support its current assertion that it is the "Principal Owner" of Highview Offshore or funds that were nominally deposited in a Highview Offshore bank account at the moment defendants' scheme unraveled.

Further, though Balanchine pleads that its second motion to intervene should be allowed on some type of emergency basis, and that circumstances have changed since the court denied its original motion to intervene (*see* Docket No. 277), both contentions are in error. First, given the schedule for resolving the Receiver's motion to expand the receivership (*see* Docket No. 446) that the Court has instituted (*see* Docket No. 464), and given that the court has already determined the proper scope of discovery that will be allowed in advance of a hearing on the Receiver's motion, there is no exigency to resolving Balanchine's motion. Second, though Balanchine contends that the Receiver's motion "presents a very drastic change of circumstances that place at immediate risk of loss [its] property interests," Balanchine is simply wrong. Mot. at 2. Even if the Receiver's motion is granted, none of the funds held in the Highview Offshore bank accounts that are currently frozen

will go anywhere.  None of those funds will be distributed to any entity unless and until the court approves such a distribution, either at the conclusion of the still yet-to-be-determined claims adjudication process or otherwise.  Nothing relevant to Balanchine's entitlement to intervene in this case has changed since the court denied its prior to motion to intervene.  The court should deny this repeat motion.

**I.      Balanchine Has Not Established Its Entitlement To Intervene As Of Right.**

Balanchine bears the burden of proving four factors in order to establish its right to intervene as of right under Fed. R. Civ. P. 24(a).  It must show that it:

> (1) file[d] a timely motion; (2) assert[ed] an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties.

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (affirming denial of intervention).  Failure to carry its burden of proving any one of these requirements means that Balanchine's motion must be denied.  *See id.*; *United States v. New York*, 820 F.2d 554, 556 (2d Cir. 1987).

Moreover, Rule 24(a)(2)'s requirements must be read "in the context of the particular statutory scheme that is the basis for the litigation and with an eye to the posture of the litigation at the time the motion is decided."  *United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984).  This is particularly so in Commission enforcement actions.  *See generally SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972).  Commission enforcement actions seek to vindicate the federal securities laws and to protect investors by, among other things, stopping violations, bringing perpetrators to justice, and maximizing potential recoveries for victims.  Intervention is therefore strongly disfavored because of the

potential unnecessarily to complicate or prolong the proceedings, particularly where (as here) Balanchine is an injured investor or creditor that will have the opportunity to assert claims in a summary claims adjudication process. *Cf. generally United States v. Peoples Benefit Life Ins.*, 271 F.3d 411, 417 (2d Cir. 2001) (expressing concern that intervention in government forfeiture proceedings could undermine receivership proceedings by affording the applicant "an advantage over other creditors" and "open[ing] the door for other creditors" to intervene); *CFTC v. Heritage Capital Advisory Serv., Ltd.*, 736 F.2d 384, 386-87 (7th Cir. 1984); *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 586-87 (10th Cir. 1984).

Though Balanchine's motion may be timely, and though this court has previously found that it has an interest in the property that is the subject of this action, it does not meet either of the other two requirements for intervention. Its motion should thus be denied.

Balanchine has not demonstrated that permitting the existing parties to litigate and dispose of their claims will "as a practical matter, impair or impede [its] ability to protect its interest" as Rule 24(a) requires. While Balanchine complains that their funds will be "taken" or "grabbed" if the Receiver's motion is granted, and that it faces an "immediate threat to [its] property rights," those arguments are gross exaggerations. Mot. at 5, 6. The Receiver's motion has put forth evidence that moneys contributed to many investment vehicles under the control of Illarramendi and his associates – including the Highview Funds -- were commingled and used to perpetrate a single Ponzi scheme. *See, e.g.* Docket No. 447 at 20-21, 23-26. In recognition of that evidence, and the practical way in which money contributed to one investment pool was routinely used to satisfy the obligations of other investment pools, the Receiver's motion seeks to bring the funds in the nominal control of the Highview Funds into the Receivership, so that an

equitable plan of distribution can be constructed that gives recognition to all of the competing rights and claims to the same funds.

Though Balanchine contends that the court "recognized" its concern that the bringing both the Highview Funds and the MK Funds into the same receivership would "water down" the value of its interests, the court merely quoted these arguments made in Balanchine's earlier motion to intervene. Mot. at 4; Docket No. 277 at 6. The court did not validate or approve these arguments. *See* Docket No. 277 at 6. These arguments are also, at this stage in the proceedings, entirely speculative. As the evidence has continued to develop, it has become clear that the true ownership of the assets held in the name of all of the investment vehicles controlled by Illarramendi and others is suspect at best. To accept Balanchine's contention that the Highview Funds had more assets than the MK Funds is to elevate form over substance. *See* Mot. at 4. The fact that the Highview Funds' bank accounts may have been holding more dollars than the MK Funds' bank accounts at the moment that Illarramendi's game of musical chairs stopped is virtually meaningless. Further, because the Receiver is pursuing clawback claims against many entities and individuals for funds distributed to them, it is premature to guess what sums will ultimately be available for distribution, or to whom those sums should be equitably returned.

Even if the Receiver's motion is granted, the currently-frozen funds will remain frozen until the Receiver proposes, and the court approves, their distribution at the conclusion of a claims adjudication process. The dire consequences forecast by Balanchine are ephemeral. What will happen if the Receiver's motion is granted is exactly the same as what will happen now – at some point, a claims adjudication process will begin, and Balanchine will have the right to assert its claim to recover its investment as part of that process. No interim developments justify reversing the court's prior ruling that such an eventual claims adjudication process "is

adequate to the task at hand." Docket No. 277, at 9-10. The court's determination in June that "all Highview and MK fund investors" will have the opportunity "to be heard in summary proceedings to advocate their view of proper distribution in the event of a liquidation or disgorgement" remains valid. *Id.* at 10.

