## Schulte Roth & Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2471

Writer's E-mail Address
michael.swartz@srz.com

March 9, 2012

**VIA ECF**

The Honorable Janet Bond Arterton
United States District Court
District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, CT  06510

Re:  *SEC v. Illarramendi, et al.*, 11-cv-78 (JBA)

Dear Judge Arterton:

      With great regret, rather than propose a briefing schedule for the resolution of the Receiver's Motion to Expand the Receivership to include Highview Point Master Fund, Ltd. and Highview Point Offshore, Ltd. (collectively, the "Highview Funds" or "Funds") [Dkt. 446] (the "Motion") as the Court ordered, I write to seek a further conference with the Court to address the serious deficiencies in the Receiver's March 2, 2012 production. Unfortunately, because of the numerous deficiencies in the Receiver's production, the Highview Funds are unable, at this time, to propose a meaningful schedule for filing their brief in opposition to the Motion, and must again seek relief from the Court in connection with the Receiver's continued efforts to stymie the Funds' ability to defend against the Receiver's Motion, which seeks to eliminate their existence as independent entities and leave their constituencies represented by a Receiver, who has serious conflicts of interest given his historic and continued representation of the MK Funds. Indeed, the Receiver's persistence in seeking to deprive the Highview Funds of their due process right to defend themselves raises serious questions about his impartiality and the motivation behind his Motion aimed at taking control of the Highview Funds – a change in control that is opposed by all of the Funds' investors with whom we have discussed the matter and that, to our knowledge, lacks the support of any of the Highview Funds' investors.

      On February 24, 2012, the Court ordered the Receiver to "produce all documents, records, and materials received and reviewed by the Receiver's forensic accountant Matthew Greenblatt by Friday, March 2, 2012" (the "Order"). We believe that the Court understood (as did Counsel for the Highview Funds) that it was granting focused but fulsome discovery to provide the Highview Funds at least the initial documents it would need to be able to defend

The Honorable Janet Bond Arterton
March 9, 2012
Page 2

themselves against the Receiver's Motion on the basis of all relevant information. However, that has not turned out to be the case.

As set forth below, and, in particular, in the Declaration of Geoffrey Varga of Kinetic Partners (US) LLP ( "Kinetic"), attached hereto as Exhibit 1 (the "Varga Declaration"), the documents provided to us – representing, at most, a mere 8,265 pages out of the over 26 million pages (less than 3/100ths of 1%) that the Receiver reported to the Court that his forensic team has gathered for review – do not enable the Highview Funds to challenge in any meaningful way the assertions in the Declaration of Matthew Greenblatt in support of the Motion (the "Greenblatt Declaration") and to determine whether that Declaration is an incomplete and/or biased analysis. Indeed, if the documents provided truly represent all documents Mr. Greenblatt received and reviewed in preparing his Declaration, then he received and reviewed only an extremely limited and narrow slice of the massive number of documents that his colleagues from FTI Consulting have gathered and reviewed.

The Receiver's production is materially incomplete, as is more fully described in Mr. Varga's Declaration. It leaves massive gaps in the documents and information that the Highview Funds will need in order to perform an analysis of the merits of the Receiver's Motion. Frankly, the Court's attempt to find a reasonable basis for avoiding undue delay, while affording the Funds full due process rights, has been thwarted by the Receiver's production. Accordingly, the Funds request a clarification or modification of the Order so that they can obtain the discovery the Court clearly intended them to receive. Given that the past telephonic conference yielded such unsatisfactory results, we propose an in person conference in New Haven, at Your Honor's earliest convenience

**The Discovery Conference**. On February 24, 2012, the Court held a telephonic hearing in response to the Highview Funds' Motion for Expedited Conference, dated February 8, 2012, seeking discovery to enable it to respond to the Receiver's Motion. [Dkt. 448.] As explained during the hearing and in the parties' joint letter to the Court regarding discovery, dated November 7, 2012 [Dkt. 399], the Highview Funds sought discovery focused on three categories of documents: (i) documents and communications relating to the operations of the Highview Funds -- that is, documents created or held by Highview Point Partners LLC ("HPP"), the Funds' former investment manager, for or on behalf of the Highview Funds; (ii) documents identifying investors in the MK Funds, the amounts invested by each investor, and the valuation of any in-kind contribution for such investments; and (iii) all documentation relating to all inflows and outflows of assets, both to and from the MK Funds, HPP and the Highview Funds. Those categories of documents represent a basic level of information necessary to substantiate – or refute – the Receiver's allegations of substantial fraudulent transfers between the MK Funds and the Highview Funds, among other allegations.

