UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Civil Action No.: 11-cv-78 (JBA)

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

vs.

FRANCISCO ILLARRAMENDI, et al.,

      Defendants.

_____/

## REPLY BRIEF OF BALANCHINE CORPORATION, BRENTWOOD SERVICES INCORPORATED AND EDENWOOD HOLDING, S.A. TO S.E.C.'S OPPOSITION TO <u>EMERGENCY MOTION TO INTERVENE</u>

Richard E. Brodsky
The Brodsky Law Firm
66 West Flagler Street, Ninth Floor
Miami, Florida 33130

Simon I. Allentuch (ct21094)
Neubert, Pepe & Monteith, P.C.
195 Church Street
New Haven, Connecticut  06510

Laurence E. Curran III
CURRAN & ASSOCIATES
701 Brickell Avenue, Suite 1550
Miami, Florida 33131

Attorneys for Balanchine, Brentwood,
and Edenwood

March 13, 2012

# INTRODUCTION

In its quest to keep the Principal Owners on the sidelines, the S.E.C.'s Opposition to the Principal Owners' intervention is long on rhetoric[1] but short on analysis. The S.E.C. would undoubtedly prefer that the MK Receiver and the S.E.C. have a less bumpy ride on their road to eliminate or, at the least, severely dilute the value of the Principal Owners' investment in the Highview Funds. But the law stands in its way, and the S.E.C. would have this Court ignore established standards governing intervention. The rule is that intervention should be freely granted, particularly where, as here, the interests of the proposed intervenors are so strong. And, contrary to the S.E.C.'s argument, there is no exception to that rule where, as here, a government agency's "enforcement" objective is to harm the interests of the proposed intervenor.[2]

---

[1]     For instance, the S.E.C. insists on starting its brief by quibbling over whether "Principal Owners" is an appropriate label to attach to the movants. There is, in fact, no dispute that the Principal Owners contributed over 70% of the invested capital (equity) in the Highview Funds. At the May hearing on its TRO Motion, Ms. Hussain, the S.E.C.'s forensic accountant, testified that the S.E.C. was able to verify from the records of the Highview Funds all of its recorded assets and investors' subscriptions and withdrawals.  Tr. 5/23/11, 62-68.

[2]     There is no "enforcement action" exception to the usual rule that intervention is to be liberally granted.  *See, e.g., U.S. v. Ritchie Special Credit Investments, Ltd.,* 620 F.3d 824, 831 (8th Cir. 2010) (enforcement action; "[w]e construe Rule 24 liberally and resolve any doubts in favor of the proposed intervenors").  The authorities cited by the S.E.C. do not come close to saying intervention is "strongly disfavored" in enforcement actions.  Rather, they involve situations where the respective courts determined that, for various reasons, intervention was not appropriate *in that specific case.*

In effect, the S.E.C. posits that it is sufficient to enable the Principal Owners to contest the Highview Funds' will, but the Principal Owners have a right to participate in a fair process, fully in accordance with due process, before the Court decides whether to pronounce the Funds dead.

Intervention should be granted to allow the Principal Owners to press several fundamental issues that both the S.E.C. and the MK Receiver have ignored. These issues are outlined in the Principal Owners' Proposed Motion for Stay of Proceedings on MK Receiver's Motion to Extend Receivership Pending Resolution of Appeals, or, in the Alternative, for Permission to Oppose the MK Receiver's Motion Including the Establishment of Fair and Orderly Procedures for its Resolution ("Proposed Motion") (DE 458-1), filed with the intervention motion. They include, among others, the failure of the MK Receiver to establish proper grounds for extending the receivership, the disabling conflict of interest that would be created were this Court to appoint John Carney as the receiver of the Highview Funds, the S.E.C.'s assiduous avoidance of the Second Circuit's directive to inform the Court that cases of this sort should proceed under the Bankruptcy Code,[3] and the need for procedures comporting with due process in deciding the MK Receiver's Motion.

