Case 3:11-cv-00078-JBA   Document 476   Filed 04/02/12   Page 1 of 10

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

---

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

- v -

FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC,

        Defendants,

and

HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP,

        Relief Defendants.

Civ. Action No. 11-cv-78 (JBA)

---

## RELIEF DEFENDANTS' OPPOSITION TO THE RECEIVER'S MOTION FOR AN EXPEDITED SCHEDULING ORDER

Relief Defendants Highview Point Master Fund, Ltd. and Highview Point Offshore, Ltd. (the "Funds" or the "Highview Offshore Funds"), by and through their undersigned counsel, respectfully submit this opposition to the Receiver's Motion for an Expedited Scheduling Order (hereinafter cited as "Mot.") (Dkt. 475).

**PRELIMINARY STATEMENT**

It is disconcerting, to say the least, that the Receiver has repeatedly sought to tilt the playing field against the Highview Offshore Funds in an effort to prevent them from having their fair day in court. The Receiver transparently seeks to prejudice the Funds' ability to defend their interests by withholding key discovery, while at the same time seeking an expedited briefing schedule for the opposition to the Receiver's Motion to Expand the Receivership to include the Highview Offshore Funds (the "Receivership Motion"). The Receiver's instant motion to expedite the briefing schedule is unnecessary and wasteful.

The Receiver does not—because he cannot—argue that there is any risk of dissipation to the assets in question, which are being held in a U.S. bank account subject to a freeze order. Moreover, the Court already determined in June 2011 that the Receiver's requested relief is unnecessary. During the last telephonic conference on the Receivership Motion, the Court observed as follows:

> at the time we had those hearings [in May 2011] and the Court took the action that it did, it specifically was not necessary to extend the receivership to the Highview -- Highview Point Offshore Funds . . . what I'm not understanding is what's different now if all of the money has been locked down, all of the access has been locked down, why do we need to do this now?

(02/24/12 Hr'g Tr. at 20:7-10, 21-24.) The answer is that nothing has changed. There is no need for the Receiver to take control of the Highview Offshore Funds.

The Receiver's tactics are grossly unfair to the Highview Offshore Funds and their investors, and his effort to set an expedited briefing schedule should be rejected. As has been described in prior correspondence to the Court, the Receiver has failed to comply fully with the Court's discovery order relating to the Receivership Motion, producing only a tiny fraction of the relevant documents. Moreover, the Receiver advised the Court in his March 16 letter that he

had "made available" to the Highview Offshore Funds 31 sets of banks statements for MK entities in advance of the May 2011 hearing. On March 22, 2012, the Highview Offshore Funds advised the Receiver that they did not have those records. As of April 2, 2012, the Funds still have not received those records. If the Receiver wished to expedite consideration of his Receivership Motion, it was incumbent upon him to promptly provide the required discovery.

In addition, the Court advised the parties that it is unlikely to be able to schedule a hearing until late June or July 2012. Notwithstanding that, the Receiver seeks an order compelling the Funds to file an opposition brief next week, by April 9, 2012. Given that there is no risk of dissipation to the assets in question and no likelihood of being heard for an additional three months, there is no need for expedition.

The Court should deny the Receiver's Motion for an Expedited Scheduling Order and instead schedule an in-person conference to resolve this discovery matter and scheduling issue once and for all.

## FACTUAL BACKGROUND

The relevant factual background is as set forth in the following chronology. The events set forth below underscore how much time the Receiver has had to review the voluminous documents at issue, while at the same time the Highview Offshore Funds have been denied adequate discovery and time to defend their interests:

- John Carney was appointed the Receiver over the MK Funds on February 3, 2011 (Dkt. 66).

- On May 6, 2011, the Securities and Exchange Commission (the "Commission") filed a motion to file a Second Amended Complaint, which, among other things, added Highview Point Partners LLC ("HPP") as a defendant and the Highview Offshore Funds as relief defendants in the action. In addition, the Commission filed a Motion for Temporary Restraining Order, Asset Freeze, and Order Appointing Receiver against HPP and the Highview Offshore Funds. (Dkt. 169, 182.) The motion to amend was granted on May 9, 2011. (Dkt. 179).

