UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>　　　　　　　Plaintiff,<br>v.<br><br>FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC,<br><br>　　　　　　　Defendants,<br><br>and<br><br>HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP,<br>　　　　　　　Relief Defendants. | 11-CV-00078 (JBA)<br><br>ECF CASE |

**REPLY IN SUPPORT OF MOTION FOR AN ORDER AUTHORIZING THE RECEIVER TO PRODUCE DOCUMENTS TO THE U.S. GOVERNMENT NOTWITHSTANDING THE COURT'S FEBRUARY 3, 2011 PROTECTIVE ORDER**

　　　　John J. Carney, Esq. (the "Receiver"), as Court-appointed Receiver in the above-captioned action, by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of his motion for an order authorizing the Receiver and Receiver's counsel to produce documents to any agency or department of the United States Government which requests such production without providing notice to any party who designated documents confidential or following any other procedures, notwithstanding the protective order issued in this case (the "Motion for Relief from Protective Order").

On May 4, 2011, the Receiver filed the Motion for Relief from Protective Order with the consent of all of the named parties to this action, including Mr. Illarramendi, the Securities and Exchange Commission ("SEC"), the Highview Point Master Fund, Ltd., Highview Point Offshore, Ltd., and Highview Point LP.  On May 10, 2011, after conferring with counsel for the Receiver, Mr. Juan S. Montes filed an opposition to the Motion for Relief from Protective Order.  For the reasons set forth below, as well as in the Motion for Relief from Protective Order, Montes's objection should be rejected and the Court should issue an order granting the requested relief.

The protective order entered by the Court at the very beginning of this case, on February 3, 2011, was never intended to shield documents from production to the U.S. Government—a fact that is demonstrated by the named parties' non-opposition to the relief sought. (Doc. #65)(the "Protective Order")  Rather, the Protective Order covered "non-public proprietary information" in order to prevent its disclosure to private third-parties who would otherwise not have access to such information.  *Cf.* Federal Rule of Civil Procedure 26(c)(1)(g) (protective order may be issued to protect against disclosure of "a trade secret or other confidential research, development, or commercial information").  Given that the plaintiff in this litigation is a government agency – the SEC – and that a related criminal investigation of Mr. Illarramendi by the United States Department of Justice is publicly known, the individuals and entities, who produce documents to any of the parties, are on notice that those documents could be disclosed to U.S. Government agencies and departments.  Indeed, the applicable securities laws and regulations specifically provide the SEC with authority to provide information to criminal law enforcement authorities.  *See* Securities Act of 1933, 15 U.S.C. § 77t(b); Securities Exchange Act of 1934, 15 U.S.C. § 78u(d); 17 C.F.R. § 203.2; and 17 C.F.R. § 240.24c-1(b).

Notably, Mr. Montes's complaint is not that documents he designated as confidential may be disclosed to the government, but simply that he will not receive notice prior to that event. The intended purpose of the notice provision in the Protective Order is to allow the producing individual the opportunity to move to quash the third-party subpoena or discovery request. However, Montes has not articulated any legal basis for him - or any other producing individual - to challenge a government subpoena or investigative demand that called for the production of documents he deems "confidential." Indeed, Montes concedes that it is "very unlikely that [he] would oppose a Request by the Receiver to produce materials to a government agency." [Montes Opposition at 2]. Thus, Montes simply seeks notice for its own sake. The Protective Order was not meant to be a mechanism for notifying non-parties of government subpoenas and requests for documents.

In addition, Montes concern about the Government's further dissemination of confidential materials is misplaced. The Receiver will, as a matter of course, explicitly request confidential treatment under FOIA for all documents produced to any Government agency, and stamp all documents with such designation.

As the Receiver stated in support of the Motion for Relief, he seeks to be formally relieved from the requirements of the Protective Order in the circumstances indicated in order "to produce documents [to the government] in the most cost efficient manner." As counsel for the Receiver explained to counsel for Mr. Montes prior to the filing of Montes' opposition, requiring the Receiver to notify all relevant producing parties of subpoenas and requests from government agencies would be costly and unduly burdensome, thus diminishing the assets of the Receivership Estate. The Receiver and his counsel have issued more than two hundred subpoenas and voluntary requests to different individuals and entities, and have received over

3

half a million documents from those third-parties. In order to provide notice before disclosing any materials to a United States government agency or department, the Receiver would have to determine which of the responsive documents had been marked as confidential, then determine the sources of those documents, and finally mail or email written notice to each of the relevant producing parties. The process would be time-consuming and generate needless expense.

Significantly, this is not a situation where Montes or any other person producing documents was not on notice that the Protective Order might be modified or that relief might be sought from the provisions of the Protective Order. The language of the Protective Order itself made it abundantly clear that the Court reserved the right for any party "to apply to the Court. . .for modification of this Order; or to seek other relief from the Court." (Doc. #65 at ¶ 13). The Court and the Protective Order clearly communicated that parties, including the Receiver, could seek relief from the provisions of the Protective Order, and that Protective Order restrictions might change over time. More importantly, the language of the Protective Order gave notice to all parties producing documents that the Court reserved the right to provide relief from the protective order. *See,* (Doc. #65 at ¶ 13). Under these circumstances, it is appropriate for the Court to exercise its discretion to provide relief from, or modify the Protective Order. *See*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142n.7 (2d Cir. 2004)(Protective Orders that are on their face temporary or limited may not justify reliance by the parties; "[i]f reliance would be unreasonable, it is within the discretion of the court to vacate or modify a protective order."); *SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001)("Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order"); *Ethylene Propylene Diene Monomer Antitrust Litigation*, 255 F.R.D. 308, 320 (D.Conn. 2009)("Where a protective order contains express language that limits the

4

time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified.").[1]  In order to facilitate the production of requested documents to agencies of the United States government at minimal expense and burden to the Receivership Estate, the Court should grant the requested relief from the Protective Order.

For the foregoing reasons, the Court should grant the Receiver's Motion for Relief.

Respectfully submitted this 23rd day of May, 2012.

                                                                    /s/
                                              Jonathan B. New
                                              BAKER & HOSTETLER LLP
                                              45 Rockefeller Plaza, 11th Floor
                                              New York, NY 10111
                                              jnew@bakerlaw.com
                                              (212) 589-4200
                                              (212) 589-4201 (fax)
                                              *Attorney for Receiver*

---

[1] In *Martindell v. International Telephone & Telegraph Corp.*, the Second Circuit upheld a district court's denial of an attempt by the Justice Department to obtain transcripts of depositions which had been designated confidential under a court issued protective order.  594 F.2d 291, 296 (2d Cir. 1979).  The Second Circuit held, "absent a showing or improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, none of which appear here, a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge." *Id.*  Notably, the court further observed, "[t]he reliance of a private party upon protection of pre-existing documents from disclosure to the Government would normally be more difficult to justify than that of a witness who would, absent the protective order, have invoked his privilege and given no testimony at all." *Id.* at 297n.8.  As noted above, the Second Circuit has made clear that the *Martindell* presumption against the modification of protective orders is not merited where a litigant or deponent could not reasonably have relied on the continuation of the protective order in its initial form. *See*, *Gambale*, 377 F.3d at 142n.7; *TheStreet.com*, 273 F.3d at 231; *see also, Ethylene Propylene Diene Monomer Antitrust Litigation*, 255 F.R.D. at 320.