UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | 11-CV-00078 (JBA) |
| Plaintiff, | |
| v. | ECF CASE |
| FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, | |
| Defendants, | |
| and | |
| HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP, | |
| Relief Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S EMERGENCY MOTION FOR AN ORDER FREEZING ASSETS, FOR AN ACCOUNTING, FOR A SUMMARY PROCEEDING, AND FOR CONTEMPT SANCTIONS**

FACTUAL BACKGROUND ..............................................................................................3

     A.    ILLARRAMENDI MISAPPROPRIATES THE CONNECTICUT TAX REFUND..................................................................................................4

     B.    ILLARRAMENDI TRANSFERS THE RECEIVERSHIP PROPERTY FOR THE BENEFIT OF HIMSELF AND HIS FRIENDS AND FAMILY ..........6

     C.    OTHER ASSETS HIDDEN FROM THE RECEIVER ..........................................7

ARGUMENT ...................................................................................................................8

     A.    THE ASSET FREEZE ORDER AND AMENDED RECEIVER ORDER EXPRESSLY PROHIBITED THE TRANSFERS ................................................9

     B.    ILLARRAMENDI HAS VIOLATED THE AMENDED RECEIVER ORDER BY ACTIVELY INTERFERING WITH THE RECEIVER'S DUTIES ...............................................................................................11

          1.    The Duties of Cooperation and Non-interference Are Clear and Unambiguous ......................................................................11

          2.    Illarramendi Should be Fined and Incarcerated for Contempt of Court .........................................................................13

     C.    ACCOUNTING ...............................................................................................15

CONCLUSION ...............................................................................................................15

NOTICE .........................................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Caplin & Drysdale, Chartered v. United States*,
  491 U.S. 617 (1989)......................................................................................................10

*CFTC v. Topworth Int'l, Ltd.*,
  205 F.3d 1107 (9th Cir. 2000) ......................................................................................10

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991).........................................................................................................13

*Citron v. Vaughn*,
  No. 3:69cv13578 (EBB), 2007 WL 4240856 (D. Conn. Nov. 29, 2007)......................13

*New York State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989)........................................................................................14

*Paramedics Electromedicina Commercial, LTDA v. GE Medical Systems Information Technologies, Inc.*,
  369 F.3d 645 (2d Cir.2004)...........................................................................................13

*SEC v. Cherif*,
  933 F.2d 403 (7th Cir. 1991) ..........................................................................................9

*SEC v. Credit Bancorp, Ltd.*,
  124 F.Supp.2d 824 (S.D.N.Y. 2000)..............................................................................11

*SEC v. Credit Bancorp, Ltd.*
  No. 99 Civ. 11395 (RWS), 2000 WL 968010 (S.D.N.Y. July 3, 2000) ....................13, 14

*SEC v. Current Fin. Servs.*,
  62, 69 F. Supp. 2d 66 (D.D.C. 1999) ............................................................................10

*SEC v. Elliot*,
  953 F.2d 1560 (11th Cir. 1992) .....................................................................................10

*SEC v. Grossman*,
  887 F. Supp. 649 (S.D.N.Y. 1995) ................................................................................10

*SEC v. Lazare Indus., Inc.*,
  No. 3:CV-96-0705, 2007 WL 2844957 (M.D. Pa. Sept. 26, 2007).............................15

*SEC v. Materia*,
  745 F.2d 197 (2d Cir. 1984)............................................................................................8

*SEC v. Private Equity Mgmt. Grp., Inc.*,
   No. CV 09–2901, 2009 WL 2058247 (C.D. Cal. Jul 9, 2009) ...............................................10

*SEC v. Schiffer*,
   1998 WL 307375 (S.D.N.Y. June 11, 1998) .........................................................................15

*SEC v. Wencke*,
   783 F.2d 829 (9th Cir. 1986) ...............................................................................................11

*Spallone v. United States*,
   493 U.S. 265 (1990)). ...........................................................................................................14

*U.S. v. Illarramendi*, 3:11CR41 ..................................................................................................2

*United States v. Monsanto*,
   491 U.S. 600 (1989)..............................................................................................................10

