UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>      Plaintiff,<br>v.<br><br>FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC,<br><br>      Defendants,<br><br>and<br><br>HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP,<br>      Relief Defendants. | 11-CV-00078 (JBA)<br><br>ECF CASE<br><br>[PROPOSED] ORDER |

## [PROPOSED] ORDER DIRECTING COMPLIANCE WITH RECEIVER'S INVESTIGATIVE SUBPOENA

**WHEREAS** this matter has come before this Court upon motion of the Receiver, John J. Carney Esq. (the "Receiver"), for an order directing third-party TD Bank, N.A. to comply with an investigative subpoena issued by counsel for the Receiver on or before August 6, 2012 at 1PM; and

**WHEREAS** the Court finds that based on the record in these proceedings, an order directing compliance with the Receiver's investigative subpoena is warranted.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED**;

2. TD Bank, N.A. is ordered to fully comply with the Receiver's investigative subpoena, dated July 12, 2012, and attached hereto as Exhibit A, and produce to Receiver's counsel all documents called for therein no later than 1PM on August, 6, 2012.

Dated: August ___, 2012

_____
THE HONORABLE JANET BOND ARTERTON
UNITED STATES DISTRICT JUDGE

# [PROPOSED]

## EXHIBIT A
## TO ORDER DIRECTING COMPLIANCE WITH RECEIVER'S INVESTIGATIVE SUBPOENA

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| Securities & Exchange Commission | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 11 CV 00078 (JBA) |
| Francisco Illarramendi, Michael Kenwood Capital Management, LLC, et. al | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | District of Connecticut ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: TD Bank, N.A.      1701 Route 70 East
                       Cherry Hill, New Jersey 08034

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: All documents described in Exhibit A of this subpoena.

| Place: Baker & Hostetler LLP, Attn: Kendall Wangsgard, Esq.<br>45 Rockefeller Plaza<br>New York, NY 10111 | Date and Time:<br>07/24/2012 11:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: ___07/12/2012___

                CLERK OF COURT
                                                        OR    /s/ signature
        _____                        _____
        *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Receiver - John J. Carney, Esq._____, who issues or requests this subpoena, are:

Jonathan B. New, Esq. - Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111
Phone # 212-589-4200, Fax # 212-589-4201, Email address: jnew@bakerlaw.com
Primary Contact: Kendall Wangsgard (kwangsgard@bakerlaw.com)

Case 3:11-cv-00078-JBA   Document 524-3   Filed 08/01/12   Page 5 of 12

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A
## TO SUBPOENA TO TD BANK, N.A.

### A. DEFINITIONS AND INSTRUCTIONS

1. The terms "TD Bank" "you," "your," and "yours" mean and include TD Bank, N.A. and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

2. The term "account" means each and every account, agreement, arrangement, accommodation, service, or facility for the advance, credit or cash advance (including any credit, debit, ATM, or similar card), currency or monetary exchange or transfer, clearance, custody, delivery, deposit, exchange, extension, funding, investment, lending, payment, presentment, receipt, recording, safekeeping, settlement, transfer or withdrawal of any cash, check, credit, currency, debit, draft, financial asset, foreign exchange, commodity, fund, general intangible, instrument, investment property, money, payment or right to payment, security, speice or other similar thing of value or medium of exchange or proceeds thereof, held, maintained, made by or extended by, to or from the account holder, in the account holder's name, or for the account holder's benefit, or held, maintained, made by or extended by, to or from any other person or entity owned or controlled, in part or in full, by the account holder or for which the account holder has power or authority or otherwise purports to act, alone or with other persons, for the benefit or use of any other person or entity.

3. The term "Fund Account" means any account into which TD Bank customer, Maria Josephina Gonzalez Miranda (a/k/a Maria J Gonzalez Miranda) received or held funds, whether by wire transfer or check. "Fund Account" specifically includes any account associated with TD Bank Customer Reference # 4765988197-074-T-0 (acct. # xxxx-8197) or any account associated with TD Bank Customer Reference # 4251568792-631-T-### (acct. # xxxx-8792). "Fund Account" also specifically includes any account where the registered address is 61 Parade Hill Lane, New Canaan CT, 06840.

