# TAB A

TAB A

## AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT

AGREEMENT dated as of December 22, 2008 between HIGHVIEW POINT MASTER FUND, LTD., a Cayman Islands exempted company that has elected to be treated as a partnership for U.S. tax purposes (the "Fund"), and HIGHVIEW POINT PARTNERS, LLC, a Delaware limited liability company with its principal place of business in Stamford, Connecticut (the "Investment Manager").

WHEREAS, the Fund and the Investment Manager entered into an investment management agreement originally dated April 1, 2006, and subsequently amended and restated on February 1, 2007 and July 1, 2008, pursuant to which the Investment Manager performed certain services for the Fund;

WHEREAS, the Fund and the Investment Manager desire to enter into this First Amended and Restated Agreement setting forth the terms on which the Investment Manager will perform certain services for the Fund.

NOW, THEREFORE, in consideration for the mutual promises herein contained, the parties agree as follows:

Section 1. Retention of the Investment Manager

(a) The Fund hereby retains the Investment Manager and the Investment Manager hereby agrees to act as investment manager of the Fund to be responsible for the investment and reinvestment of the assets of the Fund. All investment decisions for the Fund will be made by the Investment Manager. The Fund has furnished to the Investment Manager a copy of its Memorandum and Articles of Association and the Confidential Private Offering Memoranda of its two feeder funds Highview Point Offshore, Ltd. and Highview Point, LP (the "Confidential Memoranda) and will from time to time furnish the Investment Manager with copies of any amendments thereto. Until such amendments are delivered to the Investment Manager, matters therein stated shall not be binding on the Investment Manager. All investments of the Fund shall at all times conform to and be in accordance with the requirements imposed by (i) any provision of applicable law, (ii) the provisions of the Fund's Memorandum and Articles of Association, as amended from time to time and delivered to the Investment Manager and (iii) the provisions of the Confidential Memoranda, as amended from time to time and

delivered to the Investment Manager. As Investment Manager for the Fund, the Investment Manager shall furnish continuous investment management to the Fund. The Investment Manager shall not be an employee of the Fund, and the Investment Manager shall have no authority to act for, represent, bind or obligate the Fund except as provided for herein.

(b) Such authority of the Investment Manager includes, without limitation, the authority to (i) purchase, hold, sell, sell short, cover and otherwise deal in securities and financial instruments of any sort and rights therein, including restricted and privately issued securities, on margin or otherwise; (ii) write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof; (iii) purchase, hold, sell and otherwise deal in commodities, commodity contracts, commodity futures, financial futures (including index futures) and options in respect thereof (but the Investment Manager will not do so until, to the extent required, it has registered as a commodity pool operator with the U.S. Commodity Futures Trading Commission or has been advised by counsel that registration is not required); (iv) purchase, hold, sell and otherwise deal in currencies, options thereon and rights therein, including forward foreign currency exchange contracts; (v) purchase, hold, sell and otherwise deal in swap contracts, partnership interests, interests in other investment companies or any other financial instruments that exist now or are hereafter created; (vi) conduct margin accounts with brokers; to open, maintain and close bank accounts and draw checks or other orders for the payment of moneys; to pledge securities for loans and effect borrowings from brokers, banks and other financial institutions; and (vii) enter into, make and perform any other contracts, agreements or other undertakings it may deem advisable in conducting the business of the Fund, including but not limited to contracts, agreements, or other undertakings with persons, firms or corporations affiliated with the Investment Manager, as may be necessary or proper in connection with the performance of the Investment Manager's duties hereunder.

(c) The Investment Manager shall endeavor to keep the capital of the Fund invested to such extent as it deems advisable from time to time but it may, if it deems advisable, maintain any portion of the assets of the Fund in cash. The investments and reinvestments made by the Investment Manager shall be based on such research and inquiries as the Investment Manager shall deem advisable. The Investment Manager shall make all decisions regarding the investment and reinvestment of the capital of

the Fund, including the purchase or sale of any securities or the borrowing of any funds on behalf of the Fund, either on a secured or unsecured basis; provided, however, that the Investment Manager shall have exclusive authority to execute trades and open accounts on behalf of the Fund.

