# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

September 10, 2012

Ona T. Wang
direct dial:  212.589.4254
OWang@bakerlaw.com

**VIA ECF AND FEDERAL EXPRESS**

The Honorable Janet Bond Arterton
United States District Court
District of Connecticut
Richard C. Lee United States Court House
141 Church Street
New Haven, CT 06510

Re:   *Securities and Exchange Commission v. Francisco Illarramendi, et al.,*
      11-cv-78 (JBA) – Supplemental briefing regarding modification of protective
      order

Dear Judge Arterton:

In light of the Court's reference to *SEC v. TheStreet.com*, 273 F.3d 222 (2d Cir. 2001)
at the telephonic status conference on July 31, 2012, we write to supplement the
Receiver's motion for an order authorizing the Receiver to produce documents to the
United States Government notwithstanding the Court's February 3, 2011 Protective
Order (the "Protective Order").

As a general rule, a district court should not modify a protective order where there
has been reasonable reliance by a party or deponent on the terms of the order.
*Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979). The Second Circuit
has noted, however, that "some protective orders may not merit a strong presumption
against modification. For instance, protective orders that are on their face temporary
or limited may not justify reliance by the parties." *SEC v. TheStreet.com*, 273 F.3d
222, 230-31 (2d Cir. 2001). As the Second Circuit observed in *TheStreet.com*, the
presumption against modification of protective orders arises from policy
considerations favoring "the just, speedy and inexpensive determination of civil
disputes by encouraging full disclosure of all evidence that might conceivably be
relevant." 273 F.3d at 229 (internal quotations omitted). Where a party has
reasonably relied on a protective order to produce documents, courts have been
understandably reluctant to modify such protective orders if they "unfairly disturb the

*Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa*
*Denver     Houston     Los Angeles     New York     Orlando     Washington, DC*

The Honorable Janet Bond Arterton
Supplemental Briefing
September 10, 2012
Page 2 of 6

legitimate expectations of litigants."[1] *Id.* at 230. Mr. Montes, a nonparty to this litigation, has neither articulated nor referenced these policy considerations in his objection and, as discussed below, such policy considerations in this case support modification of the Protective Order.

Judge Underhill has recently noted that the *Martindell* standard "does not apply uniformly to *all* protective orders." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 318 (D. Conn. 2009) (emphasis in original). In applying a "more flexible approach to modification emphasized by *TheStreet.com*," Judge Underhill identified several factors to consider:

> "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. Additional considerations that may influence a court's decision to grant modification include: the type of discovery materials the collateral litigant seeks and the party's purpose in seeking a modification."

*In re EPDM Antitrust Litigation*, 255 F.R.D. at 318-19.

1. Express Language

"Where a protective order contains express language that limits the time period for enforcement, anticipates the need for potential modification, or contains specific procedures for disclosing confidential material to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified." *In re EPDM Antitrust Litigation*, 255 F.R.D. at 320 (citing *TheStreet.com*). Neither Mr. Montes nor any other producing party could reasonably have relied on the Protective Order to remain unchanged where its express terms permit it to be modified, (Protective Order ¶¶ 3, 7, 10, 11, 12, 13), limit time periods for enforcement, (Protective Order ¶¶ 8, 12), and contain specific procedures for disclosure of confidential materials to non-parties. Protective Order ¶¶ 4, 5, 6, 7, 8, 9, 10, 13. The Protective Order contains language similar to that in the protective order modified by Judge Underhill in *EPDM Antitrust Litigation*.

Numerous paragraphs in the Protective Order "acknowledge the possibility of future modification." *Id.* at 321. For example, the first paragraph that describes the disclosure of Protected Material states that it "will be held and used . . . solely for use in connection with [this action]," . . . *"[u]nless [otherwise] ordered by the Court."* Protective Order ¶ 3 (emphasis added). In Paragraph 7, again, the Order explicitly permits "the party desiring to disclose the Protected Material . . .[to] seek appropriate relief from the Court." *Id.* ¶ 7. In Paragraph 10, the Protective Order again

---

[1] Indeed, it is questionable whether Mr. Montes even has standing to object to the Receiver's motion. Mr. Montes is not a party to this action, and both the case law and the Protective Order focus on the expectations of the parties. The Protective Order on its face defined Protected Material as "any material . . . that the disclosing party or entity reasonably believes to constitute or include non-public proprietary information." In this case, the Court was concerned with protecting from disclosure non-public proprietary information involving technology investments by the Receivership Entities. *See* Tr. dated Jan. 24, 2011 at 70-71.

