UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 11-cv-78 (JBA) |
| v. | ) ) |
| FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, | ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP, | ) ) ) ) ) ) ) ) |
| Relief Defendants. | ) ) |

**COMMISSION'S OPPOSITION TO MOTIONS TO INTERVENE AND FOR OTHER RELIEF FILED BY FRACTAL FUND MANAGMEMENT, LTD., FRACTAL P HOLDING, LTD. AND ROWBERROW TRADING CORP.**

The Commission hereby opposes the Motion to Intervene and for other relief (Dkt. No. 556) filed by Fractal Fund Management, Ltd. and Fractal P Holding, Ltd. (collectively "Fractal"), and the Motion to Intervene and for other relief (Dkt. No. 571) filed by Rowberrow Trading Corp. ("Rowberrow" and with Fractal, the "Beracha Affiliates"). Both Fractal and Rowberrow claim to be creditors of certain Receivership Entities, with which they claim to have entered into agreements

1

entitling them, collectively, to $106,200,000 in payments.  For the reasons articulated below, allowing the Beracha Affiliates to intervene in this case should not be permitted under the governing rules and case law, and would be inconsistent with the court's rulings denying analogous motions to intervene.  Further, to the extent the Beracha Affiliates' motions seek to: 1) challenge the settlement reached by the Receiver and a number of Settling Parties (Dkt. No. 543, captioned as the "Proposed Highview Settlement"); 2) revoke the Receiver's appointment as a result of a purported conflict of interest; and 3) dissolve the anti-suit injunction that is part of the current Receivership Order, the Commission opposes these forms of relief, and joins in the Receiver's memorandum of law opposing these forms of relief.

Before turning to the merits of the Beracha Affiliates' arguments about intervention, it is important to put their motions to intervene into the context of the ongoing litigation between all of the Beracha-affiliated entities and the Receiver that is presently pending before Judge Underhill in this District.  *See Carney v. Beracha, et al.*, No. 3:12-cv-180-SRU (D. Conn.) (the "Beracha Action").  In that case, the Receiver has claimed that Fractal, Rowberrow, and a number of other entities are actively controlled or directed by Moris Beracha, who knowingly or recklessly facilitated Illarramendi's wide-ranging Ponzi scheme by providing liquidity to various Receivership Entities.  *See Carney v. Beracha, et al.*, No. 3:12-cv-180-SRU, First Amended Complaint, Dkt. No. 77 (D. Conn. filed June 11, 2012) ("Beracha Complaint") at ¶¶1-2, 24-25, 32-37, 42.  The Beracha Complaint further alleges that Beracha acted as an agent for the Beracha Affiliates, as well as other entities, in negotiating transactions between them and Illarramendi which resulted in fraudulent transfers to Beracha and his affiliated entities of over $170 million.  *See id.* at ¶¶7, 24-25.  The Receiver seeks to recover that $170 million for distribution to victims of Illarramendi's fraud.  *See id.* Currently pending in the Beracha Action are the Beracha Affiliates' (and other defendants') motions to dismiss for lack of personal jurisdiction.  Many of the facts in dispute in the Beracha Action, and

in the jurisdictional motions in that case, are inextricably intertwined with the allegedly undisputed facts presented in the Beracha Affiliates' present motions, including the legitimacy of the transactions underlying the Beracha Affiliates' claims, the location where those purported agreements were made, and the nature of the Beracha Affiliates' interest in this litigation. *Compare, e.g.*, Fractal Intervention Mot. at 3, 20 and Dkt. No. 557-2 (basing Fractal's claims, in part, on purported $16 million loan agreement) *with* Beracha Complaint at ¶¶188-94 (explaining how purported $16 million loan agreement dated January 20, 2011 was part of obstruction of Commission's investigation).

## I.     The Beracha Affiliates Are Not Entitled To Intervene As Of Right.

The Beracha Affiliates bear the burden of proving four factors in order to establish their right to intervene as of right under Fed. R. Civ. P. 24(a).  They must show that they:

> (1) file[d] a timely motion; (2) assert[ed] an interest relating to the property or transaction that is the subject of the action; (3) [are] so situated that without intervention the disposition of the action may, as a practical matter, impair or impede [their] ability to protect [their] interest; and (4) ha[ve] an interest not adequately represented by the other parties.

