UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS LLC, AND MICHAEL KENWOOD CAPITAL MANAGEMENT LLC,<br><br>Defendants,<br><br>and<br><br>HIGHVIEW POINT MASTER FUND LTD., HIGHVIEW POINT OFFSHORE LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE LLC, and MKEI SOLAR, LP,<br><br>Relief Defendants. | Case No. 11-CV-78 (JBA)<br><br><br><br><br><br><br><br><br><br><br><br>October 5, 2012 |

**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FRACTAL FUND MANAGEMENT, LTD.'S, FRACTAL P HOLDING, LTD.'S AND ROWBERROW TRADING CORP.'S MOTIONS TO INTERVENE AS OF RIGHT OR PERMISSIVELY, TO REJECT AND ENJOIN PERFORMANCE OF STIPULATION OF SETTLEMENT, TO REVOKE JOHN J. CARNEY'S APPOINTMENT AS RECEIVER OR SHOW CAUSE WHY IT SHOULD NOT BE REVOKED, TO OPPOSE THIRD MOTION FOR FEES AND ENJOIN FURTHER OBLIGATIONS, AND TO DISSOLVE WORLDWIDE ANTI-SUIT INJUNCTION**

Fractal Fund Management, Ltd. and Fractal P Holding, Ltd. (together, "Fractal"), and Rowberrow Trading Corp. ("Rowberrow," and together with Fractal, the "Movants"), by and through their undersigned attorneys, hereby respectfully submit this Reply Memorandum of Law in further support of their motions to intervene as of right or permissively, to enjoin performance of the Stipulation of Settlement and reject the Proposed Order (Doc. No. 543-1), to revoke John

J. Carney's appointment as receiver or to show cause why it should not be revoked, to oppose Carney's Third Interim Application for Fees and Expenses by the Receiver and His Advisors ("Third Motion for Fees") (Doc. No. 519) and enjoin Carney from incurring further obligations on behalf of the Receivership Estate, and to dissolve the Court's injunction prohibiting the commencement or continuation of civil actions against Carney or Receivership Entities anywhere (Doc. Nos. 556, 571) (the "Motions").

## I. THE MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT OR PERMISSIVELY

### A. The Motions to Intervene Are Timely

There is no dispute that the Motions are timely as to the proposed Stipulation of Settlement filed on August 14, 2012 (Doc. No. 543). Indeed, the Securities and Exchange Commission ("SEC") acknowledges that the motion "may be timely." (SEC Opp. 4) (Doc. No. 595.) Because the Stipulation of Settlement is a direct result of Carney's conflict of interest, and serves as one of the primary bases for the Motions, the Motions are necessarily timely with respect to the relief sought regarding Carney's conflict of interest as well. Carney's assertion that Movants "chose not to participate" in Carney's appointment hearing (Carney Opp. 8) (Doc. No. 597) ignores that Movants were not served notice. Only the Order appointing Carney, entered *after* the appointment hearing, reached Fractal and Rowberrow overseas to enjoin them from suing on the sole basis that they are creditors of Receivership Entities. And only recently has evidence of Carney's conflict of interest, and the gross harm such conflict has wreaked on the Receivership Entities, their creditors, and the Receivership assets, come to light. Between Carney's filing of multiple lawsuits, his proposal to make a special distribution of assets to select claimants through the Stipulation of Settlement, and his request for approval of exorbitant fees

covering the latter half of 2011 at claimants' expense, the compounding harm from Carney's conflict of interest can no longer be ignored.

The Motions are also timely in seeking relief from the anti-suit injunction. The SEC argues that the request for relief from the anti-suit injunction is untimely because an anti-suit injunction may only be challenged at the time it is entered and the Movants had notice of the anti-suit injunction "for a significant amount of time." (SEC Opp. 5.) That position is at once unsupported, inequitable and incorrect. Anyone restrained by an injunction may move to intervene to set it aside even years after it is entered, as timeliness is measured from the time the interest arose in becoming free of the restraint. *See Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321-21 (7th Cir. 1995) (noting that "we determine timeliness from the time the potential intervenors learn that their interest might be impaired" and that intervention was granted "eight years after a consent decree was issued") (citations omitted.) Here, Carney resorted to litigation against Fractal and Rowberrow on February 3, 2012, the Movants sought relief from the injunction in their first substantive filing before Judge Underhill on May 21, 2012, and Carney responded on July 27, 2012, by suggesting that Fractal and Rowberrow should make their motion to dissolve the anti-suit injunction in this docket, which they did by so moving on August 24, 2012.

