# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

———————————————————————

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | :    No. 3:11-CV-00078 (JBA) |
| v. | : |
| | : |
| FRANCISCO ILLARRAMENDI, | : |
| HIGHVIEW POINT PARTNERS, LLC and | : |
| MICHAEL KENWOOD CAPITAL | : |
| MANAGEMENT, LLC, | : |
| | : |
| Defendants. | : |
| | : |
| and | : |
| | : |
| HIGHVIEW POINT MASTER FUND, | : |
| LTD., HIGHVIEW POINT OFFSHORE, | : |
| LTD, HIGHVIEW POINT LP, MICHAEL | : |
| KENWOOD ASSET MANAGEMENT, | : |
| LLC, MK ENERGY AND | : |
| INFRASTRUCTURE, LLC, and MKEI | : |
| SOLAR, LP., | : |
| | : |
| Relief Defendants. | : |

———————————————————————:    OCTOBER 15, 2012

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF OBJECTION OF NON-PARTY CHRISTOPHER LUTH TO THE AMENDED JOINT MOTION FOR AN ORDER APPROVING STIPULATION OF SETTLEMENT [Doc. # 543]

Non-party Christopher Luth ("Mr. Luth"), through his undersigned counsel, respectfully submits this reply memorandum of law in further support of his Objection, dated August 16, 2012 [Docket No. 550], to the Amended Joint Motion for an Order Approving Stipulation of Settlement dated August 14, 2012 [Doc. # 543] (the "Settlement").

## PRELIMINARY STATEMENT

Mr. Luth is a former member and employee of Highview Point Partners, LLC ("HVP Partners"). HVP Partners was the investment manager for the Highview Point Offshore Fund, Ltd. and the Highview Point Master Fund, Ltd. (collectively, "the HVP Funds"). Pursuant to the terms of Investment Management Agreements between HVP Partners and the HVP Funds, HVP Partners and its members and employees, including Mr. Luth, are entitled to indemnification and advancement of attorneys' fees by the HVP Funds with respect to legal matters arising from the performance of their responsibilities to the HVP Funds. When investors invested in the HVP Funds, they were placed on notice of the HVP Funds' indemnification and advancement obligations and agreed that any redemptions or returns of investor funds would be subject to a reserve for liabilities and other contingencies.

Mr. Luth has been named as a defendant in an action brought by the Receiver, *Carney v. Lopez*, 3:12-cv-00182-SRU, in which the Receiver asserts claims that relate to Mr. Luth's performance of services for the HVP Funds. Under the terms of the Investment Management Agreements, Mr. Luth is plainly entitled to indemnification and ongoing advancement of attorneys' fees from the HVP Funds in connection with the Receiver's claims in *Carney v. Lopez*, as well as related legal matters.

The proposed Settlement, however, fails to contain any provisions to protect Mr. Luth's contractual rights to indemnification and advancement and, instead, severely jeopardizes them. Although the proposed Settlement allows for the immediate release of $25 million to investors and establishes a litigation reserve for the benefit of the directors of the HVP Funds, it fails to provide a reserve to cover (i) potential liabilities for which Mr. Luth will be entitled to indemnification, and (ii) legal fees and other expenses that the HVP Funds are required to

advance to Mr. Luth and the other former members and employees of HVP Partners.  To make matters worse, the proposed Settlement places the funds available for indemnification and advancement in the hands of Mr. Luth's adversary, the Receiver.  If not modified, the proposed Settlement will effectively nullify Mr. Luth's rights to indemnification and advancement.

The Receiver's defense of the Settlement is premised on the notion that Mr. Luth is similarly situated to the HVP Funds' investors, and therefore that Mr. Luth should simply submit a proof of claim for his attorneys' fees and expenses in defending against a lawsuit commenced by the Receiver.  Aside from the Receiver's clear conflict of interest in advancing this argument, the notion that Mr. Luth is similarly situated to a fund investor is incorrect.  Unlike an investor— who was well aware that his/her redemptions would be subject to a reserve for the HVP Funds' liabilities (including its advancement and indemnification obligations)—Mr. Luth and HVP Partners entered into a contract with the HVP Funds having bargained for, and relied on, the HVP Funds' commitment to provide indemnification and advancement.

