UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | CIVIL ACTION NO.: 3:11 CV 00078 (JBA) |
| Plaintiff, | : : | |
| v. | : : | |
| FRANCISCO ILLARRAMENDI et al., | : : | |
| Defendants, | : : | |
| and | : : | |
| HIGHVIEW POINT MASTER FUND, LTD. et al., | : : | |
| Relief Defendants. | : | OCTOBER 31, 2012 |

**REPLY TO RECEIVER'S OPPOSITION TO MOTION FOR MODIFICATION
OF MODIFIED TEMPORARY ORDER FREEZING ASSETS**

                                                 McCARTER & ENGLISH, LLP
                                                 Thomas J. Finn
                                                 Federal Bar No.: ct 20929
                                                 tfinn@mccarter.com
                                                 Paula Cruz Cedillo
                                                 Federal Bar No.: ct 23485
                                                 pcedillo@mccarter.com
                                                 CityPlace I, 36th Floor
                                                 185 Asylum Street
                                                 Hartford, Connecticut 06103
                                                 Tel.: 860.275.6700
                                                 Fax: 860.724.3397

**INTRODUCTION**

Pursuant to Rule 7(d) of the Local Civil Rules of the United States District Court for the District of Connecticut, the defendant, Francisco Illarramendi ("Mr. Illarramendi"), submits this Reply to the Memorandum of Law in Opposition to the Motion for Modification of Modified Temporary Order Freezing Assets, dated October 16, 2012, ECF No. 610 ("Opposition" or "Opp."), filed by John J. Carney, Esq. as Receiver for various entities (collectively the "Receivership Entities")[1] in the instant matter.[2]

The Receiver's Opposition fails to adequately address the fundamental arguments set forth in the Memorandum of Law in Support of Motion for Modification of Modified Temporary Order Freezing Assets, dated September 25, 2012, ECF No. 592 ("Memorandum" or "Memo."). Rather, the Receiver does nothing more than confirm the necessity for an order allowing Mr. Illarramendi access to funds to be able to retain and pay for legal counsel. Continuing to summarily point to Mr. Illarramendi's guilty plea in the related criminal action entitled, United States v. Illarramendi, 3:11-cr-00041 (SRU), as some sort of blanket admission to the allegations asserted against him and the characterizations made about him, the Receiver would have the Court ignore his evident failure to produce the work with which he was charged at the time of his appointment and aggressive pursuit of Mr. Illarramendi. As is more fully set forth in Mr.

---

[1] The Receivership Entities are: Highview Point Partners, LLC; MK Master Investments, LP; MK Investments, Ltd.; MK Oil Ventures, LLC; The MK Group; Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology, LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKG-Atlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL, LLC; MK Capital Merger Sub, LLC; MK Special Opportunities Fund; MK Venezuela, Ltd.; and Short Term Liquidity Fund, I, Ltd.

[2] The plaintiff, the Securities and Exchange Commission ("SEC"), also filed a Memorandum of Law in Opposition to the Motion to Modify Asset Freeze Order, dated October 11, 2012, ECF No. 602, in this matter. In the interest of efficiency and rather than reiterate the authority and argument submitted in support of his position, Mr. Illarramendi expressly incorporates his Reply to Plaintiff's Opposition to Defendant Francisco Illarramendi's Motion to Modify Asset Freeze Order, dated October 31, 2012, as if fully set forth herein.

1

Illarramendi's Memorandum, the Receiver's course of conduct, <u>inter</u> <u>alia</u>, has resulted in Mr. Illarramendi's need for assistance in navigating the complex legal process pending against him.

Accordingly, Mr. Illarramendi respectfully requests that the Court grant his Motion for Modification of Modified Temporary Order Freezing Assets, dated September 25, 2012, ECF No. 591, and modify its Modified Temporary Order Freezing Assets, dated February 2, 2011, ECF No. 59 ("Asset Freeze Order"), to allow for the payment of reasonable attorneys fees and living expenses.

