## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Securities and Exchange Commission,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Francisco Illarramendi, Highview Point Partners, LLC and Michael Kenwood Capital Management, LLC,<br>    *Defendants*,<br>and<br><br>Highview Point Master Fund, Ltd., Highview Point Offshore, Ltd, Highview Point LP, Michael Kenwood Assets Management, LLC, MK Energy and Infrastructure, LLC and MKEI Solar, LP,<br>    *Relief Defendants*. | Civil No. 3:11cv78 (JBA)<br><br><br><br><br><br>November 16, 2012 |

### RULING ON MOTIONS TO INTERVENE

Fractal Fund Management, Ltd, Fractal P. Holding, Ltd, and Rowberrow Trading Corp. ("Fractal" and "Rowberrow," collectively, "Movants") move [Doc. ## 556, 571] to intervene to seek to enjoin the consummation of the stipulation of settlement between the Receiver and the Relief Defendants, and for an order revoking Receiver John Carney's appointment, or an order to show cause as to why his appointment should not be revoked. Movants also object [Doc. # 590] to the Receiver's Third Application for Fees, which Magistrate Judge Margolis approved [Doc. # 588]. The Receiver, Balanchine Corporation, Brentwood Services, Inc., and Edenwood Holding, S.A. (collectively, "BB&E"),[1] all oppose [Doc. ## 597, 596] Movants' motions. For the reasons that follow,

---

[1] BB&E are non–parties that had moved to intervene in 2011, and whose motions the Court denied. (*See* Ruling on Motion to Intervene [Doc. # 277].) BB&E are parties to the settlement stipulation.

the motions to intervene are denied, and Movants' objection [Doc. # 590] and motion for reconsideration [Doc. # 589] as to the Third Application for Fees are also denied.

## I.    Factual Background

Moris Beracha is the principal and co–owner of Rowberrow, serves on the Board of Directors of Fractal Fund, and is alleged to be a friend and business associate of Defendant Illarramendi. Mr. Beracha is a defendant in a lawsuit brought by the Receiver, who alleges that Mr. Beracha served as a source of liquidity for Illarramendi and helped him perpetuate his Ponzi scheme. The Receiver further alleges that Mr. Beracha and his affiliated entities, including the Movants, received exorbitant fees, excessive rates of interest, kickbacks, and other improper payments. (*See Carney v. Beracha et al.*, 12cv180(SRU).)

The Receiver was appointed by the Court on February 3, 2011 (*see* Order Appointing Receiver [Doc. # 66]), and he served investigative subpoenas on Fractal on March 15, 2011, and on Beracha and Rowberrow on April 6, 2011. Movants filed claims with the Receiver before the close of the claims filing process on December 30, 2011. In its claim form, Fractal admitted that it held assets of or traceable to Receivership Entities. (*See* Exs. 1–2 to Declaration of Jonathan New [Doc. # 598].) Rowberrow also submitted a proof of claim form on December 23, 2011, indicating a claim against Receivership Entities. (*See* Ex. 3 to New Decl.)

On July 27, 2012, the Receiver filed his Third Interim Application for Fees and Expenses [Doc. # 519]. No timely objections were filed and the SEC indicated its approval of the fee application. On September 19, with consent of the Receiver and the SEC, the Court referred the Third Fee Application to Magistrate Judge Margolis [Doc. # 587]. Magistrate Judge Margolis approved the Third Fee Application on September 21, 2012.

(*See* Order Approving Fees [Doc. # 588].) Movants' only objection [Doc. # 589] was in the form of a motion for reconsideration [Doc. # 588] of the Order.

## II.    Discussion

Fractal seeks intervention "as a result of two events": the Receiver's decision to "seek a judgment against Fractal Fund in *Carney v. Beracha et al.*, . . . while Fractal Fund is enjoined from pursuing a judgment in a foreign court," and the Receiver's August 14, 2012 filing of the Stipulation of Settlement. (Fractal Mem. Supp. [Doc. # 557–4] at 2.) Rowberrow joins Fractal's intervention motion in its entirety, and also seeks an order revoking Carney's appointment as Receiver, intervention for the purpose of opposing the Receiver's Third Motion for Fees,[2] and an injunction to prevent the Receiver from "incurring any further obligations on behalf of the Receivership Estate." (Rowberrow Mem. Supp. [Doc. # 572] at 2.) Movants argue that the anti–litigation injunction issued by the Court as part of its February 3, 2011 Order Appointing Receiver [Doc. # 66] be dissolved. (Fractal Mem. Supp. [Doc. # 557] at 1; Rowberrow Mem. Supp. at 3.)

