UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS LLC, AND MICHAEL KENWOOD CAPITAL MANAGEMENT LLC,<br><br>Defendants,<br><br>and<br><br>HIGHVIEW POINT MASTER FUND LTD., HIGHVIEW POINT OFFSHORE LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE LLC, and MKEI SOLAR, LP,<br><br>Relief Defendants. | 11 Civ. No. 78 (JBA)<br><br><br>November 19, 2012 |

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR-APPLICANTS'
EMERGENCY MOTION FOR A STAY PENDING APPEAL**

Intervenor-Applicants Fractal Fund Management, Ltd. and Fractal P Holding, Ltd. (together "Fractal") and Rowberrow Trading Corp. ("Rowberrow," and collectively with Fractal, "Intervenor-Applicants"), by and through their undersigned attorneys, hereby respectfully submit this Memorandum of Law in support of their Motion for an Order, pursuant to Federal Rules of Appellate Procedure 8(a)(1) and 8(a)(1)(C), Federal Rule of Civil Procedure 62(c), and the Court's inherent power, staying any decision on the Stipulation of Settlement (Doc. No. 542-1) pending review of the Court's Ruling on Motions to Intervene dated November 16, 2012 (Doc. No. 628) ("Ruling") by the United States Court of Appeals for the Second Circuit. In the alternative, if the Court were to deny this request for a stay, Intervenor-Applicants respectfully

request that the Court stay the effect of any order approving or modifying the Stipulation of Settlement for 14 days from its issuance to allow the Court of Appeals to consider under Federal Rule of Appellate Procedure 8(a)(2) whether a stay pending appeal is warranted.[1]

Fractal and Rowberrow have sought to intervene because, in part, neither they nor any other creditor or claimant is adequately represented by John J. Carney, who has not denied in briefs or at oral argument that, as a partner in the law firm that represents him as receiver, he benefits personally from his own decisions as receiver.  Whether Carney has a conflict is intrinsically bound up with the question of whether Fractal and Rowberrow are entitled to intervene because one factor in the intervention analysis is whether the applicants are adequately represented.  Once any assets are paid to certain foreign creditors under a settlement, it may be practically impossible for Fractal or Rowberrow to recover those assets overseas.

Indeed, the Court should stay all proceedings involving Carney as receiver, insofar as his ongoing involvement will affect all claimants'' interests, until the Second Circuit decides whether Carney's undisputed personal interest in the multi-million-dollar fee income Baker & Hostetler derives from their role as counsel to the receivership leaves claimants like Fractal and Rowberrow inadequately represented.  Otherwise, every decision Carney makes that affects claimants' interests would invite additional litigation over whether (1) he has breached his

---

[1] The Second Circuit would have appellate jurisdiction of the Ruling upon the filing of a notice of appeal because, *inter alia*, the Ruling refused to dissolve an injunction, *see* 28 U.S.C. § 1292(a)(1), and is a final order as to Intervenor-Applicants' request for intervention.  *See Drywall Tapers and Pointers of Greater New York, Local Union 1974 of I.U.P.A.T., AFL-CIO v. Nastasi & Associates Inc.*, 488 F.3d 88, 95 (2nd Cir. 2007) (quoting *Marino v. Ortiz,* 484 U.S. 301, 304, (1988) ("We think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable.")

fiduciary duties, (2) his law firm is liable to disgorge estate assets it received as fees, and (3) any of Carney's decisions should be reexamined to remove the taint of the conflict of interest, following the Second Circuit's decision as to whether Carney adequately represents claimants' interests.

The Stipulation of Settlement provides that Carney would pay up to $25 million ("Settlement Payments") to investors in certain entities under receivership ("Settling Investors") three business days after the settlement is approved. (Stipulation of Settlement at 6, 8.) Absent affirmative action by the Court to preserve the status quo while appellate review is pending, Intervenor-Applicants would be irreparably harmed because, upon disbursement of the Settlement Payments, the assets in the Receivership Estate otherwise available to satisfy Intervenor-Applicants' claims will have been permanently diminished by up to $25 million. Such payments would be distributed to various foreign third parties, thus denying to Fractal and Rowberrow, should they prevail on appeal, any practical means to recover those assets. Accordingly, an order staying the decision on whether to approve the Stipulation of Settlement is necessary to preserve Intervenor-Applicants' right to seek meaningful review of the settlement in the Second Circuit.

