UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Securities & Exchange Commission,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Francisco Illarramendi, Highview Point Partners, LLC and Michael Kenwood Capital Management, LLC,<br>    *Defendants*,<br>and<br><br>Highview Point Master Fund, Ltd., Highview Point Offshore, Ltd, Highview Point LP, Michael Kenwood Assets Management, LLC, MK Energy and Infrastructure, LLC, and MKEI Solar, LP,<br>    *Relief Defendants.* | Civil No. 3:11cv78 (JBA)<br><br><br><br><br><br><br><br>November 27, 2012 |

**RULING ON JOINT MOTION FOR APPROVAL OF SETTLEMENT**

The Receiver John Carney, and Highview Point Master Fund ("Master Fund") and Highview Point Offshore, Ltd. ("Offshore Fund"), collectively "the Relief Defendants," by and through their directors jointly move [Doc. # 543] for an Order Approving their Stipulation of Settlement. In July, the Receiver and these Relief Defendants negotiated a settlement which they represent would best "protect their respective interests and bring about a speedy, just, and economical resolution of the Appeal and the Motion to Expand the Receivership, for the benefit of the investors in the Funds, including the Settling Investors, and for the Receivership Estate." (*See* Joint Motion for Approval of Settlement [Doc. # 543] ¶ 11.) As set forth in the Court's August 22, 2012 Scheduling Order [Doc. # 554], objections to the Joint Motion for Approval of Settlement and Stipulation of Settlement were to be filed by October 11, 2012, and a

hearing on the Joint Motion was held on October 15, 2012. For the reasons discussed below, the Joint Motion is granted.[1]

## I.  Factual Background

On February 3, 2011, the Court entered an Order Appointing Receiver that authorized and directed the Receiver to marshal, preserve, and manage certain assets under the MK Defendants' control. (*See* Order Appointing Receiver [Doc. # 66].) Over the course of the Receivership, the Court has entered four Amended Receiver Orders. (*See* Amended Orders Appointing Receiver [Doc. ## 118, 279, 287, 423].) The Receiver Orders grants the Receiver "all powers, authorities, rights and privileges . . . possessed by the officers, managers and general and limited partners of the Receivership Entities . . . and all powers conferred upon a receiver." (Jan. 4, 2012 Receiver Order [Doc. # 423] ¶ 11.) The Receiver was also granted "general powers and duties . . . to use all reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities" (*id.* ¶ 14.A), and "to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto" (*id.* ¶ 14.B). The Receiver Order also provides that "[t]he Receiver may, without further Order of this Court, transfer, monetize, compromise or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate." (*Id.* ¶ 42.)

---

[1] Fractal and Rowberrow have moved [Doc. # 630] for the Court to stay any decision on the Stipulation of Settlement pending appellate review of the Court's Ruling [Doc. # 628] denying their motions to intervene. In the alternative, they request that the Court stay the effect of any decision on the Stipulation of Settlement for fourteen days from its issuance to allow the Second Circuit to decide whether a stay pending appeal is warranted. As discussed below, Fractal and Rowberrow's motion is granted in part.

### A. Prior Litigation with Relief Defendants

On May 10, 2011, the Securities and Exchange Commission ("SEC") filed a Second Amended Complaint [Doc. # 190] naming Highview Point Partners, LLC ("Highview Partners") as an additional Defendant, and naming the Master Fund, the Offshore Fund and Highview Point LP as additional Relief Defendants. On June 16, 2011, the Court granted the SEC's Motion for a Temporary Restraining Order and asset freeze, and ordered the transfer of approximately $230 million held by the Relief Defendant funds into a financial institution within the Court's jurisdiction [Doc. # 276]. That same day, the Court denied Balanchine, Brentwood and Edenwood Holding's ("BB&E") motion to intervene. (Ruling on Motion to Intervene [Doc. # 277].) BB&E and the Master and Offshore Funds appealed both Court Orders to the Second Circuit. (*See* Notices of Appeal [Doc. ## 304 (Order on Motion to Intervene), 305 (BB&E's Appeal as to Order on Motion for TRO), 307 (Master and Offshore Funds' Appeal as to Order on Motion for TRO)].) These three appeals are currently pending in the Second Circuit.

