UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 11-0078 (JBA) |
| v. | ) ) ) | |
| FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP, | ) ) ) ) ) ) ) ) ) | |
| Relief Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW RENEWING MOTION FOR CONTEMPT SANCTIONS AND IN SUPPORT OF RECEIVER'S SECOND MOTION FOR <u>CONTEMPT SANCTIONS</u>**

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits

this memorandum of law, both to renew the Commission's prior motion[1] for contempt sanctions

---

1 Although the Receiver and Illarramendi reached a Stipulation of Settlement (Dkt. Entry No. 539) as to the relief requested by the Receiver in his first Motion for Contempt Sanctions and other relief (Dkt. Entry No. 516), the

and in support of the Receiver's second motion for contempt sanctions against Defendant

Francisco Illarramendi ("Illarramendi") for violating the Amended Receiver Order and Section I

of this Court's February 3, 2011 preliminary injunction order, which requires Illarramendi to "hold

and retain funds and other assets of the Defendants and Relief Defendants" and explicitly prohibits

the "withdrawal, removal, sale, purchase, trade, transaction, payment . . . transfer, dissipation,

assignment, pledge, alienation, encumbrance, disposal, or diminution in value of any such funds or

other assets, which are hereby frozen." (Docket Entry No. 67) (incorporating by reference the

provisions of February 2, 2011 Modified Temporary Restraining Order, at Docket Entry No. 59).

The Commission joined in the first motion for contempt sanctions by the Receiver, *see*

Docket Entry No. 516, and hereby renews the motion for such relief, in light of Illarramendi's

brazen disregard for the Orders issued by this Court.  Furthermore, the Commission writes in

support of the Receiver's second motion for contempt sanctions, which – notwithstanding

Illarramendi's pending incarceration in the parallel criminal case[2] – are amply justified.  Simply put,

Illarramendi is unable to comply with the orders of this Court, to the detriment of the Receivership

and the investors who have already been victimized by his crimes.  Contempt sanctions are thus

required to ensure that no further harm befall the investor-victims, since the legal force of a court

order alone has been insufficient to prevent Illarramendi's misconduct.

## I.    <u>Background Facts Relevant To This Motion</u>

On June 21, 2012, the Commission filed a motion for an emergency hearing, at which

sworn testimony could be taken, in light of statements made by Illarramendi to the United States

---

Stipulation did not provide for any court-imposed contempt sanctions.

[2] On January 18, 2013, the Honorable Stefan R. Underhill issued an order in the criminal case requiring Illarramendi to surrender to the United States Marshals in Bridgeport, Connecticut by January 25, 2013.  See <u>U.S. v. Illarramendi</u>, No. 3:11-cr-41 (SRU), Order Modifying Conditions of Release (Docket Entry No. 99).

Attorney's Office (the "USAO") about the source of funds for his extravagant living expenses while out on bail. (Docket Entry No. 504)  In his meeting with the USAO, Illarramendi initially (and falsely) claimed that these funds were derived from an entity called "UTS Advisors." Shortly after the Commission staff began interviewing purported investors in UTS Advisors, Illarramendi admitted that the source of funds was actually a $600,000 refund from the State of Connecticut for the overpayment of taxes. (Declaration of Brian Ong at ¶¶6, 13, 17-20) (hereinafter "Ong Decl.") (Docket Entry No. 514).  After learning that Illarramendi had improperly diverted funds that were both frozen by this Court's Order and constituted property of the Receivership, the Receiver immediately filed a motion for contempt sanctions, as well as an asset freeze order, an accounting, and a summary proceeding. (Docket Entry. No. 513)  The Commission then filed a memorandum of law joining the Receiver's motion for contempt sanctions. (Docket Entry No. 532)

