UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br><br>               *v.*<br><br>FRANCISCO ILLARRAMENDI *et al.*,<br>    *Defendants*. | Civil No. 3:11CV78 (JBA)<br><br><br><br>December 5, 2013 |

**ORDER DIRECTING THE SEC TO CONDUCT AN
AUDIT AND MAKE REPORTS REGARDING THE RECEIVER**

Under the terms of the Amended and Restated Order Appointing Receiver (the "Receiver Order") [Doc. # 666], the Receiver is "entitled to reasonable compensation and expense reimbursement" for his efforts to recover assets on behalf of the victims of Defendant's fraud. (*Id.* ¶ 63.) As a condition of his appointment, the Receiver has agreed to comply with the SEC's Billing Instructions for Receivers in Civil Actions, which require that all fees and expenses be "necessary and reasonable" and provides that "excessive charges will not be paid." SEC Billing Instructions at 26, *reprinted in SEC v. We the People, Inc.*, No. 2:13-cv-14050 [Doc. # 4-2] (S.D. Fla. Feb. 4, 2013). Under these guidelines, "[c]harges for litigation will be paid only if the litigation is reasonably likely to produce a net economic benefit to the estate," and the Receiver must certify in each fee application that he is in compliance with this mandate. *Id.* Upon being appointed, the Receiver "acknowledge[d] that all applications for compensation are interim and are subject to a cost benefit review and final review at the close of the receivership," as well as Court approval. *Id.* at 1; (Receiver Order ¶ 63.)

Under the Receiver Order, the SEC reviews all fee applications before they are submitted to the Court. (*Id.*) To date, the Receiver has reportedly recovered approximately $342.2 million of approximately $622.2 million in estimated assets (*see* Fourth Interim Report, Ex. A [Doc. ## 745] at 1 n.1), and has submitted five Interim Applications for Fees and Expenses (the "Fee Applications") [Doc. # 243, 408, 519, 688, 769] totaling over $30 million (over $25 million of which has already been paid[1]). Each Fee Application has contained the representation: "We have been informed by the SEC that it has no objection to this Application." (1st Fee App. ¶ 37; 2d Fee App. ¶ 44; 3d Fee App. ¶ 50; 4th Fee App. ¶ 64; 5th Fee App. ¶ 64.) The SEC has not independently submitted to the Court any evaluation of the reasonableness of the Receiver's fees.

The Court has repeatedly expressed concern regarding the sizable fees that have been generated in this matter, which necessarily come at the expense of compensating victims of the fraud. "In considering applications for compensation by receivers and their attorneys, the courts have long applied a rule of moderation, recognizing that 'receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation.'" *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) (quoting *In re New York Investors, Inc.,* 79 F.2d 182, 185 (2d Cir. 1935) (alteration in original)).

Fees must not be "extravagant," *In re New York Investors, Inc.,* 79 F.2d at 185, and courts "must scrutinize fee applications to ensure that they are reasonable" and "exercise

---

[1] The Receiver's Fifth Fee Application [Doc. # 769], requesting over $5.4 million, is pending with the Court and will not be acted upon until after the completion of the SEC's audit outlined in this Order.

2

discretion to avoid even the appearance of a windfall," *S.E.C. v. Goren*, 272 F. Supp. 2d 202, 206 (E.D.N.Y. 2003). "As a policy matter, the rule of moderation makes particular sense in circumstances such as those here, where hundreds of investors and creditors have been defrauded, and victims are likely to recover only a fraction of their losses." *Byers*, 590 F. Supp. 2d at 645.  Even where a well-regarded law firm assists the efforts of the Court and the Receiver to compensate victims, its retention is undertaken in the public interest and it has an obligation to contain costs even beyond the ethical obligations that apply with private clients.  *S.E.C. v. Northshore Asset Mgmt.*, No. 05-cv-2192 (WHP), 2009 WL 3122608, at *1 (S.D.N.Y. Sept. 29, 2009) ("[W]hile hourly rates of $475 to $865 may be the standard rates the Receiver and Kaye Scholer charge their private fee-paying clients, the receivership was undertaken in the public interest for the benefit of defrauded investors.").

Among the factors considered by the Court in exercising its discretion to determine the appropriate award of fees is the cost-efficiency of the Receiver's work in terms of assets recovered for victims, *see* SEC Billing Instructions at 26, "the complexity of problems faced, the benefits to the receivership estate, the quality of the work performed, and the time records presented," *SEC v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).

Although there is an obligation to monitor fees, "courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in [a fee] application."  *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).  In a large securities fraud action such as this one, the Court necessarily relies upon the SEC to discharge its duties to protect the victims of fraud and

monitor the reasonableness of the legal fees being charged to the Receivership. If the SEC abdicates this duty, the public interest is not fully protected. *See, e.g., Northshore Asset Mgmt.*, 2009 WL 3122608, at *1 ("While Judge Owen relied justifiably on the SEC to discharge its review obligation, the agency was asleep at the switch. Thus, the possibilities for abuse were limited only by the size of the estate.").

Accordingly, the SEC is ordered to take the following actions:

1. The SEC shall audit the five interim Fee Applications for compensation and reimbursement of expenses that have been filed to date, and all bills for professional services and expenses that have been paid.

2. The SEC audit shall include a line by line review of each time entry or expense, and must categorize each expense as either reasonable, questionable, or unreasonable in the SEC's view.

3. The Receiver John Carney; his legal advisors Baker & Hostetler LLP; FTI Consulting, Inc.; Higgs & Johnson; Garrison, Levin-Epstein, Chimes, Richardson & Fitzgerald; and all other entities that have directly or indirectly received proceeds from Fee Applications in this action are directed to fully cooperate with the SEC in its audit and provide any additional information to the SEC that the SEC determines in its discretion is needed to comply with this Order.

4. The audit and reports required by this Order shall be submitted by February 3, 2014 and signed by the Regional Director of the SEC's Boston

Regional Office, and the SEC attorneys responsible for the conduct of this litigation.

                                        IT IS SO ORDERED.

                                        /S/
                                  Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of December, 2013.