UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>        *Plaintiff*,<br>        *v.*<br>FRANCISCO ILLARRAMENDI *et al*,<br>        *Defendants*. | Civil No. 3:11cv78 (JBA)<br><br>January 16, 2014 |

**ORDER MODIFYING THE COURT'S ORDER REQUIRING THE SEC TO
CONDUCT AN AUDIT AND MAKE REPORTS REGARDING THE RECEIVER**

On December 5, 2013, the Court issued an order (the "Audit Order") [Doc. # 798] directing the SEC to conduct a line-by-line audit of the Fee Applications submitted by the Receiver in this action to date. The SEC has now submitted [Doc. # 812] a Preliminary Response, detailing its efforts to comply with the Audit Order and the actions that it had taken beforehand to fulfill its responsibility to the public to monitor fees in this matter. It now requests that the Court consider "whether a further line-by-line audit of, and report on, the Receiver's submitted fee applications is necessary, given the significant time such an audit and report would require." (Preliminary Response at 14.) For the reasons that follow, the Audit Order is modified, and a further line-by-line audit is not required.

In its Audit Order, the Court noted that it had "repeatedly expressed concern regarding the sizable fees that have been generated in this matter, which necessarily come at the expense of compensating victims of the fraud." (Audit Order at 2.) Although the Court has an obligation to ensure that such fees are reasonable and not extravagant, it necessarily has to rely upon the SEC to assist it in discharging this duty and to review the voluminous Fee Applications. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) ("[C]ourts have recognized that it is unrealistic

to expect a trial judge to evaluate and rule on every entry in [a fee] application."). The Receiver's Fee Applications did not give any detail of the SEC's undertaking in fulfilling this obligation, and the SEC had not submitted any responses to the Fee Applications.

The SEC's Preliminary Response now clarifies that its "counsel has been monitoring and reviewing the Receiver's bills throughout the Receivership, and has negotiated significant discounts and deductions on each of the fee applications that were submitted to the Court." (Preliminary Response at 2.) LeeAnn Gaunt, Assistant Regional Director of the SEC Boston Regional Office, "estimates that she spent between 20 and 30 hours reviewing each of the fee applications." (*Id.* at 4.) The SEC represents that it has both ensured compliance with its Billing Instructions, and also examined the larger question of whether the Receiver's fees are justified in light of the "overall value provided to the Receivership Estate as a result of his work." (*Id.*)

As the SEC notes, while the $35.2 million in fees requested to date is substantial, the Receiver's skilled efforts have added substantial value to the Receivership Estate with approximately $357 million in assets recovered. (*Id.* at 8–9 & n.3.) These fees (including the pending Fifth Fee Application) represent approximately 12% of the total value of the cash assets recovered as of November 30, 2013. (*Id.* at 9.) As the SEC notes, this ratio is in line with the fees expended in other complex SEC actions requiring receivers and compares much more favorably with other instances in which courts have expressed concerns regarding fees. *See e.g., S.E.C. v. Northshore Asset Mgmt.*, No. 05cv2192 (WHP), 2009 WL 3122608, at *1 (S.D.N.Y. Sept. 29, 2009) (SEC audit of fees ordered where the receiver recovered only $2.4 million in assets but requested over $11 million in fees and expenses); *S.E.C. v. Goren*, 272 F. Supp. 2d 202, 203 (E.D.N.Y. 2003) (reducing fees to

approximately 30% of assets recovered where the receiver had requested $1.8 million in fees but only recovered $2.1 million for the estate).

Given the SEC's representations in its Preliminary Response, and the Court's own observations of the value that the Receiver has provided to the estate, the Court concludes that a further line-by-line audit by the SEC is not necessary at this time, given the substantial time and public expense that such an audit would require.  Going forward, the SEC is directed to submit a response to each fee application submitted outlining whether the Commission consents or objects to the fees requested and describing the steps it has taken to ensure that such fees are reasonable.[1]  In particular, the SEC is to work with the Receiver to ensure not only that fee applications comply with the SEC's Billing Instructions, but also that the fees requested are justified by the net economic benefit that they will provide to the estate.[2]

---

[1] The SEC should submit such a response to the pending Fifth Fee Application [Doc. # 769].

[2] As the Receiver acknowledged upon appointment, "all applications for compensation are interim and are subject to a cost benefit review and final review at the close of the receivership," as well as Court approval.  SEC Billing Instructions at 1; (Receiver Order [Doc. # 666] ¶ 63.)  Accordingly, at the close of the Receivership, the Court will consider whether—in light of subsequent fee applications and the SEC's accompanying responses—a complete line-by-line audit, as contemplated in the Audit Order, is necessary.

Accordingly, the Court's Audit Order [Doc. # 798] is MODIFIED as set forth above.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of January, 2014.

4