UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>            *v.*<br>FRANCISCO ILLARRAMENDI, *et al.*,<br>    *Defendants*. | Civil No. 3:11cv78 (JBA)<br><br>October 27, 2014 |

**ORDER GRANTING THE RECEIVER'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN AND INITIAL DISTRIBUTION**

The Receiver has moved [Doc. # 905] for Approval of his Proposed Distribution Plan and Initial Distribution [Doc. # 905-1] (the "Distribution Plan" or "Plan"). For the reasons that follow, the Receiver's Motion is granted and the proposed Distribution Plan is approved.

**I.    Background**

As set forth in the Court's Order [Doc. # 800] granting the Receiver's motion to establish claim administration procedures, the Court directed the Receiver to establish a claims administration procedure for distributing the assets recovered on behalf of the Receivership Entities to the victims of Defendant's fraud and to set "forth the Receiver's view of how classes of creditors should be grouped, prioritized and potentially subordinated as well as the extent to which they will receive distributions in order to achieve a fair and equitable distribution of the Receivership Estate's assets among all Claimants." (*Id.* at 3 (internal quotation marks omitted).)

The Receiver has now submitted his proposed Distribution Plan, under which he seeks to make an Initial Distribution of $264,580,160 of recovered assets, which represents full satisfaction of the claims of the Class One through Three creditors (the

Administrative, Tax, and Convenience Class Claims) and approximately 82% of the Class Four general unsecured creditors' claims. (*See* Receiver's Notice of Increased Proposed Initial Distribution [Doc. # 936] at 2).[1]

In accordance with the Scheduling Order [Doc. # 907], the Court received four objections to the proposed Distribution Plan, all but one of which has been withdrawn based on agreements with the Receiver (*see* Orders Granting Motions to Withdraw of MK Capital, Christopher Luth, and Frank Lopez [Doc. ## 930, 937]), and held a hearing on the Receiver's motion on October 20, 2014. At the hearing, the SEC expressed its full support for the Plan and indicated that the Receiver had consulted with and accepted feedback from it in devising the Plan and that the SEC was very pleased with the returns that the Receiver was able to realize for investors. Attorneys for Creditors Balanchine Corporation, Brentwood Services, Inc., Edenwood Holdings, S.A., and Goldenbird Finance; Banco General, S.A.; Fractal Fund Management; Petróleos de Venezuela, S.A. (PDVSA); Pertshire Investment and Ponter Investments; and a group of Costa Rican creditors appeared at the hearing to express full support for the Plan.

## II.   Discussion

The only party with a remaining objection to the Distribution Plan is Ramon Illarramendi, the father of Defendant Francisco Illarramendi, who claims a 50%

---

[1] The Initial Distribution consists of the amount of cash recovered by and available to the Receiver less the amount that will be held in a reserve fund sufficient to pay any disputed claims in the event that the Court determines that such claims must be paid and to fund the administrative expenses of the Receivership. (*See* Receiver's Mem. Supp. [Doc. # 906] at 15–16.) The Receiver anticipates that he has recovered sufficient assets such that he will ultimately pay 92% of the general unsecured creditors' allowed claims. (*See* Receiver's Mem. Supp. [Doc. # 906] at 1.)

ownership interest in Michael Kenwood Energy & Infrastructure ("MKEI") and a 75% ownership interest in MK Nuclear Energy ("MK Nuclear"). Although Mr. Illarramendi acknowledges that he did not contribute any cash, securities or other assets to MKEI, MK Nuclear or any other Receivership Entity and that he "did not participate in the ministerial or day-to-day management" of these companies, he nevertheless asserts an ownership interest in these entities based on non-cash contributions, which include his "sweat equity," business development, and consulting services. (Illarramendi's Obj. [Doc. # 120] at 2, 7.) The Receiver has rejected Mr. Illarramendi's claim on the basis that documentary evidence from the Receivership Entities does not support Mr. Illarramendi's claim that he "provided value to MKEI and MK Nuclear for which he should be awarded an allowed claim." (Receiver's Reply [Doc. # 922] at 5.)

