UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Securities and Exchange Commission,
        *Plaintiff,*

        *v.*                                          Civil No. 3:11-cv-78 (JBA)

Francisco Illarramendi, Highview Point Partners,          March 1, 2018
LLC and Michael Kenwood Capital Management,
LLC,
        *Defendants.*
        *and*

Highview Point Master Fund, Ltd., Highview Point
Offshore, Ltd., Highview Point, LP, Michael
Kenwood Asset Management, LLC, MK Energy and
Infrastructure, LLC, MKEI Solar, LP,
        *Relief Defendants,*
        *and*

Ramon A. Illarramendi,
        *Claimant.*

## RULING AFFIRMING RECEIVER'S DETERMINATION DENYING CLAIMS OF RAMON A. ILLARRAMENDI [DOC. # 1076]

Two final creditor claims submitted to the Court-appointed Receiver under the Claims

Administration Order [Doc. # 800] remain unresolved in this action claiming misappropriation of

investor assets by an unregistered investment advisor in violation of Section 206(1), (2), and (4) of

the Investment Advisors Act of 1940 and Rule 206(4)-(8) thereunder. (Compl., First Am. Compl.,

Second Am. Compl. [Doc. ## 1, 122, 190].) These remaining claims asserted against Receivership

Entities by Ramon A. Illarramendi ("RAI") were timely filed on the approved Proof of Claim Form

dated December 29, 2011 and augmented by RAI's Supplemental Statement of Proofs of Claims asserting 50% ownership of each of Receivership Entities MK Energy and Infrastructure (MKEI) and Michael Kenwood Nuclear Energy LLC (MK Nuclear) and an effective 75% stake in MK Nuclear derived from MKEI's 50% ownership of MK Nuclear. (Mem. Law Supp. Receiver's Mot. [Doc. # 1076-1] at 6-8, Ex. A and B to *id.* [Doc. ## 1076-3, 1076-4].)

RAI's claims were denied by the Receiver on December 20, 2013 utilizing the approved Net Investment Method. The reason provided was "[c]laims not supported by the documentation provided in connection therewith or in the Receivership Estate's books and records." (Ex. C to *id.* [Doc. # 1076-5] at 2, 6.) RAI timely objected to this determination on January 30, 2014. (*Id.* at 4, 8.) To permit the creditors with approved claims to receive distributions while RAI's claims were pending, a reserve fund of $7,375,000 was established to pay any claims found by the Court to be owed to RAI.

RAI asserts that

> [w]hen I founded MKEI and MKN and entered into an agreement with MKG whereby the Group became my partner and also the administrator of these companies, I delegated all record-keeping and other back-office tasks to MKG, placing my trust and confidence in the Managing Directors. I would naturally assume that the pertinent corporate information was carefully preserved and that the Receiver, now standing in the shoes of the Receivership entities, would in his turn have also adequately preserved all the required documentation.

(Ex. D to Mem. Law Supp. Receiver's Mot. [Doc. #1076-6] at 11.) In his Opposition [Doc. # 1097], RAI claims that the corporate records would prove his ownership in the two Receivership entities but they have been under the Receiver's control and that he has been denied access to his correspondence and documents. (RAI Opp'n to Receiver's Mot. at 10-11.) However, the Receiver

reviewed the Receivership Estate's corporate books and records under his control, and found that RAI's claims lacked support therein.

Moreover, RAI was provided with 70,000 plus documents from the Receiver for RAI's use in supporting his claims. (Mem. Law Supp. Receiver's Mot. at 9, 15.) His Supplemental Statement to Proofs of Claim consists of an MKG Organization Structure Chart and the transcript of his deposition taken October 7, 2011, while his Objection to the Receiver's Determination of Claim includes Oto Habeck's email to RAI dated February 1, 2010 with attached Restated Limited Liability Company Agreement of MK Energy and Infrastructure, LLC, December 26, 2009.[1] (Exs. B and D to Receiver's Mot. [Doc. ## 1076-4 and 1076-6].)

