UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>v.<br><br>FRANCISCO ILLARRAMENDI, HIGHVIEW POINT PARTNERS, LLC and MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC,<br><br>               Defendants,<br><br>and<br><br>HIGHVIEW POINT MASTER FUND, LTD., HIGHVIEW POINT OFFSHORE, LTD., HIGHVIEW POINT LP, MICHAEL KENWOOD ASSET MANAGEMENT, LLC, MK ENERGY AND INFRASTRUCTURE, LLC, and MKEI SOLAR, LP,<br><br>               Relief Defendants. | CASE NO. 11-CV-00078 (JBA)<br><br><br><br><br><br>**ELEVENTH INTERIM APPLICATION FOR FEES AND EXPENSES BY THE RECEIVER AND HIS ADVISERS AND MOTION FOR AN ORDER AUTHORIZING RECEIVER TO RELEASE THE REMAINING HOLDBACK**<br><br><br><br><br><br><br>**December 20, 2019** |

John J. Carney, Esq. Receiver

And

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201
*Attorneys for Receiver*, JOHN J. CARNEY, ESQ.

TO:   THE HONORABLE JANET B. ARTERTON
      UNITED STATES DISTRICT JUDGE

John J. Carney, Esq., Court-Appointed Receiver for Highview Point Partners, LLC; The Michael Kenwood Group, LLC; Michael Kenwood Capital Management, LLC; Michael Kenwood Asset Management, LLC; MK Energy and Infrastructure, LLC; MKEI Solar, LP; MK Automotive, LLC; MK Technology, LLC; Michael Kenwood Consulting, LLC; MK International Advisory Services, LLC; MKGAtlantic Investment, LLC; Michael Kenwood Nuclear Energy, LLC; MyTcart, LLC; TUOL, LLC; MKCM Merger Sub, LLC; MK Special Opportunity Fund, Ltd.; MK Venezuela Fund, Ltd.; Short Term Liquidity Fund, I, Ltd.; MK Master Investments, LP; MK Investments, Ltd.; MK Oil Ventures, LLC; Highview Point Master Fund, Ltd.; Highview Point Offshore, Ltd.; and Highview Point LP (collectively, the "Receivership Entities"), and Baker & Hostetler LLP ("B&H"), as counsel for the Receiver, hereby submit this Application for allowance of compensation and reimbursement of expenses incurred by the Receiver, B&H, FTI Consulting, Inc. ("FTI"), accountants for the Receiver, and Higgs & Johnson ("H&J"), Cayman Islands counsel for the Receiver, during the period from July 1, 2018 through September 30, 2019 (the "Compensation Period")[1].

The Receiver also respectfully submits this motion for an order authorizing the Receiver to immediately release 85% of the currently remaining holdback that was applied to fees and expenses incurred by B&H, and FTI in the amounts of $924,164 and $795,296 respectively, and 100% of the currently-remaining holdback that was applied to the fees and expenses incurred by H&J in the amount of $2,668.

The Receiver has recovered approximately $445.5 million and distributed more than $330 million to claimants and thus, except as detailed in this fee application, the Receiver's work

---

[1] Capitalized terms are used as they are defined in the Receiver Order and prior fee applications.

1

is largely complete and he believes it is appropriate for the Court to release the holdback at this time.  In recognition of the public service nature of the engagement, the Receiver and FTI have both agreed to voluntarily reduce, and not seek payment of, 15% of the remaining holdback resulting in a combined additional savings to the Receivership Estate of $303,434.  This savings is in addition to the millions of dollars of rate discounts, voluntary write-offs and deductions taken by the Receiver and his retained professionals throughout the Receivership.  As the work of the Receivership is close to complete, the Receiver also respectfully seeks an order from the Court that this fee application and any future fee application no longer be subject to any holdback.  The Receiver has conferred with counsel for the Securities and Exchange Commission (the "SEC") and they consent to this motion and the relief sought herein.

## THE FEE APPLICATION

### SUMMARY OF PROFESSIONAL FEES AND REIMBURSEMENT OF EXPENSES REQUESTED

1.      This Application has been prepared in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Guidelines").

2.      Pursuant to the Initial Receiver Order dated February 3, 2011, upon motion of the SEC, the Court appointed John J. Carney, Esq. the Receiver over all assets "under the direct or indirect control" of Defendant MKCM, LLC and Relief Defendants, MKAM, LLC, MK Energy and Infrastructure, LLC, and MKEI Solar, LP.

3.      On March 1, 2011, June 22, 2011, and January 4, 2012, this Court entered Amended Orders Appointing the Receiver ("Amended Receiver Orders"), adding entities to the Receivership and changing certain reporting requirements.

4.      On March 1, 2013, this Court entered an Amended and Restated Order Appointing Receiver (the "Receiver Order") in connection with the Highview Point Settlement. The Receiver Order supersedes the Initial Receiver Order and the Amended Receiver Orders.