Any interest that Balanchine has in this action can also be adequately protected without granting its motion for intervention. The court has routinely allowed investors victimized by the defendants' fraudulent scheme to participate in court hearings and to make their positions known to the court in their status as "Interested Parties." In this regard, Balanchine deserves no special treatment. Like all other investors who lost money that they invested with Illarramendi and his associates, Balanchine can inform the court of its positions on the various issues placed before the court for decision, and can participate fully in the claims adjudication process that the Court establishes. Allowing one investor to intervene would require allowing all investors to intervene, thus transforming a case that is already difficult to administer into one practically paralyzed when each party wants to be heard on each issue that arises.

Further, Balanchine cannot show that its interests are not adequately represented by the Highview Funds. The Highview Funds exist to advocate for the interests of their investors, and Balanchine purports to be their main investor. The Highview Funds are represented by able counsel, and the fact that Balanchine's counsel disagrees with the strategic decisions of the Highview Funds' counsel is not a reason to permit intervention. There is no reason to single out Balanchine among the investors in the Highview Funds, or among the investors in any of the funds Illarramendi controlled, and give them the privileged status of a full party. Though Balanchine contends that the court already ruled that the Highview Funds did not adequately represent its interests, this issue was not decided in the court's ruling on the prior motion to

intervene.  *See* Docket No. 277 at 7-8.  Further, to the extent that Balanchine's current motion to intervene takes the position that the Highview Funds cannot adequately represent their interests because they are only relief defendants and not full parties, they provide no analysis supporting that position.  *See* Mot. at 5 n.3.  The Highview Funds are parties to this case, have sought and been granted discovery to contest the Receiver's motion, and are acting in the interests of their investors.  Balanchine is entitled to nothing more.

In sum, Balanchine has failed to show that it is entitled to intervene in this matter as of right, as it has failed to establish either that its interest will be practically impaired without its participation as a party, or that any interest it has is inadequately represented by the existing parties.

## II.     Permissive Intervention Should Also Be Denied.

Permissive intervention under Fed. R. Civ. P. 24(b) may be permitted in the court's discretion when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Balanchine does not meet this standard.  As the court previously held, Balanchine has not "explain[ed] what their claims, aimed at preserving the value of their investment in the Highview Funds in the event of a merger of those funds with the MK Funds and an eventual pro rata distribution of assets, have in common with the Commission's fraud claims against Illarramendi and other Defendants."  Docket No. 277 at 11.  Nothing has changed and the court should make the same decision on the current motion.

Moreover, permissive intervention is not granted "even when there is a strong commonality of fact or law, where such intervention would cause undue delay, complexity or confusion in a case."  *Bear Stearns & Co., Inc.*, 2003 WL 22000340, *2.  These concerns are "acute where the Government, and particularly the SEC, is a party to the underlying action."  *Id*.

(denying permissive intervention to investor seeking to challenge consent decree). These concerns are acute in this case, where allowing the present motion to intervene would necessitate an allowance of motions to intervene by numerous other parties. *See id.* at *4 ("Were this Court to grant this motion to intervene, it would be logic-bound to allow all investors and members of the investing public with differing viewpoints to intervene . . . This is one of the principal reasons that permissive intervention by individual investors in SEC actions is rarely granted."). There are many "Interested Parties," and a number of similarly situated investors and other claimants to funds under the control of the Receiver. If Balanchine's motion were allowed, there would be no logical reason to prohibit any of the other Interested Parties or claimants from intervening as well, resulting in a case with an unwieldy number of parties.

      Where the court has already permitted Interested Parties to be heard on matters in which they express an interest, granting the status of "Party" to all of those entities would provide no additional meaningful process, and provide no extra protection for the investors' rights. Instead, allowing intervention would only serve to complicate these proceedings needlessly, make the discovery process unwieldy, lengthen the hearings, expand the scope of motion practice, and impose additional practical impediments to reaching a resolution of this matter. For these reasons, permissive intervention should also be denied. *See SEC v. Everest Mgm't Corp.*, 475 F.2d 1236, 1239-40, n.5 (2d Cir. 1972) ("in our view it is preferable to require private parties to commence their own actions than to have SEC actions bogged down through intervention").

## CONCLUSION

For the reasons detailed above, Balanchine's emergency motion to intervene should be denied.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**
By its attorneys,


  /s/ Kathleen Shields_____
Rua M. Kelly (Mass. Bar No. 643351)
LeeAnn G. Gaunt (Mass. Bar No. 630557)
Kathleen Shields (Mass. Bar No. 637438)
33 Arch Street, 23rd Floor
Boston, Massachusetts  02110
Telephone:  (617) 573-8941 (Kelly direct)
Facsimile:   (617) 573-4590
E-mail:  kellyru@sec.gov

Local Counsel:

/s/_____
John B. Hughes (Fed. Bar No. CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, Connecticut 06510
(203) 821-3700
(203) 773-5373

Dated:  March 9, 2012

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 9, 2012, I electronically filed the Commission's Opposition to Emergency Motion to Intervene with the Clerk of the Court, parties of record, and the proposed intervenors, by using the CM/ECF system.

             /s/ Kathleen Shields
             Kathleen Shields (Mass. Bar No. 637438)