In response to the parties' discovery dispute, Your Honor proposed a resolution that seemed eminently sound. Your Honor reasoned that, in order for the Highview Funds to adequately and fully oppose the Motion, they "need to know everything that Greenblatt reviewed and relied on. Otherwise, the hearing with Mr. Greenblatt is something of a futility." (2/24/12 Tr. at 22:13-17). Your Honor could not have been more clear that the Receiver was to provide all documents that informed Mr. Greenblatt's ability to make the assertions contained in his Declaration. (*See, e.g., id.* at 17:2-5, 18:23-19:3, 19:6-12, 22:13-17, 26:5-9, 26:22-25.)

The Honorable Janet Bond Arterton
March 9, 2012
Page 3

During the hearing, I expressed to the Court my concern about receiving only those documents that "are the world according to the receiver." (*Id.* at 18:12-18.) As I further expressed to the Court: "I think Your Honor's formulation is the correct one . . . I'm worried about being so narrowly pigeonholed we don't get a complete picture that enables us to effectively review and challenge what is necessary." (*Id.* at 27:13-17.) Unfortunately, my concerns and the Court's prediction that "we may need to revisit this" (*id.* at 34:12-18) have come to fruition.

**The Court's Order.**  On February 24, 2012, the Court memorialized its ruling during the hearing by order of the same date. In the Order, the Court held that the Highview Funds are entitled to discovery from the Receiver to enable them to respond adequately to the allegations and arguments raised in the Receiver's Motion. To that end, the Court issued the Order requiring (i) the Receiver to "produce all documents, records, and materials received and reviewed by the Receiver's forensic accountant Matthew Greenblatt by Friday, March 2, 2012," and based on that production, (ii) the Highview Funds were to "advise the Court by March 9, 2012 of the proposed scheduling for filing their brief in opposition to the Receiver's Motion." (2/24/12 Order, Dkt. 461.) The reference to "Matthew Greenblatt" in the Order must surely include all documents reviewed by his staff. Indeed, Mr. Greenblatt himself stated in paragraph 2 of his Declaration that his Declaration summarized "information communicated to me [Greenblatt] by other FTI forensic accountants and professionals relating to their review of the voluminous documents and financial records." (Greenblatt Decl. ¶ 2.) The Highview Funds expected to receive all of that information in response to the Court's Order

The Court expressly proposed its approach to discovery based on its belief that it would be an expeditious method in which to address the parties' dispute. We agreed. And, indeed, had the Receiver complied with the letter and spirit of the Order, it may very well have provided the Highview Funds with the documents they need to defend against the Receiver's motion.

The Court plainly contemplated that the Receiver's production would include certain basic categories of documents requested by the Highview Funds. For example, when I raised the issue of obtaining the flow of funds of the MK Funds, the Court stated: "When you talk about the cash flow being critical, when I read Mr. Greenblatt's affidavit, I would assume they were critical for his analysis, and so, therefore, they would be subsumed in the universe of what he reviewed and relied on." (2/24/12 Tr. at 18:23-19:3.) In addition, the Court stated that the discovery delivered to counsel for the Highview Funds "will naturally include his clients' records." (*Id.* at 34:15-16.) However, instead of providing those documents, the Receiver seems to have interposed a highly technical interpretation of the Court's Order, notwithstanding the clarity of the Court's position that the Highview Funds should receive adequate discovery to defend their interests.

**The Receiver's Production**.  The Receiver appears to have construed the Court's Order as being restricted to documents that literally passed through the hands of Mr. Greenblatt, without consideration of documents reviewed and received by Mr. Greenblatt's staff or other persons from FTI who assisted Mr. Greenblatt in preparing his declaration. Although the Receiver represented in his First Interim Application for Expenses by the Receiver and His Advisers that "his team [which includes Mr. Greenblatt and his firm, FTI] has obtained and

The Honorable Janet Bond Arterton
March 9, 2012
Page 4

secured a significant volume of hard copy and electronic documents representing approximately 26 million pages," he produced only 8,265 pages to the Highview Funds (a substantial number of which are duplicates), representing **less than 0.03% – 3/100ths of 1% –** of the documents that the Receiver currently has in his possession.  Recognizing that the Receiver was not required to produce all documents in his possession (and that the Highview Funds do not seek all documents in the Receiver's possession), the pitiful amount of documents produced suggests that the Receiver's production is woefully deficient, as has been confirmed by the Highview Funds' review of the contents of the documents produced.