---

[3] It should not pass notice that when the S.E.C. first formally sought the appointment of a receiver in this case, it stated that the main purposes of a receivership were to preserve the status quo, provide an accounting, and *"place hopelessly insolvent entities in bankruptcy to effect their liquidation."* Pl.'s Mem. of Law in Support of Appl. for Emergency Relief, DE 182-1, 14 (citing *S.E.C. v. Am. Board of Trade, 830* F.2d 431, 436 (2d Cir. 1987) (emphasis supplied). In this case, the S.E.C. has long since abandoned its prior statement about the limited purposes of an equity receivership, and has ignored the Second Circuit's dictate that bankruptcy, not an equity receivership, is the appropriate forum to liquidate an

**ARGUMENT**

1.      Intervention of Right

The S.E.C. approaches Rule 24(a) as if it were a "check the boxes" exercise, but Rule 24 factors must be considered collectively. In *United States v. Hooker Chems. & Plastics Corp.* 749 F.2d 968, 983 (2d Cir. 1984), the Second Circuit explicitly explained the inherent interrelationship among the relevant factors: "[a] showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation." Thus, the four factors must be considered as a whole, and the stronger the proposed intervenor's interest, the lower the showing needed to satisfy the other factors. The analysis must start with the nature and strength of the movant's interests.

      a.      The Principal Owners Have an Undeniably "Very Strong
              Interest" in Preventing the Elimination or Watering Down
              of their $117,500,000 Investment in the Highview Funds.

Granting the Receiver's motion to expand the MK receivership would make it a virtual certainty that the Principal Owners' $117,500,000 investment will be eliminated or severely watered down. The Principal Owners' interests are therefore "very strong." It is hard to conceive of a more "direct, substantial, and legally

---

insolvent entity like MK, not a receivership. *See Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reconfirming *Am. Bd. of Trade*). But the S.E.C. is not alone in ignoring the original purposes of that receivership. The MK Receiver, without, as far as is public, having obtained the approval of the Court, has disregarded the original requirement that it file a full report and has, instead, decided to skip that step and proceed directly to its Motion. Thus, everyone but the Receiver and his Staff, as well as, we assume, the S.E.C., has been denied the right to see an accounting. Instead, we were presented a one-sided advocacy document inconsistent with the requirements of an accounting.

protectable" interest in the subject matter of an action. *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 475 (2d Cir. 2010). Thus, the Court must determine whether, in light of the Principal Owners' "very strong interest," the minimal showing required on the other factors have been made.

   b.   <u>Lack of Adequate Representation by the Highview Funds</u>

The S.E.C. trivializes the "adequacy" issue by declaring that "[t]he Highview Funds are represented by able counsel, and the fact that Balanchine's counsel disagrees with the strategic decisions of the Highview Funds' counsel is not a reason to permit intervention." S.E.C. Opp., 6. That Mr. Swartz and his firm are outstanding counsel who are ably representing their clients is irrelevant, as is the S.E.C.'s hypothesis that there is disagreement between him and the Principal Owners. The real issue is whether the Principal Owners' preference to participate directly should be ignored.

Even if it were correct to analyze the "adequacy" issue in isolation, the S.E.C. misstates the legal test by erecting a higher burden for the Principal Owners than the law imposes. "An applicant for intervention as of right has the burden of showing that representation *may* be inadequate, although the burden 'should be treated as minimal.'" *U. S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis supplied). Moreover, "'the applicant should be treated as the best judge of whether the existing parties adequately represent his or her interests, and . . . any doubt regarding adequacy of representation should be resolved in favor of the proposed

intervenors." *Miami Tribe v. Walden*, 206 F.R.D. 238, 243 (S.D. Ill. 2001) (quoting 6 James Wm. Moore *et al.,* Moore's Federal Practice § 24.03[4][a] (3d ed.)). As the court stated in *United Bank v. Sun Mesa Corp.*, 119 F.R.D. 430, 433 (D. Ariz. 1988), the movant "should be afforded great deference. [It] is the one alleging injury. [It] is entitled to [its] day in court."