- On May 13, 2011, the Highview Offshore Funds voluntarily consented to a temporary freeze order to further secure the Funds' assets. (Dkt. 201.) The voluntary asset freeze was subsequently extended on May 23, 2011. (Dkt. 242.)

- On May 23, 2011, the Receiver filed its First Interim Application for Fees and Expenses by the Receiver and His Advisers, seeking $2,966,550 for 7,860 hours of work performed by Baker & Hostetler LLP ("B&H), as counsel for the Receiver, and FTI Consulting, Inc. ("FTI"), as accountants for the Receiver, during the period from February 3, 2011 through March 31, 2011. (1st Interim Rep. ¶¶ 4-5, 29-30.) In his report, the Receiver stated that "the Receiver and his team have obtained and secured a significant volume of hard copy and electronic documents representing approximately 26 million pages." (*Id.* at ¶ 48)(emphasis added). In addition, the Receiver noted that "[e]fforts pertaining to forensic accounting analysis of the Receivership Entities is approximately 75% complete." (*Id.* at ¶ 49.)

- On May 23, 25 and 27, 2011, the Court held a three-day hearing on the Commission's motion for injunctive relief. During the hearing, the Commission withdrew its request for the appointment of a receiver over the Highview Offshore Funds, and HPP consented to the appointment of Mr. Carney as receiver over it. The Court approved those actions.

- On June 16, 2011, the Court entered an order granting the Commission's motion for injunctive relief against the Highview Offshore Funds (Dkt. 276). Among other things, the Court ordered an indefinite freeze of the Funds' assets and patriation of the Funds' assets to the United States. The Funds' assets subsequently were transferred to a U.S. bank account at JP Morgan Chase, where they remain today.

- During the summer of 2011, the Highview Offshore Funds repeatedly requested that the Receiver provide them with access to their own and other records to enable them to defend their interests.

- On October 18, 2011, the Court held a pre-filing conference, at the conclusion of which the Court issued a briefing schedule for the Funds' Motion to Dismiss the Commission's Second Amended Complaint. (Dkt. 392.) During the October 18 conference, the Funds alerted the Court to their inability to obtain discovery.

    o During the conference, the Receiver represented a willingness to work cooperatively with the Funds, stating that: "we're looking to have a situation where our investigation is continuing, that we get their [the Funds'] input as to certain forensic steps that they believe should be done in order to, you know, cast a clearer light on what happened with the funds and that we would then come to -- come to a conclusion factually enough that we could address some of the issues, some of the tracing issues, and make that -- bring that to the Court, whether we would -- whether we believe it would be appropriate to either take clawback action or consolidation, but to do it in some negotiated way." (Dkt. 393 at 22:2-13.)

    o After hearing the Funds' concerns about discovery having been delayed, the Court requested that the parties file the equivalent of a Rule 26(f) discovery report, wherein

> "the receiver would be able to indicate the anticipated conclusion of its tracing and any of the other aspects of the receiver's undertaking that would affect or would impact a further discovery schedule." (*Id.* at 24:11-19.)

- On November 7, 2011, the parties filed a joint response to the Court's request for a Rule 26(f) report, each party laying out its respective positions. (Dkt. 399.) The Commission took no position. The Funds' position was that they should have preliminary discovery in three limited categories.[1] The Receiver's position was that no discovery should be provided to the Funds: "the Receiver believes that, while the parties brief the motion to dismiss, he should be allowed to conclude his preliminary analysis and issue a report prior to the commencement of discovery." (*Id.* at 3.)

- In addition, in the November 7, 2011 report, the Receiver represented that "following the claims bar date on December 30, 2011, the Receiver will issue a report on the Receivership's assets and liabilities on January 30, 2012, and an initial report addressing the development of the shortfall in the reported assets of the various MK and Highview entities controlled by defendant Illarramendi and others by February 15, 2012. (*Id.* at 1-2.) To date, the Receiver has not filed an initial tracing report.