**STATUTES**

Criminal Justice Act, 18 U.S.C. § 3006A ......................................................................................2

John J. Carney, Esq. (the "Receiver"), as Receiver for the Michael Kenwood Group, LLC ("MKG"), Highview Point Partners, LLC and certain affiliated entities[1] in the above captioned matter, by and through his undersigned counsel respectfully moves pursuant to paragraphs 14 and 47 of the January 4, 2012 Amended Order Appointing Receiver (Dkt. No. 423) (the "Amended Receiver Order") for an Order (1) freezing assets transferred by defendant Francisco Illarramendi to third parties (the "Transferred Funds") in violation of the Amended Receiver Order and the February 2, 2011 Modified Temporary Order Freezing Assets ("Asset Freeze Order"), (2) directing an accounting by Illarramendi of all funds he has received and transferred since the implementation of the Asset Freeze Order, (3) setting a summary proceeding to determine whether the Transferred Funds were wrongfully transferred and are in fact Receivership Property, requiring them to be placed in constructive trust and turned over to the Receivership Estate, and (4) finding Illarramendi in contempt.  As set forth below, Illarramendi has improperly transferred Receivership Property, as that term is defined in the Amended Order, to benefit himself, his family and his friends, and has also interfered with the Receiver's efforts to identify, marshal and preserve Receivership Property in violation of paragraphs 33 and 34 of the Amended Receiver Order.

More specifically, Illarramendi applied for and received a tax refund of $637,576 from the State of Connecticut for the year 2010, where the taxes had been paid with money that

---

[1] To date, the following entities have been placed into the Receivership: MKG; Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology, LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKG-Atlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL, LLC; MKCM Merger Sub, LLC; MK Special Opportunity Fund; MK Venezuela, Ltd.; Short Term Liquidity Fund, I, Ltd.; Highview Point Partners, LLC; MK Master Investments LP; MK Investments, Ltd., and MK Oil Ventures LLC (collectively, "the Receivership").

1

Illarramendi had taken from Receivership Entities, and where the refund was based expressly on Illarramendi's anticipated disgorgement of his income from Michael Kenwood entities to the Receivership Estate.  Notwithstanding requests by the Receiver that all money from anticipated IRS tax refunds be returned to the Receivership Estate, Illarramendi failed to disclose to the Receiver either his application for, or his receipt of, the state tax refund.  Instead, Illarramendi actively concealed it from the Receiver.  At the same time, Illarramendi acknowledged in Court proceedings before the Honorable Stephen R. Underhill that the tax refund, as well as all funds in his and his wife's bank accounts, were subject to the Asset Freeze Order.[2]  (*See* Ong Dec. ¶ 15; Cohen Dec Ex. A-2, pp. 6-7.)

Despite understanding that the funds were subject to the Court's Asset Freeze Order, Illarramendi used the refund money almost immediately, among other things, to discharge a lien on a Mercedes-Benz in order for him to assume unfettered ownership of the luxury automobile, to make gifts and/or loans to family and friends, and to pay a lawyer to defend him and his wife in a civil suit brought by the Receiver.  Illarramendi, also apparently used the fund to live lavishly while on bond awaiting sentencing and while availing himself of the services of a court paid criminal attorney.  During the period December 2011 through May 2012, account records

---

[2] In connection with the appointment of his criminal defense counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"), in *U.S. v. Illarramendi*, 3:11CR41, Illarramendi represented to the Court that he had been advised that the assets listed in the sealed financial affidavit were frozen.  (Cohen Dec. Ex. A-2, pp. 6-7.)  Although the Receiver has not seen the affidavit, Illarramendi has informed the Receiver's advisor that the money from the Connecticut tax refund was disclosed in the financial affidavit.  (Ong Dec.¶ 15. )  In a motion filed on July 11, 2012 in the criminal action against Illarramendi, the government seeks to unseal Illarramendi's affidavit filed in connection with the appointment of his CJA counsel and to hold a hearing to determine whether Illarramendi failed to properly to disclose assets to the Court or misled the Court in advising it that all of his disclosed assets, including the tax return, were frozen.  (Cohen Dec. Ex. A-1.)

reflect average ATM/debit charges alone of $17,000 per month.  (See Ong Dec. ¶ 20.)  This figure does not include spending from other sources which averaged $20,000 per month for the same time period.  (See *Id.*)  In addition, despite the Receiver's requests for financial information, Illarramendi failed to disclose to the Receiver earlier transfers he had made to other individuals, which he considers to be outstanding loans that may be repaid to him personally. These so-called loans, however, were made at least in part with funds from the Receivership Entities and thus, as Illarramendi well knew, were subject to clawback by the Receiver.