4. The terms "document" and/or "documents" are used in their broadest sense, and mean, without limitation, audio files, electronic text, or other computerized data. The terms "document" and/or "documents" specifically include voicemail messages, all written, printed, typed, electronic, and/or other graphic material in your possession custody or control, whether or not prepared by you, and include, but are not limited to correspondence, memoranda, handwritten notes, messages, telegrams, web-based, server-based, or dial-up electronic mail ("e-mail"), draft and deleted e-mail messages, text messages, acceptances, advice, advances, affidavits, affirmations, agreements, amendments, analyses, applications, appointments, appraisals, articles, assessments, assignments, audits, balance sheets, bills, binders, bonds, books, books of account, brochures, budgets, calendars, certificates or other evidence of deposits, interest, ownership, or participation, indebtedness of obligation, certifications, charges, charts, checks, circulars, claims, comments, compilations, complaints, confirmations, contracts, conveyances, covenants, credit, debits, debentures, declarations, decrees, deeds, demands, diaries, drafts, entries, evaluations, examinations, extensions, files, financial statements, forecasts, forwards, futures, guaranties, graphs, indentures, indications, information, inquiries,

inscriptions, instructions, instruments, investment contracts, invoices, journals, judgments, leases, ledgers, letters, lists, loans, logs, mail, manuscripts, messages, minutes, mortgages, notations, notes, notices, offers, opinions, options, orders, paper, periodicals, petitions, pleadings, pledges, policies, powers, presentations, presentments, projections, prospectuses, proxies, publications, receipts, recitals, recommendations, records, redemptions, registries, releases, remittances, reports, representations, requests, resolutions, retainers, returns, reviews, riders, satisfactions, securities, security agreements, schedules, shares, solicitations, statements, subpoenas, subscriptions, summonses, supplements, sureties, swaps, tables, tax returns, term sheets, transcripts, trusts, undertakings, vouchers, warrants, warranties, wills, work sheets, work papers, writs, writings, magazine or newspaper articles, photographs, videos, microfiche, microfilm, information contained in any computer database, recording or tape wires, film, or any graphic matter, however produced or reproduced, all mechanical or electronic sound recordings or transcripts thereof, all information stored or located in computer hardware or software, including metadata, and all drafts and non-identical copies thereof. "Document" also means all copies of documents by whatever means made if the copy bears any other marking or notation. A draft or non-identical copy is a separate document within the meaning of this term.

5.  As used herein, the term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or written, and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) e-mail, text messages, instant messages, telegrams, letters, faxes, memoranda, formal statements, press releases and newspaper stories.

6.  As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

7.  The following rules of construction apply to this Subpoena:

    (a) "Any" and "all" shall be deemed to include the other;

    (b) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

    (c) the terms "all" and "each" shall be construed as "all and each"; and

    (d) the use of the singular form of any word includes the plural and vice versa.

8.  Except as otherwise noted, this subpoena seeks the production of documents created in or referencing the time period beginning at the earlier of the inception of the TD Bank relationship with Maria Josephina Gonzalez Miranda or the opening of the Fund Accounts, including but not limited to all entities and all associated officers, directors, or employees, and continuing until the present (the "Relevant Period"). For purposes of this definition, the term "relationship" means either a direct or indirect relationship.

9.  Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control.

10. In the event that the name of the account holder listed above differs from the account holder of record for the associated account number, produce all documents associated with both (i) the account number and (ii) all accounts held in the name of the account holder.

11. In the event an account holder listed above does not have a corresponding account number listed, this subpoena shall apply to all accounts associated with the listed account holder.

12. Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

13. Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

14. Documents attached to each other should not be separated; separate documents should not be attached to each other.

15. Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

16. If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Receiver to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

17. If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

18. Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

## B.  DOCUMENTS TO BE PRODUCED

1.  All documents concerning any Fund Account, including:

    (a)  monthly and all other account statements, including account numbers;

    (b)  present and historical account balance information;

    (c)  incoming and outgoing wire transfer records;

    (d)  copies and records of checks and moneys both deposited and withdrawn;

    (e)  records of any safety deposit box;

    (d)  records reflecting cash activity or any other transaction or account activity;

    (e)  account opening documents and any credit file;

    (f)  administrative or custodial agreements between the holder of the Fund Account and TD Bank; and

    (g)  account closing documents.