Section 2. <u>Compensation of the Investment Manager</u>

For the Investment Manager's services hereunder, the Investment Manager shall be entitled to receive a quarterly "Management Fee" and an annual "Incentive Fee", calculated in accordance with the following definitions and subject to the following conditions:

(a) The Management Fee payable to the Investment Manager shall be an amount payable quarterly in advance at an annual rate of (i) 2.0% of the value of the net assets of the Fund as of the first "Business Day" of each calendar quarter, adjusted for subscriptions made during the quarter and without accrual of the Incentive Fee, if any ("NAV") (a Business Day is any day on which banks are open in New York and Cayman Islands). Except to the extent the Investment Manager elects to defer payment of the Management Fee as further discussed below, the Fund shall pay the Management Fee in U.S. dollars promptly after the first Business Day of each calendar quarter. The Management Fee shall be prorated for any period that is less than a full calendar quarter. In the event that the Investment Manager is not acting as Investment Manager for an entire quarter, the Management Fee for such quarter shall be prorated to reflect the portion of such quarter in which the Investment Manager is acting as such under this Agreement. The Fund, with the consent of the Investment Manager, may, in effect, waive or modify the Management Fee for shareholders that are employees or affiliates of the Investment Manager, relatives of such persons, and for certain large or strategic investors. To the extent the Management Fee described above is charged by the Investment Manager directly to any feeder funds investing in the Fund, it will not be charged at the Fund Level.

The Investment Manager may irrevocably elect by written notice to the Fund, prior to the beginning of any calendar year (or at such other time as is permitted by U.S. Treasury Regulations issued under section 409A of the U.S. Internal Revenue Code of 1986, as amended (the "Code")), to have payment of all or a specified portion of the Management Fee with respect to any quarter(s) during such year deferred to the first day of any calendar year following the quarter such Management Fee was earned. For the first fiscal year that this Agreement is in effect, the Investment Manager may make an

irrevocable deferral election with respect to the Management Fee relating to such year on the effective date of this Agreement. No such deferral election may be made with respect to Management Fees attributable to services performed after December 31, 2008.

(b) The Incentive Fee payable to the Investment Manager for any fiscal year shall be an amount equal to 20% of the net profits (including realized and unrealized gains), if any, during such fiscal year allocable to each Common Share.

If a Common Share has a loss chargeable to it during any fiscal year, and during a subsequent fiscal year there is a profit allocable to such Common Share, no Incentive Fee shall be payable to the Investment Manager with respect to such Common Share until the amount of the loss previously allocated to such Common Share has been recouped. The fiscal year of the Fund shall end on December 31 of each year.

Except to the extent the Investment Manager elects to defer payment of the Incentive Fee as further discussed below, the Incentive Fee shall be paid to the Investment Manager by the Fund during the 30 day period following the end of the fiscal year. The Fund, with the consent of the Investment Manager, may, in effect, waive or modify the Incentive Fee for shareholders that are employees or affiliates of the Investment Manager, relatives of such persons, and for certain large or strategic investors. To the extent the Incentive Fee described above is charged by the Investment Manager directly to any feeder funds investing in the Fund, it will not be charged at the Fund Level.

In the event that this Agreement is terminated pursuant to Section 9 or 11 hereof or Common Shares are redeemed and the date of termination or redemption is not the end of a fiscal year, the Incentive Fee shall be computed as though the termination or redemption date, as the case may be, were the last day of the fiscal year.