The Honorable Janet Bond Arterton
Supplemental Briefing
September 10, 2012
Page 3 of 6

contemplates the possibility of modification: "In absence [sic] of written permission from a disclosing party or entity, or a subpoena or *an order of the Court*, compliance with this Protective Order requires that Protected Materials in this action shall not be disclosed to parties to any other litigation." (emphasis added). Paragraphs 11 and 12 discuss the treatment of Protected Material after the conclusion of this case and again contemplate modification by Court order. Finally, the entire purpose of Paragraph 13 is to put all parties on notice that the Protective Order is subject to modification:

> The foregoing is without prejudice to the right of any party to apply to the Court for any further Protective Order relating to confidential information; or to object to the production of documents or information; or to apply to the Court for an order compelling production of documents or information; or for modification of this Order; or to seek other relief from the Court.

Paragraphs 8 and 12 set time limits for enforcement of particular portions of the Protective Order. Paragraph 8 requires prompt identification of Protected Material used or disclosed in deposition, and Paragraph 12 sets time frames for the destruction or return of Protected Material after final disposition of the litigation.

Non-parties also clearly have access to Protected Material under the Protective Order. The Protective Order permits disclosure to counsel of record representing a party or interested party, the Business Advisors, employees of such counsel, consultants or experts, any deponent, the Receiver, his staff, and any receiver candidates. Protective Order ¶ 5(a)-(e). There are approximately thirty Interested Parties appearing on the docket, some represented by multiple counsel. Any Protected Material used in official judicial proceedings or filings with the Court also are presumptively public, unless sealed by the Court upon motion and in accordance with applicable law. Protective Order ¶ 9. Accordingly, neither Mr. Montes nor any other producing party could reasonably have expected that Protected Material would be absolutely protected under the Protective Order.

2. Scope

"A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents[.]" *In re EPDM Antitrust Litigation*, 255 F.R.D. at 319. The Protective Order here is very broad, and protects any material "that the disclosing party or entity *reasonably believes* to constitute or include non-public proprietary information." Protective Order." Protective Order ¶1 (emphasis added). Moreover, there is no process described in the Protective Order for de-designating documents after they have been deemed "Protected Material." Such expansive language weighs in favor of permitting modification. *In re EPDM Antitrust Litigation*, 255 F.R.D. at 319-20 (comparing cases and scope of protective orders that were modified; noting that "expansive language granting the parties broad latitude to self-designate" militated in favor of requested modification).

The Honorable Janet Bond Arterton
Supplemental Briefing
September 10, 2012
Page 4 of 6

Mr. Montes, like many parties and entities producing documents in response to the Receiver's subpoenas, produced documents under a blanket "confidential" designation. This factor also weighs in favor of modification of the Protective Order.

3. Level of Inquiry prior to granting of Order

If a protective order is stipulated, or if it allows the producing party to unilaterally designate certain documents "confidential", it is not entitled to *Martindell's* "strong presumption against modification." *In re EPDM Antitrust Litigation*, 255 F.R.D. at 321. A protective order that "allowed for unilateral designation of an exhibit as protected material, and . . . did not list specific documents, or delineate the kinds of documents, contemplated for protection . . . constitute[s] 'extraordinary circumstances' justifying the unsealing of documents." *Fournier v. McCann Erickson*, 242 F. Supp.2d 318, 341 (S.D.N.Y. 2003) (citing *In re "Agent Orange" Produc. Liab. Litig.*, 821 F.2d 139, 147-48 (2d Cir. 1987)). The Protective Order is similar to the orders considered – and modified – in *Fournier* and *In re EPDM Antitrust Litigation*. It was based on the Court's standing protective order posted on the Court's website, modified by agreement with the SEC, Proterra and the defendants, with one modification suggested by the Court for publicly-filed documents. See Jan. 24 2011 Hearing Transcript at 70-71 and Feb. 2, 2011 Hearing Transcripts at 150-51. Paragraph 1 provides for the unilateral designation of "Protected Material," and there is no provision for Court review of such designations unless and until Protected Material finds its way into publicly filed Court documents. Protective Order ¶ 9. Thus, there was never a required showing of good cause before documents were protected under the Protective Order, nor is there even a provision for review or revision of confidentiality designations after they are unilaterally made, other than the narrow exception in Paragraph 9. Where the Court has never had to determine whether good cause existed for the sealing or protection of documents, there is also no basis to require a showing of extraordinary circumstances to modify the protective order. *Fournier*, 242 F. Supp.2d at 342. As the *Fournier* court recognized, doing so would effectively shift the burden[2] to the party seeking to disclose documents simply because the producing party chose, unilaterally, to designate the document as protected. *Id.*

4. Nature of reliance

If a party "gives up its right to refuse to testify, or to produce documents it would not otherwise be compelled to produce," in reliance on a protective order, "the heightened *Martindell* presumption against modification naturally applies." *In re EPDM Antitrust Litigation*, 255 F.R.D. at 322. "Conversely, where the parties have not given up any rights and indeed would have been *compelled* to produce the discovery materials

---

[2] Mr. Montes goes even further. He argues, effectively, that because he has chosen to designate as confidential every document he produced in response to a valid subpoena (and which he would have been compelled to produce anyway), he is "entitled" to know if a government agency seeks documents relating to him. Montes Opp. at 2.