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (affirming denial of intervention).  Failure to establish any one of these requirements means that the Beracha Affiliates' motion must be denied.  *See id.*; *see also United States v. New York*, 820 F.2d 554, 556 (2d Cir. 1987).

Moreover, Rule 24(a)(2)'s requirements must be read "in the context of the particular statutory scheme that is the basis for the litigation and with an eye to the posture of the litigation at the time the motion is decided."  *United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984).  This is particularly so in Commission enforcement actions.  *See generally SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972).  Commission

enforcement actions seek to vindicate the federal securities laws and to protect investors by, among other things, stopping violations, bringing perpetrators to justice, and maximizing recoveries for victims. Intervention is therefore strongly disfavored because of the potential unnecessarily to complicate or prolong the proceedings, particularly where the Beracha Affiliates' claims are intertwined with issues in the separate Beracha Action, and any interest or right as a putative creditor of the Receivership Estate they have can be fully addressed as part of the future summary claims adjudication process. *Cf. generally United States v. Peoples Benefit Life Ins.*, 271 F.3d 411, 417 (2d Cir. 2001) (expressing concern that intervention in government forfeiture proceedings could undermine receivership proceedings by affording the applicant "an advantage over other creditors" and "open[ing] the door for other creditors" to intervene); *CFTC v. Heritage Capital Advisory Serv., Ltd.*, 736 F.2d 384, 386-87 (7th Cir. 1984); *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 586-87 (10th Cir. 1984). Particularly because the legitimacy of the claims that the Beracha Affiliates seek to protect through their current motion are at issue in the Beracha Action, it would be an inefficient use of judicial resources, and could lead to potentially inconsistent results, to give the Beracha Affiliates the full status of parties in this case.

      The Beracha Affiliates' motions meet none of the requirements for intervention. Their motions should thus be denied. First, while the Beracha Affiliates' motions may be timely to the extent they seek to challenge the Proposed Highview Settlement, intervention is not necessary to permit them to do so, and the other challenges to the Receivership and the Receivership Order they seek to raise are untimely. With respect to the second requirement - that they have a legitimate interest in the property that is the subject of this action - there is a significant question whether the Beracha Affiliates have proven that they meet that standard given the allegations of

4

the Beracha Action. As to the third and fourth factors that the Beracha Affiliates must establish to intervene, they fail to demonstrate either that their asserted interest will be impaired absent intervention or that the existing parties do not adequately represent their interests.

First, as to the timeliness inquiry, the Beracha Affiliates have been aware of the Receiver's appointment, the anti-suit injunction contained in the Receivership Order, and the fact that the Receivership was employing professionals at Baker & Hostetler, for a significant amount of time. As their own moving papers demonstrate, the Beracha Affiliates were notified of the Receivership Order and the Receivership's claims process and submitted claims as part of that claims process by the end of December 2011. *See* Dkt. No. 557-2, 557-3, 572-1, ¶4. Their belated attempts to challenge the anti-suit injunction, as well as the court-authorized payments to the Receiver and the professionals he has employed, should be rejected. Given that the Court has closely supervised the administration of the Receivership Estate, and granted motions approving past expenses of the Receivership Estate, revisiting the granting of those motion now, or requiring the expenditure of funds to educate a new Receiver and group of professionals about this highly complicated case, would be incredibly inefficient and costly and would delay this case unreasonably.

Next, the Beracha Affiliates have not demonstrated that permitting the existing parties to litigate and dispose of their claims will "as a practical matter, impair or impede [their] ability to protect [their] interest" as Rule 24(a) requires. As purported creditors of the Receivership Estate, the Beracha Affiliates seek to intervene to make their views known to the Court on three main issues: 1) whether the Court should approve the settlement with the Highview Funds, many of their investors, and certain other settling parties that brings about $200 million into the Receivership Estate while saving significantly on the expenses of litigating with those parties to