### B. Movants' Interests Are Direct, Substantial and Legally Protectable

It is well-settled that Movants have a protectable interest in the Receivership Estate because they are creditors of the Receivership Entities. (*See* Fractal's Br. 8) (Doc. No. 557-4) (*citing* cases.) The SEC's suggestion that Carney unilaterally negated Movants' interest in their claims simply by filing a complaint lacks any legal basis and would be an affront to due process.

(SEC Opp. 4-5.) No authority holds that Carney may expunge claimants' interest in being paid by filing a lawsuit against them.

### C. Movants' Ability to Protect Their Interests Will Be Impaired or Impeded Without Intervention

Movants seek intervention to dissolve the anti-suit injunction and to protect the Receivership Estate against a conflicted receiver unable to equitably discharge his fiduciary duties to them. No other party will adequately represent Movants' interests, especially not the SEC or Carney, who actively oppose them. *See* Fed. R. Civ. P. 24(a)(2).

The SEC and certain of the settling claimants ("BB&E") say the Court can determine Movants' position from the briefs filed in this case. (SEC Opp. 6); (BB&E Opp. 8) (Doc. No. 596.) This argument is a *non sequitur*; if true, then every motion to intervene would be denied because the motion itself would inform the Court of the intervener's perspective. That is not the law. Federal Rule of Civil Procedure 24 affords Fractal and Rowberrow full rights to become parties to the judgment and to any appeal thereof.

The SEC also errs in contending that intervention provides no benefit where the putative interveners can simply object to the settlement. Rule 24 allows a non-party to become a party with the right to appeal an interlocutory order refusing to dissolve an injunction, 28 U.S.C. § 1292(a)(1), or directing a receiver's disposal of property, *id.* § 1292(a)(2), or to defend on appeal an order dissolving an injunction, while a non-party has no such rights.

### E. The Movants Should Be Granted Permissive Intervention

The same reasons supporting Movants entitlement to intervene as of right support permissive intervention. Movants have a protectable interest in the Receivership Estate because they are creditors of the Receivership Entities. As creditors, Movants have "an economic interest in the outcome of the suit," and their intervention interests share common questions of law and

fact with the issues in this action because (1) they oppose the Stipulation of Settlement, (2) they object to Carney's conflict of interest, (3) they object to Carney's Third Motion for Fees, and (4) the anti-suit injunction from which Movants seek relief was entered here. (*See* Fractal Br. 11.) The SEC's assertion to the contrary (SEC Opp. 8) ignores that Fractal and Rowberrow are victims of the fraud the SEC has found. It is unclear what the SEC's purpose is here, if not to seek justice for Fractal, Rowberrow, and others similarly situated.

The SEC also opposes intervention on the grounds that if Movants were allowed to intervene, "there would be no logical reason to prohibit any of the other Interested Parties or claimants from intervening as well." (SEC Opp. 9.) The SEC's attempt to lump Movants' motions to intervene with the specter of multiple hypothetical motions to intervene by other creditors fails because it does not take into account that Movants seek to protect specific interests, explicitly detailed in their Motions. Movants are not, as the SEC suggests, intervening to protect an interest solely affecting their claim, but to preserve assets on behalf of all claimants enjoined, despite being outside the reach of the Court's personal jurisdiction, and to challenge a conflicted Receiver. As parties, Movants will be representing those interests.

## II. THE COURT SHOULD REJECT THE STIPULATION OF SETTLEMENT

Movants anticipated Carney's argument that the Stipulation of Settlement would bring assets into the Estate for distribution to all claimants. (Fractal Br. 7.) But Carney wants to pay out up to $25 million to bring in those assets, and to waive any claims of the Estate against a select group of persons, while benefiting personally as a partner in the law firm that would do the legal work for the resulting expanded Receivership. Fractal and Rowberrow reject Carney's judgment call, if there is one, because he stands to benefit personally from his own decision and thus cannot discharge his fiduciary duty to make decisions exclusively loyal to claimants.

Although BB&E defends the proposed preferential payments as necessary consideration, that assertion is likewise self-serving because BB&E expects to be paid. (*See* BB&E Opp. at 2-3.) BB&E seeks a free pass on any liability, and to put money in its pockets at other claimants' expense; in exchange, they have agreed to step aside to permit Carney to generate additional fees for his law firm.