 Accordingly, Mr. Luth respectfully requests that the Settlement not be approved unless and until there are provisions establishing (1) a reserve in an amount sufficient to cover the HVP funds' indemnification and advancement obligations to Mr. Luth, and (2) a procedure to insure that a neutral third-party, such as a Magistrate Judge, reviews Mr. Luth's legal fees and expenses for reasonableness, rather than the Receiver, who plainly has a conflict of interest.

## <u>BACKGROUND FACTS</u>

Mr. Luth was a portfolio manager at HVP Partners during the period that Francisco Illarramendi allegedly engaged in a fraudulent scheme to conceal losses sustained by the HVP Funds.  The Receiver has acknowledged in *Carney v. Lopez* that Mr. Luth was not a co-conspirator or knowing participant in Illarramendi's scheme. *See Carney v. Lopez,* Receiver's

Mem. in Opp. to Motion to Dismiss [Docket No. 76] at 27 ("[T]he Receiver has not suggested that the Defendants were co-conspirators of Illarramendi in operating his fraudulent scheme").

HVP Partners and each of the HVP Funds entered into an Amended and Restated Investment Management Agreement, dated December 22, 2008 (the "Investment Management Agreement"). *See* Objection, Tab A and B [Docket No. 550]. In all material respects, the Investment Management Agreements for each of the HVP Funds are identical.

Section 7 of each Investment Management Agreement contains a provision governing the liability of HVP Partners, stating in pertinent part:

> Section 7. Liability of the Investment Manager
>
> > [I]t is agreed as an inducement to the Investment Manager's undertaking these services that the Fund shall, to the fullest extent legally permissible under the laws of the State of Delaware, indemnify and hold harmless the Affiliated Parties against any loss, liability or expense (including without limitation, judgments, fines, amounts paid or to be paid in settlement and reasonable attorney's fees and expenses) incurred or suffered by an Affiliated Party in connection with the good faith performance by the Affiliated Party of its responsibilities to the Fund; provided, however, that nothing herein shall be deemed to protect an Affiliated Party against any liability to which it otherwise would be subject by reason of his, her or its gross negligence, willful misconduct or violations of applicable law. *The Fund shall, upon request of an Affiliated Party, advance amounts in connection with its indemnification obligation[.]*

Objection, Tab A and B, Investment Management Agreement at § 7 (emphasis added).

The term "Affiliated Parties" is defined in each Investment Management Agreement as "the Investment Manager (or its directors, members, partners, shareholders, officers, employees, agent and affiliates)[.]" Objection, Tab A and B, Investment Management Agreement at § 6. By virtue of being both a member and employee of HVP Partners, Mr. Luth is an Affiliated Party

entitled to indemnification and advancement of reasonable attorneys' fees and expenses under the Investment Management Agreement.

When investors invested in the HVP Funds, the offering materials and other documents placed them on notice of the indemnification and advancement provision of the Investment Management Agreements.  *See, e.g.*, Declaration of Matthew Greenblatt in support of Receiver's Motion to Expand Receivership, Ex. G [Docket No. 446-8], Explanatory Memorandum of Highview Point Offshore, Ltd. (the "Offshore Explanatory Memo") "Other Provisions of the Management Agreements" at 10 (pdf page 16).  Moreover, investors agreed that any redemptions or returns of their investments would be subject to "a reserve for Fund liabilities and for other contingencies in such amount as will be determined by the Fund in its discretion."  *See id.*, Offshore Explanatory Memo, "Redemptions" at 22 (pdf page 28).