## ARGUMENT

### I. The Assertion that the Funds Sought are Tainted is Based on the Erroneous Premise that Mr. Illarramendi Operated a Ponzi Scheme

The Receiver continues to summarily argue and adhere to the erroneous notion that Mr. Illarramendi did nothing but operate a Ponzi scheme as support for the contention that Mr. Illarramendi should not be allowed access to funds that he purportedly misappropriated from the Receivership Entities.  <u>See</u> Opp. at 6-8.  Yet, all the Receiver has done is impermissibly contort Mr. Illarramendi's guilty plea into an admission by Mr. Illarramendi that he ran a Ponzi scheme for his personal benefit.  The Receiver points to this alleged "admission" as justification for arguing that Mr. Illarramendi should not be allowed access to the purported resulting "ill-gotten gains."

To the contrary, however, as is more fully set for the in the Memorandum, Mr. Illarramendi's various complex investment and business transactions renders the Receiver's contention that Mr. Illarramendi operated a Ponzi scheme simply implausible.  <u>See</u> Memo. at 9. The Receiver attempts to minimize his untenable position by speciously asserting that "whether Illarramendi's massive fraud was a Ponzi scheme is plainly irrelevant . . ." yet, also simultaneously and summarily argues that all funds and assets in Mr. Illarramendi's possession

are forever tainted by fraud because they were diverted from the Ponzi scheme.  <u>See</u> Opp. at 7-8.  The Receiver's position is clearly based upon the erroneous premise that all funds that flowed from the purported Ponzi scheme must be tainted.

However, it has never been established that some or all of the assets subject to the Asset Freeze Order are not rightfully Mr. Illarramendi's assets.  While the Receiver argues that the burden of such a determination lies with Mr. Illarramendi, the fact remains that Mr. Illarramendi has provided his unfettered cooperation to the Receiver throughout this entire process, and the Receiver has nonetheless failed to provide the requisite accounting and liabilities of the Receivership Entities in accordance with his duties and responsibilities.  Indeed, while the Receiver argues that Mr. Illarramendi "cannot use his victim's money to fund his defense," the Receiver has still yet to verify or resolve the claims made by third party investors or to come forth with any loss calculation to determine the ultimate loss figure or number of purported investors who have allegedly been harmed.  <u>See</u> Opp. at 9; Memo. at 8-9.

Additionally, the Receiver also argues that Mr. Illarramendi has admitted under oath that his fraud resulted in a $300,000,000 loss and, therefore, he cannot establish that there are sufficient funds to satisfy a disgorgement remedy.  <u>See</u> Opp. at 8-9.  The Receiver's blind adherence to this $300,000,000 estimate -- made by Mr. Illarramendi back in May 2011 near the commencement of this process and without the benefit of any underlying documentation -- further highlights the Receiver's dereliction of his duties by failing to come forth with any valid accounting, produce any financial statements of the Receivership Entities, or validate the claims submitted by investors.  Indeed, the Receiver is well aware that, during the course of his

3

cooperation, it became apparent to Mr. Illarramendi that he was mistaken about the factors used to determine the loss calculation and thus overestimated the potential losses.[3]  See Memo. at 7.

Contrary to the Receiver's characterization of such failures as "irrelevant," Mr. Illarramendi's resulting inability to properly defend himself against the conclusory civil allegations asserted against him, coupled with the Receiver's oppressive campaign against him, warrants the Court's exercise of discretion to allow access to funds for legal representation.

## II. Fundamental Principles of Justice and Equity Warrant a Modification of the Asset Freeze Order

The purpose of an asset freeze is to ensure enforcement of a disgorgement order if one is ultimately ordered.  See SEC v. Prater, 289 F. Supp. 2d 39, 54 (D. Conn. 2003) (noting that an asset freeze is required to ensure funds will be available to compensate investors or provide disgorgement).  "This court's central concern is the fairness of the proceedings."  SEC v. Dowdell, 175 F. Supp. 2d 850, 856 (W.D. Va. 2001).  The Asset Freeze Order should not be allowed to cripple Mr. Illarramendi's ability to defend himself against the allegations asserted against him in the civil actions.