In opposition, the Receiver argues that the motions are extremely untimely and Movants are not entitled to the relief they seek. BB&E also oppose Movants' motions because there is an "open process" for the submission of objections to the Stipulation of Settlement, including a hearing on such objections, and thus there is no need for Movants to intervene in order to have their objections to the Stipulation heard by the Court.[3]

---

[2] Only Rowberrow moves to intervene specifically to "oppose third motion for fees." Rowberrow's motion to intervene was filed on September 4, 2012, well past the deadline to file objections to the Third Fee Application.

[3] As contemplated in the Court's August 22, 2012 Scheduling Order [Doc. # 554], objections to the Joint Motion for Approval of Settlement and Stipulation of Settlement were to be filed by October 11, 2012, and a hearing on the Joint Motion was held on October 15, 2012. The Court will consider Movants' arguments opposing the Settlement

### A.      Relief from Anti–Suit Injunction

Movants request that the Court lift the anti–litigation stay as to them so that they may file suit against the Receiver in the Cayman Islands. The Second Circuit has recognized that an anti–litigation injunction or litigation stay in a receiver order is a valid exercise of a district court's equitable powers, *SEC v. Byers* ("*Byers II*"), 609 F.3d 87, 92 (2d Cir. 2010) ("*Byers II*"), and is "simply one of the tools available to courts to help further the goals of the receivership." *Id.* at 92. Other circuits have found this power to enjoin or stay litigation to be enforceable against non–parties. *See, e.g.*, *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 442 (3d Cir. 2005) (affirming receivership litigation stay against non–parties). The modification of a litigation stay is subject to a three–pronged test first articulated by the Ninth Circuit in *SEC v. Wencke*, 742 F.3d 1230 (9th Cir. 1984), and this standard has since been adopted by the Second, Fifth and Third Circuits. *See, e.g., SEC v. Byers ("Byers I")*, 592 F. Supp. 2d 532, 536–37 (S.D.N.Y. 2008) , *aff'd* 609 F. 3d 87, 91–92; *SEC v. Stanford Int'l Bank, Ltd.*, No. 10–10336, 2011 WL 1758763, at *2 (5th Cir. May 5, 2011); *Acorn Tech. Fund, L.P.*, 429 F.3d at 444–45.

*Wencke* identified three factors for determining whether, in a receivership context, an injunction against litigation should be lifted: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's

---

and Stipulation of Settlement in their motions to intervene as objections timely filed under the August 22, 2012 Scheduling Order, which will be addressed in a separate ruling on the Stipulation of Settlement.

underlying claim. 742 F.2d at 1231. The burden "is on the movant to prove that the balance of the factors weighs in favor of lifting the stay." *United States v. Petters*, No. 08–5348 ADA/SJM, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008).

Last year, this Court declined to lift the anti–litigation stay to permit non–party ReoStar to pursue claims in bankruptcy against Receivership Entities. (*See* Ruling on ReoStar's Motions [Doc. # 439].) Applying the *Wencke* factors, the Court determined that ReoStar had not shown that the balance of the factors weighed in favor of lifting the stay. Here, Movants have not addressed *Wencke* and fail to show how they will "suffer substantial injury if not permitted to proceed" against the Receiver in the manner they prefer, rather than in the context of the claims process. They also do not explain how their proposed filing of a foreign lawsuit against the Receiver would not distract the Receiver from his duties of recovering assets for the Receivership Estate, thus weighing against lifting the stay.