## PROCEDURAL BACKGROUND

On August 14, 2012, Carney and the Settling Investors jointly filed the Motion for an Order Approving Stipulation of Settlement ("Motion for Settlement Approval"). (Doc. No. 542.) The Stipulation of Settlement provides that, following the Court's approval of the settlement, the Settling Investors would cease their opposition to the expansion of the receivership to include the Highview Point Master Fund, Ltd., Highview Point Offshore, Ltd., and Highview Point LP (the "Funds"). In exchange, Carney would pay the Settling Investors an expedited payout of up to $25 million, which Intervenor-Applicants consider a preferential payment, out of the expanded

3

Receivership Estate's assets. (Doc. No. 542-1.) On August 24, 2012, Fractal moved to intervene in the above captioned case for the purpose of, among other things, opposing the settlement on the ground that Carney has a personal interest in the settlement because his law firm would collect additional fees from representing the expanded Receivership Estate. (Doc. No. 556). On September 4, 2012, Rowberrow also moved to intervene seeking essentially the same relief as Fractal, and additionally requesting that the Court deny Carney's requests to transfer assets to his law firm as fee payments. (Doc. No. 571.) Intervenor-Applicants objected to the Magistrate Judge's approval of Carney's fee request on September 25, 2012. (Doc. No. 590.) On October 15, 2012, the Court held a hearing (Doc. No. 609), and on November 16, 2012, the Court issued its Ruling denying Intervenor-Applicants' respective motions to intervene. (Doc. No. 628.)

Intervenor-Applicants have filed a Notice of Appeal to seek review of the Ruling by the Court of Appeals for the Second Circuit. The Stipulation of Settlement, however, provides that the $25 million is to be disbursed to the Settling Investors in as few as three business days after the settlement is approved, well before the Second Circuit could render any decision on appeal. To maintain the status quo and preserve the Intervenor-Applicants' interest in the Receivership Estate during the pendency of the appeal, an order staying any decision on whether to approve the Stipulation of Settlement pending such review is necessary. Further, such a stay is necessary as to Carney's decisions generally to the extent they may affect the interests of claimants, including the Intervenor-Applicants, as the appeal from denial of the motion to intervene turns, in part, on whether the applicants are adequately represented by Carney in light of the existing conflict of interest.

**ARGUMENT**

**INTERVENOR-APPLICANTS SATISFY THE REQUIREMENTS FOR A STAY**

In considering whether to grant a stay or injunction pending appeal, the Court should balance "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." *Thapa v. Gonzales*, 460 F. 3d 323, 334 (2d Cir. 2006) (quoting *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002)).

The Second Circuit has explained that it has:

> "treated these criteria somewhat like a sliding scale, citing approvingly other circuits' formulation that the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors and explaining that the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other."

*Id*. at 335 (*citations omitted*).

Thus, courts have held that a stay is warranted when the prejudice to the appellant from not granting the stay is greater than the prejudice to the appellee in granting the stay, even if *arguendo* the chances of prevailing on appeal were slim. *See Greenidge v. Allstate Ins. Co*., No. 02-Civ-9796 (JCF), 2003 WL 22871905, at *2-4 (S.D.N.Y. Dec. 3, 2003).

**A.   Intervenor-Applicants Are Likely to Prevail on the Appeal**

Intervenor-Applicants are likely to prevail on appeal because Carney has not denied that he benefits personally, as a Baker & Hostetler partner, from the fees the firm earns as a result of his decisions as a receiver. Carney operates under a conflict of interest between his high fiduciary duty to conserve the Receivership Estate's assets and his personal financial and professional interest in increasing the fees to his law firm, which exceeded $8 million in 2011 alone, as demonstrated by the strategic decisions he has made, including the proposed Stipulation

5

of Settlement. (*See* Third Interim Application for Fees and Expenses by the Receiver and His Advisors) (Doc. No. 519).  Carney's conflict of interest violates the long-established principle that a receiver should not place himself in a position where his financial interest conflicts with his fiduciary duties to the estate.  *See Jackson v. Smith*, 254 U.S. 586 (1921) (Brandeis J.) (finding a receiver liable for breach of fiduciary duty for purchasing property from the estate because "although the estate may not have been injured . . . [the receiver] placed himself in a position in which his personal interests were, or might be, antagonistic to those of his trust.").  In the face of this precedent, <u>Carney has been unable to cite any legal authority holding that a conflict such as the one present in this case is permissible</u>.

Respectfully, Intervenor-Applicants submit that if the Court were to approve the settlement notwithstanding Carney's conflict of interest, doing so would conflict with *Jackson v. Smith*, 254 U.S. 586, 588 (1921), which held that a receiver had a disabling conflict of interest when he "placed himself in a position in which his personal interests were, *or might be*, antagonistic to those in his trust." (emphasis added).  The Court distinguished *Jackson* by stating:

> "the fact that Mr. Carney's law firm is generating significant fees from its representation of the Receivership, and Mr. Carney is a partner in the firm, does not support the conclusion that any of Mr. Carney's activities serve his own personal interest at the expense of the Receivership Estate, particularly where the Court maintains control and oversight over the payments of such fees."