On February 2, 2012, the Receiver moved [Doc. ## 446, 447] for an order expanding the Receivership to include the Master Fund and Offshore Fund. Both Funds opposed the Motion to Expand the Receivership, and on February 19, 2012, BB&E filed an Emergency Motion to Intervene to seek a stay of the Motion to Expand the Receivership. (Emergency Mot. to Intervene [Doc. # 458].) In July, the Receiver, the Funds, and BB&E represented to the Court that they reached "an agreement on how best to protect their respective interests," which is the subject of the present motion. (Stip. Settlement [Doc. # 543–1] ¶ 11.)

### B.     Proposed Settlement

If the Court accepts the Settlement, the Master and Offshore Funds and BB&E agree to "withdraw with prejudice their opposition to[] the Motion to Expand the Receivership and to include therein the Funds as Receivership Entities and the Settlement Funds as part of the Receivership Estate." (*Id.* ¶ II.2.) The Master and Offshore Funds and BB&E also agree to "file in this Court a notice confirming the withdrawal with prejudice of their respective oppositions to the Motion to Expand the Receivership," as well as filing "a notice joining in the Motion to Expand the Receivership," and BB&E will "file in this Court a notice to withdraw with prejudice their Emergency Motion to Intervene." (*Id.* ¶¶ II.2(b)(i)–(iii).) The Funds and BB&E will file a notice of voluntary dismissal with prejudice of their appeal before the Second Circuit (*id.* ¶ II.2(b)(iv)), and the Funds will file with the Receiver "a notice to withdraw their proof of claim, and any other claim that may not have heretofore been asserted, against the Receivership Estate" (*id.* ¶ II.2(b)(v).

The Stipulation further provides that:

> Upon the Settlement Date, . . . the Receiver shall release and pay to each Settling Investor by wire transfer of immediately available funds a portion of the Settlement Funds in an amount equal to the lesser of (i) $25,000,000 and (ii) to the total amount of Settlement Funds initially transferred to the Receiver hereunder less $200,000,000 (the "Settling Investors' Fund"), multiplied by a fraction (the "Fraction"), the numerator of which shall be such Settling Investor's Net Capital Invested . . . and the denominator of which shall be the total Net Capital Invested of all investors in the Funds less the amount withheld for the Litigation Reserve.

(*Id.* ¶ II.2(c).) In order to receive a portion of the settlement as a "Settling Investor," each Settling Investor must timely file a Good Faith Certificate and Release which must be deemed acceptable to the Receiver. (*Id.* ¶ II.4(b).)

In exchange for the Settlement, the Receiver agrees to set aside from the Settling Investors Fund $250,000 as an account "for the sole benefit of the Director Releasees . . . to pay for reasonable legal fees and expenses actually incurred and paid in connection with, or to satisfy, actual or threatened Claims . . . against any of them in any jurisdiction (the 'Litigation Reserve')." (*Id.* ¶ II.3.) The Receiver also agrees not to assert any clawback actions against any Settling Investor (*id.* ¶ II.4(b)), and upon the Court's granting of the Motion to Expand the Receivership and control of the Funds being transferred to the Receiver, the Receiver will release and forever discharge the Funds' Directors (Evan Burtton, Scott Dakers, and Tom Parsons) and Ogier Fiduciary Services (Cayman) Limited ("OFSCL"). However, the Stipulation also provides that "nothing herein shall be deemed to release, waive or surrender any past, present or future right, claim or cause of action that the Receiver may have, bring or prosecute against Frank Lopez, Carlos Manuel Barrantes Araya, Carolina Lopez, Christopher Luth, Heather Luth, and Victor Chong, and each of their respective and former partners, [and] managers, . . ." (*Id.* ¶ II.5.)