On August 7, 2012, the Receiver and Illarramendi entered into a stipulation, endorsed the next day by this Court, which resolved the vast majority of issues raised by the contempt motion. See Stipulation for Judgment and Partial Relief, dated 8/7/12 (Docket Entry No. 534). Specifically, Illarramendi and his wife stipulated that the tax refund was receivership property subject to the asset freeze order, and that Illarramendi and his wife would not only return any monies remaining from the tax refund, but would submit a sworn "detailed accounting" to the Receiver on a monthly basis that listed their assets and expenditures, beginning on August 18, 2012. (Docket Entry No. 534)  However, Illarramendi's very first sworn accounting[3] listed a number of questionable (and undocumented) transfers, including a $150,000 transfer

---

[3] The sworn accounting submitted by Illarramendi in August 2012 was filed under seal as Exhibit C to the Commission's October 11, 2012 memorandum of law in opposition to Illarramendi's motion to unfreeze assets. (Dkt. Entry No. 602)

characterized as a "personal loan" from his cousin. (Dkt. Entry No. 641-1)  As set forth in

greater detail in the Receiver's Memorandum of Law, the Receiver's investigation has revealed

that the $150,000 transfer from Illarramendi's cousin was not a personal loan at all, but the return

of an investment.  (Id. at 4-5)  Thus, once again, the Receiver has been forced to file a motion for

contempt to prevent Illarramendi from misappropriating funds that belong to the Receivership.

In support for the Receiver's first motion for contempt sanctions, the Commission wrote:

"Illarramendi's shifting explanation of the source of the money to fund his personal expenditures

further justifies the imposition of coercive sanctions, since evidently the force of a Court order

has not persuaded Illarramendi to conform his behavior to the requirements of the law." (Docket

Entry No. 532, at 4)  Such coercive sanctions are ever more acutely needed today, where

Illarramendi continues to flout this Court's orders to pay for his luxurious lifestyle, *c.f.*, Dkt.

Entry No. 602 (opposition to Illarramendi's motion to release frozen assets to pay for personal

expenses), by concealing the source of his personal funds and actively deceiving the Receiver in

his efforts to recover funds for investors.

## ARGUMENT

### I.  This Court Has Inherent Power To Enforce Compliance With Its Order Through Civil Contempt

Pursuant to its inherent powers, as well as 18 U.S.C. § 401, this Court has the authority to

compel compliance with its orders (and punish contemnors) through an order of contempt.

"There can be no question that courts have inherent power to enforce compliance with their

lawful orders through civil contempt." *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966).  In addition,

"[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its

discretion, such contempt of its authority, and none other, as . . . (3) [d]isobedience or resistance

4

to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401.

In the Second Circuit, district courts may exercise the inherent power to find a party in civil contempt when: "(1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply." *See New York State Nat'l Organ. For Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989); *see also U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 776 F.Supp. 144, 154 (S.D.N.Y. 1991). Sanctions for civil contempt may be compensatory or coercive in nature – i.e., designed to compensate a complainant for losses, or – as here – "to coerce the contemnor into future compliance with the Court's order." *Id.* at 1352. Where the potential sanctions contemplated are coercive in nature, the court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Id.* at 1353. As the Second Circuit has observed, "[t]he ultimate consideration is whether the coercive sanction . . . is reasonable in relation to the facts." *Id.* Accordingly, the district court's imposition of coercive sanctions is subject to review by the appellate court only for abuse of discretion. *See, e.g., Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.* 369 F.3d 645, 657 (2d Cir. 2004) (noting that the "court has broad discretion to design a remedy that will bring about compliance") (internal citations omitted); *In re Grand Jury Witness*, 835 F.2d 437, 443 (2d Cir. 1987) (upholding district court's imposition of fines as reasonable sanction for civil contempt).