Mr. Illarramendi contends that the Receiver has denied him access to books and records of the Receivership Entities that he needs to substantiate his claim and that the denial of his claim and access to related records constitutes a deprivation of due process. There is no dispute that "parties with claims to receivership property 'are entitled to their day in court.'" *Eberhard v. Marcu*, 530 F.3d 122, 136 (2d Cir. 2008) (quoting *Wheaton v. Daily Tel. Co.,* 124 F. 61, 62 (2d Cir. 1903)). However, as the Receiver notes, the approval of this Distribution Plan will not deny Mr. Illarramendi his "day in court" because as part of the claims administration process, Mr. Illarramendi still has the opportunity to seek judicial review of his objection to the Receiver's denial of his claim. (*See* Receiver's Mot. to Establish Claims Admin. Proc. [Doc. # 709-1] ¶¶ 15–16.)

While maintaining that Mr. Illarramendi does not have a valid claim, the Receiver has reserved over $7 million for the claim, which he has determined is its maximum

potential value.² (*See* Receiver's Reply at 9.) To the extent that Mr. Illarramendi contends that there are documents in the Receiver's possession that would substantiate his claims, he can serve a formal request for discovery upon the Receiver as part of the claims administration process.³ Thus, Mr. Illarramendi will be provided with due process to contest the Receiver's rejection of his claim.

Finally, Mr. Illarramendi contends that "[u]pon information and belief, claimants including Fractal Fund Management and PDVSA have realized gains and not losses" and thus the Distribution Plan should "be deferred while he is given a fair opportunity to access his documents and discover, and prove his case." (Illarramendi's Obj. at 15–16.) At the hearing, Mr. Illarramendi narrowed his objection and clarified that it now only extends to seeking a stay of the distributions to Fractal and PDVSA, while he has an opportunity to demonstrate that these claimants should not receive the designated distribution amounts. Not surprisingly, Fractal and PDVSA, who expressed strong support for the Receiver's Distribution Plan, equally strongly objected to Mr. Illarramendi's request. Mr. Illarramendi has offered no evidence in support of his

---

² The Receiver has filed under seal an affidavit setting forth the basis for his valuation of Mr. Illarramendi's claimed interest, which Mr. Illarramendi does not contest. (*See* Daddona Aff. [Doc. # 939].)

³ While Mr. Illarramendi contends that he submitted two letters to the Receiver "describing his lack of access to information relevant to his claims and requesting such access," he does not describe the scope of such requests. (Illarramendi's Obj. at 8.) At the hearing, the Receiver represented that he had agreed that Mr. Illarramendi could submit targeted requests for discovery within the next two weeks and that the Receiver would then consider and attempt to resolve such requests with Mr. Illarramendi and that Mr. Illarramendi would be able to file a motion with the Court if he believes that he has not been provided with documents to which he is entitled.

contentions regarding Fractal and PDVSA. At the hearing, the Receiver—who, acting at the appointment of the Court, has the duty to protect the Receivership Estate, recover assets for victims, and evaluate claims (*see* Receiver Order [Doc. # 666])—represented that he has considered Mr. Illarramendi's contentions and found them to be unsupported by the record. Because Mr. Illarramendi has offered nothing to support his assertions, no basis exists for staying the distributions to Fractal and PDVSA, which would potentially result in the unraveling of the entire carefully negotiated and structured Distribution Plan.[4]

---

[4] Mr. Illarramendi claims standing to object to the payment of claims to PDVSA and Fractal despite the reserve for 100% of the value of his potential claim because he contends that his claim is likely to be placed in a subordinated class and thus, even if approved, he would not receive 100% of the value of his claim that has been reserved. The proportion of his approved claim that he will ultimately be paid will depend upon the pro rata multiplier, which is the proportion of allowed claims out of the total recovered funds. (*See* Order Granting Receiver's Mot. to Establish Claim Admin. Procs. at 2.) Thus, he contends, his recovery "is driven by who is in those superior classes," which will "drive what cascades down." (Hr'g Tr. [Doc. # 940] at 27.) Claimants to receivership property have standing to object to a distribution plan where the method of distribution will affect their financial interests such that they have "a legitimate interest in the method of distribution of the companies' remaining assets." *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1113–14 (9th Cir. 1999), as amended (Mar. 23, 2000); *see also Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C.*, 467 F.3d 73, 77 (2d Cir. 2006) (holding that "creditors who suffered economic injuries that are fairly traceable to WorldCom's violations of the securities laws" and who sought "financial compensation to redress those losses . . . meet[] the requirements for Article III standing" to object to an SEC plan to distribute assets recovered on behalf of defrauded investors). However, even though Mr. Illarramendi claims that if he can prove PDVSA and Fractal are not entitled to a recovery of the intended distributions and there should be more remaining for distributions to others, including himself, the absence of any record basis for his conclusory claims deprives him of the standing he claims.