Despite his prolix filings, RAI has never quantified the specific dollar value of his claims nor has he produced any evidence cognizable under the Net Investment Method used by the Receiver of his claimed ownership interest, instead offering only a description of his history with and conceptual contribution to the formation of these entities. He makes no claim to have invested money in nor loaned or transferred money to these Receivership Entities, nor that he had any day-to-day involvement in their operations. His non-cash investments are his lifetime international work, contacts, ideas and concepts that he brought to the incorporation of MKEI and MKN, including sourcing an investment. He disputes the Receiver's characterization of his agreement with MKG as any kind of "gifting" of shares to him, instead conclusorily claiming that "the

---

1 Schedule I of that LLC agreement, ([Doc. # 1076-6] at 54), reflects that RAI made no capital contribution, had no profits interest or economic interest units but had 5000 "Membership Interest Units" and "50.00% Interest." According to Exhibit 1 to the LLC agreement, Membership Interest Units "shall mean any of the Units representing Membership Interest held by a Member that are not Profits Interest Units or Economic Interest Units held by an Assignee[,]" (*id.* at 58). This document confirms that RAI made no principal or any type of financial investment in or loan to MKEI.

company that eventually came to be known as Michael Kenwood Energy and Infrastructure was *solely my property*." (RAI Opp'n to Receiver's Mot. at 8.) He describes "RAI's Company" as his creation related to clean energy generation out of which he agreed to give MKG 50% of as advance payment for MKG's efforts and services related to incorporation, personnel, administration, and legal costs. (*Id.*) RAI asserts that the Receiver has wrongfully denied "the validity and value of my creation of certain companies and contributions such as 'sweat equity'" and has misapplied the Net Investment Method approved by the Court. (*Id.* at 13.) He likens his role to that of entrepreneurs developing new companies by contributing their labor. (*Id.* at 20.)[2]

The Receiver and RAI have been unable to resolve RAI's objection to the denial of his claims, and thus under the Claims Administration Order procedure, the Receiver has now moved to affirm his determination denying RAI's claims and RAI has filed his opposition to the Receiver's motion with "related Prayer for Relief." (Receiver's Mot., RAI Opp'n to *id.*)[3]

Under the Claims Administration Order, RAI bears the burden of proof to establish the validity of his claims in this proceeding. He seeks an evidentiary hearing at which he represents he would show via emails and documents that he brought to MKG the concepts which led to the incorporation of MKEI and MK Nuclear and their Private Equity Assets. Since he proffers no relevant documents showing entitlement to recovery of investor funds, an evidentiary hearing will not be held. While non-cash investments such as "sweat equity" investment theoretically could

---

2  RAI's references to *Gabellli v. SEC*, 568 U.S. __ (2013) and *Kokesh v. SEC*, 137 S. Ct. 1635 (June 5, 2017), *id.* at 6, 23-24, do not have relevance to the central issue of whether the Receiver had a valid basis for denying RAI's claims to distributions from recaptured investor funds.

3  RAI now represents himself, although he previously had counsel. He is a long-time member of the Venezuelan Bar.

provide a basis for a claim to recovery, RAI's description of his claimed investments do not demonstrate tangible or calculable investments and RAI has failed to put forth any evidence that could support a valuation of his claimed non-cash investment for evaluation under the Net Investment Method, under which "a claimant's Allowed Amount is the principal balance deposited with the Receivership entities reduced by any funds the claimant has previously received, including interest, earnings and return of principal or capital." RAI did not interpose any objection to the Administration Order approving this methodology, and in any event, the Net Investment Method has been recognized by courts as sound. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. 2011) (approving use of method).

The barren record from RAI purporting to support his claims and the Receiver's representation that the Receivership Entity books and records which were examined showed no principal contributed by RAI to Receivership entities, demonstrate that the Receiver's denial of his claims should be affirmed. Contrary to RAI's assertion, this grant of the Receiver's motion is not "akin to executing a forfeiture of [his] assets without due process of law and without basis on any forfeiture statutes[,]" (RAI Opp'n at 23), in the absence of evidence that RAI is entitled to compensation for the "asset" he claims.[4]

---

[4] RAI further but irrelevantly decries the Receiver's alleged factual misrepresentation related to the fraud of his son Francisco Illarramendi, the Receiver's "thoroughly deficient performance, violation of his fiduciary duties to all parties in the Receivership," erroneous validation of the PDVSA claims and others and divestiture of certain Private Equity Assets at 'fire sale' prices.

For the reasons set forth above, the Receiver's Motion Affirming the Denial of RAI's Claims is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of March 2018.