5.      The Receiver and B&H attorneys and paraprofessionals have expended 329 hours working on this matter during the fifteen-month Compensation Period.  The Receiver and B&H seek allowance of compensation for services rendered during the Compensation Period with respect to the Receivership Estate in the amount of $186,471 and reimbursement of actual and necessary expenses in the amount of $16,088.[2]

6.      The Receiver retained FTI as the forensic accountants for the Receivership Estate. FTI professionals expended a total of 63 hours working on this matter during the Compensation Period, and seek allowance of compensation for services rendered in the amount of $20,364.

7.      The Receiver retained H&J, a Cayman Islands-based law firm, to assist in legal matters related to the Cayman Islands.  H&J professionals seek an allowance for services rendered in the amount of $16,602 and reimbursement of actual and necessary expenses in the amount of $22.

8.      The SEC has orally informed the Receiver that they have no objection to this application and will be filing a response pursuant to the Court's Order dated January 16, 2014. (Dkt. No. 817.)

**A.  Standardized Deductions and Discounts**

---

[2] The amounts sought reflect significant discounts from the cost of the work performed, as the Receiver and FTI took significant additional voluntary reductions on top of those negotiated and agreed to at the time of the Receiver's appointment. The amount of these discounts and reductions is set forth in Paragraphs 11 through 14.

9.     At the time of the Receiver's appointment, the Receiver, B&H, FTI and H&J agreed to several additional reductions and discounts beyond those specified in the SEC Guidelines:

    a.  The Receiver and B&H agreed to a capped hourly rate of $495 for the Receiver and for partner Patrick Hannon, a significant discount from their standard billing rates. The Receiver and B&H also agreed, at the time of their appointment, to an 18% reduction in the hourly rates of all New York-based B&H attorneys and paraprofessionals.

    b.  At the time of FTI's appointment, FTI agreed to a capped hourly rate of $495 for Phil Daddona, a significant discount from his standard billing rate.  FTI also agreed, at the time of its appointment, to an 18% reduction in the hourly rates of all of its professionals.

    c.  At the time of H&J's appointment, H&J also agreed to an 18% reduction in the hourly rates of all of its professionals.  The H&J invoices reflect that discount.

10.     Pursuant to the SEC Guidelines, B&H, FTI and H&J seek reimbursement only for the actual costs of their expenses.  B&H, FTI and H&J have not included the amortization of any investment, equipment or capital outlay in any request for expense reimbursement.  B&H, FTI and H&J have not sought reimbursement for any travel expenses during the Compensation Period including mileage, taxis or car service.[3] Nor does B&H, FTI or H&J seek the reimbursement of overtime meals, secretarial time, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services) or clerical overtime.

**B.  <u>Cost Savings to the Estate</u>**

11.     In total, the Receiver and B&H seek $186,471 in fees and $16,088 in expenses. B&H recognizes the public service nature of the engagement, and accordingly has discounted all New York-based professionals' and paraprofessionals' rates by 18%.  In the Compensation

---

[3] There was no reimbursable travel billed by B&H, FTI or H&J during the Compensation Period.

Period, the Receiver and B&H provided combined discounts and additional credits totaling approximately $53,374 in relation to their standard fees and expenses.

12.     In total, FTI seeks $20,364 in fees.  FTI recognized the public service nature of the engagement, and accordingly discounted all of its professionals' and paraprofessionals' rates. In the Compensation Period, FTI provided combined discounts and credits of $25,442 in relation to its standard fees and expenses.

13.     H&J seeks $16,602 in fees and $22 in expenses for this Compensation Period. H&J recognized the public service nature of the engagement, and accordingly discounted all of its professionals' and paraprofessionals' rates by 18%.

14.     Accordingly, these discounts and credits have collectively saved the Estate approximately $82,461 in the Compensation Period when compared to B&H's, FTI's and H&J's standard billing rates and standard practices for charging expenses.

15.     Pursuant to the SEC Guidelines, the following exhibits are attached:

a.  a Certification regarding compliance by the Receiver and B&H with the SEC Guidelines (attached as Exhibit A);

b.  a Certification regarding compliance by FTI with the SEC Guidelines (attached as Exhibit B);

c.  a Certification regarding compliance by H&J with the SEC Guidelines (attached as Exhibit C);

d.  a Fee Schedule setting forth all B&H professionals and paraprofessionals who have performed services in this case during the Compensation Period, the capacity in which each individual is employed by B&H, each individual's customary hourly billing rate; the hourly billing rate charged by B&H for services performed by each individual, the aggregate number of hours expended in this matter, and the fees billed (attached as Exhibit D);