The crux of the Receiver's Motion is that he should be appointed Receiver over the Highview Funds, as well as the MK Funds for which he is currently the Receiver, because the assets of the two entities are hopelessly commingled.  Yet, the Receiver did not produce documents to support his claims relating to the flow of funds and assets between the MK entities and the Highview Funds.  For example, notwithstanding Mr. Greenblatt's assertion in his Declaration "that well in excess of a quarter of a billion dollars of capital from the MK Funds and certain MK Entities was transferred to or for the HVP Funds without the receipt of any benefit in return from the HVP Funds," (Greenblatt Decl. ¶ 65), the Receiver did not produce even the most basic information that would substantiate such a claim, including documents showing the dates and amounts of transfers.  Indeed, the Receiver's production was so sparse, as explained in the Varga Declaration, that it does not come close to supporting the allegations in the Greenblatt Declaration, and cannot possibly constitute the universe of documents reviewed by Mr. Greenblatt and his team in arriving at the opinions expressed in his Declaration.  Missing from the production are key documents regarding the MK entities, including without limitation, numerous bank and brokerage statements, wire details, and evidence of subscriptions and redemptions, just to name a few.  The chart attached as Exhibit C to the Varga Declaration illuminates the numerous deficiencies in the Receiver's production.

**The Highview Funds' Attempted Meet and Confer with the Receiver**.  During a meet and confer requested by the Highview Funds to discuss the numerous deficiencies in the Receiver's production, the Receiver's counsel insisted that the small production made to the Highview Funds constitutes the universe of documents that Mr. Greenblatt actually "received and reviewed."  During the meet and confer, the Receiver invited the Highview Funds to put forth a list identifying categories of documents that are missing from the production.  When the Funds did so, the Receiver refused to supplement the production or even consider our request, instead insisting that in producing merely 3/100ths of 1% of the documents in his possession, the Receiver had far exceeded the requirements of the Court's Order.  To put it mildly, that contention is remarkable.  A copy of Funds' letter to the Receiver enclosing the list of missing documents, and the Receiver's response, is attached hereto as Exhibit 2.

It is simply inconceivable that Mr. Greenblatt and his staff have reviewed less than 9,000 out of the 26 million pages of documents available to them, in connection with his declaration.  This is a far cry from the "voluminous documents and financial records" that Mr. Greenblatt represented that he reviewed and analyzed, in addition to the "information communicated to [him] by other FTI forensic accountants and professionals relating to their view of the voluminous documents and financial records." (Greenblatt Decl. ¶ 2.)  The Highview Funds are entitled to those documents and records.  The Receiver's continued refusal to provide meaningful discovery to the Highview Funds raises questions about the extent to which the

The Honorable Janet Bond Arterton
March 9, 2012
Page 5

remaining documents might sharply contradict the Receiver's request to expand the Receivership.

        **The Highview Funds' Proposed Remedy**.  Accordingly, based on what has transpired to date, the Highview Funds seek the following relief:  (1) the deposition of Matthew Greenblatt to determine the scope of work done by him and his team at FTI; (2) the Production of all documents received, reviewed, and relied upon by Mr. Greenblatt and other persons at FTI who assisted Mr. Greenblatt in any way in connection with the Receiver's Motion; and (3) to the extent not subsumed in item No. 2, the documents identified in Exhibit 2, attached hereto, or in the alternative, the three categories of documents referenced on page 2, above.

        While we appreciate the Court's attempt to reach a reasonable resolution to the discovery dispute between the Highview Funds and the Receiver, it is apparent that the Receiver did not approach the production in a constructive way.  Even if the Receiver's production could be argued on an overly narrow reading to have complied, literally, with the Court's Order (which we do not accept), it certainly does not comply with its spirit.  The Receiver's continued obstructionist tactics serve only to waste valuable time and resources, and further diminish assets of investors who have suffered significant financial losses as a result of the alleged fraud, including investors in the Highview Funds.

        We thank the Court for its continued attention to this matter.

        Respectfully submitted,

        /s/ Michael E. Swartz
        Michael E. Swartz

Enclosures

cc:    Counsel for all parties via ECF.