The Funds are not adequate representatives of the Principal Owners' interests for three reasons.  First, the Funds are simply relief defendants, who, with their limited role, are not true "existing parties." *See CFTC v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010) ("relief defendant" is "a person who 'holds the subject matter of the litigation in a subordinate or possessory capacity"). Second, they are governed by directors who lack a direct personal, financial stake in the outcome. Third, they are under potentially disabling restraints as to the extent of their permitted advocacy, in that, pursuant to order of this Court, DE 284 (June 29, 2011), the legal and other professional fees of the Funds are subject to the scrutiny of both the S.E.C. and, potentially, the Court, if the S.E.C. "objects."[4]  The Principal Owners have no such potentially disabling restraint.

    c.    <u>Possible Impairment or Harming of Interest</u>

Respectfully, the Court erred in denying intervention in May 2011 on the ground that the Principal Owners had not proven that their interests might be

---

[4]    Indeed, the MK Receiver has already been heard to complain that having to litigate over what he has proclaimed is not subject to serious doubt "would add insult to injury to aggrieved investors and creditors, as the monies otherwise available to compensate them for the Fraud would instead be dissipated in both pursuing and defending wasteful litigation." DE 447, 24.

impaired or harmed by denial of intervention. Given that the Court ruled that they had legally protectable interests that might not be adequately protected by existing parties, the Court lacked the discretion to conclude as it did. *See, e.g., Brennan,* 260 F.3d at 131 (noting that when "a proposed intervenor's interests are otherwise unrepresented in an action, the standard for intervention is no more burdensome than the standing requirement"); *see also FDIC v. Jennings,* 816 F.2d 1488, 1492 (10th Cir. 1987) (holding that "interest" test and "impairment" test are essentially the same). At a minimum, the Court erred in considering the "impairment" test in isolation, rather than in conjunction with the strong showing Principal Owners made on the other factors. *See Hooker Chems.,* 749 F.2d at 983. The S.E.C. is once again urging a course of action that will lead the Court into error.

The S.E.C.'s arguments on this point are incorrect. First, the S.E.C.'s tactic of labeling the Principal Owners' arguments "entirely speculative," S.E.C. Opp., 5, is not only irrelevant but inaccurate. The S.E.C.'s formulation misstates the test for determining whether a proposed intervenor's legally protectable interest may be impaired or harmed by denial of intervention. The issue is not whether it is certain that the case poses the threat of harm to the proposed intervenor, but rather whether there is a *realistic possibility* of such harm. *See Bridgeport Guardians,* 602 F.3d at 475 (reversing denial of intervention on grounds of remoteness and speculativeness, holding that "while the City might be able to implement the order in a number of different ways, the appellants should be allowed to at least argue that the City cannot comply with the order without violating Title VII, or that

whatever course is chosen must comply with Title VII"); *see also Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132 (2d Cir. 2001) (rejecting argument of remoteness and speculativeness, holding interest protectable where "agreement *could potentially cause* [proposed intervenors] displacement or demotion") (emphasis supplied); *S.E.C. v. Flight Transp. Corp.,* 699 F.2d 943, 948 (8th Cir. 1983) (proposed intervenor had interest when faced with potential loss of value of seized investment property).

In any event, it is not mere speculation that watering down if not eliminating the Principal Owners' and other investors' interests in the Highview Funds is and has been the precise goal of the MK Receiver and the S.E.C. in this case since May 2011.[5] And it is a virtual certainty, based on Mr. Carney's allegations, supposedly stemming from a full-scale, multi-million dollar comprehensive investigation of the facts, that he will propose just such a plan if the Court fuses the Highview Funds with the MK entities under his control. *See*, *e.g.*, *Flight Transp.*, 699 F.2d at 948 (granting intervention in similar circumstances). Finally, the situation is even more dire than it was in May 2011. Although freezing the assets of the Highview Funds posed a severe threat to the Principal Owners' interests, a freeze was only the first step towards eviscerating the Principal Owners' interests; what has occurred since was entirely predictable, and the MK Receiver's Motion is the practical culmination of that process.