- On November 29, 2011, the Receiver filed its Second Interim Application for Fees and Expenses by the Receiver and His Advisers, seeking $6,257,260 for 17,259 hours of work performed by B&H, FTI and Higgs & Johnson, the Receiver's Cayman Islands counsel, during the period from April 1, 2011 through June 30, 2011. (2d Interim Report ¶¶ 4-6, 35-36.) In this report, the Receiver states that "the volume of data has significantly increased since the First Fee Application" (which noted that the Receiver had collected 26 million pages of electronic data). (*Id.* at ¶ 43.) In addition, "[t]he Receiver currently possesses approximately 4.0 terabytes (approximately 4.0 million documents or approximately 40 million pages) of electronic data collected from HPP at various times and from various data sources." (*Id.* at ¶ 28)(emphasis added) The Receiver reports that he and FTI "have expended significant efforts to analyze complex transactions executed at or with HPP [and/or the Highview Offshore Funds]." (*Id.*)

- On January 30, 2012, the Receiver filed its interim status report of the Receivership's assets and liabilities. The report contained no data regarding the flow of funds or other activity between the Highview and MK Funds. (Dkt. at 444.)

- On February 3, 2012, the Receiver filed a Motion to Expand the Receivership to include the Highview Offshore Funds (Dkt. 446), and requested that the Motion be considered "in an expedited manner to avoid unnecessary depletion of investor assets which will occur with prolonged litigation and to facilitate the Receiver's ability to expeditiously marshal and distribute all relevant assets in an equitable manner." (*Id.* at 3.)

---

[1] The categories of documents were as follows: (i) the Funds' own operating documents that were held by HPP on behalf of the Funds, which were now in the exclusive possession of the Receiver; (ii) documents identifying investors in the MK Funds, the amounts invested by each investor and the valuation of any in-kind contribution for such investments; and (iii) all documentation relating to all inflows and outflows of assets, to and from the MK Funds, HPP, and the Highview Offshore Funds. (11/7/11 Ltr at 5 n.3.)

- On February 9, 2012, the Court granted the Highview Offshore Funds' request for an expedited conference, and suspended the time by which the Funds must respond to the Receivership Motion until after the Funds' Second Circuit briefing deadline. (Dkt. 453.)

- By February 15, 2012, the Receiver still had not filed an initial tracing report, even though the Court had advised the Receiver in October 2011 of its significance. (*See* 10/18/11 Hr'g Tr. at 23:11-13 (Court: "I want the end of the tracing report, which is really, I think, what will allow the parties to contour any further discovery").)

- On February 24, 2012, the Court held a conference and ruled that the Funds are entitled to discovery so that they may respond adequately to the Receivership Motion.

    o During the conference, the Funds reiterated the three categories of documents they are seeking, including, among other things, the Funds' books and records maintained by HPP, documents identifying investors in the MK Funds, amounts and values of those investments, and the flow of fund information between the Highview Offshore Funds, HPP and the MK Funds. (2/24/11 Hr'g Tr. at 15:25:16:6).

    o The Funds expressed concern that through the Receiver's discovery they would "only get the documents that are the world according to the receiver and not the kind of independent cut of some category of documents." (2/24/11 Hr'g Tr. at 18:13-19:3.)

    o During the conference, the Receiver sought to limit discovery to only documents "that would underlie the Greenblatt declaration." (*Id.* at 21:6-16.).

    o In response, the Court stated that "the Offshore Funds need to know everything that Mr. Greenblatt reviewed and relied on. Otherwise, the hearing with Mr. Greenblatt is something of a futility." (*Id.* at 22:13-17.)

    o The Court further stated as follows: "What I need from Mr. Swartz is for him to look at the evidence that is given, the discovery that's given to him" and "to advise whether and on what basis it's evident that additional discovery is necessary," noting that "we may need to revisit this." (2/24/11 Hr'g Tr. at 34:12-35:5.)