For the reasons set forth below, for those provided in any further pleadings or hearings on this Motion, and based upon the Declaration of Dennis O. Cohen ("Cohen Dec.") and the Declaration of Brian Ong ("Ong Dec.") submitted herewith and incorporated by reference herein, the Receiver respectfully requests that this motion be GRANTED.

## FACTUAL BACKGROUND

On January 14, 2011, the Securities and Exchange Commission ("SEC") commenced this action against Illarramendi and certain entities involved in the fraud.

On January 18, 2011, this Court entered a Temporary Order Freezing Assets, which was later modified by the Asset Freeze Order.  On February 3, 2011, this Court appointed the Receiver and entrusted to him the duty of unwinding Illarramendi's fraud and recovering assets for distribution to victims, investors and creditors.  As described below, this Court's orders also impose duties of cooperation on Illarramendi.

Illarramendi pled guilty on March 7, 2011 to five counts of fraud and conspiracy for operating a fraud out of certain hedge funds, including at least the so-called "Michael Kenwood" entities.  (Cohen Dec. Ex. B.)  In connection with that plea, Illarramendi agreed to cooperate with the Receiver.  (*Id.* at 4.)  He was also given a specific variance in his bail conditions to meet with the Receiver in New York.  (Cohen Dec. Ex. C, p. 1.)

Despite his duties and agreements to cooperate with the Receiver, Illarramendi has refused to voluntarily return or repay any money that he misappropriated from the Receivership Entities for his personal benefit.   Accordingly, the Receiver filed a civil action against Illarramendi and his wife to recover the ill-gotten gains in their possession.  The following events came to light subsequent to the filing of that civil suit, and are not directly related to it except where noted.

## A.   ILLARRAMENDI MISAPPROPRIATES THE CONNECTICUT TAX REFUND

Illarramendi paid virtually all of his 2010 United States and Connecticut state estimated taxes using Receivership Property.  As a part of Illarramendi's massive fraud he caused millions of dollars of investors' funds to be misappropriated and transferred to other Receivership Entities he controlled, including MKG and Michael Kenwood Asset Management, LLC ("MKAM"). (Ong Dec. ¶ 4.)  In or about September and October of 2010, Illarramendi unlawfully transferred $4,050,000 of the misappropriated investor funds to a JPMorgan Chase Bank account in his name (the "Chase Account"), in two separate payments from MKG and MKAM.  (*Id.* ¶¶ 4, 7-12.)  Although these particular transfers were ostensibly characterized in wire transfer and bank account statement notations as a loan and an advance to Illarramendi, and were earmarked specifically for the purpose of paying Illarramendi's taxes, the Receiver's investigation has uncovered no loan agreement or payment schedule, nor has it found any evidence of money ever repaid by Illarramendi in satisfaction of the purported "loan."  (*See id.*)  Illarramendi used more than $4 million of the funds transferred to the Chase Account to pay federal estimated taxes for 2010, and $770,919 of funds from the Chase Account to pay Connecticut estimated taxes for the 2010 year. (*Id.*)  But for the transfers from MKG and MKAM, there would not have been sufficient funds in the Chase Account to make these estimated tax payments.  (*Id.* ¶¶ 9-12.)