2.  To the extent not provided pursuant to the foregoing requests, all documents reflecting transfers and/or transactions to, from, or between the Fund Accounts.

3.  All documents concerning any communications and/or correspondence pertaining to any Fund Account.

4.  All documents, agreements and/or contracts including, but not limited to, line of credit agreements, letters of credit, promissory notes and security agreements related to any lines of credit/letters of credit maintained by or for the benefit of any of the Fund Accounts or holders of the Fund Accounts.

5.  All documents reflecting or relating to any review or investigation performed by TD Bank pertaining to any Fund Account.

6.  To the extent not provided pursuant to the foregoing requests, all documents related to the following specific transactions to show maximum detail of the source, destination, or expenditure of funds (including cancelled checks or wire transfer instructions).

| Date | Detail / Check No. | Amount | Account # |
|---|---|---|---|
| 11/15/11 | Deposit | 31,300 | xxxx8197 |
| 11/15/11 | Deposit | 10,000 | xxxx8792 |
| 01/20/12 | Deposit - CT DOR | 637,576 | xxxx8792 |
| 01/24/12 | Debit | (9,000) | xxxx8792 |
| 02/01/12 | Debit | (9,500) | xxxx8792 |
| 02/23/12 | Debit | (9,000) | xxxx8792 |
| 02/29/12 | Debit | (7,000) | xxxx8792 |

| Date | Type | Amount | Account |
|---|---|---|---|
| 02/29/12 | Debit | (7,000) | xxxx8792 |
| 03/09/12 | Debit | (4,000) | xxxx8792 |
| 03/28/12 | Debit | (6,000) | xxxx8792 |
| 03/29/12 | Debit | (300,000) | xxxx8792 |
| 04/09/12 | Debit | (3,000) | xxxx8792 |
| 04/18/12 | Debit | (7,000) | xxxx8792 |
| 05/03/12 | Debit | (28,542) | xxxx8792 |
| 11/22/11 | Check# 98 | (5,000) | xxxx8792 |
| 12/01/11 | Check# 101 | (2,000) | xxxx8792 |
| 12/01/11 | Check# 102 | (1,037) | xxxx8792 |
| 12/02/11 | Check# 105 | (3,000) | xxxx8792 |
| 12/08/11 | Check# 103 | (11,000) | xxxx8792 |
| 12/14/11 | Check# 106 | (990) | xxxx8792 |
| 01/20/12 | Check# 109 | (1,406) | xxxx8792 |
| 01/20/12 | Check# 110 | (4,000) | xxxx8792 |
| 01/23/12 | Check# 111 | (10,000) | xxxx8792 |
| 01/23/12 | Check# 113 | (6,115) | xxxx8792 |
| 01/24/12 | Check# 107 | (4,000) | xxxx8792 |
| 01/24/12 | Check# 112 | (6,000) | xxxx8792 |
| 01/24/12 | Check# 114 | (6,500) | xxxx8792 |
| 01/25/12 | Check# 118 | (5,690) | xxxx8792 |
| 01/26/12 | Check# 115 | (50,000) | xxxx8792 |
| 01/26/12 | Check# 116 | (25,000) | xxxx8792 |
| 01/26/12 | Check# 117 | (15,000) | xxxx8792 |
| 02/01/12 | Check# 120 | (4,222) | xxxx8792 |
| 02/10/12 | Check# 121 | (1,188) | xxxx8792 |
| 03/20/12 | Check# 124 | (7,000) | xxxx8792 |
| 04/02/12 | Check# 125 | (3,369) | xxxx8792 |
| 04/06/12 | Check# 126 | (1,287) | xxxx8792 |
| 05/22/12 | Check# 131 | (2,400) | xxxx8792 |

### C. HOW DOCUMENTS ARE TO BE PRODUCED

1.  All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2.  All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3.  Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.  Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5.  Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6.  Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a

6

reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

503767491