The Investment Manager may irrevocably elect by written notice to the Fund, prior to the beginning of any calendar year (or at such other time as is permitted by U.S. Treasury Regulations issued under Code section 409A), to have payment of all or a specified portion of the Incentive Fee with respect to such year deferred to the first day of any calendar year following the year such Incentive Fee was earned. For the first fiscal year that this Agreement is in effect, the Investment Manager may make an irrevocable deferral election with respect to the Incentive Fee relating to such year on the effective date of

this Agreement. No such deferral election may be made with respect to Incentive Fees attributable to services performed after December 31, 2008.

(c) (i) If the Investment Manager elects to defer payment of all or part of the Management Fee and/or the Incentive Fee (collectively, a "Deferred Fee"), any such Deferred Fees payable to the Investment Manager shall be treated, and the amounts eventually payable at the end of the relevant deferral periods shall be determined, as if the Deferred Fees had been invested in the Fund (or in such "Alternative Investments" as to which the parties hereto may agree from time to time), without any charge for the Management or Incentive Fees, immediately after the particular Deferred Fee would otherwise have been payable and withdrawn from the Fund (or from such Alternative Investments) as of the last day of the deferral period. The Deferred Fees and any appreciation or depreciation thereon (collectively, the "Deferred Amounts") shall be paid to the Investment Manager promptly after the end of the deferral period as determined pursuant to subsections (ii) and (iii) below.

(ii) A Deferred Amount shall be paid to the Investment Manager on the earliest to occur of the following events:

(a) the date or dates designated by the Investment Manager in its deferral election with respect to the related Deferred Fee;

(b) the termination of this Agreement (but only if such termination constitutes a "separation from service" within the meaning of Code section 409A(a)(2)(A)(i)); or

(c) the dissolution of the Fund (but only if such dissolution constitutes a "separation from service" within the meaning of Code section 409A(a)(2)(A)(i)).

(iii) Notwithstanding anything to the contrary contained in subsection (ii), the Investment Manager may elect to extend the time for payment of a previously Deferred Fee (a "Re-Deferral Election"); provided, however, that (a) such Re-Deferral Election shall not take effect until at least twelve (12) months after the date on which such Re-Deferral Election is made; (b) the first payment with respect to which such Re-Deferral Election is made must be deferred for a period of not less than five (5) years from the date such payment would otherwise have been made (or in the case of a life annuity or installment payments treated as a single payment under Code section 409A, five (5) years from the date the first amount was scheduled to be paid); and (c) any such Re-Deferral Election may not be made less than twelve (12) months prior to the date of the first scheduled payment specified in the Investment Manager's prior deferral election in respect of such Deferred Fee (or in the case of a life annuity or

installment payments treated as a single payment under Code section 409A, twelve (12) months prior to the date the first amount was scheduled to be paid).

    (iv)  Title to and beneficial ownership of the Deferred Amounts shall at all times remain with the Fund, and the Investment Manager shall not have any property interest whatsoever in any specified assets of the Fund until such deferred amounts are paid to it.

    (v)  Any Deferred Amounts shall continue for all purposes to be part of the general funds of the Fund and no person other than the Fund shall by virtue of the provisions of this Agreement have any interest in such funds. To the extent that the Investment Manager acquires a right to receive payments from the Fund under this Agreement, such right shall be no greater than the right of any unsecured creditor of the Fund.

    (vi)  It is hereby agreed and understood that the Deferred Amounts may not be subject to seizure for the payment of any debts or judgments against the Investment Manager and the Investment Manager shall have no right to transfer, modify, anticipate, assign or encumber any Deferred Amounts, and none of the Deferred Amounts that may be due and owing to the Investment Manager shall be transferable by operation of law in the event that the Investment Manager becomes insolvent or bankrupt. Any purported seizure, transfer, modification, anticipation, assignment, encumbrance or transfer by operation of law shall be void.

    (vii)  The deferral arrangement set forth above is intended to comply with Code section 409A, and the foregoing provisions and any action taken related thereto shall be construed accordingly.