The Honorable Janet Bond Arterton
Supplemental Briefing
September 10, 2012
Page 5 of 6

even in the absence of a protective order, the presumption against modification is not as strong." *Id.* at 323 (emphasis in original).

Here, Mr. Montes has not even asserted that he relied on the Protective Order, let alone identified a right he gave up in reliance on it. Mr. Montes has articulated no good cause for keeping his documents confidential; indeed, under the Receiver's subpoena he would have been compelled to produce those documents even in the absence of the Protective Order. Mr. Montes is attempting the same burden-shifting that Judge Underhill disfavored in *In re EPDM Antitrust Litigation*: in arguing against modification, Mr. Montes makes no assertion that his documents are, in fact, subject to protection and articulates no harm from disclosure and no reason for protecting them; instead, he attempts to shift the burden to the Receiver to show that complying with the Protective Order "entails a substantial cost or is overly burdensome." Montes Opp. at 2. Where there was no good cause showing at the time the protective order was granted, there is also no presumption that the documents under the protective order should remain confidential. *See In re EPDM Antitrust Litigation*, 255 F.R.D. at 323-24 & n.6. (noting that parties objecting to modification of order were improperly shifting burden to party seeking modification).

5. Other considerations

Other considerations identified by Judge Underhill include the type of materials sought by the party seeking access to documents covered by the protective order and whether the party seeking access "could retrieve the same materials in question through its own discovery requests or whether it is attempting to subvert a limitation on discovery." *In re EPDM Antitrust Litigation*, 255 F.R.D. at 324. If the party seeking the materials covered by a protective order could obtain the same materials by conducting its own discovery, then "it is in the interests of judicial efficiency to avoid such duplicative discovery." *Id.*

Here, it is undisputed that the Government could issue hundreds of similar subpoenas – essentially duplicating the work of the Receiver – to obtain the same documents, or it could issue directed subpoenas to the Receiver that would require the Receiver to expend considerable time, effort and Receivership assets to review millions of documents, their confidentiality designations and their sources in order to comply with the letter of the Protective Order. Either way, the Government could obtain the same documents in question through its own subpoena(s), but at considerable extra expense.

Mr. Montes makes no assertion that the documents he produced in response to the Receiver's subpoena are not discoverable by the Government; indeed, he admits that "it is very unlikely that Mr. Montes would oppose a request by the Receiver to produce materials to a government agency." Montes Opp. at 2. Mr. Montes's request only further burdens the Receivership Estate by requiring the Receiver to notify any party whose documents would be produced to the Government. Here, modification of the Protective Order to permit production to the Government in the absence of a subpoena would conserve assets of the Receivership Estate and avoid duplicative discovery.

The Honorable Janet Bond Arterton
Supplemental Briefing
September 10, 2012
Page 6 of 6

The purpose for seeking modification of the protective order is also relevant. *In re EPDM Antitrust Litigation*, 255 F.R.D. at 324. Here, the Receiver is seeking to produce documents in the most cost efficient manner and the Government is not seeking such documents for public dissemination.

None of the factors discussed above weighs in favor of a presumption against modification, so the Court in its discretion should weigh the interests of the parties when considering whether to modify the Protective Order. Mr. Montes has not articulated a real interest in maintaining the Protective Order as is, has not identified any reliance on the Protective Order, and has even indicated that he might not object. He has not identified a single document that is in fact entitled to the stringent protections of the Protective Order. The Receiver, on the other hand, has a strong interest – aligned with the numerous victims of Illarramendi's fraud – in conserving the resources of the Receivership Estate and producing documents that will be disclosed, whether by informal request or subpoena, in the most efficient way possible.

It is telling here that of the hundreds of entities and individuals who produced documents in response to the Receiver's subpoenas, approximately half designated confidential documents, and fewer than five entities selectively designated only certain documents out of their productions. The remainder of the entities and individuals who designated any documents "confidential" did so with a blanket designation of confidentiality, yet only Mr. Montes has objected to the Receiver's motion.

Accordingly, the Receiver respectfully requests that the Protective Order be modified to permit the Receiver to produce documents to any agency or department of the United States Government upon request, without requirement to notify the parties who designated such documents confidential or otherwise following the procedures delineated in the Protective Order.

Respectfully submitted,

Ona T. Wang