reach, at best, a slightly larger recovery; 2) whether the Court properly approved the retention of Baker & Hostetler as the Receiver's counsel; and 3) whether the anti-suit protections contained in the Receivership Order should be maintained, thus reducing expenses for the Estate and permitting an efficient and consistent resolution of competing claims.  Though the Commission firmly contends that the answer to each of these questions is yes, and the Beracha Affiliates disagree, allowing intervention is entirely unnecessary.  The Beracha Affiliates' views on these issues may be fully heard by the Court given the current scheduling orders and the Court's practice of considering interested parties' arguments about the validity of the procedures memorialized in the Receivership Order.  First, the Beracha Affiliates' objections to approval of the Proposed Highview Settlement may be heard as part of the already-prescribed process for considering any objections to that settlement.  *See* Dkt. No. 554 (ordering objections to the settlement to be filed by October 11, 2012).  No additional process or status need be granted to the Beracha Affiliates.  Similarly, having filed a motion that makes clear both the reasons why they find the Receiver's employment of certain professionals objectionable, and the reasons why they object to the Receivership Order's anti-suit injunctions, and the Court having ordered responses to these motions by September 27 (*see* Dkt. No. 586), these issues will be fully briefed and capable of resolution promptly, as were objections to various provisions of the Receivership Order filed by other interested parties Ventures Trust Management LLC (Dkt. No. 332) and ReoStar Energy Corp. (Dkt. No. 295, 303).

   Moreover, though the Beracha Affiliates argue that any order approving the Proposed Highview Settlement would "rob [them] of assets that should otherwise be available to cover [their] claims," and that their interest "vests now or never," those claims are frivolous.  *See* Fractal Mot. at 9.  The Proposed Highview Settlement brings approximately $200 million into

the Receivership Estate – money that is more than sufficient to pay the Beracha Affiliates' claims if those claims are found to be legitimate, and in the unlikely event that Receivership Estate recoveries allow claimants to be repaid in full.  The appropriate time to consider how much, if any, of the Beracha Affiliates' claims should be paid from the Receivership Estate is after the Beracha Action is resolved, and as part of the summary claims adjudication process that the Receiver and the Court will implement in this matter.  It is not necessary to permit intervention to protect the Beracha Affiliates' interests.

      Though the Beracha Affiliates argue that their interests are not adequately protected by the existing parties, any interest that they have in this action is already sufficiently protected by the Court's existing procedures without granting their motion for intervention.  The Court has routinely allowed creditors of, and investors in, the Receivership Entities to participate in court hearings and to make their positions known to the Court through their status as "Interested Parties."  In this regard, the Beracha Affiliates deserve no special treatment.  Like other investors and creditors who claim to have lost money that they invested with Illarramendi and his associates, or financing that they provided to the Receivership Entities, the Beracha Entities have the opportunity to file objections to the Proposed Highview Settlement and have already informed the court of their positions on other issues the Court will decide.  They can also participate fully in the claims adjudication process that the Court establishes.  Allowing one group of creditors or investors to intervene would require allowing all such claimants to intervene, thus transforming a case that is already presents significant administrative challenges into one practically paralyzed when each party wants to be heard on each issue that arises.

      Further, the Beracha Affiliates' argument that they are inadequately represented by the Receiver because the Proposed Highview Stipulation violates the Receiver's duty of "strict

7

impartiality" is mistaken. *See* Fractal Mot. at 10-11. As articulated in greater detail in the Receiver's opposition to the Beracha Affiliates' motion, the Proposed Highview Settlement is in the best interest of all creditors of the Receivership Estate because it brings significant sums of money into the Estate for ultimate distribution to investors and creditors, saves significant litigation expenses that would otherwise be necessary to obtain such recoveries, and grants the Settling Parties only a small percentage of what would ultimately be paid on their claims.

In sum, the Beracha Affiliates have failed to show that they are entitled to intervene in this matter as of right, as they have not demonstrated either that their motion is timely, that their interests will be practically impaired without their participation as parties, or that any interest they may have is inadequately represented by the existing parties, even if they are able to establish that they have a legitimate interest in property of the Receivership Estate.