The SEC's contention that Movants' objection to the Stipulation of Settlement should be rejected because the settlement "brings approximately $200 million into the Receivership Estate -- money that is more than sufficient to pay the Beracha Affiliates' claims" (SEC Opp. 6) misses the point. First, while expansion of the Estate would bring in an additional $225 million in assets, it would automatically decrease the Estate by $25 million, leaving aside whether BB&E may have any liability to the Estate released by the settlement,  Second, to the extent Carney argues that the Second Circuit may not permit expansion of the Estate unless Carney is able to release BB&E for $25 million, his judgment is conflicted as a result of the fees his law firm stands to earn from an expanded receivership. Third, the SEC acknowledges it is "unlikely" that claimants will be "repaid in full" (SEC Opp. 7), such that any diminution in the amount recovered by the Receivership Estate, including the settlement payments provided in the Stipulation of Settlement, would result in a lower recovery for all claimants. Moreover, the SEC misconstrues the nature of Movants' objection, arguing that the time to consider how much the Movants should be paid from the Receivership Estate is after the Beracha action is resolved. (SEC Opp. 7.) Movants' objection to the settlement does not seek an individual determination of the amount Movants might recover from the Estate, but rather the preservation of Receivership Estate assets for all.

### III.     THE COURT SHOULD REVOKE THE RECEIVER'S APPOINTMENT

Movants have shown, in detail, how and why Carney and his law firm, Baker & Hostetler LLP ("Baker & Hostetler"), have a conflict of interest, which has resulted in the breach of Carney's fiduciary duties. (Fractal Br. at 13-17.) Though Carney claims there may be a "hypothetical and speculative" conflict but no "actual conflict" (Carney Opp. 10), he fails to address the actual conflict laid bare in Movants' papers. (*See* Fractal Br. at 15-17.) Indeed, Carney offers no explanation as to how one might distinguish a "hypothetical and speculative" conflict from an "actual conflict" in this case. There is nothing speculative about the fact that the decisions he is making, including paying $25 million of claimants' money which necessarily results in the expansion of work for his firm, seeking approval of a Third Motion for Fees which will shift millions of dollars in assets from claimants to his firm, and seeking to modify the Protective Order so his law firm can assist the Government, would put money in his pocket as a Baker & Hostetler partner while taking money out of claimants' pockets. He does not even argue that his partner income is independent of his law firm's billings as counsel to the Receiver.

Carney acknowledges that none of the cases he cites in which an appointed receiver's or bankruptcy trustee's own law firm was engaged as counsel (Carney Opp. 10) has addressed whether a conflict of interest existed, much less held that there was no conflict. (*Id*.) On the contrary, because of the conflict of interest inherent in a receiver's use of his own firm, it has been necessary to appoint an independent monitor to make decisions where a receiver is conflicted. *See United States v. Bradley*, No. 405-CR-059, 2009 U.S. Dist. LEXIS 36495 (S.D. Ga. April 21, 2009). Carney attempts to distinguish *Bradley* by stating that, in that case, the receiver and her counsel would have been compensated had they acted appropriately. Such compensation would have been paid, however, only after being reviewed and approved by an independent monitor. Here, a monitor will not suffice; the amounts of money at stake are tens of

7

millions of dollars more than in *Bradley*, and the monitor would have to review not just Carney's firm's bills, but Carney's decisions that led to those bills, and the bills of others firms and vendors engaged on Carney or Baker & Hostetler's recommendation.

In lieu of explaining why he is not conflicted, Carney relies on the inflammatory assertion that the Movants are challenging "the judgment of the SEC, which recommended the Receiver and his firm, and that of this Court, which appointed the Receiver and his firm." (Carney Opp. 11.) In so doing, Carney attempts to make the SEC and the Court responsible for his conflict. In fact, because the SEC failed to satisfy its duty to protect the public interest and victims of the fraud by pointing out the conflict to the Court, the Court has not previously been given the opportunity to render "judgment" on whether Carney is conflicted. Nor is Baker & Hostetler's engagement insulated from challenge simply because it was appointed by a Court uninformed of a conflict. More than money is at stake. In the circumstances of this case, there must be a client in order for counsel to fulfill its professional duties; here, client and counsel are partners. (*See* Fractal Br. at 16-17.)

## IV. THE COURT SHOULD NOT APPROVE CARNEY'S FEE APPLICATION

Carney argues that Movants lack standing to object to Carney's Third Motion for Fees because they are not parties to this action. (Carney Opp. 15.) Movants agree, and seek leave to intervene for precisely that reason. Here, intervention is both a right and a necessity.