In February 2012, the Receiver commenced an action against Mr. Luth and other former members and employees of HVP Partners, styled *Carney v. Lopez*, 3:12-cv-00182-SRU, District of Connecticut (the "Action").  In the Action, the Receiver asserts, *inter alia*,  causes of action for (i) fraudulent transfer under the Connecticut Uniform Fraudulent Transfer Act and the common law, (ii) breach of fiduciary duty, (iii) conversion and (iv) unjust enrichment.  *See Carney v. Lopez*, 3:12-cv-00182, Amended Complaint [Docket No. 62].  Notably, the Receiver does not contend that Mr. Luth was a co-conspirator or knowing participant in Illarramendi's alleged scheme.  *See Carney v. Lopez*, 3:12-cv-00182, Receiver's Mem. in Opp. to Motion to Dismiss [Docket No. 76] at 27.  Nonetheless, the Receiver seeks the return of every dollar of compensation—salary, partnership distributions, and bonus payments—that HVP Partners paid to Mr. Luth for services rendered during his six years of employment.  Mr. Luth has filed a

motion to dismiss the Action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). The motion is scheduled for argument before Judge Underhill on October 31, 2012.

To date, Mr. Luth's legal fees have been covered by retainers paid by HVP Partners in April and May of 2011, based on legal reserves approved by the directors of the HVP Funds prior to the filing of the SEC's action against HVP Partners and the Receiver's Action against Mr. Luth.  By letter dated August 12, 2011, counsel for the HVP Funds have acknowledged the Fund's indemnification and advancement obligations to Mr. Luth, stating the HVP Funds "intend to advance indemnification payments, as appropriate, pursuant to the terms of the Investment Management Agreements."  It is anticipated that the retainers will be exhausted in the near future, well before the Action brought against Mr. Luth by the Receiver is concluded.[1]

Even though the HVP Funds had previously acknowledged Mr. Luth's rights to indemnification and advancement, and even though the proposed Settlement includes provisions for the benefit of investors and the directors of the HVP Funds, the proposed Settlement does nothing to protect Mr. Luth's rights.  For example, the proposed Settlement allows for the immediate release of $25 million to investors, *see* Settlement at § 2(c)(i) [Docket No. 543-1], but does not create any reserve (as contemplated by the HVP Funds' governing documents) to cover the fund's advancement and indemnification obligations to Mr. Luth.  In addition, the proposed Settlement creates a litigation reserve for the benefit and protection of the directors of the HVP Funds, even though (to Mr. Luth's knowledge) no litigation has been filed against the directors. Although the Receiver is actively pursuing litigation against Mr. Luth and other former employees of HVP Partners, the proposed Settlement does not include any reserve for their benefit and protection.

---

[1]  In addition to the Action brought by the Receiver, Mr. Luth may also require advancement in connection with related governmental inquiries and information requests.

<u>**ARGUMENT**</u>

I.     **THE COURT SHOULD NOT APPROVE THE PROPOSED SETTLEMENT UNTIL THERE ARE PROVISIONS TO INSURE THAT MR. LUTH'S CONTRACTUAL RIGHTS TO INDEMNIFICATION AND ADVANCEMENT <u>OF LEGAL FEES ARE HONORED</u>**

The Court should decline to approve the Settlement until it contains adequate protections, including a reserve, for Mr. Luth's rights to indemnification and advancement by the HVP Funds.

  A.     **S**TANDING

The Receiver suggests that Mr. Luth lacks standing to object to the Settlement because he will not suffer any prejudice as a result of the Settlement.  In other words, the Receiver claims that the termination of Mr. Luth's ability to enforce his contractual right to advancement of attorneys' fees—in a lawsuit commenced by the Receiver himself—will not compromise Mr. Luth's rights.  The Receiver's self-serving claim is contrary to the governing law.