Mr. Illarramendi's entry of a guilty plea to securities fraud and related offenses does not render the notion that he ran a Ponzi scheme a "foregone conclusion" as the Receiver posits.  See Opp. at 11.  In support of his Opposition, the Receiver attempts in vain to argue that Mr. Illarramendi's violations of the securities laws cannot be characterized as anything other than a self-serving Ponzi scheme.  However, the Receiver's emphatic and categorical pursuit of such

---

[3] In the Opposition, the Receiver speciously asserts that Mr. Illarramendi "has failed to meet his obligations to cooperate with the Receiver for a myriad of reasons . . . ."  Opp. at 11.  Tellingly, however, the Receiver fails to provide any basis to support such a statement, as he cannot.  Indeed, the Receiver does not dispute the numerous meetings and telephone conversations that Mr. Illarramendi has participated in with the Receiver's legal and professional team and the countless hours spent discussing and educating individuals about the transactions at issue.  See Memo. at 5.  The fact that Mr. Illarramendi does not concede the mischaracterizations concerning his conduct does not, in turn, equate to a failure to cooperate.

conclusory allegations to advance the SEC's position in the instant enforcement action -- regardless of the true underlying circumstances of this matter -- is precisely illustrative of the importance of allowing Mr. Illarramendi funds for legal representation to ensure the validity and fairness of this process.  See Memo. at 8 n.4, 11 (discussing the Receiver's intolerance of Mr. Illarramendi's accounts of potentially exonerating circumstances and information).  This is particularly troubling given that the Receiver's appointment as an independent and neutral officer of the Court.

Equally troubling is the Receiver's position that it would be an improper use of funds to allow for the retention of legal counsel that would serve to, inter alia, ensure a proper loss calculation.  See Opp. at 11.  As discussed, the Receiver was charged with providing an accounting of the Receivership's assets and liabilities, yet has failed to do so.  As a practical matter, and as the Receiver is fully aware, the loss calculation will also guide the determination of Mr. Illarramendi's criminal sentence under the Sentencing Guidelines.  See Memo. at 8.  The Receiver cannot now take the position that the loss calculation is purely the province of the related criminal action, and would have the Court ignore that fact that, as the Receiver appointed in this action, he was charged with the responsibility of providing a loss calculation, knowing that the Government would rely on the Receiver's determination.  See id.  It would be inherently unjust to use the related criminal action as a means to block Mr. Illarramendi's ability to obtain legal representation in this action on such grounds.[4]  Rather, a true and accurate loss calculation from the Receiver is crucial, rendering the necessity for the involvement of counsel on Mr.

---

[4] The Receiver asserts that Mr. Illarramendi should not be allowed access to funds for legal fees given that he has court-appointed counsel "paid for by the government."  See Opp. at 11.  If the Court were to grant the instant Motion and allow Mr. Illarramendi access to funds for the payment of legal fees, he would have no objection to the payment of the fees incurred by his CJA counsel out of those funds, if the Court were to deem such action appropriate under the circumstances.

5

ME1 14345296v.1

Illarramendi of critical importance, particularly when viewed in light of the Receiver's failure to establish the losses thus far.

## CONCLUSION

Based on the foregoing, and in conjunction with the reasons set forth in the Memorandum of Law in Support of Motion for Modification of Modified Temporary Order Freezing Assets, dated September 25, 2012, ECF No. 592, the defendant, Francisco Illarramendi, respectfully requests that the Court grant his Motion for Modification of Modified Temporary Order Freezing Assets, dated September 25, 2012, ECF No. 591, in its entirety, and modify the order to provide him access to funds in the amount of approximately $800,000 for the payment of legal fees, or an amount determined by the Court, and for the payment of monthly living expenses in an amount to be determined by the Court.

Dated: October 31, 2012  
       Hartford, Connecticut

RESPECTFULLY SUBMITTED,

THE DEFENDANT,  
FRANCISCO ILLARRAMENDI

By:   /s/   Thomas J. Finn  
Thomas J. Finn  
Federal Bar No.: ct 20929  
tfinn@mccarter.com  
Paula Cruz Cedillo  
Federal Bar No.: ct 23485  
pcedillo@mccarter.com  
McCARTER & ENGLISH, LLP  
CityPlace I, 36th Floor  
185 Asylum Street  
Hartford, Connecticut 06103  
Tel.: 860.275.6700  
Fax: 860.724.3397

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 31st day of October 2012, a copy of the foregoing Reply to Receiver's Opposition to Motion for Modification of Modified Temporary Order Freezing Assets was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                    /s/ Thomas J. Finn
                                                       Thomas J. Finn

ME1 14345296v.1