As to the third factor—the merits of Movants' underlying claims—Movants argue that because the Court does not possess personal jurisdiction over them, the anti–litigation stay should not apply to them. However, nowhere in their briefing do they address the actual underlying merits of their claims against the Receiver, save for their conclusory statements that they, as creditors of the Receivership Entities, have a "protected interest" in recovering their investments and opposing the Stipulation of Settlement. Further, their personal jurisdiction arguments are misplaced because by moving to intervene in this action, they would be subject to this Court's jurisdiction. *See, e.g.*, *County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("[a] motion to intervene is fundamentally incompatible with an objection to personal jurisdiction."); *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 37 (S.D.N.Y. 1992) ("Finally, by

moving to intervene in this action, Dr. Nava has consented to personal jurisdiction."); *see also* Wright, Miller & Kane, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.) ("[T]he intervenor has submitted to the personal jurisdiction of the court by seeking to intervene in the action and cannot move to dismiss on that ground.").

Because the Movants have failed to identify why, under *Wencke*, the anti–litigation stay should be lifted as to them, their request to lift the anti–litigation stay is denied.

### B.    Motions to Intervene

#### 1.    *Intervention as of Right*

Federal Rule of Civil Procedure 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A movant must meet the following four criteria in order to successfully intervene:

> Intervention as of right under Rule 24(a)(2) is granted when an applicant: (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties.

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

##### a.    Untimeliness

In considering whether Movants have filed a timely motion, the Court takes into account: "(a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's

6

delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness."[4]   *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987). As to factors (a) and (b), the Receiver argues that Mr. Beracha has been aware of the SEC investigation since 2010, and Movants, who claim to be creditors of the Receivership Estate, have been on notice at least since December 2011, when Movants filed proof of claim forms with the Receiver. Further, in the approximately ten succeeding months, there has continued to be significant Receivership activity: lawsuits have been filed, including the *Beracha* action filed on February 3, 2012, and assigned to Judge Underhill, and the Receiver has reached a proposed settlement with the Relief Defendants, which, if accepted, will bring approximately $200 million into the Receivership Estate. Thus, it appears that (a) and (b) weigh in favor of finding Movants' motion untimely. However, to the extent that intervention is sought to oppose the proposed Stipulation of Settlement, those arguments are timely.

As to factor (c), the prejudice to Movants if their motion to intervene is denied, Movants argue that their ability to protect their interests will be "impaired or impeded" without intervention (Movants' Reply [Doc. # 600] at 4). Movants argue that "only recently has evidence of Carney's conflict of interest" come to light (*id.* at 2), evidenced by his "filing of multiple lawsuits, his proposal to make a special distribution of assets to select claimants through the Stipulation of Settlement, and his request for approval of exorbitant fees covering the latter half of 2011 at claimants' expense" (*id.* at 2–3).

---

[4] No party has argued that there are "unusual circumstances" that would weigh against, or in favor, of allowing Movants to make such untimely filings.

b.      Legally Protectable Interest

Movants are creditors of the Receivership Entities, and assert that therefore, they have a direct interest in assets held in the Receivership Estate. (Fractal Mem. Supp. [Doc. # 557–4] at 9.) As such, they have a "direct, substantial, and legally protectable interest" in the litigation, *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010), thus satisfying the "legally protected interest" requirement. (*See* Order on Motion to Intervene [Doc. # 277] at 7 ("This pecuniary interest in preserving an investment subject to court–ordered injunctive and equitable remedies is a legally protectable interest. . . . Movants have accordingly satisfied the 'interest' prong of Rule 24(a)(2)." (citing *SEC v. Flight Transp.Corp.*, 699 F.2d 943, 947 (8th Cir. 1983); *SEC v. Credit Bancorp*, 194 F.R.D. 457, 467 (S.D.N.Y. Mar. 21, 2000); SEC v. *Navin*, 166 F.R.D. 435, 440 (N.D. Ca. Feb. 23, 1995)).)

c.      Whether Intervention Is Necessary To Protect that Interest

Next, Movants must establish that they are "so situated that without intervention the disposition of the action may, . . . impair or impede [their] ability to protect [their] interest," *Pitney Bowes*, 25 F.3d at 70. In essence, Movants' argument is that, without intervention, the Stipulation of Settlement will be allowed to go forward, which Movants characterize as "an accelerated and preferential asset distribution for other claimants' benefit," and that once the Receiver makes "an accelerated and preferential payment of up to $25,000,000 out of the Receivership Estate, those funds will not be available to pay any part of the more than $76,000,000 Fractal Fund is owed." (*Id.*) Movants do not show why intervention, as opposed to following the Court–ordered schedule of lodging objections and appearing at the October 15 hearing, is the only "practical means" available to them.