(Ruling at 12.)  The standard set forth in *Jackson*, however, does not require a "conclusion that any of the [the receiver's] activities serve his own personal interest at the expense of the Receivership Estate."  *Id*.  Rather, it is sufficient that the receiver's interests "might be, antagonistic to those of his trust."  *Jackson*, at 588.  Here, Carney's personal interest in generating tens of millions of dollars in fees "might be" antagonistic to the estate.  Further, Carney has not denied that, as a partner in the law firm, he personally benefits, financially and

6

professionally, from his decisions as receiver. While the Court's opinion rejects Intervenor-Applicants' position, it is indisputable that this is an extraordinarily important question that would benefit from Second Circuit review, and is one which may impact all decisions made by this particular receiver.

**B.      Intervenor-Applicants and Other Claimants Would Be Irreparably
         Harmed If Approval of the Settlement Were Not Stayed**

As of the filing of the instant Motion, the Court has not decided whether to approve the settlement; however, such a decision may irreparably harm the interests of the Intervenor-Applicants while their appeal from denial of intervention is pending. If the Court does not stay its decision on whether to approve the settlement, the Receivership Estate will be expanded and Carney will pay up to $25 million of Receivership Estate funds in as few as three business days following the approval of the settlement. (Stipulation of Settlement at 6, 8.) The Settlement Payments would be paid to a variety of foreign creditors, and the funds disbursed would move permanently beyond the reach of this Court and creditors of the expanded Receivership Estate, including the Intervenor-Applicants.

Accordingly, Fractal and Rowberrow will suffer irreparable harm if a stay is not issued because the Receivership Estate will have irrevocably forfeited the funds represented by the Settlement Payments, to the detriment of claimants including the Intervenor-Applicants, and the Second Circuit's ability to remedy the improper disbursement will be impeded.

**C.      The Receiver and the Settling Investors Will Not Be Harmed By the
         Issuance of a Stay**

Staying the issuance of an order approving the settlement, or enjoining performance of the settlement during the pendency of the appeal, will not prejudice Carney or the Settling Investors. The funds in dispute are currently frozen in a bank account within the Court's jurisdiction; there is no risk of dissipation. (*See* Stipulation of Settlement at 4.) Furthermore,

allowing the Second Circuit to consider the appeal would not unduly delay any recovery by the Settling Investors because, even if they were to prevail on appeal, they would still receive the designated Settlement Payments well before any other creditor of the estate receives a distribution on his or her claim, a process which will likely take several more years.

D.   **The Public Interest Favors Issuance of a Stay**

A stay would promote the public interest because there is more at stake than merely the Intervenor-Applicants' recovery from the Receivership Estate. First, all claimants to the Receivership Estate are affected by the reduction in assets available to the estate and would benefit from appellate review of the proposed settlement. The sum of the assets in the receivership estate is only one concern facing the Receivership Estate's creditors, however; at issue, is Carney's ability to perform his fiduciary duties to the Receivership Estate free from the conflict of interest posed by the millions of dollars in fees being paid to his law firm. This conflict of interest taints not only the proposed settlement, but all other decisions made by Carney in this action, particularly those that have the effect of further expanding the work and fees generated by Carney's law firm.

Carney's conflict of interest raises a vitally important question that has the potential to significantly improve the administration of Receivership Estates across the country, namely, whether claimants to a Receivership Estate are entitled to conflict-free representation by a Receiver who owes them fiduciary duties. The Second Circuit has not had the opportunity to consider this question, and it would be appropriate for the Court to preserve the status quo in this matter so that the Second Circuit's decision with respect to the settlement cannot be rendered ineffective.

**CONCLUSION**

For the foregoing reasons, Fractal and Rowberrow respectfully request that the Court stay any decision on the Stipulation of Settlement pending appellate review of the Court's Ruling.  In the alternative, Fractal and Rowberrow respectfully request that the Court stay the effect of any decision on the Stipulation of Settlement for 14 days from its issuance to allow the Second Circuit to decide whether a stay pending appeal is warranted.

/s/ Michael P. Socarras (phv05388)

| | |
|---|---|
| SHIPMAN & GOODWIN, LLP<br>One Constitution Plaza<br>Hartford, CT 06103<br>Tel:  860.251.5000<br>Fax:  860.251.5099<br>Ross H. Garber (ct17689)<br>Sara J. Goldfarb (ct28370)<br>rgarber@goodwin.com<br> sgoldfarb@goodwin.com | CHADBOURNE & PARKE, LLP<br>1200 New Hampshire Avenue NW<br>Washington, DC 20036<br>Tel:  202.974.5600<br>Fax:  202.974.5602<br>Michael P. Socarras (phv05388)<br>LeeAnn O'Neill (phv05389)<br>msocarras@chadbourne.com<br>loneill@chadbourne.com<br><br>30 Rockefeller Plaza<br>New York, NY 10112<br>Tel:  212.408.5100<br>Fax:  212.541.5369<br>Marcelo M. Blackburn (phv05568)<br>mblackburn@chadbourne.com |

*Attorneys for Fractal Fund Management, Ltd., Fractal P Holding, Ltd.*
*and Rowberrow Trading Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2012, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/Doc. System.

/s/ Michael P. Socarras
Michael P. Socarras (phv05388)