## II.   Objections to Stipulation of Settlement

Objections to the Joint Motion for Approval of Settlement and Stipulation of Settlement were to be filed by October 11, 2012, and a hearing on the Joint Motion was held on October 15, 2012. In total, five objections to the stipulation of settlement were filed:

1. Non–parties Frank Lopez [Doc. # 546], Victor Chong [Doc. # 547], and Christopher Luth [Doc. # 550] all object for the same reasons: all three men are defendants in a related action brought by the Receiver currently pending before Judge Underhill, *Carney v. Lopez et al.*, No. 12cv182, and all three Objectors were former employees of Highview Point Partners, LLC.

5

2. Fractal Fund and Rowberrow, non-parties who have moved to intervene in this action, have also objected to the Stipulation of Settlement.[2]

"Usually, a nonsettling defendant lacks standing to object to a court order approving a partial settlement because a nonsettling defendant is ordinarily not affected by such a settlement." *Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993). There is a recognized exception to this general rule which permits a non-settling defendant to "object to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example, or to invalidate its contract rights." *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). Thus, unless the Objectors can demonstrate that the Settlement will cause them to suffer legal prejudice, the objections will be overruled.

### A. Lopez, Luth, and Chong's Objections to Stipulation of Settlement

Messrs Lopez, Luth, and Chong represent that at all relevant times, their employer HPP "served as the investment manager for both the Highview Point Master Fund, Ltd and Highview Point Offshore, Ltd," and as part of their employment with HPP, they are "Affiliated Parties" as defined in the Investment Management Agreements, or "IMAs." (Lopez, Luth, and Chong Objections ¶ 3.) The IMAs defined "Affiliated Party" as "directors, members, partners, shareholders, officers, employees, agents and affiliates" of the Investment Manager." (IMAs, Exs. A and B to Objections § 6.)

As Affiliated Parties, Lopez, Luth, and Chong assert that they are each "the beneficiary of express indemnification and advancement rights." (Objections ¶ 5.) The IMAs provide:

---

[2] The Court has addressed Fractal and Rowberrow's motions to intervene in a separate ruling. (*See* Ruling on Motions to Intervene [Doc. # 628].)

> The Investment Manager shall give the Fund the benefit of its best judgment and efforts in rendering services hereunder and it is agreed as an inducement to the Investment Manager's undertaking these services that the Fund shall, to the fullest extent legally permissible under the laws of the State of Delaware, indemnify and hold harmless the Affiliated Parties against any loss, liability or expense . . . incurred or suffered by an Affiliated Party in connection with the good faith performance by the Affiliated Party of its responsibilities to the Fund.

(IMA § 7.) They object to the proposed settlement to the extent that "the Receiver makes clear to exclude Mr. Chong and others from the scope of the proposed release, however, that proposed Joint Motion [for Stipulation of Settlement] nowhere provides for the protection and enforcement of [their] indemnification and advancement rights." (Objection ¶ 6.)

Lopez, Luth, and Chong contend that the Stipulation's failure to provide for the enforcement of their claimed indemnification rights "is significant in that, if appointed pursuant to the proposed settlement, the Receiver . . . would be left to decide . . . entitlement to indemnification and advancement in violation of [their] contractual and constitutional rights, including [their] right to due process of law." (*Id.*) Lopez, Luth, and Chong ask the Court to: (1) set a schedule for briefing, (2) schedule a hearing date to address their concerns for the preservation of the indemnification and advancement rights provided for in the IMAs; and (3) "craft a mechanism by which an unbiased decisionmaker other than the Receiver" oversees the enforcement of their rights to indemnification and advancement. (*Id.* at 3.)