As the Commission noted in the prior Memorandum of Law in support of contempt

5

sanctions, among the many measures available to coerce compliance with judicial orders, a court

may direct the contemnor to: (1) pay a daily fine pending compliance with a contempt order, *see,*

*e.g., Int'l Broth. of Teamsters*, 76 F.Supp. at 154 (imposing daily sanction of $10,000 on the

contemnor pending full compliance with Court order); (2) pay attorneys' fees, costs, and

expenses related to the motion for contempt, *see, e.g., Shady Records, Inc. v. Source Enterprises,*

2004 WL 1277993, at *7 (S.D.N.Y. June 8, 2004); and/or, (3) order imprisonment pending

compliance with the court order, *see, e.g., U.S. v. Hughey*, 571 F.2d 111, 114-15 (2d. Cir. 1978).

## II. The Court Should Hold Illarramendi In Contempt And Issue An Order Of Contempt In The Manner Proposed By The Receiver

Turning to the first prong of the Second Circuit test, Illarramendi's use of Receivership

Property (i.e., the $150,000 return on investment) to fund his personal expenses as well as to pay

for attorney's fees constituted a blatant and unambiguous violation of the asset freeze order, as

well as the amended receiver order.  As the Receiver's memorandum in support of his first

Motion noted: "The language of the Asset Freeze Order restricting transfers is straightforward

and absolute.  There is no exception . . . for a lawyer in a civil suit[.]"  Memorandum of Law in

Support of Receiver's Emergency Motion for Order of Contempt, at 9 (Docket Entry No. 516).

The defendant's own admissions to the Court constitute clear and convincing evidence of

noncompliance that satisfies the test's second prong.  Illarramendi has admitted on the record

that he understood the terms of the asset freeze order, and the affidavit provided by Andreas

Carlstein-Reyes makes plain that Illarramendi attempted to make an end-run around the asset

freeze order by falsely characterizing the $150,000 as a personal loan.  See Fokas Decl. Ex. B

¶¶6-7 (Docket Entry No. 641-4)  Finally, as to the third prong, there is not a shred of evidence

that Illarramendi has attempted to comply diligently – or at all -- with the asset freeze order.

The sanctions proposed by the Receiver are narrowly tailored to ensure future compliance with this Court's orders and to remedy past harms. As to the first factor that the Court must consider in imposing contempt sanctions (i.e., the harm threatened by continued contumacy), the harm is particularly acute, because Illarramendi continues to harm the very investors whom he has already victimized. Regarding the efficacy of the proposed sanctions, Illarramendi has demonstrated that he poses a continued risk to the investing public, and absent incarceration and/or a financial penalty (as well as accounting for the funds already dissipated) there is little chance that such risk will diminish. Those sanctions are amply justified by Illarramendi's repeated and flagrant violations of this Court's orders.

At this point, there can be no dispute that Illarramendi requires coercion in order to comply with judicial orders. His blatant violations of this Court's injunction require punitive measures, and those proposed by the Receiver are narrowly tailored to cure the serious harms caused by Illarramendi's contempt. Accordingly, pursuant to its inherent powers and the available remedies under 18 U.S.C. § 401, the Court order the sanctions for civil contempt proposed by the Receiver. (Docket Entry No. 513-1).

7

## CONCLUSION

For the reasons set forth above, the Commission respectfully requests that this Court

issue contempt sanctions against Illarramendi in the manner set forth in the Receiver's proposed

Order.

Dated: January 23, 2013

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION
By its attorneys,

/s/   Rua M. Kelly
Rua M. Kelly (Mass. Bar No. 643351)
Kathleen Burdette Shields (Mass. Bar No. 637438)
LeeAnn Gaunt (Mass. Bar No. 630557)
33 Arch Street, 23rd Floor
Boston, Massachusetts  02110
Telephone:  (617) 573-8941 (Kelly direct)
Facsimile:   (617) 573-4590
E-mail: kellyru@sec.gov

## CERTIFICATE OF SERVICE

I, Rua M. Kelly, hereby certify that on January 23, 2013, I caused a true copy of the
foregoing document and its attachments to be filed through the ECF system.

/s/ Rua M. Kelly
Rua M. Kelly

8