Absent further objection, the Court concludes that the proposed Distribution Plan is "fair and reasonable," *SEC v. Wang,* 944 F.2d 80, 81 (2d Cir. 1991) (distribution plan should be "reviewed under [the District Court's] general equitable powers to ensure that it is fair and reasonable"), and it is therefore approved.

**III.    Conclusion**

1.      The Receiver's Motion [Doc. # 905] for Approval of Distribution Plan and Initial Distribution is **GRANTED**.

2.      The Plan is **APPROVED**.

3.      The classification of claims ("Claims") listed on Exhibit 1 to the Plan (the "Claims Schedule") and treatment of such Claims under the Plan are **APPROVED**.

4.      Subject to the requirement that the Receiver establish an adequate Reserve Fund pursuant to Section 3.1.2 of the Plan, the Initial Distribution to Claimants in an amount $264,580,160 (the "Initial Distribution Amount") is **AUTHORIZED**.

5.      The releases set forth in the Plan are **APPROVED**.

6.      Claims classified by the Receiver in Class 1 (Administrative Claims), Class 2 (Tax Claims), and Class 3 (Convenience Class Claims) (collectively, the "Class 1–3 Allowed Claims") shall be satisfied in full in the Initial Distribution.  No claims are currently scheduled in Class 5.

7.      The Initial Distribution Amount shall be apportioned among Claimants holding allowed Class 4 unsecured claims on a pro rata basis.  Each Class 4 Claimant shall receive in the Initial Distribution a payment equal to the Allowed Amount of such Claimant's Class 4 Claim multiplied by the quotient of (i) the Initial Distribution Amount, minus the aggregate Allowed Amount of the Class 1–3 Allowed Claims, divided

by (ii) ninety-two percent (92%) of the Allowed Amount of all Allowed Claims in Class 4 on the date of the Initial Distribution, *provided*, *however*, that such payment shall not exceed ninety-two percent (92%) of the Allowed Amount of such Class 4 Claim.

8.   After (a) satisfaction in full of the Allowed Amount of all Class 1–3 Claims and (b) satisfaction of ninety-two percent (92%) of the Allowed Amount of all Class 4 Claims, each Class 4A (In-Kind Contribution Claim) Claimant shall receive its pro rata share of any remaining portion of the Initial Distribution Amount.

9.   Except as otherwise set forth in the Plan, if a Holder has filed a timely objection to a Notice of Determination or has appealed a final order of this Court approving the Plan, the Holder is disqualified from participating in the Initial Distribution and distributions on Subsequent Distribution Dates until such objection or appeal is resolved.

10.   Nothing in this Order shall restrict the Receiver's authority to compromise and settle any claim, or resolve any objection to a Notice of Determination, at any time, as appropriate, without further order of this Court.

11.   The Distributions under the Plan shall be made from Available Cash held by the Receivership Entities.  The Initial Distribution shall occur within 45 days of the Effective Date.

12.   All Distributions shall be made via check or wire transfer in accordance with the Plan.  All funds represented by void checks not timely reissued shall be forfeited by the Claimant, revert to the Receivership Entities and be treated in accordance with the Plan.

13.   Any Claimant who receives a payment pursuant to the Plan shall be

deemed to have released that portion of the Claim(s) for which payment was made in accordance with the Plan.

14. Nothing in this Order shall supersede this Court's Claims Administration Order [Doc. # 800] or Amended and Restated Order Appointing the Receiver [Doc. # 666] and functional predecessors of same.

15. The Plan shall be binding on the Receiver, the Receivership Entities, and all holders of claims against the Receiver, the Receiver's Counsel, or the Receivership Entities, whether or not such claims have been timely asserted.

16. As to contested matters, causes of action, or threatened causes of action, nothing in the Plan shall constitute or be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations. The Plan shall not be construed to constitute advice on the tax and other legal effects of the Plan as to claims against the Receivership Entities.

17. Except to the extent that federal law is applicable or the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut without giving effect to its conflicts of law principles that would result in the application of any other law.

18. The Court retains jurisdiction over the matters set forth in the Plan and enforcement of the Plan's provisions.

IT IS SO ORDERED.

        /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of October, 2014.