e.  a Fee Schedule setting forth all FTI professionals and paraprofessionals who have performed services in this case during the Compensation Period, the capacity in which each individual is employed by FTI, each individual's customary hourly billing rate; the hourly billing rate charged by FTI for services performed by each

individual, the aggregate number of hours expended in this matter, and the fees billed (attached as Exhibit E);

f.  a Fee Schedule setting forth all H&J professionals and paraprofessionals who have performed services in this case during the Compensation Period, the capacity in which each individual is employed, each individual's customary hourly billing rate; the hourly billing rate charged by H&J for services performed by each individual, the aggregate number of hours expended in this matter, and the fees billed (attached as Exhibit F);

g.  a schedule specifying the categories of expenses for which the Receiver and B&H seek reimbursement, and the total amount for each such expense category (attached as Exhibit G);

h.  a schedule specifying the categories of expenses for which H&J seek reimbursement, and the total amount for each such expense category (attached as Exhibit H);

i.  all B&H time records billed during the Compensation Period by activity categories and a description of the services rendered, arranged in chronological order with respect to each category, and filed under seal to protect privileged, confidential and/or sensitive information (attached as Exhibit I);

j.  all FTI time records billed during the Compensation Period by activity categories and a description of the services rendered, arranged in chronological order with respect to each category, and filed under seal to protect privileged, confidential and/or sensitive information (attached as Exhibit J); and

k.  all H&J time records billed during the Compensation Period with a description of the services rendered, arranged in chronological order, and filed under seal to protect privileged, confidential and/or sensitive information (attached as Exhibit K).

16.  This is the Receiver's Eleventh Application for fees and expenses.  The Court approved the fees and expenses sought in the First through Tenth Applications by the Receiver, B&H, FTI, and H&J (where sought) minus the holdback of both fees and expenses.

17.  At least 30 days before this and previous fee applications were filed, the Receiver provided the SEC with copies of the B&H, FTI and H&J detailed time records for their review and consent.

6

18.     The fees and expenses for which payment is sought were incurred in connection with the discharge of the Receiver's duties as specified in the Amended Receiver Order. We believe that the charges are necessary and appropriate, and that the Receiver's efforts have resulted in a significant benefit to the Receivership Estate, as set forth in Paragraphs 21 through 33, *infra*.

## BACKGROUND[4]

19.     On February 3, 2011, the Court appointed John J. Carney, Esq. as Receiver over all assets "under the direct or indirect control" of Defendant Michael Kenwood Capital Management, LLC and Relief Defendants Michael Kenwood Asset Management, LLC, MK Energy and Infrastructure, LLC, and MKEI Solar, LP.

20.     On March 1, 2013, the Court entered the Receiver Order in connection with the Highview Point Settlement. The Receiver Order incorporated and restated all of the Receiver's duties and powers, and expanded the Receivership to include the Highview Point Funds.

## SUMMARY OF STEPS TAKEN BY THE RECEIVER DURING THE COMPENSATION PERIOD & CURRENT STATUS

The bulk of the work performed during the Compensation Period relates to the disposition of remaining Receivership assets and litigation concerning various motions and an appeal brought by Francisco Illarramendi. During the Compensation Period, Illarramendi filed and the Receiver briefed an appeal to the Second Circuit as detailed below. In addition, the Receiver continued the wind-down of the remaining Receivership Entities both in the U.S. and abroad and managed and liquidated the remaining Receivership assets. The Receivership Estate still controls certain private equity interests, securities and other assets. Much of the remaining

---

[4] Prior proceedings are described in more detail in the previous fee applications.

work for the Receivership consists of the orderly wind-down of the various Receivership entities and the continued monitoring and management of the remaining assets. All litigation commenced by the Receiver has been concluded, including the litigation commenced against Illarramendi that resulted in a final judgment against him in the amount of $25,013,716. The Supreme Court denied Illarramendi's petition for certiorari on December 9, 2019.

The sole remaining Receivership claimant, PDVSA, the national oil company of Venezuela, is currently sanctioned by the Office of Foreign Asset Controls ("OFAC"). These sanctions prevent the Receiver from making cash distributions to PDVSA in accordance with the Distribution Plan. As detailed below, the Receiver has sought a license from OFAC permitting distributions to PDVSA in accordance with the Distribution Plan. That application is currently pending.

### A. <u>Litigation concerning Francisco Illarramendi</u>

21.    On March 26, 2018 the Court granted the Receiver's motion for summary judgment against Illarramendi, but ordered the Receiver to elect between entry of Count One or Count Ten of the amended complaint. On April 5, 2018, the Receiver elected to pursue his claim for Conversion under Count Ten and on April 25, 2018 the Court entered a judgment against Illarramendi for $25,013,716.25, the full amount sought by the Receiver. Illarramendi appealed the order granting summary judgment, an order denying his motion for a stay of proceedings and the final judgment to the Second Circuit. Receiver's counsel briefed the summary judgment appeal on November 20, 2018. On July 30, 2019 the Second Circuit affirmed the district court's entry of judgment against Illarramendi. The Supreme Court denied Illarramendi's petition for certiorari on December 9, 2019.