---

[5]    *E.g.,* Pl.'s Mem. of Law in Support of Appl. for Emergency Relief, DE 182-1, at 18; Receiver's Motion, DE 447, at 6; Tr., 5/27/11 hearing, at 130 (Receiver's counsel).

Further, the S.E.C.'s argument is circular: it assumes that the MK Receiver's Motion should and *will* be granted. What the S.E.C. fails to take account of is that the Principal Owners seek to participate in order to oppose the entry of that very relief, as they are entitled to do.  Indeed, the Principal Owners' Proposed Motion summarizes significant legal and factual problems with the MK Receiver's Motion. The S.E.C. resolutely ignores these serious issues. The Principal Owners unquestionably have the right to raise these issues and others in contesting the relief sought by the MK Receiver, and, in an about-face, endorsed by the S.E.C.

Ruling in accordance with the S.E.C.'s argument will lead to the same error that the Principal Owners contend was made in ruling on their first intervention motion: conflating the Principal Owners' right to contest the ultimate distribution of the funds as suggested by the MK Receiver in some kind of undefined summary proceeding with their right to contest the entry of the relief that would lead to such proceedings.[6]

2.    Permissive Intervention

Permissive intervention, also, is merited.

---

[6]    It goes without saying that the Court's having granted various persons "Interested Party" status, which the S.E.C. argues is enough, does not provide any meaningful protection of the Principal Owners' interests. First, we are unable to find any discussion in the law acknowledging the status of an "interested party" in civil litigation other than where "parties in interest" and "interested party" have a specific meaning under statutes or regulations. Second, as proceedings in this case have already shown, the "right" of an interested party to participate on a given issue is subject to the Court's *ad hoc* rulings. Third, the general rule is that only a party or an intervenor may appeal from an adverse ruling of this Court.

The S.E.C. cannot contest the proper legal standards, and has not controverted the authorities cited by the Principal Owners establishing that permissive intervention is appropriate. Pr.Owners' Emer. Motion to Intervene, DE 458, 6-7. Nor has the S.E.C. contested that its claims and the Principal Owners' interests are but two sides of the same coin: the S.E.C. now advocates combining the assets of the Highview Funds and the MK entities, which will almost certainly result in watering down if not eliminating the Principal Owners' equity in the Highview Funds. That constitutes sufficient "common" issues of law and fact under the governing standards.

Finally, the S.E.C. has not shown that intervention will materially slow the process. Even if other owners join, which is no certainty, their participation, and that of the Principal Owners, can be managed, by, for example, appointing lead counsel. There is no real cost to allowing the Principal Owners in, except to the ability of the S.E.C. and the MK to squelch their voice and avoid exposing their views to the Court.

## **CONCLUSION**

For the reasons set forth herein and in the Motion, the Court should grant the Principal Owners intervention of right and permissively.

Respectfully submitted,

/s/ Richard E. Brodsky
Richard E. Brodsky
THE BRODSKY LAW FIRM
66 West Flagler Street, Ninth Floor
Miami, Florida 33130
Tel.: 786-220-3328
Fax: 866-564-8231
rbrodsky@thebrodskylawfirm.com

OF COUNSEL:

Simon I. Allentuch (ct21094)
Neubert, Pepe & Monteith, P.C.
195 Church Street
New Haven, CT  06510
Phone: (203) 821-2000
Fax: (203) 821-2009

Laurence E. Curran III
CURRAN & ASSOCIATES
701 Brickell Avenue, Suite 1550
Miami, Florida 33131
Tel.: (305) 777-0374
Fax: (305) 675-0548
lecurran@lecurran.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2012 a copy of the foregoing was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation

of the Court's electronic filing system. Parties may access this filing through the

Court's system.

/s/ Richard E. Brodsky
Richard E. Brodsky