- On February 24, 2012, the Court ordered the Receiver to "produce all documents, records, and materials received and reviewed by the Receiver's forensic accountant Matthew Greenblatt by Friday, March, 2, 2012." (Order, Dkt. 461.) The Court further ordered that the Highview Offshore Funds "advise the Court by March 9, 2012 of the proposed scheduling for filing their brief in opposition to the Receiver's Motion to Expand the Receivership." (*Id.*)

- On March 2, 2012, the Receiver produced a mere 8,700 pages of documents purportedly in accordance with the Court's February 24, 2012 discovery order. The Receiver's production (even when added to other material provided earlier in these proceedings), amounted to a tiny fraction — less than $2/100^{th}$ of 1% of the documents collected by the Receiver. The

6

assertions in Mr. Greenblatt's declaration strongly suggest that documents produced do not constitute all the documents received and reviewed by Mr. Greenblatt and his team at FTI.

- o In his declaration submitted in Support of the Receivership Motion, Mr. Greenblatt stated that his declaration is "based on [his] personal review and analysis of voluminous documents and financial records and upon information communicated to [him] by other FTI forensic accountants and professionals relating to their review of the voluminous documents and financial records." (Dkt. 446-1, Greenblatt Decl. ¶ 2.)

- o Mr. Greenblatt also stated that his declaration does not include "all of the information known by [him] or by other FTI professionals about this matter, FTI's forensic investigation, or that is relevant to the proceedings" (*id.* at ¶ 3), suggesting that there is additional information that Mr. Greenblatt reviewed and relied on that is not included in or with the declaration, which may be "relevant to the proceedings." (*Id.*)

- By letter dated March 9, 2012 (Dkt. 468), in accordance with the Court's requirement that the Funds "advise whether and on what basis it's evident that additional discovery is necessary" (2/24/11 Hr'g Tr. at 34:12-35:5), the Highview Offshore Funds advised the Court after a preliminary review of the Receiver's March 2 production, it was evident that additional discovery was necessary. The Funds' March 9 letter included a declaration from their forensic accountants, Kinetic Partners LLP, explaining the deficiencies in the Receiver's production and what additional documents would be necessary for their analysis.

- On March 16, 2012 the Receiver filed a letter to the Court demanding that the Court order the Funds to submit an opposition brief by April 2, 2012. (Dkt. 472).

- On March 23, 2012, the Highview Offshore Funds submitted a letter in opposition to the Receiver's request for an order demanding that the Funds file an opposition brief by April 2, 2012, noting that such a request was unreasonable and unnecessary. (Dkt. 474).

- On March 27, 2012, the Receiver filed the instant Motion for an Expedited Scheduling Order, seeking an order that requires the Funds to submit an opposition brief by April 9, 2012. (Dkt. 475).

**ARGUMENT**

The Court should deny the Receiver's Motion for an Expedited Scheduling Order that would require the Funds to submit an opposition brief by April 9, 2012, for the reasons set forth below and in the Funds' letters to the Court dated March 9 and March 23, 2012, copies of which are attached hereto as Exhibits A and B, respectively (the "Letters").

First, the Receivership Motion is a significant motion involving a complicated fraudulent scheme that deals with very complex issues. During a four-month period ending June 30, 2011, the Receiver and his team expended more than 25,000 hours of time and over $9.2 million of Receivership assets in an effort to understand the fraudulent transactions. Those figures do not include the time and money spent by the Receiver's attorneys and accountants since June 30, 2011. (1st Interim Report ¶¶ 4-5, 29-30; 2nd Interim Report ¶¶ 4-6, 35-36.) To date, the Receiver has had the benefit of over one year of unrestricted access to the relevant documents. It is unreasonable to expect that the Funds and their forensic accountants can review and analyze a disjointed and incomplete subset of those documents in the extremely short time period of time that the Receiver proposes, particularly if they must do so without the Receiver's assistance and cooperation. To the extent the Receiver is concerned with costs that the Funds will incur in conducting an analysis and defending their interests, it should be noted that such costs (which are not paid out of Receivership assets) would be reduced significantly were the Receiver to provide assistance and cooperation, as he previously represented to the Court he would do, but which so far has not been forthcoming.