4

In late 2011, after his fraudulent scheme collapsed and this Court appointed the Receiver, Illarramendi set out to claim for himself the Receivership Property that had been used to pay his tax bill.   In December 2011, Illarramendi filed his Connecticut state tax return for the 2010 tax year.  (*See id.* ¶ 13.)  On that tax return, Illarramendi declared that he received no income from any Michael Kenwood entity in 2010.  (*Id.* ¶ 14.)  That assertion was based on Illarramendi's recognition that his income would be clawed back by the Receiver.  (*See id.*)  The effect of his declaring zero income from Michael Kenwood entities for 2010 was that Connecticut refunded— directly to Illarramendi—a significant portion of the estimated taxes that he had previously paid with Receivership Property.  As Illarramendi recently admitted, in January 2012 he received approximately $637,576 from the state of Connecticut as a tax refund.  (*See id.* ¶ 13.)

Similarly, in December 2011, Illarramendi filed a United States tax return for tax year 2010 claiming his entitlement to a refund for overpayment of his estimated taxes.  However, as described below, counsel for the Receiver became aware that Illarramendi anticipated receiving a federal tax refund, notified him that it constituted Receivership Property, and demanded that Illarramendi turn it over to the Receivership Estate.  The United States Attorney's Office prevented the payment of a federal tax refund – which related to either tax year 2008 or 2010 – from reaching Illarramendi.

Notwithstanding Receiver's counsel's request that Illarramendi provide an accurate listing of all of his assets and money owed to him, Illarramendi failed to disclose to the Receiver that he also anticipated receiving a Connecticut state tax refund. In a personal financial statement submitted to the Receiver, dated June 9, 2011, and sworn to under oath, Illarramendi disclosed that he expected to receive money due to an "IRS Restatement of 2008 Taxes," but he failed to mention his purported overstatement of his 2010 Connecticut taxes, or the resulting expected

refund.  (Cohen Dec. Ex. D, p. 14.)  He swore that the financial statement was complete and that

he had no assets or income of any nature other than those listed on the statement.  (*Id.*)

At all relevant times, Illarramendi was on notice that the Receiver believed that any

refund "that is owed from the IRS to Mr. Illarramendi constitutes Receivership Property that is

subject to the Amended Receivership Order and the Court's Asset Freeze Order."  (See Cohen

Dec. Ex. E.)  He clearly understood that the Receiver's position on the Connecticut tax refund

would be identical, and that the Receiver would similarly demand its return to the Receivership

Estate.  Nevertheless, Illarramendi concealed this expected refund from the Receiver and used it

for his own personal benefit in flagrant violation of the Court's orders.

## B.   ILLARRAMENDI TRANSFERS THE RECEIVERSHIP PROPERTY FOR THE BENEFIT OF HIMSELF AND HIS FRIENDS AND FAMILY

In January 2012, pursuant to Illarramendi's instructions and in order to attempt to evade

the Court's asset freeze order, the Connecticut tax refund was deposited directly into a bank

account in Illarramendi's wife's name.  (Ong Dec. ¶ 13.)  Illarramendi has and had *de facto*

control over this bank account.  (*Id.*)  Before receiving the tax refund, this bank account had a

balance of only twelve dollars (less overdraft charges of $70, pushing the account balance into

negative territory).  (*Id.* ¶ 16.)

Illarramendi began to spend the Receivership Property almost immediately after

receiving it.  Illarramendi has so far admitted to making the following transfers of funds

attributable to the tax refund (the "Transfers"):

- $300,000 transferred to the law firm of **McCarter & English, LLP** in order to retain

   Thomas J. Finn, Esq. as counsel for himself and his wife in civil litigation against the

   Receiver;

6

- Approximately $28,541 to **Mercedes-Benz Financial Services USA LLC** ("MBFS") in order to remove a lien on a Mercedes-Benz automobile that Illarramendi possesses (V.I.N. 4JGBB86E67A252677, according to a filing by MBFS in this action (Dkt. No. 391));

- $75,000 to his father, **Ramon Illarramendi**;

- $12,000 to his brother, **Pablo Illarramendi**; and

- $25,000 to a friend, **Dale Garner**.

(Ong Dec. ¶¶ 17-19.)   Therefore, these two entities and three individuals now possess Receivership Property in the form of the Transferred Funds.   Notably, Ramon and Pablo Illarramendi each indisputably knew of the Court's Asset Freeze Order, as well as knowing that Illarramendi directed the payments to them.