    (d) For purposes of this Section, net assets of the Fund shall be determined on the accrual basis of accounting in accordance with accounting principles generally accepted in the United States of America as a guideline and in accordance with the terms set forth in the Fund's Articles of Association. In connection with the determination of the net asset value of Common Shares, the Board of Directors of the Fund may consult with and is entitled to rely upon the advice of the Fund's brokers, custodians, the Investment Manager or other advisers. In no event and under no circumstances shall the Board of Directors or the Investment Manager incur any individual liability or responsibility for any determination made or other action taken or omitted by them in good faith.

Section 3. <u>Expenses</u>

The Investment Manager shall render its services to the Fund at its own expense, including the following overhead expenses: office rent; furniture and fixtures; stationery; secretarial/administrative services; salaries; entertainment expenses; employee insurance and payroll taxes. The Fund shall pay all other expenses, which will include: the fees payable to the Investment Manager, legal, audit and accounting expenses (including third-party accounting services); organizational expenses; investment expenses such as commissions, research fees and expenses (including research-related travel expenses); interest on margin accounts and other indebtedness; borrowing charges on securities sold short; custodial fees; Administrator fees and expenses; middle-office and back-office fees and expenses; Directors' fees and expenses and any other expenses reasonably related to the purchase, sale or transmittal of Fund assets.

Section 4. <u>Reports to the Fund</u>

The Investment Manager shall submit or cause to be submitted to the Fund such reports of the assets of the Fund and of the market value of such assets under its management as the Fund shall from time to time reasonably require. The Investment Manager shall not incur any individual liability or responsibility for any determination made, advice given or other action taken or omitted by it in good faith with respect to the determination of the value of the assets of the Fund under its management.

Section 5. <u>Selection of Brokers and Custodians</u>

(a) The Investment Manager is authorized to determine the broker or dealer to be used for each securities transaction for the Fund. In selecting brokers or dealers to execute transactions, the Investment Manager need not solicit competitive bids and does not have an obligation to seek the lowest available commission cost. It is not the Investment Manager's practice to negotiate "execution only" commission rates, thus the Fund may be deemed to be paying for research, brokerage or other services provided by the broker which are included in the commission rate. In determining the broker or dealer to be used for each securities transaction, the Investment Manager will conform to and be in accordance with the provisions of the Fund's Confidential Explanatory Memorandum, as amended from time to time and delivered to the Investment Manager.

(b) The Investment Manager, reserves the right, in its sole discretion, to change or add prime brokers and/or custodians without further notice to the Fund or its shareholders.

Section 6. Allocation

When the Investment Manager deems a particular investment suitable for both the Fund and other clients of the Investment Manager (or its directors, members, partners, shareholders, officers, employees, agents and affiliates (hereinafter referred to as the "Affiliated Parties")), such investments shall be allocated between the Fund and the other clients pro rata based on assets under management or in some other manner that the Investment Manager determine is fair and equitable under the circumstances to all clients, including the Fund. Where less than the maximum desired number of shares of a particular security to be purchased is available at a favorable price, the Investment Manager shall allocate the shares purchased among the Fund and the other clients in an equitable manner as determined by the Affiliated Parties.

Section 7. Liability of the Investment Manager

The Investment Manager shall give the Fund the benefit of its best judgment and efforts in rendering services hereunder and it is agreed as an inducement to the Investment Manager's undertaking these services that the Fund shall, to the fullest extent legally permissible under the laws of the State of Delaware, indemnify and hold harmless the Affiliated Parties against any loss, liability or expense (including without limitation, judgments, fines, amounts paid or to be paid in settlement and reasonable attorney's fees and expenses) incurred or suffered by an Affiliated Party in connection with the good faith performance by the Affiliated Party of its responsibilities to the Fund; provided, however, that nothing herein shall be deemed to protect an Affiliated Party against any liability to which it otherwise would be subject by reason of his, her or its gross negligence, willful misconduct or violations of applicable law. The Fund shall, upon request of an Affiliated Party, advance amounts in connection with its indemnification obligation; provided, however, that if it is later determined that such party was not entitled to be indemnified, then such party shall promptly reimburse the Fund for all advanced amounts.