## II.   Permissive Intervention Should Also Be Denied.

Permissive intervention under Fed. R. Civ. P. 24(b) may be permitted in the court's discretion when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." The Beracha Affiliates do not meet this standard. Like other parties who have argued for intervention in this case, the Beracha Affiliates have not explained what their claims, "aimed at preserving the value" of their purported loans to Receivership Entities in connection with the eventual distribution of the assets of the Receivership Estate, "have in common with the Commission's fraud claims against Illarramendi and other Defendants." Dkt. No. 277 at 11 (denying Balanchine Entities' Motion to Intervene). That principle is equally applicable, and justifies the same result, here. The fact that the Beracha Affiliates may have claims relevant to the motion to approve the Proposed Highview Settlement

does not justify permissive intervention.  *See* Fractal Mot. at 12.  There is already a briefing schedule for objections to that motion.  Further relief or process is unnecessary.

Moreover, permissive intervention is not granted "even when there is a strong commonality of fact or law, where such intervention would cause undue delay, complexity or confusion in a case."  *Bear Stearns & Co., Inc.*, 2003 WL 22000340, *2.  These concerns are "acute where the Government, and particularly the SEC, is a party to the underlying action."  *Id*. (denying permissive intervention to investor seeking to challenge consent decree).  These concerns are acute in this case, where allowing the present motion to intervene would necessitate an allowance of motions to intervene by numerous other parties.  *See id.* at *4 ("Were this Court to grant this motion to intervene, it would be logic-bound to allow all investors and members of the investing public with differing viewpoints to intervene . . . This is one of the principal reasons that permissive intervention by individual investors in SEC actions is rarely granted.").  There are many "Interested Parties," and a number of similarly situated investors and other claimants to funds under the control of the Receiver.  If the Beracha Affiliates' motions were allowed, there would be no logical reason to prohibit any of the other Interested Parties or claimants from intervening as well, resulting in a case with an unwieldy number of parties.

Where the court has already permitted Interested Parties to be heard on matters in which they express an interest, granting the status of "Party" to all of those entities would provide no additional meaningful process, and provide no extra protection for the investors' or creditors' rights.  Instead, allowing intervention would only serve to complicate these proceedings needlessly, make the discovery process unwieldy, lengthen the hearings, expand the scope of motion practice, and impose additional practical impediments to reaching a resolution of this matter.  For these reasons, permissive intervention should also be denied.  *See SEC v. Everest*

*Mgm't Corp.*, 475 F.2d 1236, 1239-40, n.5 (2d Cir. 1972) ("in our view it is preferable to require private parties to commence their own actions than to have SEC actions bogged down through intervention"). The Beracha Affiliates' motions with respect to the Receiver's continued appointment, the continuance of the anti-suit injunction, and the approval of the Proposed Highview Settlement will shortly be fully briefed and capable of resolution without the need for intervention.

## CONCLUSION

For the reasons detailed above, the Beracha Affiliates' motions to intervene should be denied, as should their motions seeking to enjoin the performance of the settlement between the Receiver and certain settling parties, to revoke the Receiver's appointment or to order him to show cause why his appointment should not be revoked, and to dissolve the anti-suit injunction that is part of the current Receivership Order.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**
By its attorneys,

  /s/ Kathleen Shields
Rua M. Kelly (Mass. Bar No. 643351)
LeeAnn G. Gaunt (Mass. Bar No. 630557)
Kathleen Shields (Mass. Bar No. 637438)
33 Arch Street, 23rd Floor
Boston, Massachusetts  02110
Telephone:  (617) 573-8941 (Kelly direct)
Facsimile:   (617) 573-4590
E-mail:  kellyru@sec.gov

Local Counsel:

/s/
John B. Hughes (Fed. Bar No. CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, Connecticut 06510
(203) 821-3700
(203) 773-5373

Dated:  September 27, 2012


**CERTIFICATE OF SERVICE**

     I hereby certify that on September 27, 2012, I electronically filed the Commission's Opposition to Fractal's and Rowberrow's Motions to Intervene and for Other Relief with the Clerk of the Court, parties of record, and the proposed intervenors, by using the CM/ECF system.

  /s/ Kathleen Shields
Kathleen Shields (Mass. Bar No. 637438)