## V. THE COURT SHOULD DISSOLVE THE ANTISUIT INJUNCTION AGAINST PARTIES NOT SUBJECT TO THE COURT'S JURISDICTION

Enjoining Fractal and Rowberrow from suing elsewhere does not comport with the Second Circuit's requirements for international anti-suit injunctions, including the *sine qua non* need for personal jurisdiction, and therefore should be dissolved. (*See* Fractal Br. at 19-24.)

Carney's arguments against dissolution of the anti-suit injunction are unavailing. First, Carney dismisses outright the well-established case law requiring personal jurisdiction to enjoin proceedings in foreign courts on the basis that those cases did not involve Receiverships. (Carney Opp. 20.) But as Movants explained, the Second Circuit has held that the personal jurisdiction requirement is "inflexible and without exception." (Fractal Br. 22) (*citing In re Rationis Enter., Inc. of Panama*, 261 F.3d 264, 267-69 (2d Cir. 2001) (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1988))). Carney cites no cases to the contrary. Instead, Carney cites a number of inapposite decisions in which courts held that "the power to enjoin or stay litigation is effective even against nonparties." (Carney Opp. 17.) The issue here is not whether nonparties may be enjoined, but whether nonparties *as to which the Court lacks personal jurisdiction* may be enjoined. Carney's argument that Movants have failed to satisfy the three-pronged test in *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984), similarly misses the point. (Carney Opp. 18.) The *Wencke* test might apply if there were personal jurisdiction.

Carney repeatedly asserts that this Court need not make any finding on personal jurisdiction to sustain the anti-suit injunction, but the Second Circuit requires otherwise. The Court of Appeals established a stringent standard for personal jurisdiction for international anti-suit injunctions which requires the district court to hold an evidentiary hearing on personal jurisdiction before approving an international anti-suit injunction. (*See* Fractal Br. 21-23) (*citing Rationis*, 261 F.3d at 269). The fact that none of the parties advised the Court of the requirement evidences that neither the SEC nor Carney has adequately represented the creditors.

Finally, Carney fails to rebut Movants' showing that the Court lacks personal jurisdiction over them. (*See* Fractal Br. 19-21) (*citing* Fractal Fund's Motion to Dismiss and for Relief from Anti-suit Injunction, *Carney v. Beracha et al.*, No. 3: 12-cv-00180-SRU (D. Conn.) (Doc. No.

63).  *The only argument advanced by Carney is that Movants' submitted to the Court's jurisdiction by filing papers in this action.*  Carney cites a number of cases holding that a party may voluntarily consent to the jurisdiction of a court by filing claims with that court.  Carney ignores, however, that the Movants were enjoined from making their claims elsewhere and thus can not be said to have voluntarily submitted to jurisdiction here.  (*See* Fractal Br. 21.)  It is an absurdity to argue that, having been prohibited from making their claims elsewhere, compliance with the injunction is a waiver, and none of the cases Carney cites supports this contradiction proffered by Carney.  Until released from the anti-suit injunction, Fractal and Rowberrow have no choice but to take the steps, sanctioned by the Court, to protect their interests.

## VI.   CONCLUSION

For the foregoing reasons, the Motions (Doc. Nos. 556, 571) should be granted.

Dated:  October 5, 2012                                                         Respectfully submitted,

/s/ Michael P. Socarras

| | |
|---|---|
| SHIPMAN & GOODWIN, LLP | CHADBOURNE & PARKE, LLP |
| One Constitution Plaza | 1200 New Hampshire Avenue NW |
| Hartford, CT 06103 | Washington, DC 20036 |
| Tel:  860.251.5000 | Tel:   202.974.5600 |
| Fax:  860.251.5099 | Fax:  202.974.5602 |
| Ross H. Garber (ct17689) | Michael P. Socarras (phv05388) |
| Sara J. Goldfarb (ct28370) | LeeAnn O'Neill (phv05389) |
| rgarber@goodwin.com | msocarras@chadbourne.com |
| sgoldfarb@goodwin.com | loneill@chadbourne.com |

30 Rockefeller Plaza
New York, NY 10112
Tel:   212.408.5100
Fax:  212.541.5369
Marcelo M. Blackburn (phv05568)
mblackburn@chadbourne.com

*Attorneys for Fractal Fund Management, Ltd., Fractal P Holding, Ltd.
and Rowberrow Trading Corp.,*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2012, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/Doc. System.

                                                /s/ Michael P. Socarras
                                                Michael P. Socarras (phv05388)