Standing was conferred by the Court's August 23, 2012 Order providing objections to the Settlement were to be filed by October 11, 2012.  In any event, courts have recognized that a non-settling party, like Mr. Luth, has standing to object to a settlement when the proposed settlement prejudices and impairs the party's rights to indemnification and advancement.  *See Armco Inc. v. North Atlantic Ins. Co.*, 1999 WL 173579, at *1 (S.D.N.Y. Mar 29, 1999) (non-settling party suffers legal prejudice when the proposed settlement "strips a non-settling party of a claim for contribution or indemnification, or invalidates a non-settling party's contract rights"); *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (finding non-settling party had standing (citing cases)).  Here, the prejudice to Mr. Luth could not be clearer.

Under the Investment Management Agreements, the HVP Funds are contractually obligated to indemnify Mr. Luth and to advance his attorneys' fees and expenses.  The HVP

Funds have acknowledged those obligations.  Notwithstanding those contractual obligations, the

HVP Funds are violating them, and materially harming Mr. Luth, by entering into a settlement

that does not create a reserve and other protections for Mr. Luth's rights to indemnification and

advancement.  As noted above, the proposed Settlement allows for the release of $25 million to

investors without creating an adequate reserve, as required by the HVP Funds' subscription

documents, to cover the known liability that the HVP Funds have to Mr. Luth.  Although the

proposed Settlement creates a reserve to cover legal expenses for potential future litigation

against the directors, the Settlement ignores the current litigation against Mr. Luth, ignores his

contractual rights to indemnification and advancement, and excludes him from the benefits of a

reserve.  Under the proposed Settlement, the HVP Funds are surrendering the means by which

indemnification and advancement to Mr. Luth can be performed and abandoning him to the

uncertainties of a claims process controlled by Mr. Luth's adversary in litigation.  The Settlement

effectively extinguishes Mr. Luth's present right to advancement.  This legal prejudice confers

standing on Mr. Luth to challenge the Settlement.[2]

**B.     MR. LUTH IS PRESENTLY ENTITLED TO ADVANCEMENT OF LEGAL FEES
        AND AT RISK OF POTENTIAL LIABILITIES FOR WHICH HE IS ENTITLED TO
        INDEMNIFICATION**

The Receiver does not seriously challenge that, under the express terms of the Investment

Management Agreements, Mr. Luth is entitled to indemnification and advancement of attorneys'

fees and expenses by the HVP Funds.  Nor could the Receiver seriously contest Mr. Luth's right

to indemnification and advance because, under Delaware law, the HVP Funds' indemnification

and advancement obligations to Mr. Luth are mandatory.  *See Morgan v. Grace*, 2003 WL

---

[2]   In any event, even if the Court approves the proposed Settlement, the Court has supervisory
authority over the Receiver and the power to grant the relief sought herein, particularly given the
Receiver's conflict of interest in deciding Mr. Luth's claims for indemnification and
advancement.

22461916, at *2 (Del. Ch. Oct. 29, 2003) (ruling that the "court must honor the intent of the parties in interpreting their contract" and finding that indemnification and advancement were mandatory under contractual provisions "[s]ince the [Delaware Limited Liability Company Act] is broadly enabling and the provisions of the operating agreement are clear and ambiguous"); *Reddy v. Electronic Data Systems Corp.*, 2002 WL 1358761, at *6 (Del. Ch. 2002) ("this court has often been required to uphold the indemnification and advancement rights of corporate officials accused of serious misconduct, because to do otherwise would undermine the salutory public policies" of Delaware law).

Although the Receiver attempts to poison the well by recounting his allegations against Mr. Luth, those allegations and claims (since they are merely allegations and not a final judicial determination) are irrelevant as a matter of law to the issue at hand – Mr. Luth's present right to advancement. *Senior Tour Players 207 Management Co. LLC v. Golftown 207 Holding Co., LLC*, 853 A.2d 124, 128 (Del. Ch. 2004). "The right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified." *Id.; see also Reddy*, 2002 WL 1358761, at *9 (noting that "the clear authorization of advancement rights presupposes that the corporation will front the expenses before any determination is made of the corporate official's ultimate right to indemnification"). In *Senior Tour Players*, the Delaware Chancery Court enforced an advancement provision substantially similar to the one in the Investment Management Agreements, which provided that: "[the Company] shall advance such Indemnified Person's related expenses, as such expenses are incurred, to the full extent permitted by law." *Senior Tour Players*, 853 A.2d at 128.