8

BB&E, Relief Defendants and the Receiver disagree with Movants' characterization of the Settlement as providing for "preferential treatment": the Receiver clarifies that the approximately $225 million is at present held by the Highview Point Funds and is *not* part of the Receivership property (Receiver Opp'n [Doc. # 597] at 12), and that the $25 million that will be paid to the settling Highview Point investors "is a term of the settlement of the pending litigation between the Highview Point Funds and the Receiver and of appeals taken by the Highview Point Funds and certain Highview Point investors. It is not a preferential payment" (*id.*). BB&E also emphasize the same point—i.e., the "initial payment" that Movants depict as "preferential" "would be given *in exchange for* the withdrawal of the Highview Funds' and the Highview investors' opposition to including into the receivership estate $200 million of the assets belonging to the Highview Funds. The initial payment of approximately 11 percent of the current assets of the Highview Funds is the primary consideration of the Stipulation." (Balanchine Opp'n [Doc. # 596] at 3.) However, whether Movants' characterization of the 'initial payment' as a preferential payment is correct or not, Movants have not established why intervention is the only appropriate method by which they can meaningfully object to the Stipulation. Thus, their motion to intervene as of right is denied.

### 2.    *Permissive Intervention*

Movants also seek "permissive intervention" under Federal Rule of Civil Procedure 24(b)(1)(B), which provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(3) adds: "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

In support of their argument for permissive intervention, Movants argue that the "common questions of law or fact" are that their motions "oppose the Stipulation of Settlement," and that "the injunction from which the Motion[s] seek[] relief has been entered here." (Fractal Mem. Supp. at 12.)  However, as discussed above, the Court has provided a means by which non–parties can oppose the Stipulation, and Movants have not shown why the anti–litigation injunction should be lifted under the *Wencke* standard.

Movants cannot show how their claims share common questions of law or fact with the underlying enforcement action, as required under Rule 24(b)(3). Movants cite *SEC v. King Real Estate Inv. Trust*, 222 F.R.D.660, 671–72 (D. Kan. June 30, 2004), which found that putative intervenor Anderton's claim that defendant Swanzy had transferred his funds from an account with relief defendant Romerian Spendthrift Trust to defendant Kings Real Estate Investment Trust without authorization had questions of law and fact in common with the Commission's allegations of fraud against the defendants. Here, however, Movants have not identified any questions in common with the underlying SEC enforcement action against Defendant Illarramendi.

Further, even where the "common questions of law or fact" requirement for permissive intervention is met, a court has the discretion to deny intervention if it would unduly delay or prejudice the main case. Allowing Movants to intervene at this juncture, on the eve of a settlement that would bring nearly $200 million into the Receivership, and particularly where Movants are fully able to object to the Stipulation of Settlement though means other than intervention, would only serve to delay the administration of this enforcement action. Accordingly, for both of the reasons stated above, Movants' requests for permissive intervention are denied.

10

### C.        Conflict of Interest

Finally, Movants assert that John Carney should be removed as Receiver and a new Receiver appointed, or that an Order to Show Cause should issue as to why he should not be removed, given his "conflict of interest." The conflict they describe is that Carney has a "personal financial and professional interest in expanding the Receivership through this settlement [with Relief Defendants] because he has hired his law firm . . . to do the Receiver's legal work." (Fractal Mem. Supp. at 13.) Movants argue that "[i]t is sufficient at law and in equity that Carney stands to benefit if he discharges his functions as receiver in a way that results in millions of dollars in legal fees being transferred from the Receivership Estate to Baker & Hostetler."[5] (*Id.*) Rowberrow contends that "a clear conflict exists between Carney's fiduciary duties as receiver and his personal interest in transferring as much as possible of the Receivership Estate's assets to his law firm." (Rowberrow Mem. Supp. [Doc. # 572] at 4.)