At the October 15, 2012 hearing, Counsel for the Funds spoke in support of the Settlement and explained that if the Court were to accept the proposed Settlement, "the Receiver will be stepping into the directors' shoes. So, the Highview funds will continue,

but in the Receivership. So, if they entered into a contract like the investment management agreement, the funds would have to continue to honor that contract. . . . If that contract is breached, they can sue for that breach." (Oct. 15, 2012 Tr. [Doc. # 619] at 48:16–23.) Counsel for the Receiver further offered that "there is nothing in the settlement stipulation that in any way abrogates any rights that anyone may have" (*id.* at 52:2–4), and "ultimately if [Lopez, Luth, and/or Chong] submit a claim to the Receiver, whether pursuant to the [claim] process or otherwise, . . we'll look at it and the Receiver will make a determination" (*id.* at 52:14–18). Counsel for the Receiver also asserted that the Court's approval of the Stipulation of Settlement would in no way affect the Objectors' rights: "If they make a claim to the Receiver for advancement, the Receiver will consider that request. If he thinks it's appropriate, he'll ask your Honor for authority to make that advancement." (*Id.* at 55:8–12.)

The concerns of Lopez, Luth and Chong that these contractual provisions will not be honored are premature or speculative and do not warrant delaying the approval of this Settlement. Further, were the Court to deny the Stipulation of Settlement, there is no evidence that Messrs. Lopez, Luth, and/or Chong would be able to receive advancement funds or be indemnified more easily, as the funds are at present being frozen pursuant to this Court's June 16, 2011 Order. Counsel for the Receiver noted that for the Objectors to get an advancement payment with the funds as they exist today, they would first need to go to the funds' directors, who would need to approve the advancement, and then they would need to get this Court's approval to unfreeze that portion of funds. Lopez, Luth, and Chong have failed to show how their advancement and indemnification rights would substantially change in any significant way if the Court were to approve the Settlement, and their objections are overruled.

**A. Fractal and Rowberrow's Objections to Stipulation of Settlement**

Counsel for Fractal and Rowberrow object to the Settlement as "[a] perfect illustration of why Mr. Carney's conflict of interest makes it impossible for . . . this Court, to evaluate whether it represents fair value to the creditors." (Tr. at 72:11–15.) Fractal and Rowberrow's counsel argued, "[c]urrently no one is representing the interests of the estate as the client because Mr. Carney is partner to the counsel, and that conflict of interest renders it impossible for him to act as the client." (*Id.* at 76:20–24.) Fractal and Rowberrow are not among the settling investors, and, as discussed in the Court's Ruling on their motions to intervene, both Fractal and Rowberrow have already submitted their proof of claim forms to the Receiver acknowledging that they held assets of or traceable to Receivership Entities. (*See* Exs. 1–3 to New Decl. [Doc. # 598].) They do not explain how thwarting the Settlement—and preventing the influx of approximately $200 million into the Receivership Estate—would be a better alternative for creditors like them.

At the October 15, 2012 hearing, Counsel for the Receiver emphasized that "neither the Receiver or Baker Hostetler stand to benefit personally in any way from the settlement." (Tr. at 81:18–21.) He noted that "the settlement puts an end to contentious and prolonged litigation that if it were to continue would require the estate to expend substantial sums in legal and consulting fees." (*Id.* at81:23–82:1.) The SEC also spoke in support of the Settlement, referencing the "substantial measures in place that are meant to protect investors and to ensure that the Receivership is being conducted properly." The SEC emphasized its own role in the process of overseeing the Receiver's conduct:

> We engage in substantial review of fee applications and go through them very, very carefully to make sure that money is being spent properly. We've done so here. . . . [t]he very impact of this settlement will be to reduce the amount of fees that are generated, which is good for the estate,

9

> good for the investors, and perhaps not good for filling the coffers of a law firm, but it's the right thing to do, and as a fiduciary, Mr. Carney has deemed it in the best interest of the investors, and we agree.

(Tr. at 93:22–94:1; 94:13–19.)

The Court has already addressed, and rejected, Fractal and Rowberrow's arguments that Carney as Receiver is conflicted by his firm's representation as claimed in their motions to intervene [Doc. ## 556, 571]. Fractal and Rowberrow have not raised additional grounds for opposing the Stipulation of Settlement. Incorporating the reasons for denying intervention, the Court concludes that the objections lodged by Fractal and Rowberrow are without merit, and will be overruled.