22.    On October 4, 2018, Illarramendi filed a motion requesting an order of distribution to pay residual claim amounts of non-PDVSA class 4 claimants. This was the latest

of multiple attempts by Illarramendi to undo the Distribution Plan ordered by the Court.  On October 30, 2018, the Receiver opposed Illarramendi's motion and on June 4, 2019 the Court denied Illarramendi's motion.

**B.**  **Receivership Tax Liabilities and Obligations**

23.    The Receiver's counsel continued to assess the Receivership's tax liabilities and obligations.  During the Compensation Period this included the timely filing of returns with federal and state authorities as appropriate, the filing of Foreign Bank and Financial Accounts Reports (FBAR) with the Internal Revenue Service and providing advice and counsel regarding other tax related matters concerning the Receivership assets and the Receivership Entities.

**C.**  **Private Equity Investments and Other Assets**

24.    As part of ongoing efforts to manage Receivership assets and private equity investments of the Receivership, B&H reviewed and analyzed corporate documents for the purpose of maintaining corporate formalities of the following United States Receivership Entities: Highview Point Partners, LLC, Highview Point, LP, Michael Kenwood Capital Management, LLC, Michael Kenwood Consulting LLC, Michael Kenwood Nuclear Energy, LLC, MK Automotive, LLC, MK Energy and Infrastructure, LLC, MK Oil Ventures LLC, MK Technology, LLC, MKCM Merger Sub, LLC, MKEI Solar, LP, MKG-Atlantic Investments, LLC, MyTcart, LLC, The Michael Kenwood Group, LLC and TUOL, LLC.  Specifically, the corporate documents were reviewed and analyzed for the purpose of determining jurisdictions of formation and to facilitate the orderly dissolution of certain entities.  The Receiver's counsel worked with FTI to ensure that taxes and filing fees were timely paid for each of the foregoing Receivership Entities.

25.    Counsel for the Receiver, with assistance from H&J, the Receiver's Cayman counsel,  also reviewed corporate documents for the purpose of maintaining corporate formalities

and the good standing of the following Cayman Islands Receivership Entities: MK Special Opportunities Fund Ltd., Highview Point Offshore, Ltd., MK Venezuela Fund Ltd., Highview Point Master Fund, Ltd., Short Term Liquidity Fund I, Ltd., MK Investments, Ltd. and MK Master Investments, L.P.  Specifically, the corporate documents were reviewed and analyzed for the purpose of ensuring compliance with Cayman Islands Monetary Authority Regulations and placing certain Cayman Islands entities into "license under termination" status and ultimately for the orderly dissolution of these entities. H&J provided assistance with these efforts and interacted with the Cayman authorities as needed.

26.     Counsel for the Receiver continued consultations with the Business Advisor to value the Receivership's remaining private equity investments and prospects for liquidation.  The remaining investments included Vetra, Nerveda and the remaining Cheyne fund. The Receiver and Business Advisor continue to seek opportunities to liquidate these remaining assets.

27.     After consultations with the Business Advisor, the Receiver filed a motion seeking an order approving the sale of the Receivership Estate's shares of Proterra, Inc. to Lake Partners, LLC on June 8, 2018.  On June 12, 2018 the Court granted the Receiver's motion.  On June 18, 2018, Illarramendi filed a motion to vacate or stay the Court's order, which the Receiver opposed on June 26, 2018 and the Court denied on August 22, 2018.   The sale of the Receivership Estate's shares of Proterra, Inc. to Lake Partners, LLC closed on November 20, 2018.

28.     For Vetra, the Receiver's counsel worked with the Business Advisor to continue monitoring the Receivership Estate's interest and to consider possibilities for liquidating what remains of those interests.

29.     For Nerveda, the Receiver's counsel worked with the Business Advisor to track investments made by Nerveda and continues to look for opportunities to liquidate the position. In addition, the Receiver's counsel worked with the Business Advisor to continue monitoring the Cheyne position for opportunities to liquidate the illiquid portions that remain.

**D.  U.S. Sanctions Against the Government of Venezuela and PDVSA**

30.     The Receiver has been advised that PDVSA, the national oil company of Venezuela is currently subject to sanctions that may prohibit the distribution of funds.  As the Court is aware, PDVSA is the sole remaining claimant entitled to receive distributions pursuant to the Distribution Plan.  The Receiver's counsel examined the issue and determined that the Receiver would need to apply to OFAC for a license to make any future distributions to PDVSA. The Receiver submitted an application for such a license during the Compensation Period.  The application is still pending.