Second, it is evident after an initial review of the Receiver's March 2nd production that the production is insufficient to allow the Highview Offshore Funds to oppose adequately the assertions in the Receivership Motion and the accompanying declaration of Mr.

Greenblatt.  The Funds' Letters include a detailed explanation of the categories of documents that are missing from the production.  The deficiencies in the Receiver's production are underscored by the fact that the Receiver has yet to file an initial tracing report, as promised.  Indeed, to date, the Receiver has not produced to the Highview Offshore Funds any information regarding principal investments in the MK Funds or any supporting documentation regarding the flow of funds between the MK Funds and HPP and/or the Highview Offshore Funds, although the Court and the Highview Offshore Funds logically "assume[d such information would be] critical for [Mr. Greenblatt's] analysis, and so, therefore, they would be subsumed in the universe of what he reviewed and relied on."  (*See* 2/24/11 Hr'g Tr. at 18:23-19:3.)

Third, even accepting the Receiver's unduly narrow reading of the Court's February 24th Discovery Order, the Receiver still has not, as of the filing of this opposition, produced the documents he said he would produce.  The Receiver committed to producing 31 sets of bank statements for MK-related entities, but has not done so.  (*See* Dkt. 475 at 3 n.1; *see also* Dkt. 472 at 3.) Eleven days after being advised that the Funds do not have the statements, the Receiver still has not produced them.  That fact alone undermines the Receiver's request for expedition.

Fourth, the interests of the investors in the MK Funds (which the Receiver represents) are diametrically opposed to the interests of the investors in the Highview Offshore Funds.  Accordingly, the appointment of Mr. Carney (the Receiver over the MK Funds) as receiver over the Highview Offshore Funds raises serious conflicts of interest issues that cannot be ignored or rushed through an expedited proceeding.

Fifth, the Receiver seeks an extraordinary remedy -- to disregard the separate corporate existence of the Highview Offshore Funds -- which will irreparably harm the Funds

and their investors. This significant issue should not be taken lightly nor rushed unnecessarily. To date, the Receiver has not produced any documents evincing that the Highview Offshore Funds were established as mere sham corporations.

Finally, the Receiver has not demonstrated that expedited proceedings are warranted here. The Funds' assets are situated in the United States and are subject to this Court's freeze order. The Receiver does not argue (nor can he) that the Highview Offshore Funds are not in strict compliance with the freeze order.[2]

## CONCLUSION

For the foregoing reasons, and those set forth in the Highview Offshore Funds' March 9 and March 23, 2012 letters to the Court, the Receiver's Motion for an Expedited Scheduling Order should be denied.

Dated: New York, New York
       April 2, 2012

SCHULTE ROTH & ZABEL LLP

By: /s/  Michael E. Swartz
    Harry S. Davis (*admitted pro hac vice*)
    Michael E. Swartz (*admitted pro hac vice*)

919 Third Avenue
New York, New York  10022
(212) 756-2000

*Attorneys for Relief Defendants*
*Highview Point Master Fund, Ltd. and*
*Highview Point Offshore, Ltd.*

---

[2]    The Receiver argues that because the Highview Offshore Funds provided March 30, 2012 as an alternative date (in the event the Court did not grant its request for discovery) by which to file an opposition to the Receivership Motion, there is "no reason to delay imposing the briefing schedule the Receiver now requests." (Mot. at ¶ 2.) The March 30 date was an alternative to the Funds' preferred relief: "the Funds seek immediate access to the discovery previously requested by them in the parties' joint November 7, 2011 letter to the Court (described above) . . . and an extension of the return date for the Receiver's Motion until 60 days after production of the requested documents is completed." (Dkt. 448 at 6.) In addition, during the February 24 conference the Funds stated that "90 days is probably more appropriate." (2/24/12 Hr'g Tr. at 16:8-12.) As the Receiver well knows, because the Court granted the Funds' request for discovery, the alternative date of March 30, 2012, is moot. Obviously, the Funds should have reasonable time to review and analyze the production and any subsequent production that the Court may order, which includes documents and materials that the Receiver and his team have been reviewing and analyzing for more than a year.