On February 10, 2012, Illarramendi appeared before the Hon. Stefan R. Underhill in connection with his application for CJA status in order to obtain court-appointed criminal counsel.   Illarramendi submitted an affidavit, which the Court characterized as indicating that Illarramendi's "assets have been frozen."   (Cohen Dec. Ex. A-2, p. 5.)   According to statements Illarramendi has made to the Receiver's advisor, that affidavit describing frozen assets included the Connecticut tax refund.   (Ong. Dec. ¶ 15.)   Judge Underhill granted CJA status, "conditioned on an obligation to report to the court any material change in your circumstances[.]"   (Cohen Dec. Ex. A-2, p. 7.)   It is the Receiver's understanding that Illarramendi has failed subsequently to report the Transfers to the Court.

## C.   OTHER ASSETS HIDDEN FROM THE RECEIVER

In his June 9, 2011 sworn financial statement, Illarramendi listed as a receivable certain outstanding "Loans to Friends" with a value of $500,000.   (Cohen Dec. Ex. D, p. 15.)   More recently, however, Illarramendi admitted to the Receiver's professionals and others that he made

loans to four individuals from 2004 through 2010 totaling approximately $1,410,000 to $1,515,000.  (Ong Dec. ¶ 22.)  Thus, his financial affidavit was materially false.  Illarramendi has further recently admitted that some of these "loans" were actually made using funds from the Receivership Entities, and thus represent amounts due to the Receivership Estate.  Nonetheless, Illarramendi did not identify all of these transfers to the Receiver in order to assist the Receiver in recovering assets.

## ARGUMENT

The Court should grant the present motion because: (1) Illarramendi's transfers of Receivership Property violate the Amended Receiver Order and the Asset Freeze Order; (2) Illarramendi's failure to disclose recoverable property violates the Amended Receiver Order; (3) at least five non-parties have received certain discrete amounts of Transferred Funds that constitute Receivership Property, which must be returned to the victims of the fraud; and (4) Illarramendi's continuous deceptive acts in violation of this Court's orders and his own agreements suggest that other violations may have occurred or will occur, necessitating a contempt sanction and an accounting.[3]

As this Court has observed where granting past relief in this matter, "[o]nce the equity jurisdiction of the district court properly has been invoked, the Court has the power to order all equitable relief necessary under the circumstances."  (Dkt. No. 276 at 11.)  *See also SEC v. Materia*, 745 F.2d 197, 200-201 (2d Cir. 1984).  As discussed further below, this Court also specifically is empowered to grant the relief requested.

---

[3] As an example of other possible violations, the SEC has recently submitted a motion containing evidence that Illarramendi has violated this Court's February 3, 2011 preliminary injunction order by soliciting monies from investors.  (Dkt. No. 504.)  The SEC seeks to determine whether Illarramendi is in contempt in that context as well.

A.   **THE ASSET FREEZE ORDER AND AMENDED RECEIVER ORDER EXPRESSLY PROHIBITED THE TRANSFERS**

Because the Transferred Funds were Receivership Property, they are subject to the Asset Freeze Order.  The Asset Freeze Order states in relevant part:

> [I (A):] **the Defendants** and the Relief Defendants and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, **shall hold and retain funds and other assets of the Defendants and Relief Defendants presently held by them**, for their direct or indirect benefit, under their direct or indirect control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, including but not limited to assets held in the accounts and/or by the MK Entities identified in the attached Exhibit A, **and shall prevent any withdrawal, removal, sale, purchase, trade, transaction, payment** (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), **transfer, dissipation, assignment, pledge, alienation, encumbrance, disposal, or diminution in value of any such funds or other assets, which are hereby frozen**;

(Dkt. No. 59 (emphasis added).)  The Amended Receiver Order clarifies that the assets of the Defendants referenced in the Asset Freeze Order are Receivership Property: "All assets of the Receivership Estate remain frozen under the…Original Freeze Orders." (Dkt. No. 423, ¶10.)