Section 8. Other Activities of the Affiliated Parties

The Fund recognizes that the Affiliated Parties have investments of their own and are associated with other investment entities and managed accounts and are engaged in investment

management for others. Such other entities or accounts may have investment objectives or may implement investment strategies similar or different to those of the Fund. In addition, the Affiliated Parties may, through other investments, including other investment funds, have interests in the securities in which the Fund invests as well as interests in investments in which the Fund does not invest. Except to the extent necessary to perform its obligations hereunder, the Affiliated Parties are not limited or restricted from engaging in or devoting time and attention to the management of any other business, including any business within the securities industry, whether or not such business is in competition with the Fund, or rendering services of any kind to any other corporation, firm, individual or association. Without limiting the generality of the foregoing, any of the Affiliated Parties may act as investment adviser or investment manager for others, may manage funds, separate accounts or capital for others and may serve as an officer, director, consultant, partner or stockholder of one or more investment funds, partnerships, securities firms or advisory firms. Additionally, the Affiliated Parties may give advice or take action with respect to those other entities or accounts that differs from the advice given with respect to the Fund.

Purchase and sale transactions (including swaps) may be effected between the Fund and the other entities or accounts subject to the following guidelines: (i) such transactions shall be effected for cash consideration at the current market price of the particular securities, and (ii) no extraordinary brokerage commissions or fees (i.e., except for customary transfer fees or commissions) or other remuneration shall be paid in connection with any such transaction.

From the standpoint of the Fund, simultaneous identical portfolio transactions for the Fund and the other clients may tend to decrease the prices received, and increase the prices required to be paid, by the Fund for its portfolio sales and purchases. It may not always be possible or consistent with the investment objectives of the various persons or entities described above and of the Fund for the same investment positions to be taken or liquidated at the same time or at the same price, however all transactions will be made on a "best execution" basis.

Section 9. Term

This Agreement shall continue until the close of business on December 31, 2036, except that either party may terminate the Agreement effective at the close of business on the last day of any fiscal year by giving the other party not less than sixty days' written notice.

Section 10. Notice

All notices shall be in writing and shall be deemed to have been duly given if delivered personally or if mailed by registered mail, postage prepaid, to the following respective addresses until a different address is specified in writing by a party to the other party:

To the Fund:

> Highview Point Master Fund, Ltd.
> c/o GlobeOp Financial Services (Cayman) Limited
> 45 Market Street, Suite 3205, 2nd Floor
> Gardenia Court, Camana Bay
> Grand Cayman, KY1-9003
> Cayman Islands
> Attention: Investor Relations Department

To the Investment Manager:

> Highview Point Partners, LLC
> 1055 Washington Boulevard
> 5th Floor
> Stamford, Connecticut 06901
> United States of America

Section 11. Assignment

The Investment Manager may assign this Agreement to another entity controlled by Francisco Illarramendi, Frank H. Lopez and Christopher H. Luth, the Managing Members of the Investment Manager, without the prior written consent of the Fund. The Fund shall not assign this Agreement without the prior written consent of the Investment Manager.

Section 12. Sales Literature

The Fund shall not approve or authorize the use or distribution in connection with the sale of its securities of any literature or advertisement in which the Investment Manager is named or referred to unless such literature or advertisement shall first be submitted to the Investment Manager for its approval with respect to matters concerning the Investment Manager.

Section 13. <u>Governing Law</u>

This Agreement and all performances hereunder shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to the conflict of laws principles thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

HIGHVIEW POINT MASTER FUND, LTD.

By: _____
Name: Frank H. López
Title: Director

HIGHVIEW POINT PARTNERS, LLC

By: _____
Name: Christopher H. Loh
Title: Managing Member

12

SK 23108 0002 652047