Here, the Investment Management Agreement provides for indemnification "to the fullest extent legally permissible under the laws of the State of Delaware." *See* Objection, Investment

Management Agreement, Tab A and B at § 7.  The advancement provision of the Investment

Management Agreements provides that "[t]he Fund shall, upon request of an Affiliated Party,

advance amounts in connection with its indemnification obligation."  *Id.*  It is clear that Mr. Luth

qualifies as an "Affiliated Party" under the Investment Management Agreement by virtue of his

membership interest in and employment at HVP Partners.  It is likewise clear that the claims

against Mr. Luth in *Carney v. Lopez* relate to Mr. Luth's performance of responsibilities on

behalf of the HVP Funds.  *See generally Carney v. Lopez*, 3:12-cv-00182, Amended Complaint

[Docket No. 62].  Other than requesting advancement (which Mr. Luth has done), the

advancement provision contains no pre-conditions.  Because the Receiver seeks damages from

Mr. Luth by reason of his being an "Affiliated Party," Mr. Luth is, therefore, entitled to

advancement under the Investment Management Agreement. *See Reddy*, 2002 WL 1358761, at

*6 (granting advancement of reasonable attorneys' fees and expenses for defense of claims of

negligence, gross negligence, common law fraud and breach of contract); *see also Stockman v.

Heartland Indus. Partners, L.P.*, 2009 WL 2096213, at *12 (Del. Ch. July 14, 2009) ("The 'to

the fullest extent permitted by law' language . . . is an expression of the intent for the promise of

indemnity to reach as far as public policy will allow").

He is also potentially entitled to indemnification by the HVP Funds for liabilities and

losses incurred as a result of the Action brought by the Receiver.  Many of the Receiver's claims

against Mr. Luth do not require a finding of gross negligence or willful misconduct. Thus, even

if the Receiver prevails on certain claims against Mr. Luth, it is entirely possible that Mr. Luth

will be entitled to indemnification for those claims.

**C.    THE SETTLEMENT SHOULD INCLUDE A RESERVE TO COVER ADVANCEMENT OF MR. LUTH'S ATTORNEYS' FEES AND INDEMNIFICATION FOR POTENTIAL LIABILITIES**

The proposed Settlement's failure to address and protect Mr. Luth's rights to indemnification and advancement under the Investment Management Agreements is fundamentally unfair.  As the Investment Management Agreements expressly state, HVP Partners and the Affiliated Persons, including Mr. Luth, relied on the promises of indemnification and advancement as an inducement to enter into the Agreements and provide services to the HVP Funds.  Now, after Mr. Luth devoted approximately six years of his professional career to the HVP Funds, the Settlement threatens to render those promises meaningless and empty.  *See Delphi Easter Partners Ltd. Partnership v. Spectacular Partners, Inc.*, 1993 WL 328079, at *2 (Del. Ch. Aug. 6, 1993) (stating that "courts should interpret language [conferring indemnification rights] so as to achieve where possible the beneficial purposes that indemnification can afford [which include] the allocation of certain risks at the outset of a contractual relation in order to make the contractual structure feasible or more attractive to participants.").

Ironically, the Settlement provides for a litigation reserve for the benefit of the HVP Funds' directors in the event there is litigation relating to the Settlement.  Mr. Luth faces no such contingency; he is currently defending against claims made by the Receiver.  Thus, his need for ongoing advancement of legal fees is immediate and real.  Moreover, as discussed above, the possibility that he will be entitled to indemnification is not speculative or far-fetched.  The Receiver has conceded that Mr. Luth was not a co-conspirator or knowing participant in Illarramendi's alleged scheme.  Even if Mr. Luth is ultimately found liable on certain causes of action, it is entirely possible that those claims will not involve a finding of gross negligence or

willful misconduct or violations of law, and he will be entitled to indemnification by the HVP Funds.