However, Movants fail to point to legal authority or specific facts to support a conclusion that Carney's relationship with his firm actually presents a conflict of interest. In *Jackson v. Smith*, 254 U.S. 586 (1921), the Supreme Court affirmed the district court's ruling that where a receiver owed a duty to the estate and "put himself in a position where his personal interest conflicted with his duty, . . the law made him accountable to the trust estate for all the profits obtained by him and those who were associated with him in the

---

[5] As discussed above, only one of the Movants, Rowberrow, seek to intervene for the express purpose of opposing the Receiver's Third Fee Application. In addition to the fact that Rowberrow's objection to the Third Fee Application was untimely, this is the Third Fee Application that the Receiver has made, and the only fee application that any party, Rowberrow included, has opposed. The prior two fee applications were unopposed, reviewed and approved by the SEC, and granted by the Court after independent review. (*See* Sept. 28, 2011 Order Granting First Motion for Fees and Expenses [Doc. # 379]; Jan. 1, 2012 Order Granting Second Motion for Costs and Fees [Doc. # 424].)

matter," 254 U.S. at 589. There, however, the receiver had entered into a side deal with two people in which they agreed to jointly purchase the receivership asset, which the Supreme Court noted, meant that the receiver "placed himself in a position in which his personal interests were, or might be, antagonistic to those of his trust," and that "[t]he course taken was one which a fiduciary could not legally pursue. " *Id.* at 588. Here, the fact that Mr. Carney's law firm is generating significant fees from its representation of the Receivership, and Mr. Carney is a partner in the firm, does not support the conclusion that any of Mr. Carney's activities serve his own personal interest at the expense of the Receivership Estate, particularly where the Court maintains control and oversight over the payments of such fees.

Further, it is not uncommon for receivers and bankruptcy trustees to be appointed along with their own firms as counsel. As noted in the Receiver's Notice of Supplemental Authority [Doc. # 613], the American Bar Association Committee on Professional Ethics and Grievances addressed this very question in 1946, and concluded:

> [t]he fees of counsel for all fiduciaries could in any case be questioned by any interested party and be subject to the approval of the court in which the accounting was rendered. The Committee is of the opinion that there is no ethical impropriety in a trustee in bankruptcy being represented by the firm of which he is a member and that the same principle applies to executors, administrators, guardians, etc. and other similar fiduciaries. The Committee is of the opinion *that the same principle applies to receivers*.

ABA Comm. on Prof'l Ethics & Grievances, Formal Op. 271 (1946) (emphasis added). Thirty years later, the New York State Bar Association Committee on Professional Ethics considered the same issue and issued a formal opinion that a receiver in a mortgage foreclosure action may retain his or her firm to act as his or her counsel, and that:

> While other bar associations have continued to debate the propriety of a
> fiduciary retaining his firm to act as his counsel, we are persuaded that the
> better rule is that adopted by the ABA [Formal Opinion 271]. . . . All
> lawyers are bound to observe the provisions . . . concerning the amount of
> fees which may properly be charged for legal services. There is no reason
> to impute an improper motive to the receiver's firm or assume that it will
> charge more for its representation of the receiver than is appropriate.

NY Comm. on Prof'l Ethics, Op. 417 (1977). The New York Committee continued, "[a]ny suspicion of impropriety entertained by interested persons should be effectively dispelled by the supervisory powers of the court and its ability to pass upon the amount of the firm's fee," and noted that an "inflexible rule" precluding all fiduciaries from retaining their own firms "might visit unnecessary hardship and expense upon the very persons whom the rule is designed to benefit," as communicating with an outside independent counsel may require the fiduciary to expend significant resources and lead to duplication of efforts. *Id.* Thus, the overall conclusion of the ABA and the New York State Bar Committee is that there is no impropriety with the type of relationship between Mr. Carney as Receiver and members of his firm as his counsel.

The history in this case shows that hearings were held on the appointment of a Receiver, and that the SEC recommended Mr. Carney and his firm. After consideration, the Court appointed Mr. Carney as Receiver in February 2011. In the ensuing months, the Court has reviewed each of the Receiver's applications for fees, to which no timely objections were filed, as noted *supra* in note 4. In the absence of any factual support or legal authority that there is a conflict of interest between Mr. Carney, his firm, and the Receivership Estate, Movants' motions for an order to show cause or calling for Mr. Carney's removal as receiver are denied.

13

**IV.    Conclusion**

For the reasons discussed above, Fractal [Doc. # 556] and Rowberrow's [Doc. # 571] motions to intervene are DENIED, and their objection [Doc. # 590] and motion for reconsideration [Doc. # 589] of the Order Approving Fees are DENIED.


IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 16th day of November, 2012.

14