**III. Fractal and Rowberrow's Motion for Stay Pending Appeal**

On November 19, 2012, Fractal and Rowberrow filed a notice of appeal challenging the Ruling on Motions to Intervene [Doc. # 628] and move [Doc. # 630] this Court to stay any action on the Stipulation of Settlement pending resolution of their appeal in the Second Circuit. In the alternative, they request that the Court stay the effect of any decision on the Stipulation of Settlement for fourteen days from its issuance to allow the Second Circuit to decide whether a further stay pending appeal is warranted.

In determining whether a stay pending appeal is warranted, the Second Circuit has laid out four factors for consideration: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that might be affected." *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1992) (quotation marks omitted). The Second Circuit has also clarified that the requisite degree of likelihood of success on

the merits varies with the assessment of the other factors: "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir.2002) (quotation marks and alteration omitted).

Fractal and Rowberrow, the only creditors objecting to the Stipulation of Settlement on the asserted conflict basis, claim to be "irreparably harmed" if approval of the Settlement is not stayed, because the contemplated $25 million settlement payment to settling investors will deplete funds that would potentially be part of the Receivership Estate. As discussed above, this $25 million payment is to be made as negotiated consideration for the withdrawal of the settling investors' litigation claims and pending appeals, and is part of a settlement that brings an additional $200 million into the Receivership Estate. In fact, the "irreparable harm" of the claimed "irrevocable forfeiture" (Mem. Supp. [Doc. # 631] at 7) of $25 million in assets would seem to cut both ways, because without the $25 million payment to settling investors, the Receivership Estate (and therefore, Fractal and Rowberrow as claimants) will not have immediate access to the additional $200 million in assets and the pending litigation will continue, and will concomitantly consume substantial Receiver time and Receivership assets.

The interests of the settling parties, and others, may be negatively affected if a stay is issued and the Settlement is not approved. Defendant Illarramendi's sentencing, scheduled for January 2013 (*see* 11cr41-SRU), could potentially be impacted on issues of loss calculation or victim restitution; progress on the settling investors' litigation with the Receiver, both in this District and before the Second Circuit, and the Receiver's other clawback actions in this District, may be disrupted by a stay.

On the "possibility of success" factor, as determined in the Court's Ruling on Motions to Intervene, movants' probability of success on the merits of their appeal is low. As discussed above, the Court has considered and rejected Fractal and Rowberrow's objections to the Stipulation of Settlement. Thus, this assessment of diminished probability of success is to be weighed against the potential risk of irreparable harm, *Mohammed v. Reno*, 309 F.3d at 101, as well as the public's interest in the efficient resolution of disputes.

Having considered and balanced the *Hirschfeld* factors, the Court concludes that a stay of approval of the Settlement is not warranted. As an alternate ground for relief, Fractal and Rowberrow have also requested that the Court delay the effect of its approval of the Settlement for fourteen days, to permit the Second Circuit to consider whether a stay pending appeal is warranted under Federal Rule of Appellate Procedure 8(a)(2). Neither the Receiver nor any party has objected to this limited stay, which appears reasonable to the Court and the Court will grant the alternative form of relief requested by Fractal and Rowberrow.

**IV. Conclusion**

Having reviewed the basis for the Joint Motion for an Order Approving Stipulation of Settlement and all objections, the Court concludes that the Stipulation has been shown to be in the best interests of all settling parties. The proposed settlement is the product of a vigorously negotiated compromise that brings a relatively speedy and economical resolution to many pending motions, and includes the withdrawal of several claims and appeals before the Second Circuit, thereby avoiding further costly, burdensome and time-consuming litigation between the Settling Investors and the Receiver. The Settlement will also bring significant resources into the Receivership Estate.

Accordingly, the parties' Joint Motion for an Order Approving the Stipulation of Settlement [Doc. # 543] is GRANTED.

Fractal and Rowberrow's Motion [Doc. # 630] to Stay is GRANTED in part, and this Order approving the Stipulation of Settlement is stayed until December 11, 2012.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of November, 2012.