31.     Notwithstanding the foregoing, the Receiver and his team recognize that the resources of the Receivership Estate are limited, and have thus sought to minimize the time spent on the assignment without compromising their ability to properly discharge the Receiver's duties under the Receiver Order.

32.     During the Compensation Period, FTI assisted the Receiver's legal team in preparing tax returns for the Receivership Estate, assisted the Business Advisor and Receiver's legal team in valuing Receivership Estate investments and the potential sale of these investments and managed certain Receivership accounts.

33.     During the Compensation Period, H&J ensured certain Cayman-registered Receivership Entities were observing corporate formalities and maintained proper corporate governance and compliance with Cayman law.   H&J has provided advice and counsel

concerning the process for de-registering and liquidating certain Cayman-registered Receivership Entities as part of the overall wind-down of the Receivership.

## CASE STATUS - KEY FINANCIAL DATA

34.     As of September 30, 2019, the Estate had on hand cash and/or cash equivalents totaling $31,581,928, acquired through multiple litigation settlements, consolidation of Receivership Entity bank accounts both domestically and abroad, redemption and sale of assets, interest income, and collection of outstanding receivables.   These liquid assets represent a majority of the Estate's assets.

35.     In the Compensation Period, the Receiver made disbursements of $1,273,338. The Receiver paid professional fees and expenses in connection with the Tenth Fee Application.

## FEES AND EXPENSES REQUESTED

36.     In connection with the Compensation Period, the Receiver and B&H request compensation for services in the amount of $186,471 and reimbursement of expenses in the amount of $16,088.

37.     In connection with the Compensation Period, FTI requests compensation for services in the amount of $20,364.

38.     In connection with the Compensation Period, H&J requests compensation for services in the amount of $16,602 and reimbursement of expenses in the amount of $22.

39.     These amounts reflect the hours worked by the Receiver and his attorneys, accountants and legal assistants, and the hourly rates in effect at the time that the services were rendered, as modified by the significant discounts provided by the Receiver, B&H, FTI and H&J, and additional voluntary write-offs and discounts of attorney time. These amounts also take into account all relevant circumstances and factors as set forth in the New York Lawyer's Code of

Professional Responsibility, where applicable, and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the lawyers and legal assistants working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver and B&H under the Receiver Order and the Amended Receiver Orders.

40.    Pursuant to the Receiver Order, the public service discount and additional fees and write-offs as described in Paragraphs 9 through 14, the fees and costs of the Receiver and B&H for the Compensation Period have been reduced by approximately $53,374.

41.    The work described in this Application was performed primarily by a group of approximately 6-8 B&H attorneys, who were assisted primarily by one legal assistant.[5]

42.    As more fully discussed in Paragraphs 21 through 33, *supra*, a significant portion of the professional fees in the Compensation Period relate to work done: 1) responding to Illarramendi's various motions and appeal; 2) monitoring the Receivership Estate's investments and assets and evaluating potential sales of those investments; and 3) tax related issues.

43.    The Receiver, B&H, FTI and H&J submitted detailed invoices to the SEC for their review and comment in September of 2019. The SEC has informed the Receiver orally that they have no objection to this application and will be filing a response pursuant to the Court's Order dated January 16, 2014. (Dkt. No. 817.)

44.    The Receiver and B&H have submitted ten previous fee applications in this case, all of which were approved by this Court, subject to the agreed-upon holdbacks of both fees and expenses.  B&H has not received a retainer in this case.

---

[5] The remainder of the timekeepers consist of B&H professionals and paraprofessionals working in specialized capacities, such as employee benefits, international trade and information technology, who were consulted for a limited purpose and who charged limited time to the Estate.

45.     As required by the SEC Guidelines, the Receiver, B&H professionals, FTI professionals and H&J professionals recorded all services performed in time increments of one-tenth of an hour. All services by B&H legal assistants and other paraprofessionals were professional in nature.

46.     In accordance with the SEC Guidelines, this Application does not seek payment for time spent preparing the Application or any documentation in support.

### SUMMARY OF SERVICES RENDERED BY THE RECEIVER AND B&H, BY ACTIVITY CODE, DURING THE COMPENSATION PERIOD

47.     Pursuant to the SEC Guidelines, B&H has segregated its time during the Compensation Period into separate activity categories. Narrative summaries of these activity categories are provided below.

### Asset Analysis and Recovery (01)                    AMOUNT: $59,441.

48.     The activities in this category consist of efforts to identify, locate and recover assets of the Receivership Estate and to recover, secure and prevent dissipation of those assets. Specifically, the activities in this category include efforts taken by the Receiver, his counsel, and his advisors to analyze the financial transactions between and among the Receivership Entities, to litigate and resolve the asset recovery actions pending before Judge Underhill, and investigations of and settlement discussions with individuals and entities that received potentially fraudulent transfers from the Receivership Entities.   During the Compensation Period this primarily involved responding to Illarramendi's appeal of the Court's entry of summary judgment against him and responding to Illarramendi's motion to alter the Receiver's plan of distribution.