Each of the Transfers to McCarter & English, LLP, MBFS, Ramon Illarramendi, Pablo Illaramendi and Dale Garner constitutes a violation of the Asset Freeze Order and Amended Receiver Order, because they were transfers of Receivership Property, and specifically property originating from MKG and MKAM.  The language of the Asset Freeze Order restricting transfers is straightforward and absolute.  There is no exception that permits the Transfers, and certainly not for a lawyer in a civil suit, removing a lien on a Mercedes-Benz, or gifts and/or loans to friends and family.  *See SEC v. Cherif*, 933 F.2d 403, 417 (7th Cir. 1991) ("A criminal defendant has 'no Sixth Amendment right to spend another person's money for services rendered by an attorney'… It would be anomalous to hold that a civil litigant has any superior right to

counsel than one who stands accused of a crime.") (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989)); *SEC v. Grossman*, 887 F. Supp. 649, 661 (S.D.N.Y. 1995) (refusing to modify asset freeze because "it is well-established that there is no right to use the money of others for legal services.") (citing *United States v. Monsanto*, 491 U.S. 600, 615 (1989), *et al.*)); *SEC v. Current Fin. Servs.*, 62 F. Supp. 2d 66, 69 (D.D.C. 1999) (rejecting defendant's argument that asset freeze violates a constitutional right to use counsel because "[a] defendant is not entitled to foot his legal bill with funds that are tainted by his fraud.") (citation omitted); *SEC v. Private Equity Mgmt. Grp., Inc.*, No. CV 09–2901, 2009 WL 2058247 at *4 (C.D. Cal. Jul 9, 2009) (unreasonable to modify asset freeze to fund lavish lifestyle).

The proper mechanism for this Court to remedy these violations is, first, to order an immediate freeze of the Transferred Funds in the possession of each recipient.[4]  Second, the Court should hold a summary proceeding—a hearing—to make a final determination as to the disposition of the Receiver's claim to the Transferred Funds.  *See CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1113 (9th Cir. 2000) (where receiver and nonparties claim the same property and district court ordered the assets frozen, a summary proceeding satisfies due process "so long as there is notice and opportunity to be heard") (citation omitted); *SEC v. Elliot*, 953 F.2d 1560, 1566-67 (11th Cir. 1992) (district courts have "broad powers and wide discretion to determine relief in an equity receivership," including the use of summary proceedings to resolve claims);

---

[4] Without conceding the merits of the Receiver's arguments, Mr. Finn on behalf of McCarter & English, LLP has voluntarily agreed to preserve and freeze the remainder of the $300,000 retainer that is presently being held in McCarter's escrow account, pending resolution by the Court as to whether those funds may be used to pay Illarramendi's attorneys' fees or must be returned.  The Receiver seeks disgorgement of the entire $300,000.

Because MBFS has made a claim to a chattel susceptible to waste and depreciation, and is not accused of wrongdoing, the Receiver recommends that the automobile should be transferred to the custody of MBFS during the pendency of the asset freeze sought herein.

*SEC v. Wencke*, 783 F.2d 829, 834 (9th Cir. 1986) (summary proceedings were proper to disgorge shares and profits to receiver); *SEC v. Credit Bancorp, Ltd*., 124 F. Supp. 2d 824, 826-28 (S.D.N.Y. 2000) (non-party must comply with freeze order, and summary proceeding on submission affords due process).  Thus, the Court should order all parties who have received transfers of funds derived from the tax refund to appear at a hearing to show cause why the Receiver's claim to the apparent Receivership Property should not prevail.

**B.     ILLARRAMENDI HAS VIOLATED THE AMENDED RECEIVER ORDER BY ACTIVELY INTERFERING WITH THE RECEIVER'S DUTIES**

1.     The Duties of Cooperation and Non-interference Are Clear and Unambiguous

Illarramendi has violated the Amended Receiver Order by misrepresenting his finances, transferring assets of the Receivership Estate, and otherwise failing to cooperate with and assist the Receiver in the maintenance and recovery of assets.  The Amended Receiver Order states, in relevant part:

33. **The Receivership Entities and all persons receiving notice of this Order** by personal service, facsimile or otherwise, **are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would**:

A. **Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property**; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B. **Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties**; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or the Receivership Entities, attempting to modify,

cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Entities or which otherwise affects any Receivership Property; or,

D. **Interfere with or harass the Receiver**, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

34. **The Receivership Entities' past and/or present officers**, directors, agents, managers, shareholders, members, employees, accountants, consultants, debtors, creditors, and general and limited partners, and any persons acting for or on behalf of the Receivership Entities**, shall cooperate with and assist the Receiver in the performance of his duties**.