It bears noting that, when the HVP Funds were litigating and defending this action, the Court protected their ability to defend themselves by providing a carveout to the freeze order that allowed them to draw on the HVP Funds for the payment of attorneys' fees and operating expenses. *See* Order dated June 28, 2011 [Docket No. 284] (The HVP Funds "shall not make any expenditure from either entity <u>except for</u> attorney, accounting, auditing and other professional services fees and expenses, and normal and customary operating expenses paid to unaffiliated third parties incurred in the ordinary course of business." (emphasis in original)). For the same reasons, the Court should condition approval of the proposed Settlement on the establishment of an adequate reserve to insure that funds are available for advancement to Mr. Luth and to cover any potential indemnification obligations.

The Receiver does not dispute that Mr. Luth may be entitled to advancement of legal fees, but contends that his request should be relegated to the general claims process in the Receivership Estate. The Receiver is wrong. First, the Receiver has a clear conflict of interest, which disqualifies him from deciding these issues. Second, as noted above, Delaware law is clear that the HVP Funds' obligations to indemnify and advance are mandatory. Under Delaware law, the right to advancement is immediate: "[t]he value of the right to advancement is that it is granted or denied while the underlying action is pending." *Morgan*, 2003 WL 22461916, at *1.[3] If a determination of Mr. Luth's right to advancement is left to some

---

[3]   Pursuant to this Court's Order appointing him (Docket No. 423 at 3-4), the Receiver is subject to, among other things, 28 U.S.C. § 959, which directs: "[A] . . . receiver . . . appointed in any . . . court of the United States . . . shall manage and operate the property in his possession as such . . . receiver . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do . . ."

unknown, future date, the right is, for all practical purposes, nullified.  Finally, as noted above, Mr. Luth has standing to object to the proposed Settlement because it materially prejudices his indemnification and advancement rights.  The proposed Settlement is fundamentally unfair in that it (i) creates a reserve for the directors, but not one for Mr. Luth, and (ii) allows for the immediate return of $25 million to investors without creating, as contemplated by the HVP Funds' governing documents, a reserve for the HVP Funds' known advancement and indemnification obligations to Mr. Luth.  Accordingly, for all these reasons, the Court is the proper party to resolve Mr. Luth's request, and adequate safeguards should be put in place now to preserve his rights to advancement and indemnification.

## CONCLUSION

For all the foregoing reasons, Mr. Luth objects to the proposed Amended Joint Motion for an Order Approving Stipulation of Settlement [Doc. # 543] and respectfully requests that the Court decline to approve the proposed Settlement until it includes adequate terms providing for (i) ongoing advancement of Mr. Luth's reasonable attorneys' fees and costs by the HVP Funds (or the Receiver, if the HVP Funds become part of the Receivership Estate), and (ii) the creation of a reserve in an amount sufficient to cover the advancement and indemnification obligations owed to Mr. Luth.  Lastly, Mr. Luth requests that the Court appoint a neutral third-party to be responsible for reviewing Mr. Luth's legal fees and costs for reasonableness.

INTERESTED PARTY
CHRISTOPHER LUTH


By:    /s/ Alfred U. Pavlis
    Alfred U. Pavlis (ct08603)
    Richard S. Gora (ct27479)
    FINN DIXON & HERLING LLP
    177 Broad Street, 15th Floor
    Stamford, CT 06901-2689
    Tel: (203) 325-5000
    Fax: (203) 325-5001
    apavlis@fdh.com
    rgora@fdh.com

## CERTIFICATION

I hereby certify that on October 15, 2012, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

By: /s/ Alfred U. Pavlis
      Alfred U. Pavlis (ct08603)
      FINN DIXON & HERLING LLP
      177 Broad Street, 15th Floor
      Stamford, CT  06901-2689
      Tel: (203) 325-5000
      Fax: (203) 325-5001
      E-mail: apavlis@fdh.com