14

49.     This category also included legal research and analysis to determine the Receiver's ability to make distributions to PDVSA in light of OFAC sanctions.

50.     The fees associated with this activity category going forward will primarily be limited to addressing any additional motion practice or appeals brought by Illarramendi or his father.  All the recovery actions commenced by the Receiver have now been concluded.

### Asset Disposition and Business Operations (02, 03)          AMOUNT: $81,373.

51.     The activities in this category consist of efforts to evaluate, transfer and/or liquidate the private equity investments of the Receivership Estate.  Specifically, the activities in this category include communications with investors, investment managers, representatives of the private equity investments, and purported creditors to evaluate steps to maximize the value of and monetize the private equity investments.   For the Compensation Period, this includes time spent finalizing the sale of Proterra, responding to Illarramendi's opposition to the sale of Proterra, liquidating the Cayman Island entities and monitoring the remaining private equity investments.

52.     This category also included legal research and analysis to determine the Receiver's ability to make distributions to PDVSA in light of OFAC sanctions.

### Case Administration (04)                                              AMOUNT: $5,847.

53.     The activities in this category during the Compensation Period consist primarily of administrative and procedural tasks such as management and tracking of dockets and filing deadlines and preparation of documents for filing.

**Claims Administration and Objection (05)                    AMOUNT: $544.**

54.    The activities in this category during the Compensation Period consist of analysis of payment of the remaining claims.

**Employee Benefits/Pension (06)                    AMOUNT: $11,439.**

55.    The activities in this category are related to the administration of the retirement plans for HVPP and compliance with regulatory requirements regarding the same.

**Tax Issues (14)                    AMOUNT: $27,827.**

56.    The activities in this category consist of internal consultations and review with tax professionals to review and comply with domestic and international tax requirements for contemplated activities and transactions of the Receivership Estate and Receivership Entities. This also included the filing of state and federal tax returns.

**SUMMARY OF SERVICES RENDERED BY FTI DURING THE COMPENSATION PERIOD**

**Business Operations (FTI Code 2)                    AMOUNT: $20,364.**

57.    The activities in this category consist of managing the operational aspects of the Receivership Estate.  This includes managing tax filings, banking and accounting operations, ongoing private equity investments and Receivership filings.  For this Compensation Period, costs in this task code primarily relate to managing the remaining Receivership assets and efforts to liquidate these assets.

**SUMMARY OF SERVICES RENDERED BY H&J DURING THE COMPENSATION PERIOD**

**Asset Analysis, Recovery and Disposition                    AMOUNT: $16,602.**

58.    Activities in this category include providing advice on Cayman Island-based legal issues.  The representation was not only limited to litigation advice but also included corporate

16

legal advice pertaining to Cayman-registered Receivership Entities.   Specifically, during the Compensation Period, this category included management of the various Cayman-registered Receivership Entities including compliance with periodic filing, fee and disclosure obligations.

### EXPLANATION OF EXPENSES AND RELATED POLICIES

59.     The Receiver and B&H seek reimbursement for their out-of-pocket costs in the amount of $16,088.   Exhibit G sets forth the various categories of expenses for which reimbursement is sought. In accordance with the SEC Guidelines, B&H charged its internal photocopying expenses at a rate of $0.15 per page for black and white and $0.50 per page for color copies.  B&H made 26 black and white internal photocopies for a total of $2.60 and 1 color copy for a total of $.50 during the Compensation Period at the above-listed rates.

60.      B&H will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Guidelines and will provide the SEC with copies upon request.

61.     H&J incurred out-of-pocket costs in the amount of $22.   Exhibit H sets forth the various categories of expenses that were incurred during the Compensation Period.   In accordance with the SEC Guidelines, H&J charged its internal photocopying expenses at a rate of $0.15 per page for black and white and $0.50 per page for color copies.  H&J will retain the documentation supporting these expenses for a period of seven years in accordance with the SEC Guidelines and will provide the SEC with copies upon request.

### THE REQUESTED COMPENSATION SHOULD BE ALLOWED

62.     The Court has discretion to determine the Receiver's compensation and the fees and expenses of the Receiver's professionals.   In determining the reasonableness of fees and expenses requested, the Court should consider the complexity of the problem faced, the benefit

of the services to the Receivership Estate, the quality of the work performed and the time records presented.  SEC v. Fifth Ave. Coach Lines, Inc., 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); see also SEC v. Elliott, 953 F.2d 1560, 1577 (11th Cir. 1992) (per curiam) (if a receiver reasonably discharges his duties, the receiver is entitled to compensation; the circumstances surrounding the receivership, including the results, are relevant).