(Dkt. No. 423 (emphasis added).)

Illarramendi has duties both as a defendant who has received the Amended Receiver Order, and as a past officer of Receivership Entities, to take affirmative action to cooperate with the Receiver in the performance of his duties.  Despite those duties, Illarramendi actively interfered with the Receiver, in ways which are explicitly prohibited.

Illarramendi knew that the Receiver would take the position that the Connecticut tax refund was Receivership Property because the Receiver had claimed that any federal tax refund would be Receivership Property.  (*See* Cohen Dec. Ex. E.)  Also, Illarramendi sought the refund specifically on the premise that his income from Michael Kenwood entities would be clawed back by the Receiver.  (*See* Ong Dec. ¶ 14.)  He even apparently acknowledged to the Court in connection with his application for a CJA attorney that that the tax refund, as well as any other funds in his wife's bank account, would be subject to this Court's Asset Freeze Order.  (*See* Ong Dec. ¶ 15; Cohen Dec. Ex. A-2, pp. 6-7.)  Incredibly, notwithstanding his knowledge that these funds were subject to the Court's Asset Freeze Order, when that refund arrived, he did not turn it over to the Receiver, did not notify the Receiver of the existence of the funds, nor did he preserve the assets.  Instead, in a blatant and contumacious violation of the Court's orders, he made Transfers to benefit himself and his family.  Such actions violate the specific provisions of

the Amended Receiver Order prohibiting interference with the Receiver's efforts to take control of Receivership Property.

Further, Illarramendi attempted to conceal his misconduct by actively misrepresenting to the Receiver his financial situation, which also interferes with the Receiver's duties in violation of the Amended Receiver Order.   Illarramendi failed to disclose the future Connecticut tax refund when executing his sworn financial statement, and failed to amend his financial statement to reflect that refund.  (Cohen Dec. Ex. D.)  That same sworn financial statement, which was executed in June 2011, reflects only $500,000 owed to Illarramendi from loans to friends.  (*Id.*, p. 15.)  Now, Illarramendi's recent admissions reveal that he made several loans totaling between $1,410,000 and $1,515,000 prior to 2010 that remained unpaid, and that he used Receivership Property in part to make the loans.  (Ong Dec. ¶ 22.)  Thus, Illarramendi's sworn financial statement is materially false.

> 2.    Illarramendi Should be Fined and Incarcerated for Contempt of Court

The proper remedy for Illarramendi's conduct is a finding of contempt.  It is universally acknowledged that courts are vested, by their very creation, with power to ensure submission to their lawful mandates. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  A contempt sanction may be civil or criminal, but in either case the sanction may take the form of incarceration and/or a monetary fine.  *See SEC v. Credit Bancorp, Ltd.,* No. 99 Civ. 11395 (RWS), 2000 WL 968010 at *3, (S.D.N.Y. July 3, 2000).  The three conditions for civil contempt clearly apply here: (1) the order that the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.  *See Citron v. Vaughn*, No. 3:69cv13578 (EBB), 2007 WL 4240856, at *5 (D. Conn. Nov. 29, 2007) (citing *Paramedics Electromedicina Commercial, LTDA v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

When determining the nature or amount of a civil contempt sanction, a district court "is obliged to use the least possible power adequate to the end proposed."  *Id.* (citing *Spallone v. United States*, 493 U.S. 265, 276 (1990)).  The court "should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden."  *Id.* (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989)).