63.    Although case law provides guidelines and standards for determining compensation requests, the unique facts and situations of the case make direct reliance on such guidelines impossible.  SEC v. W.L. Moody & Co., 374 F. Supp. 465, 485 (S.D. Tex. 1974), aff'd, 519 F.2d 1087 (5th Cir. 1975).

64.    As set forth *supra*, in the instant case, the Receiver, B&H, FTI and H&J respectfully submit that the services for which they seek compensation in this Application were necessary for, and beneficial to, the orderly administration of the Receivership Estate.

65.    The issues addressed by the Receiver and B&H have been and continue to be highly complex, requiring investigation of an alleged fraud that spanned many years, consisted of thousands of poorly-documented transactions, and involved numerous offshore entities and foreign financial institutions.  During the Compensation Period the Receiver recovered additional assets for distribution through the sale of the Proterra investment and the success of the Receiver's summary judgment motion against Illarramendi.  In addition, the Receiver has taken significant steps towards winding down and concluding the Receivership in an orderly fashion and in a manner that serves the best interests of the Receivership Estate.  We respectfully submit that compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The cost to recovery ratio to date, has been extremely favorable both in absolute terms and also when compared to other

enforcement actions in which a receiver has been appointed.  The professional services were performed expediently and efficiently.  Accordingly, the Receiver and B&H submit that the compensation requested herein is reasonable and warranted in light of the nature, extent and value of such service to the Receivership Estate and all parties in interest.

**MOTION FOR RELEASE OF THE HOLDBACK**

**<u>RELEVANT PROCEDURAL BACKGROUND</u>**

66.    Under the Receiver Order the Court is permitted to apply a holdback of up to 20% of fees to be released "at the discretion of the Court . . . at the close of the Receivership."  <u>See</u> Receiver Order ¶ 67.  A holdback has been applied to each interim fee application submitted by the Receiver.

67.    On December 17, 2014, upon consent of the SEC, the Receiver submitted a motion for an order authorizing the immediate release of 70% of the holdback that was applied to fees and expenses from February 3, 2011 through December 31, 2013. (ECF No. 948). On December 22, 2014, the Court granted the motion (ECF No. 949) and authorized the aggregate payment of $6,023,649 to B&H, FTI, and other retained professionals including H&J and Levin-Epstein, Richardson, Fitzgerald & Pirrotti, PC.

68.    On December 18, 2015, upon consent of the SEC, the Receiver submitted a motion for an order authorizing the immediate release of 50% of the holdback that was applied to fees and expenses from February 3, 2011 through September 30, 2014.  (ECF No. 989).  On December 29, 2015, the Court granted the motion (ECF No. 990) and authorized the aggregate payment of $1,795,087 to B&H, FTI, and other retained professionals including H&J and Levin-Epstein, Richardson, Fitzgerald & Pirrotti, PC.

19

69.     On February 20, 2018, upon consent of the SEC, the Receiver submitted a motion for an order authorizing the immediate release of 35% of the holdback applied to fees and expenses of B&H and 36% of the holdback applied to fees and expenses of FTI from February 3, 2011 through December 31, 2016.  (ECF No. 1119).  On March 26, 2018, the Court granted the motion (ECF No. 1126) and authorized the aggregate payment of $950,000 to B&H and FTI.  The Receiver has not sought permission to release any portion of the holdback since February 2018.

70.     As of September 30, 2019, the Receiver has recovered approximately $445.5 million, while incurring (with FTI and H&J) approximately $51.3 million in actual professional fees through September 30, 2019.  Including estimated additional recoveries, the costs to date as a percentage of overall recoveries are approximately 11% when all Retained Professionals' fees and expenses are combined.

## RECEIVERSHIP DISTRIBUTIONS TO CLAIMAINTS

71.     The Distribution Plan (ECF No. 905-1) approved by this Court's Order dated October 27, 2014 (ECF No. 941) proposed to fully satisfy Administrative, Tax and Convenience Class Claims (Class 1, 2 & 3 respectively), distribute 92% of the Allowed Amount of General Unsecured Claims (Class 4) and distribute an estimated 2% to 11% of the Allowed Amount of in-kind contribution claims (Class 4A).  The order approving the Plan was affirmed on appeal by the Second Circuit.  SEC v. Michael Kenwood Cap. Mgmt. LLC, 630 F. App'x 89 (2d Cir. 2015).

72.     Since the approval of the Distribution Plan, the Receiver has distributed to claimants more than $330 million.  Claimants in Class 4, the largest pool of claimants, have

received a 100% recovery on their approved claims. As discussed above, PDVSA, the sole remaining claimant, is subject to U.S. sanctions preventing distributions at this time.