Here, Illarramendi's conduct is particularly offensive, given that he has already pleaded guilty to executing a massive fraud, but has nonetheless flouted the Court's Asset Freeze Order and the Receiver's asset marshaling and preservation efforts in order to continue to live lavishly while awaiting sentencing.  Even more shocking is that Illarramendi has done this while on release under bond and under a strict obligation in his plea agreement and under this Court's orders to cooperate with the Receiver in his ongoing efforts to repair Illarramendi's massive damage to his victims by marshaling and preserving assets.  Despite being under active court supervision and being bound by this Court's orders, Illarramendi has blatantly violated several duties contained in several orders in order to amass more money for his personal benefit.  In light of this egregious conduct, the Receiver recommends that the minimum sanction that should be imposed on Illarramendi is the following (1) a fine immediately payable to the Receivership estate in the amount of the Connecticut tax refund plus the loans owed in excess of what he reported to the Receivership (a total of no less than $1,547,000); and (2) incarceration until such time as that fine is paid in full.  In this way, Illarramendi would "carry the keys of his prison in his own pocket."  *See Credit Bancorp*, 2000 WL 968010 at *4 (explaining that a contemptor's ability to end his own sentence is the hallmark of a civil contempt sanction).

## C.    ACCOUNTING

The cumulative wrongdoing of Illarramendi described above warrants an increased level of monitoring over Illarramendi's past and future financial activity.  To this end, the Court should order an accounting.  *See SEC v. Lazare Indus., Inc.*, No. 3:CV-96-0705, 2007 WL 2844957 at * 2 (M.D. Pa. Sept. 26, 2007) (defendant and relief defendant directed to provide an accounting following an allegation by the SEC that they had transferred and encumbered property in violation of an asset freeze order).

In this case, the accounting should require Illarramendi to account for all assets transferred to and from the actual or *de facto* control of Illarramendi or his wife, Maria Josephina Gonzalez, including all transfers to and from any account held in the name of or subject to the control of either Illarramendi or Gonzalez, from the date of the January 18, 2011 Temporary Order Freezing Assets.  Further, such accounting should be continual, requiring Illarramendi to update and supplement it monthly.  *See SEC v. Schiffer*, 1998 WL 307375 at *6-7 (S.D.N.Y. June 11, 1998) (because defendant has continually attempted to thwart the SEC by transferring assets the asset freeze and accounting orders should be continued).  Finally, the monthly accounting should include a detailed description of the source of any monies transferred to Illarramendi or his wife that Illarramendi believes not to be subject to the Asset Freeze Order, in a manner that permits the Receiver to ascertain the legitimacy of such monies before Illarramendi or his wife are permitted to transfer them.

## <u>CONCLUSION</u>

Based on the foregoing, the Receiver respectfully requests that the Court GRANT the Receiver's Emergency Motion for an Order Freezing Assets and For Other Relief.

## NOTICE

Notice of this Motion has been given to all parties by electronic filing of this motion. The Commission joins in the Receiver's motion to have Illarramendi found in contempt and has no objection to the relief requested. (*See* Dkt. No. 504.)

In light of the nature of the relief requested, the Receiver submits that such notice is good and sufficient, and no other or further notice is necessary or required.

WHEREFORE, the Receiver respectfully requests that the Court enter an order on an expedited basis substantially in the form of Exhibit A hereto: (a) granting this Motion; (b) freezing the assets transferred by Illarramendi in violation of the Asset Freeze Order and Amended Receiver Orders; (c) scheduling a hearing to determine the final disposition of the assets transferred; (d) finding Illarramendi in contempt and imposing a sanction of a fine to the Receivership of no less than $1,547,000 and incarceration until that fine is paid; (e) directing a monthly accounting of all transfers to and from Illarramendi's possession, custody or control, including without limitation into and out of bank accounts that Illarramendi controls in law or in fact; and (f) granting the Receiver such other and further relief as is just and proper.

Respectfully submitted this 23d day of July, 2012.

<div style="margin-left:40%">

/s/Jonathan B. New
Jonathan R. Barr
Jonathan B. New
Ona T. Wang
Dennis O. Cohen
BAKER & HOSTETLER LLP
45 Rockefeller Plaza, 11th Floor
New York, NY 10111
jbarr@bakerlaw.com
jnew@bakerlaw.com
owing@bakerlaw.com
dcohen@bakerlaw.com
Tel: (212) 589-4200
Fax: (212) 589-4201
*Attorneys for Receiver John J. Carney, Esq.*

</div>