## BASIS FOR RELIEF REQUESTED

73.     The Receiver Order provides that the Court may, in its discretion, provide for release of the holdback.  See Receiver Order ¶¶ 63, 66, 67. As set forth herein, the Receiver's work is largely complete and it is appropriate for the Court to order the release of the remaining holdback at this time.

74.     The Receiver and the SEC have worked diligently throughout the Receivership to address the Receiver's prior fee applications. The Receiver and his retained professionals have provided significant additional discounts to the Receivership Estate on a voluntary basis and in response to items raised by the SEC.  In connection with this holdback request, the Receiver, B&H and FTI have conferred with the SEC and agreed to voluntarily reduce the remaining holdback by 15% for a combined additional savings to the Receivership Estate of $303,434.  The Receiver respectfully submits that the voluntary reduction to the holdback along with the significant reductions made throughout the course of the Receivership sufficiently address any perceived inefficiencies for which the holdback is intended to guard against. The SEC has consented to the release of 85% of the currently remaining holdback to both B&H and FTI in the amounts of $924,164 and $795,296 respectively.  The SEC has agreed to the release of 100% of the currently-remaining holdback for fees and expenses incurred by H&J through June 30, 2018 in the amount of $2,668.

75.     The SEC and Receiver have also agreed, subject to the Court's approval, that a holdback will not be applied to this fee application or future fee applications in light of the fact that future work on Receivership matters will be limited as the Receivership winds down.

21

## THE RECEIVER HAS ACHIEVED OUTSTANDING RESULTS

76.     Since his appointment on February 3, 2011, the Receiver has recovered almost $445.5 million in this matter, which has been characterized by the United States Attorney's Office as "a massive Ponzi scheme that has defrauded foreign investors of hundreds of millions of dollars" and is believed to be "the largest white-collar prosecution ever brought" by federal prosecutors in Connecticut.   Press Release, U.S. Attorney's Office for the District of Connecticut, *Connecticut Hedge Fund Adviser Admits Running Massive Ponzi Scheme* (Mar. 7, 2011).

77.     The Receiver's recovery to date has been the result of an extensive international investigation, the continued management and liquidation of substantial domestic and offshore assets and several pre- and post-litigation settlements.

78.     As a result of the Receiver's investigation and recovery efforts – which are substantially complete – the Receiver has recovered sufficient assets to fully satisfy all Administrative, Tax and Convenience Class Claims, distribute 100% of the Allowed Amount of General Unsecured Claims and in the future distribute an estimated 2% to 11% of the Allowed Amount of in-kind contribution claims.   To date, the Receiver has distributed approximately $330,004,844 to claimants.

## RELEASE OF THE CURRENTLY-REMAINING HOLDBACK IS REASONABLE AND WILL HAVE NO EFFECT ON INVESTORS

79.     In connection with each of the previous fee applications filed in this case, the Court and the SEC have already found that fees and expenses were warranted and reasonable. The SEC has conducted – and conducts, with each fee application – a detailed and rigorous review of the Receiver's fee applications and invoices.   The total holdback amount currently remaining less the 15% voluntary discount is as follows (Figure 1):

| | B&H | FTI | Total |
|---|---|---|---|
| Total Holdback Remaining | $ 1,087,252 | $ 935,642 | |
| Less 15% Voluntary Discount | (163,088) | (140,346) | |
| Holdback Requested | $ 924,164 | $ 795,296 | |
| | | | |
| Combined B&H and FTI Voluntary Discount | | | $ (303,434) |

**RELIEF REQUESTED**

The Receiver and B&H respectfully request that this Application be granted and that they be allowed compensation for legal services rendered during the Compensation Period in the amount of $186,471, and reimbursement of expenses in the amount of $16,088; that FTI be allowed compensation for services rendered during the Compensation Period in the amount of $20,364; and that H&J be allowed compensation for legal services rendered during the Compensation Period in the amount of $16,602, and reimbursement of expenses in the amount of $22.

The Receiver and B&H also respectfully request that the Court release the remaining holdback less the 15% voluntary discount.

WHEREFORE, the Receiver and B&H respectfully request that an Order be entered:

a) authorizing the Receivership Estate to pay B&H $186,471 for legal services and $16,088, in expenses;

b) authorizing the payment of $20,364 in fees to FTI;

c) authorizing the payment of $16,602 in fees and $22 in expenses to H&J;

d) authorizing release of holdback in the amount of $924,164 for B&H, $795,296 for FTI and $2,668 for H&J;

23

e) that this fee application and any future fee applications submitted by the Receiver will not be subject to a holdback; and

f) such other and further relief as is necessary and proper.

Dated: New York, New York
December 20, 2019

By: ___/s/ Jimmy Fokas_____
Jimmy Fokas (phv04556)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201
Email: jfokas@bakerlaw.com

*Attorneys for Receiver John J. Carney, Esq.*
And John J. Carney, Esq., Receiver